Anya Fuchs, Esq.
5874 Doyle Street
Emeryville, CA 94608
Telephone:  510-685-9717
Facsimile:  510-743-7147
anya@anyafuchslaw.com

Charles M. Stam (*pro hac vice forthcoming*)
Thompson Stam PLLC
717 Texas Avenue, Suite 1200
Houston, Texas 77002
Telephone: (844) 846-7826
Facsimile: (713) 379-8076
charles@thompsonstam.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| EDEN FILM PRODUCTION LLC, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LOCKJAW LLC, a California corporation; ASHLEY LYLE, an individual; BART NICKERSON, an individual; BEER CHRISTMAS, LTD., a California corporation; SHOWTIME NETWORKS INC., a California corporation; LIONS GATE ENTERTAINMENT, INC., a Delaware corporation; and DOES 1 – 10, inclusive,<br><br>Defendants. | Case Number: 2:24-cv-09851<br><br>**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES AND INJUNCTION FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Eden Film Production LLC sues Defendants Lockjaw LLC; Ashley Lyle; Bart Nickerson; Beer Christmas, Ltd.; Showtime Networks Inc.; Lions Gate Entertainment, Inc.; and Does 1 – 10 for copyright infringement. Plaintiff alleges Defendants infringed its motion picture copyright on the film "Eden" (the "Film") by creating and releasing a substantially similar work in the form of the television show "Yellowjackets" (the "Show"), which premiered on November 14, 2021. The copyright for Eden was registered as a motion picture with the United States Copyright Office on June 25, 2015, and the film was released on September 18, 2015.

Eden is a survival drama/thriller about a U.S. men's soccer team that crashes on a deserted island after a World Cup match. Yellowjackets is a survival drama/thriller about a U.S. women's soccer team that crashes in deserted wilderness before a high school national championship match. Defendants created the substantially similar work Yellowjackets without a license or permission of any kind, damaging Plaintiff. Thus— upon information and belief, except as to its own actions, the investigation of its counsel, and the facts that are a matter of public record—Plaintiff makes the following allegations against Defendants.

## JURISDICTION AND VENUE

1. This is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1338(a) and 1338(b).

2. Venue is proper under 28 U.S.C. §§ 1391 and 1400(a) as a substantial part of the events or omissions giving rise to the claim occurred in this district, and Defendants, their agents, or both reside or may be found in this judicial district.

## PARTIES

3. Plaintiff Eden Film Production LLC is a Delaware corporation with its principal place of business located in the County of Los Angeles, California. The original motion picture entitled "Eden" was produced by Eden Film Production LLC. Plaintiff is

1 | the contractual owner of all and exclusive rights including all rights under contract,
2 | copyright, and any other claims related to the Film and all drafts and versions of it.

3 |     4.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Lockjaw LLC a/k/a "Yellowjackets Productions LLC" is a limited liability company existing under California law that maintains its principal place of business at 1531 West Sunset Boulevard, Los Angeles, California 90026. Plaintiff is informed and believes, and on that basis alleges, that Lockjaw is qualified to do business and is doing business in the State of California, County of Los Angeles, and is active according to the California Secretary of State. Plaintiff is further informed and believes, and on that basis alleges, that Lockjaw is one of the Production Companies producing the Show and was created, and is potentially owned or controlled, by Defendants Bart Nickerson and Ashley Lyle. Lockjaw may be served through its registered agent, Sabrina Greco, at 1531 West Sunset Boulevard, Los Angeles, California 90026.

    5.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Bart Nickerson is an individual residing in Los Angeles County, California. Plaintiff is further informed and believes that Bart Nickerson may be served through his legal representative, The Nord Group, at 1925 Century Park East, Suite 1700, Los Angeles, California 90067. Plaintiff is further informed and believes that The Nord Group owns, represents, or manages Defendant Beer Christmas, LTD., and that Bart Nickerson is a co-creator of the Show and one of its two lead writers with many television show credits per the Internet Movie Database ("IMDB").

    6.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Ashley Lyle is an individual residing in Los Angeles County, California. Plaintiff is further informed and believes that Ashley Lyle may be served through her legal representative, The Nord Group, at 1925 Century Park East, Suite 1700, Los Angeles, California 90067. Plaintiff is further informed and believes, and on that basis alleges, that Ashley Lyle is a co-creator of the Show and one of its two lead writers with many television show credits per IMDB.

