NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
JOEL RICHERT (State Bar No. 327116)
  joelrichert@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendants
LIONS GATE ENTERTAINMENT, INC.,
SHOWTIME NETWORKS INC., BEER
CHRISTMAS, LTD., ASHLEY LYLE,
and BART NICKERSON

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDEN FILM PRODUCTION LLC, a Delaware corporation,<br><br>                    Plaintiff,<br><br>        vs.<br><br>LOCKJAW LLC, a California corporation; ASHLEY LYLE, an individual; BART NICKERSON, an individual; BEER CHRISTMAS, LTD., a California corporation; SHOWTIME NETWORKS INC., a California corporate; LIONS GATE ENTERTAINMENT, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No. 2:24-cv-09851-DDP-SK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:       March 3, 2025<br>Time:      10:00 a.m.<br>Crtrm:    9C |

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 3, 2025, at 10:00 a.m. or as soon as may be heard in Courtroom 9C of the United States District Court for the Central District of California, United States Courthouse, 350 West First Street, Los Angeles, California 90012, defendants Lions Gate Entertainment, Inc. ("Lions Gate"),  Showtime Networks Inc. ("Showtime"), Beer Christmas, Ltd. ("Beer Christmas"), Ashley Lyle, and Bart Nickerson (collectively, "Defendants") will and hereby do move this Court for an order dismissing with prejudice the Complaint filed by plaintiff Eden Film Production LLC ("Plaintiff").

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff's Complaint fails to state a claim.  Plaintiff's single cause of action for copyright infringement as to Defendants' television series *Yellowjackets* fails because there is no substantial similarity of protected expression between the series and Plaintiff's film *Eden*.  Any similarity between the two consist of *scenes a faire* and elements common to survival thrillers.

This motion is based on this notice of motion, the memorandum of points and authorities, the declaration of Cydney Swofford Freeman ("Freeman Decl."), the notice of lodging with exhibits, and all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and on any argument heard by this Court.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 16, 2025.


DATED: January 24, 2025                    DAVIS WRIGHT TREMAINE LLP
                                            NICOLAS A. JAMPOL
                                            CYDNEY SWOFFORD FREEMAN
                                            JOEL RICHERT

                                            By:  /s/ Nicolas A. Jampol
                                                    Nicolas A. Jampol

                                            Attorneys for Defendants

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................. 1

II.  FACTUAL BACKGROUND................................................................ 2

     A.   *Eden* ........................................................................................ 3

     B.   *Yellowjackets* ......................................................................... 4

          1.   Season 1 ......................................................................... 4

          2.   Season 2......................................................................... 7

     C.   The Complaint .......................................................................... 8

III. PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS....... 8

     A.   The Court May Dismiss Plaintiff's Claim as a Matter of Law
          Without Discovery Based on Lack of Substantial Similarity
          Between The Works. ................................................................. 8

     B.   Copyright Infringement Requires Substantial Similarity of
          Protectable Expression and Cannot Be Premised on Facts, Ideas,
          or Stock Elements. ................................................................... 9

     C.   The Works Are Dissimilar........................................................ 11

          1.   The Plot and Sequence of Events Are Not Similar.................. 12

               a.   The Alleged Similarities Are Unprotectable. ............... 12

               b.   The Plots Are Not Similar. ............................................. 15

          2.   The Theme and Mood in the Works Are Not Similar. ........... 18

          3.   The Characters in the Works Are Not Similar........................ 19

               a.   Jackie and Slim ................................................ 19

               b.   Shauna and Markese ........................................ 20

               c.   Natalie and Arnie ............................................. 20

               d.   Taissa/Lottie and Andreas ................................ 21

               e.   Assistant Coach Ben and Coach DaFoe ........ 22

               f.   Misty and Connie............................................... 22

               g.   Travis/Javi and Elena/Eva ............................... 23

          4.   The Setting and Pace of the Works Are Not Similar. ............ 23

          5.   The Dialogue of the Works Is Not Similar. ........................... 24

DEFENDANTS' MOTION TO DISMISS

IV.    CONCLUSION.............................................................................................. 25

DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ........................................................................ 2, 10

*Astor-White v. Strong*,
   817 F. Appx. 502 (9th Cir. 2020)........................................................................9

*Benay v. Warner Bros. Ent.*,
   607 F.3d 620 (9th Cir. 2010) ................................................................ 8, 10, 23

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985) ................................................................ 12, 15

*Campbell v. Walt Disney Co.*,
   718 F. Supp. 2d 1108 (N.D. Cal. 2010) ............................................................ 11

*Carlini v. Paramount Pictures Corp.*,
   2022 WL 614044 (9th Cir. Mar. 2, 2022)...........................................................9

*Cavalier v. Random House*,
   297 F.3d 815 (9th Cir. 2002) ...................................................................... 9, 10

*Christianson v. West Publ'g Co.*,
   149 F.2d 202 (9th Cir. 1945) ........................................................................ 2, 8

*Collier v. McKay*,
   2025 WL 101646 (C.D. Cal. Jan. 7, 2025) .........................................................9

*DC Comics v. Towle*,
   802 F.3d 1012 (9th Cir. 2015) .......................................................................... 19

*DuckHole v. NBC Universal Media*,
   2013 WL 5797279 (C.D. Cal. Sept. 6, 2013) ................................................ 9, 11

*DuMond v. Reilly*,
   2021 WL 4772986 (C.D. Cal. Jan. 8, 2021) ...................................................... 12

*Fillmore v. Blumhouse Prods.*,
   2017 WL 4708018 (C.D. Cal. July 7, 2017)................................................. 9, 11

iii

*Funky Films v. Time Warner Ent. Co.*,
        462 F.3d 1072 (9th Cir. 2006) ................................................................ 2, 12, 15

*Gallagher v. Lions Gate Ent.*,
        2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) ................................................ 24

*Gold Glove Prods., LLC v. Handfield*,
        648 F. App'x 679 (9th Cir. 2016) ...................................................................... 11

*Heusey v. Emmerich*,
        2015 WL 12765115 (C.D. Cal. Apr. 9, 2015) ........................................ 9, 10, 14

*Hoff v. Walt Disney Pictures*,
        2019 WL 6329368 (C.D. Cal. Aug. 19, 2019)......................................................3

*Idema v. Dreamworks, Inc.*,
        162 F. Supp. 2d 1129 (C.D. Cal. 2001) ............................................................ 11

*Kouf v. Walt Disney Pictures & Television*,
        16 F.3d 1042 (9th Cir. 1994) ............................................................................ 11

*Litchfield v. Spielberg*,
        736 F.2d 1352 (9th Cir. 1984) .......................................................................... 12

*Marcus* v. *ABC Signature Studios*,
        279 F. Supp. 3d 1056 (C.D. Cal. 2017) ..............................................................9

*Masterson v. Walt Disney Co.*,
        821 F. App'x 779 (9th Cir. 2020) .......................................................................9

*Olson v. Nat'l Broad. Co.*,
        855 F.2d 1446 (9th Cir. 1988) .......................................................................... 24

*Rentmeester v. Nike*,
        883 F.3d 1111 (9th Cir. 2018) ............................................................................8

*Ricketts v. CBS Corps.*,
        439 F. Supp. 3d 1199 (C.D. Cal. 2020) ............................................................ 10

*Shame on You Prods. v. Banks*,
        120 F. Supp. 3d 1123 (C.D. Cal. 2015) ..................................................... *passim*