1    7.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Beer Christmas, LTD. ("BCL") is a corporation existing under California law that maintains its principal place of business at 1917 North Grammercy Place., Los Angeles, California 90068. Plaintiff is informed and believes, and on that basis alleges, that Lockjaw is qualified to do business and is doing business in the State of California, County of Los Angeles, and is active according to the California Secretary of State. Plaintiff is further informed and believes, and on that basis alleges, that BCL is one of the Production Companies producing the Show. BCL may be served through its registered agent, Ryan W. Nord, at 1925 Century Park East, Suite 1700, Los Angeles, California 90067.

8.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Showtime Networks Inc. ("Showtime") is a corporation existing under Delaware law that maintains its principal place of business at 1515 Broadway, New York, New York 10036, that is qualified to do business and is doing business in the State of California, County of Los Angeles. Plaintiff is further informed and believes, and on that basis alleges, that Showtime co-produced and distributed the Show. Showtime may be served through its registered agent, CSC Lawyers Incorporating Service, at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

9.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Lions Gate Entertainment, Inc. ("Lionsgate") purchased Entertainment One, which produced the Show. Lionsgate is a corporation existing under Delaware law that maintains its principal place of business at 2700 Colorado Avenue, Santa Monica, California 90404. Plaintiff is further informed and believes, and on that basis alleges, that Lionsgate co-produced the Show and distributed the Show. Lionsgate may be served through its Registered Agent, CT Corporation System, at 330 North Brand Boulevard, Glendale, California 91203.

10.    The true names and capacities—whether individual, corporate, associate or otherwise—of Defendants DOE 1 through 10, inclusive, are presently unknown to

Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the DOE Defendants was (or is) either intentionally, negligently, or in some other manner the cause (or contributing cause) of, or otherwise responsible for, the damages Plaintiff suffered. Plaintiff will amend this Complaint to allege the true names and capacities of each DOE Defendant, together with such allegations as may be appropriate, when their names have been determined.

11. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned, each Defendant was the agent, servant, employee, partner, successor, assignee, joint venturer, or franchisee of each of the remaining Defendants here and was at all times acting within the course and scope of said agency, service, employment, partnership, joint venture or franchise. Plaintiff is also informed and believes, and thus alleges, that each act and omission alleged of any one Defendant was done with the approval, consent, or ratification of each remaining Defendant.

12. Plaintiff is further informed and believes, and thereon alleges, that each Defendant may be held liable for the infringing acts committed by another if each Defendant had the right and ability to control any infringing activities and had a direct financial interest in such activities—regardless of whether each said Defendant had intent or knowledge of the infringement alleged here. Plaintiff is also informed and believes, and thereon alleges, that each Defendant that knowingly induced, caused or materially contributed to any infringement, although not committing or participating in the infringing acts, may be held liable as a contributory infringer because any such Defendant had knowledge—or reason to know—of the infringement.

## BACKGROUND FACTS

13. Plaintiff is the owner and copyright proprietor through a valid registration (the "Registration") of an original motion picture screenplay entitled "Eden." The Film was created by Plaintiff and registered for copyright with the United States Copyright Office on June 25, 2015. (True and correct conformed copy of the copyright registration is attached and incorporated by reference herein as Exhibit "A"). Plaintiff is the contractual

1  assignee and owner of all rights with respect to the Film and all reproductions, versions, and derivative versions of it.

2  14. Years later, in February 2024, Plaintiff became aware of a television show entitled "Yellowjackets" (the "Show"), streaming on Showtime's streaming service. Plaintiff later learned Bart Nickerson and Ashley Lyle were the co-writers of the Show, that Showtime was the distributor, and that the Show had been released on November 14, 2021.

15. A recent review of Wikipedia and IMDB webpages for the Show Yellowjackets confirms Bart Nickerson and Ashley Lyle were the co-writers of the Show, that Showtime was the distributor, and that the Show was released on November 14, 2021. The review also revealed Showtime, Lionsgate, BCL, and Lockjaw were the production companies. Additionally, recent internet searches for Yellowjackets with the United States Copyright Office reveal a number of recorded documents pertaining to such title, including links to ownership by Showtime, Bart Nickerson, and Ashley Lyle through written agreement.

16. Plaintiff is informed and believes, and on that basis alleges, that the more recent work, "Yellowjackets," borrows heavily from Eden to the point at which they are substantially similar. Comparing the Film to the Show's plots, setting, mood, pace, stories, characters, sequence of events, themes, and scene/dialogue similarities, demonstrates that the two works, in most respects, are identical. These substantially, strikingly similar elements leave little doubt that most substantive elements of Yellowjackets are copied from Eden.

## CLAIM FOR RELIEF
### (COPYRIGHT INFRINGEMENT (17 U.S.C. §§101 *et seq.*))
### (Against all Defendants)

17. Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 16, inclusive, and incorporates them here by reference.