*Silas v. Home Box Office*,
        201 F. Supp. 3d 1158 (C.D. Cal. 2016) ..................................................... *passim*

iv

*Three Boys Music Corp.* v. *Bolton*,
   212 F.3d 477 (9th Cir. 2000) ....................................................................8

*Tiscareno v. Netflix*, (C.D. Cal. Mar. 6, 2014)
   2017 WL 12558125 ........................................................................... 19

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ...................................................................3

*Zella v. E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) ....................................... 9, 12

**Statutes**

17 U.S.C. § 505 .......................................................................................... 25

**Rules**

Federal Rule of Evidence 201 ....................................................................9

Federal Rule of Civil Procedure 12(b)(6) ................................................2

**Other Authorities**

Carlos Benales, *70 Days Battling Starvation and Freezing in the Andes: A Chronicle of Man's Unwillingness to Die*, N.Y. TIMES (Jan. 1, 1973)................1

Amy Tikkanen, *Uruguayan Air Force flight 571*, ENCYCLOPEDIA BRITANNICA, https://www.britannica.com/event/Uruguayan-Air-Force-flight-571 (last visited Jan. 23, 2025) .............................................. 14

Janet Maslin, *Tasteful Cannibalism As Upbeat Viewing*, N.Y. TIMES (Jan. 15, 1993) ...................................................................................................1

*Stay Alive*, HISTORY (Oct. 12, 2021, updated Feb. 7, 2024), https://www.history.com/news/miracle-andes-disaster-survival...................... 14

DEFENDANTS' MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiff insists that Defendants' television series *Yellowjackets* infringes its copyright on the film *Eden*.  But its own allegations reveal that the two works have little in common beyond an unprotectable premise and a list of misleading, incidental similarities.  The idea of a sports team having to survive after a plane crash is neither original nor unique to *Eden*.  In October 1972, a plane carrying a Uruguayan men's rugby team crashed in the Peruvian Andes.  Many passengers died, and the remaining passengers notoriously resorted to cannibalism to survive. Desperate and with winter setting in, two rugby players hiked three days to find help.  Fourteen more survivors were rescued after two and a half months stranded in the snow-blasted mountains.[1]

In 2015, Plaintiff released *Eden*, about the U.S. Men's National Soccer Team crash landing in the Pacific near a remote desert island.  They survive for two weeks on their own, with limited food and fresh water.  The film is a straightforward survival thriller drawing on facts, themes, and concepts explored in countless earlier works ranging from *Lord of the Flies* (1954) to *Robinson Crusoe* (1719) to Homer's *Odyssey*—and, notably, the 1993 survival thriller *Alive*, which recounts the Uruguayan men's rugby team's months-long ordeal in the Andes.[2]

The Copyright Act does not protect ideas or elements that naturally flow from such ideas as those presented here (so-called *scenes a faire*).  The Ninth Circuit thus has long recognized that "similarities derived from the use of common ideas cannot

---

[1] *See, e.g.*, Carlos Benales, *70 Days Battling Starvation and Freezing in the Andes: A Chronicle of Man's Unwillingness to Die*, N.Y. TIMES (Jan. 1, 1973), https://www.nytimes.com/1973/01/01/archives/70-days-battling-starvalion-and-freezing-in-the-andes-a-chronicle.html.

[2] Janet Maslin, *Tasteful Cannibalism As Upbeat Viewing*, N.Y. TIMES (Jan. 15, 1993), https://www.nytimes.com/1993/01/15/movies/reviews-film-tasteful-cannibalism-as-upbeat-viewing.html.

be protected; otherwise, the first to come up with an idea will corner the market." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994). Nevertheless, Plaintiff brings this copyright lawsuit concerning the television series *Yellowjackets*, which is about a high school girls' soccer team stranded in the Canadian Rockies for 19 months after their plane mysteriously crashes. But Plaintiff's Complaint rests on perceived shared abstract ideas—*not* expression. Any similarities between the two works are no more than tropes and *scenes a faire* common to countless survival thrillers. Once unprotectable elements are filtered out, as they must be under well-established Ninth Circuit law, the actual protected expression in the works is dispositively different.

Since the only similarities between the two works are abstract ideas and stock elements that flow naturally from those ideas, Plaintiff cannot demonstrate the requisite "substantial similarity" of original protected expression between the *Eden* film and the *Yellowjackets* television series. Importantly, this Court need only look at the works at issue to dispose of Plaintiff's infringement claim on a motion to dismiss—no other evidence is required. *Christianson v. West Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945). Because the total lack of similarity in protected expression may be readily determined as a matter of law, Defendants respectfully request that this Court dismiss the Complaint in its entirety with prejudice and award Defendants their reasonable costs and attorneys' fees.

## II.    FACTUAL BACKGROUND

Because "[a] determination of substantial similarity requires a detailed examination of the works themselves," *Funky Films v. Time Warner Ent. Co.*, 462 F.3d 1072, 1075 (9th Cir. 2006) (citation omitted), summaries of *Eden* and *Yellowjackets* follow.[3]

_____

[3] "When deciding a motion to dismiss under Rule 12(b)(6), the Court may consider documents 'incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's

## A.    *Eden*

*Eden* is a somber, straightforward survival thriller.  After the U.S. Men's National Soccer Team wins the World Cup, their flight crashes into the Pacific Ocean.   Dkt. 1 ¶ 22; Ex. 1.  By morning, the team learns 22 out of 37 people died in the crash, including Coach DaFoe and his wife, on their anniversary.  Fifteen survived: team captain Slim, assistant captain Andreas, and 10 players; team trainer Connie; and Coach DaFoe's two adult daughters, Elena and Eva.  *Id.* at 0:11:23.

The film follows the survivors over two weeks stranded on a tropical island without enough food or water.  Andreas soon steps up as the de facto leader and forces the survivors to withhold rations from teammates too badly injured to survive.  *Id.* at 0:27:21.  When the fresh water is nearly gone, Eva suggests cutting the remaining life raft to create condensation traps.  *Id*. at 0:48:09.  Hoping to find help, two team members steal the raft and paddle out to sea, fighting off the other teammates who try to stop them.  *Id*. at 0:51:43.  Eva has sexual relations with star player Felix, and Elena has sexual relations with Andreas.  *Id*. at 0:36:42; 0:51:03.

The death toll continues to grow.  One player succumbs to his injuries.  Connie flings himself from a cliff in despair.  *Id.* at 0:42:09.  Andreas's younger brother Georgie steps on a landmine, which takes both his legs; Andreas later strangles him out of mercy.  *Id*. at 0:43:05; 0:46:38.  When the survivors discover bench warmer Kennefick has been stealing extra rations, Andreas takes out a knife

---

claim.'"  *Hoff v. Walt Disney Pictures*, 2019 WL 6329368, at \*1 (C.D. Cal. Aug. 19, 2019) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).  *See, e.g.*, *Silas v. Home Box Office*, 201 F. Supp. 3d 1158, 1168-69 (C.D. Cal. 2016) (granting motion to dismiss after examining episodes of television series that were referenced in, but not attached to, the complaint), *aff'd*, 713 F. App'x 626 (9th Cir. 2018).  Here, the Complaint refers to and relies on the contents of both *Eden* and *Yellowjackets*.  *See, e.g.*, Compl. ¶ 16.  Accordingly, the Defendants concurrently submit for the Court's review a copy of *Eden* and of the first and second seasons of *Yellowjackets*.  *See* Freeman Decl., Exs. 1-3.

to exact punishment, but Slim and Felix intervene; in the skirmish, Felix is stabbed and dies in the surf. *Id*. at 0:054:55-0:59:59.