18. Plaintiff is currently and at relevant times has been the sole proprietor of all right, title, and interest in and to the copyrights in the Film.

19. To date, Plaintiff is informed and believes that Defendants are proceeding with efforts to distribute Yellowjackets in derogation of Plaintiff's rights.

20. Furthermore, given the access of the Film to Defendants through publicly available means, such as the streaming service Amazon Video, Plaintiff is informed and believes, and thus alleges, that Defendants were knowingly and willfully involved in the copying of the Film and its original elements to create a work substantially similar to and derivative of Plaintiff's copyrighted Film. Having reviewed both works, Plaintiff thus provides this non-exhaustive summary of substantial similarities, including expressions of ideas and concepts, between Eden and Yellowjackets:

### (a) THEME

21. Each work has core themes of (i) Survival and Adaptation (the characters are forced to confront the harsh realities of survival in a desolate land, requiring them to adapt to their new environment and overcome challenges); (ii) Human Nature, Morality, and Ethics (the works delve into the darker side of human nature, as the characters' survival instincts lead to moral dilemmas and conflict); (iii) the Power of Hope and Perseverance (despite dire circumstances, characters maintain hope and strive to escape the island); (iv) the Importance of Teamwork and Cooperation (the survivors must learn to work together and overcome their differences to survive); (v) Cult Mentality (the works explore the formation of a cult-like group dynamic within the survivors, highlighting themes of power, control, and manipulation); (vi) Identity and Self-Discovery (the characters undergo significant personal transformations as they confront their fears and limitations); and (vii) the Fragility of Civilization (the works highlight the fragility of civilization and how easily it can collapse when faced with adversity).

### (b) PLOT

22. The plot in both works is suspenseful and thought-provoking by exploring the limits of human endurance and the consequences of unchecked ambition. Eden is a

survival thriller about a U.S. men's soccer team that crashes on a deserted island after a World Cup match. Yellowjackets is a survival thriller about a U.S. women's soccer team that crashes in the deserted Canadian wilderness island before a high school national championship match. In both works, the survivors, which include various players and the coach, among others, must fight for their lives against the harsh elements, starvation through dwindling resources, and the psychological toll of isolation in the form of growing darkness within themselves. As they struggle to survive, tensions rise, alliances form, dark secrets emerge, and moral boundaries are pushed to their limits—blurring the line between good and evil.

### (c) SETTING

23. The setting of each work takes place in a deserted and desolate place beyond the reach of human civilization. Yellowjackets is like Eden: a top soccer team's flight crash lands, forcing the survivors to contend with a harsh environment, limited resources, and the growing threat of their own deteriorating mental states. The coaches in both the Film and Show undergo g a series of similar traumatic events—including murder, cannibalism, and death.

### (d) CHARACTERS

24. Notwithstanding their names and gender, the lead characters in both works are strikingly similar. Each features a top soccer team and its entourage, including a coach, a nurse/trainer, the head coach's child, and another character of opposite gender to the team.

25. Yellowjackets includes the characters: Jackie Taylor (a talented soccer player and the captain of the team), Shauna Shipman (a skilled player who is often overshadowed by others), Natalie Scatorccio (a troubled but talented soccer player who acts impulsively), Taissa Turner (a player confronted with the trials of leadership, survival, and moral dilemmas), Van Palmer (a quiet and observant member of the team), Assistant Coach Ben (a seasoned assistant soccer coach who provides guidance and support to the survivors), Misty Quigley (a nurse-like character), Lottie Matthews (a mysterious, complex, and

troubled character who struggles with demons), Travis Martinez (a love interest of the soccer team and the deceased head coach's child), and Javi Martinez (Travis's sibling, the deceased head coach's other child).

26. Eden includes the characters: Slim (a talented soccer player and the captain of the team), Markese (a skilled player who is often overshadowed by others), Arnie (a troubled but talented soccer player who acts impulsively), Andy (a player confronted with the trials of leadership, survival, and moral dilemmas), Coach Defoe (a seasoned soccer coach who provides guidance and support to the survivors), the Connie (the trainer, a nurse-like character), Andreas (a mysterious, complex, and troubled character who struggles with demons), Elena (a love interest of the soccer team and the coach's daughter), and Eva (Elena's sibling, the deceased head coach's other child).

27. These characters, along with other more minor characters, are forced by the elements to confront their own limitations—and the darkness within themselves—as they fight for survival on the deserted island.