After Felix's death, the nine remaining survivors split into two factions. Eva, Kennefick, and badly injured teammate Sevy stay with Slim. Everyone else follows Andreas to regroup on a nearby island but find no food or water. *Id.* at 1:01:25. Later, Andreas and his followers return to the main island to take the last of the rations from Slim by force, but two from his tribe are killed and Elena and another member defect. *Id.* at 1:20:49. At the film's climax, Andreas—now alone— wrestles Slim on the beach. *Id.* at 1:29:15. Suddenly, a rescue helicopter arrives, having earlier found the two teammates on the life raft. *Id*. at 1:31:05. Andreas flees into the jungle, and his remaining teammates tell the rescuers no one else survived. *Id.* at 1:32:09. The film ends with Andreas watching from the island as the helicopter takes his teammates back to civilization. *Id.* at 1:32:48.

## B. *Yellowjackets*

*Yellowjackets* is a survival drama about a New Jersey high-school girls' soccer team that survives a plane crash in the remote Canadian wilderness. But it is also a darkly comedic psychological thriller and gory mystery-horror. *Yellowjackets,* whose third season is scheduled to premiere in February 2025, switches between two parallel storylines throughout each episode: one set in the 1990s and the other in present day.

### 1.    Season 1

In 1996, the Yellowjackets, an elite girls' soccer team, are on their way to a tournament when their plane crashes in a remote Canadian forest. Ex. 2, Ep. 102 at 1:22. Much of the team survives, including team captain Jackie, her best friend Shauna (secretly pregnant with Jackie's boyfriend's baby), headstrong Taissa, angsty Natalie, overeager equipment manager Misty, and Assistant Coach Ben, the only surviving adult. Their head coach dies, but his two teenage sons Travis and Javi survive. As the girls scramble to pull their teammates from the wreckage and

salvage supplies, Misty, a relentlessly teased misfit, draws on her self-taught knowledge of first aid to triage the wounded. *Id.*, Ep. 102 at 07:38. Reveling in the respect from her teammates for her survival skills, Misty destroys the plane's emergency locator beacon. *Id.*, Ep. 102 at 50:35; 54:27.

As hope for an immediate rescue fades, the survivors trek deeper into the forest where they find an abandoned cabin and an old but functional two-propeller plane. *Id.*, Ep. 103 at 34:47. The cabin becomes a refuge for the survivors for the next two seasons, and contains a rifle and plenty of ammunition. Natalie and Travis are tasked with hunting game for the survivors, and later begin dating. *Id.*, Ep. 104 at 21:57; *id.*, Ep. 105 at 33:05.

As the series progresses, supernatural forces appear to emerge. Lottie, who runs out of schizophrenia medication, appears to become possessed during a séance and begins to receive ominous visions that come true. *Id.*, Ep. 105 at 41:39. For example, when Taissa leads an expedition to find a way out of the wilderness, Lottie warns her that they will encounter a "river of blood" and gives Van, Taissa's girlfriend, a talisman to protect her. *Id.*, Ep. 107 at 11:09. Taissa and her group later are forced to turn back after Van is mauled by a pack of wolves but survives. *Id.*, Ep. 107 at 55:35. And when another team member tells the group she's decided to fly the plane found in the forest to seek rescue, the plane mysteriously catches fire and explodes mere seconds after ascent. *Id.*, Ep. 108 at 54:30.

Season 1 ends with the girls holding a homecoming dance during which everyone except Jackie unknowingly ingests magic mushrooms. *Id.*, Ep. 109 at 24:47. Jackie and Travis sneak away to have sex, and in a frenzy, the hallucinating girls seek revenge on Travis for cheating on Natalie. *Id.*, Ep. 109 at 41:42. Lottie orders Shauna to slit Travis's throat as an offering to the wilderness. But Natalie intervenes at the last moment. *Id.*, Ep. 109 at 48:19. The next day a bear submits itself to the group, which Lottie easily kills for everyone to eat. Everyone gives thanks to the wilderness for the meal but Jackie reprimands the girls for their violent

5

behavior and confronts Shauna for having sex with her boyfriend Jeff, causing the two to fight. *Id.*, Ep. 110 at 32:28. Jackie is then forced to sleep outside, and freezes to death overnight. *Id.*, Ep. 110 at 54:46.

Throughout each episode, the wilderness survival plotline is intercut with the present-day. In 2021, Shauna is a discontent stay-at-home mom who, as penance for Jackie's death, abandoned her dream to attend Brown University and married Jeff. *Id.*, Ep. 101 at 08:07. Taissa, on the other hand, is running for New Jersey state senate after becoming a high-powered New York lawyer. *Id.*, Ep. 101 at 18:58. Natalie has spent her adult years in and out of rehab for drugs and alcohol. *Id.*, Ep. 101 at 13:26. Misty, just as deranged in the present as the past, is now a nurse who gleefully torments her wards. *Id.*, Ep. 101 at 50:44. Twenty-five years after the crash, the survivors still are hounded by tabloid speculation about their nineteen months in the wilderness. *See, e.g.*, *id.*, Ep. 101 at 20:10.

Adult Shauna, Taissa, Natalie, and Misty begin the series estranged, but are suddenly forced back together when all the survivors except Shauna receive a letter threatening to expose their secrets, causing their unresolved trauma to resurface in destructive ways. *See, e.g.*, *id.*, Ep. 102 at 17:15. Taissa's political ambitions give way to increasingly dangerous and violent bouts of sleepwalking, and she eventually drives her family away. While she is packing up, Taissa's wife notices blood and follows its path, finding the family's missing dog's severed head on a make-shift altar. Natalie, with Misty's help, discovers that Travis, with whom she's had an on-and-off-again relationship, has supposedly hanged himself, causing her to relapse. *Id.*, Ep. 103 at 54:04. Concerned that Jeff is cheating on her, Shauna begins an affair with an artist named Adam. *Id.*, Ep. 104 at 48:53. Near the end of Season 1, the women's lives begin to spiral when Shauna, mistakenly believing Adam is the blackmailer, stabs and kills him, and enlists her husband and fellow survivors to help dispose of the body. *Id.*, Ep. 109 at 02:48.

## 2. Season 2

In 1996, winter sets in and food becomes scarce.  Hunger drives the girls to madness: for example, pregnant Shauna talks to Jackie's corpse as if she is still alive; Lottie's mysticism bewitches many of the girls; and Taissa inhabits an alternate personality when she sleepwalks.  Shauna later gives birth to a stillborn baby.  Ex. 3, Ep. 206 at 53:00.  Eventually, the girls succumb to hunger and eat Jackie's corpse.  *Id.*, Ep. 202 at 56:34.  Facing starvation, Taissa suggests the survivors draw cards to determine who must next be sacrificed to feed the others.  *Id.*, Ep. 208 at 34:45.  Natalie draws the losing card, but before Shauna can kill her, Travis intervenes, allowing Natalie to escape.  *Id.*, Ep. 208 at 39:50.  Javi tries to help Natalie escape the girls, but falls into a frozen lake.  The girls let Javi drown and accept him as a substitute for Natalie's death.  *Id.*, Ep. 208 at 48:29.  Back at the cabin, the survivors dismember and cook Javi's body, offering his heart to Travis for a ceremonial bite.  *Id.*, Ep. 209 at 27:05.  Coach Ben watches with horror and flees.  That night, the cabin catches fire, leaving the survivors huddled in the cold with no shelter to brave the remainder of the winter.  *Id.*, Ep. 209 at 58:40.