### (e) MOOD

28. Both works have a similar moods in that they are Suspenseful (the works maintain a constant sense of suspense, with mysteries and secrets unfolding slowly), Humorous (despite heavy themes, the works incorporate moments of dark humor and witty dialogue), Hopeful (despite dire circumstances, moments of hope and resilience emerge as the characters strive to survive), Moral Ambiguity (the works explore moral dilemmas and the blurring of lines between good and evil, creating a sense of ambiguity), and Dark and Bleak Psychological atmosphere (an isolated setting furthers the deterioration of the characters' mental states).

29. Both works blend suspense, horror, drama, and dark comedy.

### (f) PACE

30. The works have similar paces. Both are deliberate and suspenseful. While they do not through the plot, they maintain a steady pace that keeps viewers engaged. The

works balance slower, character-driven moments with more intense, plot-driven sequences.

31. The works blend mystery, suspense, and psychological drama. While there are moments of intense action and conflict, the overall paces are methodical, focusing on the characters' struggles and their evolving relationships. The slow-burn approach allows the audience to empathize with the characters and fully appreciate the deteriorating circumstances.

### (g) SEQUENCE OF EVENTS

32. As with their plots, the sequence of key events in both works is similar:
   a. Plane Crash (a top soccer team and its entourage crash in a desolate area);
   b. Initial Survival (the survivors band together to survive the harsh conditions);
   c. Weather's Grip (harsh weather forces the survivors to make difficult choices and further pushes them to their limits);
   d. Hope and Despair (as time passes, hope of rescue diminishes, leading to feelings of despair and hopelessness);
   e. Faction Formation (tensions rise, leading to the formation of different groups among the survivors);
   f. Moral Decay (harsh conditions and the struggle for survival push the survivors to their limits, causing them to make dubious moral choices);
   g. Conflict and Violence (as their situations deteriorate, the survivors engage in extreme measures, including violent confrontations); and
   h. Rescue and Aftermath (survivors are eventually rescued yet the trauma of their ordeal continues to haunt them).

### (h) SCENE/DIALOGUE SIMILARITIES

33. A non-exhaustive list of some of the specific scene or dialogue similarities between each work, without limitation, include:

|   |   |   |
|---|---|---|
| a. | Champion soccer team's flight crashes in remote area; |
| b. | Many players die in the plane crash; |
| c. | An assistant coach, a subset of soccer players, a trainer/nurse, and the head coach's kids survive the plane crash and are forced to brave a harsh, isolated area; |
| d. | The survivors form factions, leading to internal conflict and power struggles; |
| e. | The psychological toll of isolation, desperation, and breakdown of societal norms sets in; |
| f. | Cult-like behavior arises with the emergence of a charismatic, demagogic leader who influences the group's behavior in derogation of established social norms; |
| g. | Characters discover wreckage of previous expeditions in the isolated location; |
| h. | Characters discover a cache of goods; |
| i. | Teammates sneak off and conspire in Machiavellian ways; |
| j. | An ill-advised escape attempt fails; |
| k. | Moral decay sets in as the characters struggle to survive and are pushed to make moral compromises and morally dubious decisions; |
| l. | A character commits suicide; |
| m. | Cannibalism arises in both stories as a last resort to survive; and |
| n. | The surviving characters are rescued by an outside force. |

34. These shared elements create a sense of familiarity and tension in both works, making them compelling and thought-provoking and reflect their characters' shared experiences of survival, desperation, and moral decay.

35. While the specific words may differ across the works, the underlying themes and emotions expressed in the dialogue are strikingly similar, highlighting the universal

human experience of survival and the darkness that can emerge under extreme circumstances. Both works feature dialogue that:

    a. Expresses desperation and fear (as characters grapple with the harsh realities of their situation, they often voice their fears and anxieties);

    b. Reveals internal conflict (characters often engage in internal monologues or dialogue with themselves, exploring their moral dilemmas and psychological struggles);

    c. Challenges authority and societal norms (as social order breaks down, characters question traditional values and norms, leading to confrontations and power struggles);

    d. Justifies extreme measures (characters may justify their actions, even if they are morally questionable, by appealing to the need to survive); and

    e. Contemplates the meaning of life and death (characters ponder the fragility of life and the inevitability of death, resulting in philosophical discussions);

### (i) FACTS RELATED TO DAMAGES

36. Plaintiff is further informed and believes, and on that basis alleges, that Defendants' copying of Eden infringes Plaintiff's copyright and that they are distributing, or intend to continue to distribute, unauthorized works similar to and derivative of Eden.

37. The natural, probable, and foreseeable result of Defendants' conduct is to deprive Plaintiff of the benefits and goodwill that would necessarily be derived from selling the Film.