In 2021, Natalie is held hostage in a "wellness commune" run by an unstable Lottie.  *Id.*, *Ep*. 201 at 48:48.  Later, Lottie reveals to Natalie that Travis's death was not a suicide but an accident—a form of trauma therapy gone wrong.  *Id.*, Ep. 202 at 33:25.  Although Taissa won her senate race, her life continues to unravel and she begins to hallucinate.  Later, she leaves everything behind and hitchhikes to Ohio where she reunites with her high-school girlfriend Van.  *Id.*, Ep. 204 at 58:01.  Meanwhile, Shauna and Jeff play a game of cat-and-mouse with the police investigating Adam's murder.  *Id.*, Ep. 209 at 24:46.  At the end of Season 2, all four of the protagonists find themselves together again at Lottie's commune and are told that the wilderness is demanding a sacrifice.  *Id.*, Ep. 209 at 35:10.  In a familiar ritual, Shauna pulls the losing card and is chased by the others.  In the ensuing chaos, Lottie is shot in the arm and Misty accidentally stabs Natalie with a

7

1  lethal phenobarbital injection. *Id.*, Ep. 209 at 50:35. As Lottie is carted away by

2  EMTs, she tells the remaining survivors that the wilderness is pleased with their

3  sacrifice and will reward them. *Id.*, Ep. 209 at 55:25.

4  **C.    The Complaint**

5        Plaintiff brings this action for copyright infringement alleging that *Eden* and

6  *Yellowjackets* are substantially similar. Dkt. 1. But the few similarities between the

7  works are no more than abstract ideas, unprotectable tropes, and *scenes a faire*

8  common to the survival genre. Because a review of the works themselves reveals

9  that there is almost no similarity of protectable expression, let alone substantial

10  similarity, Defendants move to dismiss Plaintiff's Complaint with prejudice.

11  **III.    PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS**

12        Dismissal is warranted "as a matter of law" where "[n]othing disclosed

13  during discovery could alter the fact that the allegedly infringing works are … not

14  substantially similar." *Rentmeester v. Nike*, 883 F.3d 1111, 1123 (9th Cir. 2018),

15  *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir.

16  2020); *see also Three Boys Music Corp.* v. *Bolton*, 212 F.3d 477, 481 (9th Cir.

17  2000).[4] *Eden* and *Yellowjackets* are not substantially similar as a matter of law.

18  **A.    The Court May Dismiss Plaintiff's Claim as a Matter of Law Without**

19         **Discovery Based on Lack of Substantial Similarity Between The Works.**

20        A court may compare the works at issue and dismiss the claim as a matter of

21  law if they are not substantially similar. *See Benay v. Warner Bros. Ent.*, 607 F.3d

22  620, 624 (9th Cir. 2010). As the Ninth Circuit has long recognized, "[w]hen the

23  copyrighted work and the alleged infringement are both before the court, capable of

24  examination and comparison, non-infringement can be determined on a motion to

25

26        [4] Plaintiffs in copyright actions must also establish that the defendants had

27  access to the allegedly infringing work. *Three Boys Music Corp.*, 212 F.3d at 481.

28  Though Defendants dispute that any of them ever had access to *Eden*, solely for purposes of this motion, Defendants do not challenge access.

dismiss." *Christianson*, 149 F.2d at 203. Over the past decade, the Ninth Circuit repeatedly has declined to subject defendants to burdensome discovery and affirmed dismissals of cases alleging infringement on substantial similarity grounds. *See, e.g.*, *Masterson v. Walt Disney Co.*, 821 F. App'x 779, 780, 780 n.1 (9th Cir. 2020) (listing ten affirmances); *see also Carlini v. Paramount Pictures Corp.*, 2022 WL 614044, at *1-2 (9th Cir. Mar. 2, 2022), *cert. denied*, 143 S. Ct. 103 (Mem); *Astor-White v. Strong*, 817 F. Appx. 502, 503-04 (9th Cir. 2020). *Accord Collier v. McKay*, 2025 WL 101646, at *4-7 (C.D. Cal. Jan. 7, 2025) (granting motion to dismiss with prejudice on substantial similarity grounds).

In considering a motion to dismiss, courts properly "consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201." *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007). Specifically, courts may consider historical facts "not subject to reasonable dispute," *Marcus* v. *ABC Signature Studios*, 279 F. Supp. 3d 1056, 1062-1063 (C.D. Cal. 2017), and "generic elements of creative works." *Zella*, 529 F. Supp. 2d at 1129.[5]

## B.    Copyright Infringement Requires Substantial Similarity of Protectable Expression and Cannot Be Premised on Facts, Ideas, or Stock Elements.

To assess substantial similarity on a motion to dismiss, the Ninth Circuit uses the "extrinsic test," which "focuses on 'articulable similarities'" between the works. *Zella*, 529 F. Supp. 2d at 1133. In comparing the works, "a court must filter out and disregard the non-protectible elements," *Cavalier v. Random House*, 297 F.3d 815,

---

[5] *See, e.g.*, *Heusey v. Emmerich*, 2015 WL 12765115, at *4 (C.D. Cal. Apr. 9, 2015) (taking judicial notice of "historical facts," including "historical characters, … historical events, theories commonly-held by historians, and the political atmosphere of the Elizabethan era"). *See also DuckHole* v. *NBC Universal Media*, 2013 WL 5797279, at *4 (C.D. Cal. Sept. 6, 2013) (taking judicial notice of generic elements of veterinary-themed sitcoms that "can be verified simply by watching television for any length of time"); *Fillmore v. Blumhouse Prods.*, 2017 WL 4708018, at *3 (C.D. Cal. July 7, 2017) (taking judicial notice of common tropes and narrative devices in horror, fantasy, and science-fiction)

822 (9th Cir. 2002), and "may place *no* reliance upon any similarity in expression resulting from [those] unprotectable elements." *Apple*, 35 F.3d at 1446 (internal quotation marks omitted).

Courts thus must filter out *scenes a faire*, or elements that flow naturally from a basic premise. *Cavalier*, 297 F.3d at 823. For example, in *Ricketts v. CBS Corps.*, 439 F. Supp. 3d 1199 (C.D. Cal. 2020), the court held that despite the fact that both works "involve[d] a talented African-American football player … who eventually plays football for a school in a 'more privileged' area[,] … [such] 'a well-trodden "rag to riches" story arc … is not protectable.'" *Id.* at 1212 (citation omitted). Further, the court found that plot points such as "the protagonist faces racism from the white football player," or "scenes where the protagonist goes back and forth between the 'hood' and the 'privileged' area," were likewise unprotectable because these "flow necessarily or naturally from [the] basic plot premise." *Id.* (quoting *Benay v. Warner Bros.*, 607 F.3d at 625).

Similarly, in *Benay*, the Ninth Circuit disregarded similarities that flowed from the "basic plot premise" of "an American war veteran [who] travels to Japan in the 1870s to train the Imperial Army in modern Western warfare" as *scenes a faire*. *Id.* at 625. Such unprotectable elements included "meetings with the Emperor and numerous battle scenes," and the fact "in both works the American protagonist is spiritually transformed by his experience in Japan." *Id. See also Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1151 (C.D. Cal. 2015), *aff'd*, 690 F. App'x 519 (9th Cir. 2017) (dismissing copyright claim after disregarding similarities flowing from the works' shared premise, such as "[g]etting drunk, spending a 'one-nighter' with someone you just met, waking up disoriented the next morning at the individual's house or apartment, and putting on the clothes worn the night before").