38. Plaintiff is informed and believes, and on that basis alleges, that it has lost, and will continue to lose, substantial revenues from the sale of Yellowjackets and has thus sustained damages from Defendants' conduct in producing and selling their infringing Show. Defendants' conduct has also deprived Plaintiff of opportunities to profit and attain goodwill from the Film.

39. Plaintiff is informed and believes, and on that basis alleges, that unless enjoined, Defendants intend to continue their course of conduct in using, infringing on, selling, and profiting from the Film and works derived from it. As a direct and proximate result of Defendant's alleged acts, Plaintiff has suffered irreparable damage and sustained lost profits. Plaintiff has no adequate remedy at law to redress all of the injuries that Defendants have caused and intend to cause through their conduct. Unless Defendants are enjoined, Plaintiff will continue to suffer irreparable damage and sustain lost profits.

40. By producing, distributing, and marketing products derivative of Plaintiff's copyrighted Film, Defendants have infringed, and will continue to infringe, Plaintiff's copyright.

41. Plaintiff is entitled to an injunction restraining Defendants—including their officers, agents, employees, and all persons acting in concert with them—from engaging any further violation of its copyright on the Film.

42. Plaintiff is further entitled to recover from Defendants damages, including attorneys' fees it has sustained (and will sustain), and any gains, profits and advantages obtained because of Defendants' alleged acts of infringement. While the amount of such damages, gains, profits and advantages cannot be fully and precisely ascertained at this stage, Plaintiff is informed and believes that such damages equal or exceed $500,000.

## PRAYER FOR RELIEF

Plaintiff thus prays for judgment against Defendants as follows:

1. That the Court finds Defendants have infringed Plaintiff's copyright in the Film.

2. That the Court finds a substantial likelihood that Defendants, unless enjoined from doing so, will continue to infringe Plaintiff's copyright in the Film;

3. That Defendants—and their directors, officers, agents, servants, employees, and all other persons in active concert, privity or association with them—be enjoined from directly or indirectly infringing Plaintiff's copyrights in the Film, or continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, or

1 | manufacture any works derived or copied from the Film, or to participate, further, or assist
2 | in any such activity;

3 |     4.    That Defendants—including their directors and officers, agents, servants,
4 | employees, and all other persons in active concert or privity or in participation with
5 | them—be enjoined from its conduct and ordered to recall from all distributors,
6 | wholesalers, jobbers, dealers, retailers, and distributors, and all others known to
7 | Defendants, any originals, copies, facsimiles, or duplicates of any works shown by the
8 | evidence to infringe any copyright in the Film;

9 |     5.    That Defendants be enjoined and ordered to deliver upon oath all originals,
10 | copies, facsimiles, or duplicates of any work shown by the evidence to infringe any
11 | copyright in the Film to be impounded during pendency of this action and then destroyed
12 | under the judgment rendered here;

13 |     6.    That, within 30 days from service of the Court's order prayed for here,
14 | Defendants be ordered to file with the Court and to serve on Plaintiff a written report
15 | under oath setting forth in detail the manner and form in which Defendants have complied
16 | with the Court's order;

17 |     7.    That, at Plaintiff's election if so made, judgment be entered for Plaintiff and
18 | against Defendants for Plaintiff's actual damages according to proof, and for any profits
19 | attributable to infringements of Plaintiff's copyright(s) in accordance with proof;

20 |     8.    That, at Plaintiff's election if so made, judgment be entered for Plaintiff and
21 | against Defendants for statutory damages based on Defendants' acts of infringement,
22 | under the COPYRIGHT ACT OF 1976, 17 U.S.C. §§ 101, et seq.;

23 |     9.    That Defendants have to account for all gains, profits, and advantages derived
24 | from their acts of infringement and other violations of law;

25 |     10.    That all gains, profits and advantages derived by Defendants from their acts
26 | of infringement and other violations of law be deemed to be held in constructive trust for
27 | Plaintiff's benefit;

28

11. That Plaintiff have judgment against Defendants for Plaintiff's costs and attorneys' fees; and

12. That the Court grant such other, further, and different relief as the Court finds proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues triable by jury.

Dated: November 14, 2024                   Respectfully submitted,

                                            /s/ *Anya Fuchs*
Anya Fuchs, Esq.
5874 Doyle Street
Emeryville, CA 94608
Telephone: 510-685-9717
Facsimile: 510-743-7147
anya@anyafuchslaw.com

Charles M. Stam (SBN: 24106462)
(*pro hac vice forthcoming*)
Thompson Stam PLLC
717 Texas Avenue, Suite 1200
Houston, Texas 77002
Telephone: (844) 846-7826
Facsimile: (713) 379-8076
charles@thompsonstam.com