Under the extrinsic test, courts also filter out historical facts before analyzing substantial similarity. For example, in *Heusey*, a screenwriter brought a copyright

10

claim alleging that the 2011 film *Anonymous* infringed his screenplay, which similarly dealt with Shakespeare. 2015 WL 12765115, at *1-2. In determining that the two works were not substantially similar, the court "filter[ed] out" numerous historical facts as unprotectable elements from its analysis, including the theory that "the Earl of Oxford [] was the true author of Shakespeare's plays"; that "there was a letter … that revealed a conspiracy for the throne [of Queen Elizabeth I]"; and that "Shakespeare's son, Hamnet, died at age eleven." *Id.* at *4 n.1, *7.

Courts likewise filter out generic or common elements to films, television series, and specific genres. *See, e.g.*, *DuckHole*, 2013 WL 5797279, at *4, *8-9 (finding themes such as "sexual tension" and "constant insults" between characters were "common to sitcoms with [an] ensemble cast" and thus unprotectable); *Fillmore*, 2017 WL 4708018, at *3 (finding that "[d]ream sequences" and "[b]ringing the dead back to life" are unprotectable); *Shame on You Prods.*, 120 F. Supp. 3d at 1159 (holding "outdoor chase on wheels" was too generic of a concept to be protectable).

## C.    The Works Are Dissimilar

After unprotectable elements are filtered out, courts compare the objective "expressive elements" in the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events of the two works. *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994); *see also Gold Glove Prods., LLC v. Handfield*, 648 F. App'x 679, 680-81 (9th Cir. 2016) (extrinsic test not met where "setting, mood, and pace of [the works] are obviously different, as is the dialogue"). To assess similarity, the law requires a review of the actual works, not a plaintiff's characterization of them. *See Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1113 (N.D. Cal. 2010) (rejecting allegations of similarity that were "contradicted by the two stories themselves"). Courts afford little weight to a plaintiff's list of "random similarities scattered throughout the works," *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1180 (C.D. Cal. 2001), since such "lists of similarities are

inherently subjective and unreliable." *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984). *See also Zella*, 529 F. Supp. 2d at 1138 (explaining "randomly selected similarities of generic elements" are insufficient to demonstrate substantial similarity).

Plaintiff's primary alleged "similarity" between the two works is an unprotectable concept, and apart from *scenes a faire* common to the survival genre, how this concept is expressed varies drastically in each work. *Eden* and *Yellowjackets* are not substantially similar.

### 1.    The Plot and Sequence of Events Are Not Similar.

For the purposes of the extrinsic test, "plot is defined as the 'sequence of events by which the author expresses his theme or idea' that is sufficiently concrete to warrant a finding of substantial similarity if it is common in both works." *Zella*, 529 F. Supp. 2d at 1135 (citation omitted). As "general plot ideas are not protected by copyright law," the extrinsic test compares "the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985). The Ninth Circuit frequently rejects substantial similarity claims where works' plotlines have similarities but are "develop[ed] quite differently." *See Funky Films*, 462 F.3d at 1077–1078; *see also DuMond v. Reilly*, 2021 WL 4772986 at *14-15 (C.D. Cal. Jan. 8, 2021) (listing cases).

### a.    The Alleged Similarities Are Unprotectable.

Nearly all of the purported similarities between the plots and sequences of events of the two works are either unprotectable concepts or *scenes a faire*.

*First*, the idea of portraying the struggle to survive after a plane crash in a remote and desolate place is not in itself protectable. Numerous films and television series have explored this same premise. The television series *Lost* (2004-2011) follows the survivors of a plane crash on a mysterious tropical island. As does the more recent series *The Wilds* (2020-2022), which like *Yellowjackets*

involves a group of teenage girls.  Additionally, films such as *The Mountain Between Us* (2017); *The Grey* (2011); *Flight of the Phoenix* (1965) and its 2004 remake of the same name; *Cast Away* (2000); *The Edge* (1997); *Alive* (1993); and *A Cry in the Wild* (1990), based on the novel *Hatchet* (1987) by Gary Paulsen, all explore this concept.  Many alleged similarities in the Complaint naturally flow from this unprotectable premise.

For example, the survivors in *Alive*, *The Mountain Between Us*, *The Grey*, *Cast Away*, *The Edge*, and *Flight of the Phoenix* all must contend with "harsh weather," which forces them "to make difficult choices and further pushes them to their limits."  Compl. ¶¶ 32(c), 33(c).  In *Alive*, *The Mountain Between Us*, *The Edge*, and *Flight of the Phoenix*, soon after the crash, "hope of rescue diminishes" among the survivors, "leading to feelings of despair."  Compl. ¶ 32(d).  And confronted with "harsh conditions and the struggle for survival," the survivors in *Alive* and *Lost* are pushed to their limits, "causing them to make dubious moral choices," including resorting to cannibalism in *Alive*, and murder and suicide in *Lost*.  *See* Compl. ¶¶ 32(c) and (f), 33(k), (l), and (m).

Many of these works also naturally include characters with medical backgrounds.  *See* Compl. ¶¶ 25-26, 33(c).  In *Alive*, several of the rugby players who survive the crash are medical students who provide care for the survivors throughout the ordeal.  Similarly, in both *Lost* and *The Mountain Between Us*, one of the protagonists is a doctor who attends to the other survivors' injuries following the crash.  Likewise, the premise of individuals of the opposite sex becoming "love interests" for one another after being stranded together after a plane crash is *scenes a faire* to the survival thriller.  Compl. ¶¶ 25-26.  For example, in *Lost* and *The Mountain Between Us*, protagonists of the opposite sex begin romances despite (or because of) the dire circumstances they find themselves in.

Finally, all these works conclude with the survivors being "rescued by an outside force."  Compl. ¶¶ 32(h), 33(n).  And in many, including *Alive, Lost, The*

*Wilds, The Mountain Between Us*, and *Cast Away*, the film or series explores how "the trauma of their ordeal continues to haunt" the survivors.  *Id.* ¶ 32(h).

*Second*, even the specific premise of a sports team becoming stranded in the wilderness following a plane crash is not only an unprotectable concept, but something that actually happened.[6]  Indeed, *Alive* recounts the true story of the Uruguayan rugby team whose plane crashed in the Peruvian Andes.  Like in *Eden* and *Yellowjackets*, the survivors of Uruguayan Air Force Flight 571 were forced to "fight for their lives against the harsh elements, starvation through dwindling resources, and the psychological toll of isolation in the form of growing darkness within themselves."  Compl. ¶¶ 22, 32(a)-(b), 33(a)-(b) and (e).

*Third*, "the psychological toll of isolation, desperation, and the breakdown of societal norms," are all unprotectable concepts, and ones common to the survival genre.  *See* Compl. ¶¶ 22, 33(e).  *Lord of the Flies* (1963, 1990) is the paradigmatic example of a survival story in which a group of survivors form rival "factions," resulting in "violent confrontations" and "[m]oral decay."  Compl. ¶¶ 32(e)-(g), 33(k).  Numerous alleged similarities likewise flow from this unprotectable concept.  Such unprotectable *scenes a faire* include, for example, that survivors would devolve into tribalism in the aftermath of a traumatic event, or that rival tribes would be led by "charismatic, demagogic leader[s]" who, in the struggle for

---

[6] *See* Amy Tikkanen, *Uruguayan Air Force flight 571*, ENCYCLOPEDIA BRITANNICA, https://www.britannica.com/event/Uruguayan-Air-Force-flight-571 (last visited Jan. 23, 2025); Kieran Mulvaney, *Miracle of the Andes: How Survivors of the Flight Disaster Struggled to Stay Alive*, HISTORY (Oct. 12, 2021, updated Feb. 7, 2024), https://www.history.com/news/miracle-andes-disaster-survival.  *See also* n.1, *supra*.  The Court may take judicial notice of this historical fact.  *See, e.g.*, *Heusey*, 2015 WL 12765115, at *4, *4 n.1 (taking judicial notice of historical facts present in the alleged works at issue, including "the occupations and lifetimes of historical characters, family trees, historical events, theories commonly-held by historians, and the political atmosphere of the Elizabethan era," which primarily were taken from a treatise and encyclopedia).

14

survival or power, push their tribes to behave in ways that are "in derogation of
established societal norms."  Compl. ¶¶ 32(e)-(f), 33(f).  This device has been used
to heighten the stakes of survival stories since at least *Lord of the Flies*, where rivals
Ralph and Jack vie for the obedience of their marooned schoolmates.[7]  Such works
also would naturally involve characters who at times "blur[] the line between good
and evil."  Compl. ¶ 22.  When such elements appear within the survival genre,
those elements are not surprising or original, much less protectable.

### b.    The Plots Are Not Similar.

After removing the unprotectable elements, the works, which tell entirely
different stories, lack any similarity in their "actual concrete" plot elements.  *Berkic*,
761 F.2d at 1293; *Funky Films*, 462 F.3d at 1077-1078.  *Eden* follows the U.S.
Men's National Soccer Team after their plane catches fire and crashes near a
remote, desert island in the Pacific Ocean.  Compl. ¶ 22; *see also* Section II.A.  In
contrast, *Yellowjackets* follows a New Jersey high-school girls' soccer team whose
plane mysteriously crashes in the Canadian wilderness.  Compl. ¶ 22.; *see also*
Section II.B.  Beyond the tropes and *scenes a faire* described above, none of which
are protectable, many of the remaining alleged similarities in the Complaint are
blatant mischaracterizations of one or both of the works.

•      Plaintiff asserts that "[c]annabalism arises in both stories as a last
resort to survive."  Compl. ¶ 33(m).  This is true for *Yellowjackets* (and the
survivors of Uruguayan Flight 571), but not for *Eden*.  In *Yellowjackets*, the fact
that the girls ultimately resort to cannibalism to survive their nineteen-month ordeal
in the wilderness is the dark and disturbing secret initially hinted at in Season 1, and
then depicted in gruesome detail in Season 2.  *See, e.g.*, Ex. 3, Ep. 202 at 56:34; *id.*,

---

[7] This plot element likewise is widely exploited in the subgenre of seafaring
mutiny stories.  *See, e.g.*, *The Caine Mutiny* (1952); *Mutiny on the Bounty* (1932);
*Treasure Island* (1883); *Benito Cereno* (1855).

DEFENDANTS' MOTION TO DISMISS

Ep. 209 at 27:05.  In *Eden*, none of the survivors engage in cannibalism; in fact, cannibalism never occurs and is never mentioned or suggested.

- Plaintiff alleges that in both works "[a]n assistant coach" and "a trainer/nurse" survive the plane crash.  Compl. ¶ 33(c).  But while Coach Ben, the assistant coach in *Yellowjackets*, survives the plane crash, there is no comparable character in *Eden* because the head coach, and presumably the assistant coach, are not among the survivors.  And putting aside the fact that a "trainer" and a "nurse" are vastly different character archetypes, in *Eden*, Connie, the adult male team trainer, expressly disclaims his ability to care for the injured.  Ex. 1 at 0:11:50.  In contrast, in *Yellowjackets*, neither a team trainer nor a nurse are among the survivors; Misty is a high-school student equipment manager who uses her self-taught first aid skills to triage the wounded immediately following the plane crash.  Ex. 2, Ep. 102 at 07:38.

- Plaintiff alleges that in each work "[a] character commits suicide."  Compl. ¶ 33(l).  This is not only inaccurate, but the unprotectable concept of suicide is treated differently between the works.  *See* Section III.C.1.a.  In *Eden*, Connie kills himself while still stranded on the island by jumping off a cliff.  Ex. 1 at 0:42:09.  In *Yellowjackets*, though Natalie and Misty in the present-day storyline initially believe Travis has hanged himself, it is later revealed that his death was not a suicide but an accident.  Ex. 3, Ep. 202 at 33:25.

- Plaintiff's contention that the "[c]haracters discover a cache of goods," mischaracterizes both works.  Compl. ¶ 33(h).  In *Yellowjackets*, although the survivors find a pantry full of canned goods in the abandoned cabin, they immediately realize that all the food has gone bad and is inedible.  Ex. 2, Ep. 102 at 35:45.  In *Eden*, the survivors do not "discover a cache of goods," but rather find out that Kennefick has been secretly hoarding an outsized share of the rations meant for the entire group for himself.  Ex. 1 at 0:54:55.

16

- Although in both works, the survivors find "wreckage of previous expeditions" (Compl. ¶ 33(g)), in *Eden* two of the team members stumble on a military dugout with a lone skeleton dressed in Japanese army garb, while in *Yellowjackets*, the survivors find an abandoned cabin and an old two-propeller plane once owned by a solitary survivalist. *See* Ex. 1 at 0:42:59; Ex. 2, Ep. 103 at 34:47.

- The Complaint alleges that in both works "[a]n ill-advised escape attempt fails." Compl. ¶ 33(j). Again, this allegation is undermined by the actual works. In *Yellowjackets*, the survivors make two attempts at escape. First, Taissa and a group of the girls agree to undertake an expedition to find a way out of the wilderness, only to be forced to turn back after Van is mauled by a pack of wolves. Ex. 2, Ep. 107 at 55:35. Later in the season, another teammate flies the abandoned plane found in the forest out of the wilderness in search of rescue. But within seconds after takeoff, the plane catches fire and explodes. *Id.*, Ep. 108 at 54:30. Conversely, in *Eden*, the remaining survivors are ultimately rescued only because the two team members who stole the remaining life raft were themselves found while floating out at sea. Ex. 1 at 1:31:53. In *Yellowjackets*, the attempted escapes via foot and plane (made with the other survivors' knowledge) are violently thwarted, while in *Eden*, the covert escape attempt via raft was in fact a success.

- Plaintiff contends that both works depict "[c]ult-like behavior." Compl. ¶ 33(f). In Season 2 of the series, Lottie is revealed to have survived the wilderness and started an actual cult in the present day. Ex. 3, Ep. 201 at 08:02. Nothing similar occurs in *Eden*. Although after Felix's death, the remaining survivors split into two opposing factions, Plaintiff's attempt to characterize this tribal fracturing among the survivors as "cult-like behavior" is nothing more than *scenes a faire* (*see* Section III.C.1.a) and, moreover, does not accurately identify a similarity between the works.

- Unlike *Yellowjackets*, which devotes an entire storyline to exploring how the adult protagonists grapple with "the trauma of their ordeal," and how their

time in the wilderness "continues to haunt them," *Eden* simply ends with the survivors being rescued.  Compl. ¶ 32(h).

The plots of *Eden* and *Yellowjackets* are not substantially similar.

**2.    The Theme and Mood in the Works Are Not Similar.**

"A work's theme is its overarching message," and "there is no protection for stock themes or themes that flow necessarily from a basic premise."  *Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1180 (C.D. Cal. 2016), *aff'd*, 713 F. App'x 626 (9th Cir. 2018).  Likewise, "[a] general mood that flows naturally from unprotectable basic plot premises is not entitled to protection."  *Id.* (internal quotations omitted)   Here, Plaintiff's alleged themes and moods are incredibly abstract and encompass innumerable films and televisions series.  *See* Compl. ¶¶ 21, 28.  Such themes and moods also naturally flow from the basic premise of a group of survivors stranded following a plane crash.  *See* Section III.C.1.a.

In fact, beyond survival, the primary themes in *Eden* and *Yellowjackets* are drastically different.  *Eden* is a straight-forward thriller.  Its mood is somber and brooding, and its dialogue has little if any levity.  The film reflects a single-minded exploration of how easily the ideals of cooperation and trust fracture to give way to animal instincts.  Such a portrait of humans' brutish survival instinct is merely a trope of the survival genre.  *See* Section III.C.1.a.

*Yellowjackets*, in contrast, deals with a number of diverse themes that are found in not only survival stories but also more varied genres.  It is both a darkly comedic coming-of-age and a midlife-crisis drama told through blended genre elements of horror and mystery.  In the wilderness, the series explores the strength and fragility of adolescent female friendship.  In the present day, *Yellowjackets* explores how the friendships the four protagonists built in the wilderness have evolved.  As they approach middle age, Shauna, Taissa, Natalie, and Misty, who begin the series estranged, are forced together again after 25 years to confront the trauma of their 19 months in the wilderness, which each has attempted to bury in

different ways.  An adult Natalie aptly sums up the thrust of the series when she says to Taissa and Shauna: "I know that you think I'm crazy.  But you know what I see, you guys are just as fucked up as I am.  You're just better at lying to yourselves.  You're not healthy.  You're not stable.  You're living on the brink just like me."  Ex. 2, Ep. 107 at 39:51.  In short, the series explores how these women got to the brink, and whether they can pull themselves back.  None of these complex themes are present in *Eden*. The two works are not substantially similar as to this extrinsic element.

### 3.    The Characters in the Works Are Not Similar.

To be deemed protectable in the Ninth Circuit, characters must meet a three-part test, including a requirement that they be "especially distinctive."  *DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015), *cert. denied*, 577 U.S. 1184 (2016). "[C]ourts require a very high degree of similarity between characters"; even some shared traits between characters are not enough to prove substantial similarity when the characters "have noticeable differences."  *Silas*, 201 F. Supp. 3d at 1177.

Beyond superficial descriptions, Plaintiff makes no real attempt to claim that the adolescent, primarily female characters in *Yellowjackets* bear any resemblance to the adult male characters in *Eden*, because they do not.  *See Tiscareno v. Netflix*, 2017 WL 12558125, at *9 (C.D. Cal. Mar. 6, 2014) (finding no substantial similarity between characters where there is "a significant age gap, there are different maturity levels ... different outlooks on life" and "different perspectives and moods").

### a.    Jackie and Slim

Plaintiff describes both Jackie and Slim as "a talented soccer player and the captain of the team."  Compl. ¶¶ 25-26.  Plaintiff's description is superficial to the point of failing to identify any meaningful similarity.  Jackie in *Yellowjackets* is the quintessential well-to-do, bubbly, popular girl—she's white, beautiful, and bratty, and dates the prom king.  Although prior to the plane crash she was the team

captain, in the wilderness, she struggles to contribute, loses much of her authority among her schoolmates, and chafes at the realization that she is no longer top dog.

Unlike Jackie, Slim is a black, adult male. Slim is reserved and reluctant to take on any leadership role, but nevertheless looks after his fellow survivors. Despite the fact that Slim is one of the protagonists in *Eden*, the film reveals nothing about his backstory. And whereas Jackie freezes to death and is ultimately eaten by her teammates, Slim survives and is rescued. Jackie and Slim's "noticeable differences" militate against a finding of substantial similarity. *Silas*, 201 F. Supp. 3d at 1177.

### b.    Shauna and Markese

Plaintiff alleges that Shauna and Markese are both "skilled player[s] who [are] often overshadowed by others." Compl. ¶¶ 25-26. Beyond this generic and unprotectable trait, there is no similarity between the two characters. Shauna is an intellectual who, prior to the crash, lived in her best friend Jackie's shadow. But Shauna also betrayed Jackie by sleeping with her boyfriend Jeff. Ex. 2, Ep. 101 at 38:59. In the present-day, Shauna is a discontent stay-at-home mom, who, as penance for Jackie's death, gave up her dream of attending Brown University to remain in New Jersey and marry Jeff.

Markese, on the other hand, is merely a pugnacious background character; in fact, he barely has any dialogue and no backstory. In contrast to Shauna, whose complex and contradictory traits are revealed throughout the series, *Eden* provides Markese with virtually no character traits, and he is ultimately killed by a fellow teammate. *See Shame on You Prods.*, 120 F. Supp. 3d at 1164 (only "distinctive characters are protectible").

### c.    Natalie and Arnie

Nor are Natalie and Arnie similar. Plaintiff describes both as "troubled but talented soccer player[s] who act[] impulsively." Compl. ¶¶ 25-26. Plaintiff's superficial description of the two characters is undermined by the works

20

themselves.  In 1996, Natalie is an angsty but wounded outsider who comes from a trailer park with an emotionally abusive mother and a physically abusive father.  In the present day, Natalie is revealed to have spent her adult years in and out of rehab for drugs and alcohol.  *See* Ex. 2, Ep. 101 at 13:26.  Eventually, Natalie, still traumatized from her time in the wilderness and reeling from Travis's apparent suicide, joins Lottie's cult.  *See generally* Ex. 3, Ep. 202-Ep. 209.

Arnie, like Markese, is given no backstory and is nothing more than a supporting character with hardly any dialogue.  He is eventually killed by Slim before the rescue helicopters arrive.  Natalie and Arnie are not similar.  *See Shame on You Prods.*, 120 F. Supp. 3d at 1164 (only "distinctive characters are protectible").

### d.    Taissa/Lottie and Andreas

Plaintiff compares both Taissa and Lottie in *Yellowjackets* to Andreas in *Eden*.  Compl. ¶¶ 25-26.  As an initial matter, Defendants are not aware of any cases in which a court found substantial similarity based on composite traits drawn from multiple characters.  Regardless, Plaintiff's comparison is undermined by the characters themselves.  Taissa, the team's star player, is ambitious and competitive.  For example, in the first episode of *Yellowjackets*, Taissa, concerned that a less-than-stellar freshman player on the team could cost them the championship, slide tackles the player during practice, breaking her leg and exposing bone.  Ex. 2, Ep. 101 at 23:39.  As an adult, Taissa makes a run for senate.  *Id.*, Ep. 101 at 18:58.  But her drive for success eventually drives away her wife and son.

Unlike Taissa, Lottie, who in a flashback is shown to have psychic abilities, is at first reserved and unassuming.  But during a séance in the cabin, Lottie becomes possessed and repeats a sinister message to the girls.  *Id.*, Ep. 105 at 41:39.  After a number of her ominous visions come to pass, Lottie becomes the group's spiritual chief, often leading the girls in performing sacrificial offerings.  *See, e.g., id.*, Ep. 110 at 57:01.  As an adult, she founds her own cult. Ex. 3, Ep. 201 at 08:02.

21

Andreas, on the other hand, is the assistant team captain. After the crash, Andreas take charge over the survivors as the group's de facto leader. Ex. 1 at 0:22:52. Although nothing is revealed about Andreas's backstory, his underlying motivation appears to be survival. He convinces the survivors to withhold rations from the injured, and kills his own wounded brother. *Id*. at 0:46:38. He later becomes increasingly erratic and violent, and eventually leads his faction of the survivors to attack Slim and the others in order to take the remaining rations for themselves. *Id.* at 1:20:49. Andreas's animalistic bent ultimately leads to his demise, when his fellow survivors are rescued and leave him behind on the island. *Id.* at 1:32:48. As with the other main characters, Taissa, Lottie, and Andreas's many "noticeable differences" cut against a finding of substantial similarity. *Silas*, 201 F. Supp. 3d at 1177.

### e.    Assistant Coach Ben and Coach DaFoe

Apart from the fact that Coach Ben and Coach DaFoe both coach soccer, there is almost no similarity between the two characters. Compl. ¶¶ 25-26. In *Yellowjackets*, Coach Ben, who is a closeted gay man in his early-thirties, is the adult authority figure for the teenage survivors in the wilderness and is still alive at the end of Season 2. In *Eden*, Coach Defoe, who is middle-aged and has a wife and two adult daughters, dies within the first ten minutes of the film. Coach DaFoe does not appear again in the film, and nothing more is learned about him. *See Shame on You Prods.*, 120 F. Supp. 3d at 1164 (only "distinctive characters are protectible"). The two characters are not substantially similar.

### f.    Misty and Connie

Plaintiff alleges that Misty and Connie are similar because both are "a nurse-like character." Compl. ¶¶ 25-26. But this alleged shared trait on its own is too generic to merit protection. *See Shame on You Prods.*, 120 F. Supp. 3d at 1165. Further, the concept of a character with a medical background is *scenes a faire* for the survival genre, which is likewise unprotectable. *See* Section III.C.1.a.; *see, e.g.*,

DEFENDANTS' MOTION TO DISMISS

*Benay*, 607 F.3d at 627-628.  Beyond that, Connie and Misty are nothing alike. Connie is an adult, Asian male physical trainer who kills himself rather than struggle for survival.  Misty is a white teenage girl so eager to be stranded in the wilderness with her teammates that she destroys the plane's emergency locator beacon.  Their vast differences preclude a finding of substantial similarity.  *See Silas*, 201 F. Supp. 3d at 1177.

g.    **Travis/Javi and Elena/Eva**

Beyond the fact that both Travis and Javi, and Elena and Eva are the surviving children of each team's head coach, these characters are not similar. Compl. ¶¶ 25-26.  To start, these characters' presence is *scenes a faire* to survival thrillers; many works introduce characters of the opposite gender in order to accommodate romantic side plots.  *See* Section III.C.1.a.  And it flows naturally that these characters would be the coach's children, to explain how characters of the opposite gender from the team members were on the flight in the first place.

Beyond that, the characters are drastically different.  Travis and Javi are adolescent boys.  In the wilderness, Travis is an angsty smart aleck who begins an awkward teenage romance with Natalie.  As an adult, Travis becomes an addict and accidentally hangs himself in a therapy session gone wrong.  Ex. 3, Ep. 202 at 33:25.  Javi is his quiet, younger brother who remains on the sidelines of the group and later drowns while trying to save Natalie from being hunted.  *Id.*, Ep. 208 at 48:29.  In contrast, Elena and Eva are adult women whom the audience learns almost nothing about, and whose primary purpose in the film is to act as romantic and sexual foils for members of the soccer team.  These readily apparent differences undermine Plaintiff's allegations of substantial similarity.  *See Silas*, 201 F. Supp. 3d at 1177.

4.    **The Setting and Pace of the Works Are Not Similar.**

Neither the setting nor the pace of the works is substantially similar.  *Eden* is a linear story that takes places over 14 days, and apart from its first ten minutes, is

23

set exclusively on a tropical desert island somewhere in the Pacific Ocean.  In contrast, *Yellowjackets* unfolds over the course of months and years, constantly shifting between two parallel timelines: one set in the Canadian wilderness in the 1990s, and the other set primarily in contemporary suburban New Jersey.  As explained above, Plaintiff's allegations that both the film and the series "take[] place in a deserted and desolate place beyond the reach of human civilization," are merely *scenes a faire* of the survival genre.  Compl. ¶ 23.  Likewise, Plaintiff's description of the pace of the two works, which purportedly "balance slower, character-driven moments with more intense, plot-driven sequences," identifies nothing more than generic elements common to any dramatic film or television series with an ensemble cast.  *Eden* and *Yellowjackets*, which do not share a single setting in common and whose stories are told using vastly different narrative devices, are not substantially similar with regard to setting or pace.

### 5.    The Dialogue of the Works Is Not Similar.

"[F]or a plaintiff to demonstrate substantial similarity of dialogue, it must show 'extended similarity of dialogue.'"  *Silas*, 201 F. Supp. 3d at 1181 (quoting *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988)).  *See Gallagher v. Lions Gate Ent.*, 2015 WL 12481504, at *10 (C.D. Cal. Sept. 11, 2015) (three instances of similar dialogue could not demonstrate "extended similarity").

As an initial matter, Plaintiff concedes that "the specific words … differ across the works."  Compl. ¶ 25.  Nevertheless, Plaintiff contends that "the underlying themes and emotions in the dialogue are strikingly similar."  Compl. ¶ 25.  Plaintiff's allegations of thematic similarity in the dialogue of the two works are largely duplicative of its allegations regarding plot, sequence of events, theme, and mood.  *See* Compl. ¶ 25(a)-(e).  But Plaintiff does not allege even a *single instance* of actual dialogue shared between the works.  Merely alleging that thematically similar conversations take place in both works is not enough to find the "extended similarity of dialogue" necessary for substantial similarity.  *See Silas*,

DEFENDANTS' MOTION TO DISMISS

201 F. Supp. 3d at 1181 (citation omitted).  Because the Complaint fails to identify any overlapping dialogue, Plaintiff has not pled that the works are substantially similar as to this extrinsic element.

## IV.    CONCLUSION

*Eden* and *Yellowjackets* are not substantially similar as a matter of law.  After filtering out unprotectable elements, a review of the two works readily demonstrates that the plot, sequence of events, themes, characters, setting, mood, pace, and dialogue are vastly different.  Plaintiff's abstract allegations of similarity ubiquitous to numerous films and television series are insufficient to survive dismissal.

For all these reasons, this Court should dismiss Plaintiff's Complaint with prejudice, and award Defendants their costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505, for which Defendants will move by subsequent motion.


DATED: January 24, 2025            DAVIS WRIGHT TREMAINE LLP
                                   NICOLAS A. JAMPOL
                                   CYDNEY SWOFFORD FREEMAN
                                   JOEL RICHERT

                                   By:    /s/ Nicolas A. Jampol
                                              Nicolas A. Jampol

                                   Attorneys for Defendants
                                   LIONS GATE ENTERTAINMENT,
                                   INC., SHOWTIME NETWORKS INC.,
                                   BEER CHRISTMAS, LTD., ASHLEY
                                   LYLE, and BART NICKERSON

25