1   Anya Fuchs, Esq.
    Anya Fuchs, PC
2   440 E. Huntington Drive, Suite 300
    Arcadia, CA 91006
3   Telephone: 510-685-9717
    Facsimile: 510-743-7147
4   anya@anyafuchslaw.com

5   Charles M. Stam (*pro hac vice* filed)
    Thompson Stam PLLC
6   717 Texas Avenue, Suite 1200
    Houston, Texas 77002
7   Telephone: (844) 846-7826
    Facsimile: (713) 379-8076
8   charles@thompsonstam.com

9   Attorneys for Plaintiff

10

# UNITED STATES DISTRICT COURT

11

## CENTRAL DISTRICT OF CALIFORNIA

12

### WESTERN DIVISION

13

| | |
|---|---|
| EDEN FILM PRODUCTION LLC, a Delaware corporation, | Case Number: 2:24-cv-09851-DDP-SK |
| Plaintiff, | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| vs. | |
| LOCKJAW LLC, a California corporation; ASHLEY LYLE, an individual; BART NICKERSON, an individual; BEER CHRISTMAS, LTD., a California corporation; SHOWTIME NETWORKS INC., a California corporation; LIONS GATE ENTERTAINMENT, INC., a Delaware corporation; and DOES 1 – 10, inclusive, | Date:    March 24, 2025<br>Time:    10:00 a.m.<br>Courtroom: 9C |
| Defendants. | |

# **TABLE OF CONTENTS**

I.   Introduction..................................................................................................1

II.  Legal Standard ...........................................................................................5

III. Arguments and Authority ..........................................................................5

    A.   *Eden* and *Yellowjackets*'s "survival" timeline are substantially similar...............................................................................................6

    B.   Defendants do not consider all elements as a whole, ignoring the selection and arrangement of such original elements in both works. ................................................................................................7

    C.   Defendants' self-serving description of the works omits similarities.10

        1.   *Eden*'s plot is substantially similar to that of *Yellowjackets*. ...11

        2.   The characters in both works are similar. ...............................15

        3.   The mood, theme, and character are similar.............................16

        4.   The setting and pace of the works are substantially similar.....16

        5.   The similarities in dialogue between the works can be expanded upon repleading.......................................................................17

    D.   Defendants cite caselaw inapplicable to the facts. ..............................19

    E.   This case should proceed to the discovery phase................................20

    F.   In any event, Plaintiff should be granted leave to amend. ..................20

IV.  Conclusion & Prayer..................................................................................21

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ............................................................................. 5

4

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ............................................................................. 5

5

*Berkic v. Crichton*
   761 F.2d 1289 (9th Cir. 1985) ........................................................... 19

6

7

*Hall v. Swift*
   No. CV 17-6882, 2021 WL 6104160, at *4 (C.D. Cal. Dec. 9, 2021)............... 11

8

*Harris v. Amgen, Inc.*
   573 F.3d 728 (9th Cir. 2009) ............................................................. 21

9

10

*In re Fresh & Process Potatoes Antitrust Litig.*
   834 F. Supp. 2d 1141 (D. Idaho 2011) ............................................... 21

11

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*
   676 F.3d 841 (9th Cir. 2012) .......................................................... 5, 6

12

13

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*
   922 F.3d 946 (9th Cir. 2019) .............................................................. 7

14

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
   519 F.3d 1025 (9th Cir. 2008) ............................................................ 5

15

16

*Mendiondo v. Centinela Hosp. Med. Ctr.*
   521 F.3d 1097 (9th Cir. 2008) ............................................................ 5

17

*Minx Int'l, Inc. v. Around the World Apparel, Inc.*
   2016 WL 7496745, at *2 (C.D. Cal. July 29, 2016) ............................ 6

18

19

*Moonbug Entm't Ltd. v. BabyBus (Fujian) Network Tech. Co., Ltd.*
   No. 21-CV-06536, 2024 WL 2193323, at *9 (N.D. Cal. May 15, 2024) ............. 2

20

*Rentmeester v. Nike*
   883 F.3d 1111 (9th Cir. 2018) .......................................................... 20

21

22

*Satava v. Lowry*
   323 F.3d 805 (9th Cir. 2003) ............................................................. 7

23

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*
   952 F.3d 1051 (9th Cir. 2020) ..................................................... 19, 20

24

25

*Smith v. AMC Networks, Inc.*
   No. 18-CV-03803, 2019 WL 402360, at *6 (N.D. Cal. Jan. 31, 2019) ......... 5, 19

26

27

*Smith v. Intel Corp.*
   --- F.Supp.3d ----, 2024 WL 3834706, at *4 (N.D. Cal. 2024) ........................ 5

28

*Swirsky v. Carey*
  376 F.3d 841 (9th Cir. 2004) ................................................................ 19

*WMTI Productions, Inc. v. Healey*
  No. CV2002726, 2023 WL 5506712, at *3 (C.D. Cal. July 13, 2023) ................. 7

*Zindel v. Fox Searchlight Pictures Inc.*
  815 F. App'x 158 (9th Cir. 2020) ........................................................ 6

## **Rules**

Federal Rules of Civil Procedure 8(a)(2) ................................................ 5

## **Treatises**

*Patry on Copyright* § 9:86.50 (2020) ................................................... 6

Plaintiff's Response in Opposition to
                                       Defendants' Motion to Dismiss

Plaintiff Eden Film Production LLC responds to Defendants' (Lions Gate Entertainment, Inc., Showtime Networks Inc., Beer Christmas, Ltd., Ashley Lyle, and Bart Nickerson) Motion to Dismiss [ECF No. 27] ("Motion"):

## I.     INTRODUCTION

1.      Plaintiff brought this case against Defendants because, while watching their television series *Yellowjackets*, bells kept going off for each similarity noticed between *Yellowjackets* and Plaintiff's copyrighted film *Eden*. The show *Yellowjackets* is split into two storylines based on two timelines: a "survival" timeline—described below—and a "current" timeline. Plaintiff found that each scene in the "survival" timeline of *Yellowjackets* was familiar and followed the same plot as Plaintiff's film *Eden* in containing the same original elements, just slightly tweaked. Accordingly, Plaintiff, only discovering such infringement shortly before the expiration of limitations, filed suit. Defendants responded by moving to dismiss.

2.      Contrary to Defendants' assertions, there are strong similarities between *Yellowjackets* and *Eden*, indicative of copying. Both works have storylines about a soccer team suffering a plane crash into a remote area on the way to or from a major soccer tournament with a similar subset of survivors (including the head coach's two children who become love interests for the surviving soccer players) who suffer similar mental issues, split into groups based on an emergent charismatic leader, discover the wreckage or remains of prior expeditions to their remote areas with unusable caches of goods, make life-threatening escape attempts, suffer suicidal behavior and impulses, join in paranoid conspiratorial small groups leading to moral decay, and, before being rescued by an outside force, contemplate/engage in cannibalism.

3.      The only differences in the elements noted above between the two works are mere inversions—such as changing the players' and coach's children's genders, changing the crash from occurring after the top-level tournament to

before, and the desolate area from hot to cold—or other insignificant alterations, such as the age of the players, exact number of survivors, and time period before rescue, along with other elements that a full television series like *Yellowjackets*— with two timelines, spanning multiple seasons—can include but that a single feature film cannot. That said, Defendants clearly incorporated the majority of *Eden* into *Yellowjackets*' "survival" timeline.

4.     In response to Defendants' Motion, Plaintiff not only "insists that Defendants' television series *Yellowjackets* infringes its copyright on the film *Eden*" (Motion, 1:3-4), but also pleaded a protectable selection and arrangement of original elements in *Eden* that are reproduced in *Yellowjackets* to such an extent as to be substantially similar. This is evident from Defendants' Motion.

5.     Defendants first describe "*Eden* [a]s a somber, straightforward survival thriller," Motion, 3:2, and "*Yellowjackets* [a]s a survival drama about a New Jersey high-school girls' soccer team that survives a plane crash in the remote Canadian wilderness. But it is also a darkly comedic psychological thriller and gory mystery-horror," *id*. at 4:15-17. Defendants disingenuously minimize their summary of Eden and dismiss it as a straightforward thriller, ignoring *Eden*'s pleaded "moments of dark humor and witty dialogue," ECF No. 1 ("Compl."), 8:18-19, and ignoring how the "survival" timeline of *Yellowjackets* incorporates the same selection and arrangements of elements as *Eden*.

6.     Defendants attempt to brush off all that is common between the works as "an unprotectable premise and a list of misleading, incidental similarities," Motion, 1:4-6, while failing to cite well-established caselaw about the "selection and arrangement" of elements—which protects "the particular way in which the artistic elements form a coherent pattern, synthesis, or design." *Moonbug Entm't Ltd. v. BabyBus (Fujian) Network Tech. Co., Ltd*., No. 21-CV-06536, 2024 WL 2193323, at *9 (N.D. Cal. May 15, 2024) (affirming jury verdict finding defendant

liable for copyright infringement). It bears noting that Defendants do not challenge access in their Motion in focusing solely on substantial similarities.

7.    Plaintiff pleaded numerous similarities between the works that show, not only a substantial similarity between the works, but also an infringing selection and arrangement of *Eden*'s elements within *Yellowjackets*. Plaintiff pleaded:

A non-exhaustive list of some of the specific scene or dialogue similarities between each work, without limitation, include:

a.    Champion soccer team's flight crashes in remote area;

b.    Many players die in the plane crash;

c.    An assistant coach [actually a trainer in Eden], a subset of soccer players, a trainer/nurse, and the head coach's kids survive the plane crash and are forced to brave a harsh, isolated area;

d.    The survivors form factions, leading to internal conflict and power struggles;

e.    The psychological toll of isolation, desperation, and breakdown of societal norms sets in [and cliques form];

f.    Cult-like behavior arises with the emergence of a charismatic, demagogic leader who influences the group's behavior in derogation of established social norms;

g.    Characters discover wreckage of previous expeditions in the isolated location;

h.    Characters discover a cache of [unusable] goods;

i.    Teammates sneak off and conspire in Machiavellian ways;

j.    An ill-advised escape [is] attempt[ed] [];

k.   Moral decay sets in as the characters struggle to survive and are pushed to make moral compromises and morally dubious decisions;

l.   A character commits suicide;

m.   Cannibalism arises in both stories as a last resort to survive [, though is only acted upon in *Yellowjackets*]; and

n.   The surviving characters are rescued by an outside force [presumably in *Yellowjackets* as there is a present-day storyline].

Compl., 9:27-10:22. This set of similar scenes and dialogue provides an overview of the selection and arrangement of elements that are shared between the two works: *Eden* in toto and *Yellowjackets*'s "survival" timeline.

8.   Defendants' Motion ignores the large number of overt similarities and cites to cases applying the extrinsic test in which courts analyzed individual elements allegedly shared between works. And although the law claims the extrinsic test is a question of law for the judge, in reality, it is a subjective test wherein a court performs the same analysis as a jury, just cabined within eight elements: (a) themes, (b) plot, (c) setting, (d) characters, (e) mood, (f) pace, (g) sequence of events, and (h) scene/dialogue similarities. This is of course why Plaintiff explicitly laid out such elements in its Complaint. *See id*. at ¶¶ 21-35. However, Defendants' focus on the extrinsic test is *not* a complete picture of the caselaw because it excludes reference to the allegations in the Complaint, revealing shared elements, in selection and arrangement, between the works in all eight categories. *Id*. at 6:12-11:16.

9.   Accordingly, Plaintiff asks this Court to deny Defendants' Motion and allow this case to proceed on the merits.

## II.    LEGAL STANDARD

10.     A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

11.     A claim is facially plausible when its "factual content … allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a complaint's plausibility, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Smith v. Intel Corp.*, --- F.Supp.3d ----, 2024 WL 3834706, at *4 (N.D. Cal. 2024) (quoting *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)).

## III.    ARGUMENTS AND AUTHORITY

12.     "[T]he Ninth Circuit has cautioned that '[s]ummary judgment is not highly favored on questions of substantial similarity in copyright cases.'" *Smith v. AMC Networks, Inc.*, No. 18-CV-03803, 2019 WL 402360, at *6 (N.D. Cal. Jan. 31, 2019) (quoting *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 848 (9th Cir. 2012)).[1]  "*A fortiori*, this same limitation applies to a motion to dismiss."

---

[1] "The Ninth Circuit has held that '[g]enerally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint.'" *Smith v. AMC Networks, Inc.*, 2019 WL 402360, at *6 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). "Here, what Defendants essentially seek is summary judgment because they stray beyond the four corners of the complaint and into factual disputes over the similarities and differences between [the works, including whether certain elements of [Plaintiff's work] are protectable under copyright law." *Id.* "Moreover, [] Defendants' request for judicial notice that certain concepts are generic further demonstrates that Defendants' motion[ is] essentially motions for summary judgment." *Id.* (declining to apply extrinsic test at pleading stage, finding "most prudent course of action is to follow Ninth Circuit precedent and hold in abeyance the issue of substantial similarity until further factual development of the record, including expert testimony").

Plaintiff's Response in Opposition to Defendants' Motion to Dismiss

*Id*. (quoting *Minx Int'l, Inc. v. Around the World Apparel, Inc*., 2016 WL 7496745, at *2 (C.D. Cal. July 29, 2016)).

13.    Dismissal of a copyright infringement claim for want of substantial similarity "is warranted only if, 'as a matter of law[,] the similarities between ... works are only in uncopyrightable material or are de minimis.'"[2] *Zindel v. Fox Searchlight Pictures Inc.*, 815 F. App'x 158, 160 (9th Cir. 2020) (quoting *Patry on Copyright* § 9:86.50 (2020)). "It must be … that reasonable minds could not differ on the issue of substantial similarity." *Id*. (citing *L.A. Printex*, 676 F.3d at 848)).[3]

## A.    *Eden* and *Yellowjackets*'s "survival" timeline are substantially similar.

14.    Though almost all elements of *Eden* were copied into the "survival" timeline of *Yellowjackets*, Defendants argue that a portion of the similarities noted in the Complaint are, in fact, dissimilar or unprotectable. Such arguments belie the substantially similar selection and arrangement of the same original elements in both works—with the differences in *Yellowjackets* being mere inversions or slight alterations of the elements in *Eden*. *See* Compl., ¶¶ 21-33.

15.    Defendants' Motion should be denied because it fails to take into consideration the number of shared elements between the works described in Plaintiff's Complaint, the works' shared selection and arrangement of such elements, and that such shared elements show an overall picture that the works are substantially similar. *See* Compl., 6:12-11:16.

---

[2] "Although some district courts have opined that some concepts are generic on motions to dismiss, … these non-binding cases … offer little analysis." *Id*. (citing *Zella*, 529 F. Supp. 2d at 1130 (involving television shows); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1015 (N.D. Cal. 2018) (involving a novel and a screenplay); *Silas v. Home Box Office, Inc*., 201 F. Supp. 3d 1158, 1164, 1166 (C.D. Cal. 2016) (involving a screenplay and a television series); *Heusey v. Emmerich*, 2015 WL 12765115, at *1 (C.D. Cal. Apr. 9, 2015) (involving screenplays); *DuckHole*, 2013 WL 5797279, at *1–2 (involving a film treatment and a television series)). "All these cases offer little justification for why certain elements are generic or scenes-a-faire, and thus unprotectable under copyright law." *Id*. Thus, as in *Smith*, the Court should "find these cases unpersuasive" and decline to follow them. *Id*.

[3] *See also Zindel*, 815 F. App'x at 159 (instructing district courts to be "cautious" before dismissing for lack of substantial similarity)) *Astor-White v. Strong*, 733 F. App'x 407, 409–10 (9th Cir. 2018) (Wardlaw, Cir. J., concurring) (proclaiming that resolving substantial similarity "should be even more disfavored on a motion to dismiss" than on motion for summary judgment); *Segal v. Segel*, No. 20-CV-1382, 2022 WL 198699, at *13 (S.D. Cal. Jan. 21, 2022) ("Because analytical dissection and substantial similarity between protected elements of works are 'usually extremely close issue[s] of fact,' the Ninth Circuit disfavors dismissals on the ground of substantial similarity at the Rule 12(b)(6) stage."); *Smith*, 2019 WL 442360, at *4–7 ("[B]ased on the record[,] the Court cannot conduct the analysis to separate the unprotectable elements from the protectable elements in [Plaintiff's work].").

16.     Beyond the scene similarities noted above, *see supra* ¶7, Plaintiff pleaded similarities in plot, themes, desolate settings, character types, moods, pacing, and sequencing of events—as the "survival" timeline of *Yellowjackets* fully incorporates those original elements from *Eden*. *See* Motion, 6:12-9:25.

**B.    Defendants do not consider all elements as a whole, ignoring the selection and arrangement of such original elements in both works.**

17.     Defendants' Motion merely attempts to pick apart some of the noted, shared elements between the works in isolation, without considering the selection and arrangement of such original elements in both works as a whole as the law requires. Though Plaintiff disputes that the elements of the works Defendants cite are unprotectable, the caselaw states, "[a] combination of unprotectable elements is eligible for copyright protection 'if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'" *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019) (quoting *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003)). *See also WMTI Productions, Inc. v. Healey*, No. CV2002726, 2023 WL 5506712, at *3 (C.D. Cal. July 13, 2023) ("Plaintiffs need not have incanted any magic words, like 'selection' or 'arrangement'; these allegations suffice."). Here, because Plaintiff presented enough similarities of elements between the works, whether certain individual elements are protectable or not is irrelevant (again, Plaintiff disputes the elements are unprotectable).

18.     Defendants' approach of separating each similarity into separate categories, which they claim are basic while wrongly discounting the amount of striking similarities Plaintiff presented thus, when taken as a whole, connects the "basic" ideas that Defendants note into substantially similar plots. For example, Defendants state "the idea of portraying the struggle to survive after a plane crash in a remote and desolate place is not in itself protectable." Motion, 12:24-25. Be that as it may, Defendants' argument obscures their failure to cite any other soccer-

Plaintiff's Response in Opposition to Defendants' Motion to Dismiss

based cinematic work, not just a "sports team" that must undergo this survival ordeal, nor a rugby team like in the real-life scenario, but a highly skilled soccer team, where many similar characters endure similar hardships.

19.     The similar characters in both works include an adult figure in the trainer Connie in *Eden* and the assistant coach Ben in *Yellowjackets*, "a subset of soccer players, a trainer/nurse[ character], and the head coach's kids survive the plane crash and are forced to brace a harsh, isolated area." Compl., 10:3-5. These similar characters (including team captains, nurse-type figure, coach's children)— who struggle to survive in a remote location wherein the survivors discover evidence of prior plane crashes, send teammates out to find help, and struggle over minimal resource—are merely gender swapped.

20.     None of the similar works Defendants proffer involve a soccer team— with the only work involving a sports team being *Alive* (1993)—though that was an adaption of the real-life story of a rugby team's plane 1972 crash into the Andes mountains. And *Alive* does not contain numerous other plot elements that *Eden* and *Yellowjackets* share, such as finding evidence of prior expeditions or crashes and devolving into violent Machiavellian groups. Defendants proffer no other words about a plane, traveling to a championship tournament, crashing in a desolate area with the same general set of characters surviving and forming factions that displace the soccer team captain's control and result in physical confrontations.

21.     Though Defendants' examples share some elements,[4] none of those examples follow the same general plot presented in *Eden* and *Yellowjackets* of a skilled soccer team going through all of the listed events in a similar order.[5]    And

---

[4] ("harsh weather" that forces them "to make difficult choices and further pushes them to their limits," "hope of rescue diminishes" among the survivors that "lead[s] to feelings of despair," and, when confronted with "'harsh conditions and the struggle for survival,' the survivors in Alive and Lost are pushed to their limits, 'causing them to make dubious moral choices,'" including resorting to cannibalism, murder, and suicide [Motion, 13:8-16]).

[5] Defendants are right to note "'the psychological toll of isolation, desperation, and the breakdown of societal norms,' are all unprotectable concepts, and ones common to the survival genre," with "Lord of the Flies (1963, 1990) [being] the paradigmatic example of a survival story in which a group of survivors form rival 'factions,' resulting in 'violent confrontations' and '[m]oral decay.'" Motion, 14:11-15 (citing Compl. ¶¶ 22, 33(e)). But again, that is only one of the many shared elements of *Eden* and *Yellowjackets*. These two works also incorporate skilled soccer teams going through substantially similar ordeals after their planes crash in remote areas on the way to or

though Defendants claim this shared element, a highly skilled soccer team—with a similar subset of survivors—having to survive after a plane crash in a desolate area while traveling to or from a top-level tournament, is "neither original nor unique to Eden," Defendants point to no other works with this specific plot element. Such an omission implies the element is original and should be treated as such, and merely cobbling a variety of works together that share elements does not detract from the fact that the works share those elements in a similar order.

22.    Next, Defendants argue, "[t]he Copyright Act does not protect ideas or elements that naturally flow from such ideas as those presented here (so-called *scenes a faire*)." Motion, 1:20-21. This is Defendants' big sleight of hand to distract from the overarching number of similarities—downplaying (or outright ignoring) the pleaded similarities—by focusing on only ***some*** noted elements on an individual basis. The scenes Defendants describe as *scenes a faire* are in fact shared amongst both films (as *Yellowjackets* fully incorporates the key plot elements of *Eden* into its survival timeline) to such a degree to show a similar *selection* and *arrangement*.

23.    Defendants also argue that any similarities between the works are "not expression" and arise from "perceived shared abstract ideas … and stock elements that flow naturally from those ideas" such that they are not substantial. Motion, 2:5-14. With its conclusory statement that all the admitted similarities are abstract ideas and flowing elements, Defendants refrain from addressing each similar element and so conveniently overlook the substantial number of shared similarities between the works. Compl., ¶¶ 21-35 (identifying eight sequence of events similarities and fourteen scene similarities in and comparing similarities between the themes, plot, setting, characters, mood, and pace).

///

_____

from a top-level tournament. Defendants cannot merely note that there are shared elements in many other films and ignore that *Eden* and *Yellowjackets* share them all.

24.     In fact, the ideas expressed by *Eden* are not abstract. To suggest as
much, Defendants invert specific plot elements to claim substantial differences that
appear to be calculated to avoid infringement without departing from the elements
of the copyrighted work. *Yellowjackets* merely changes the gender of most
characters (the team and the coach's children), the type of desolate area the team
crashes in (hot versus cold), and the age of the players (from professional to high
school). Mere inversions of genders and settings with slight age reductions are not
substantial differences but surface level changes that do not obscure substantially
similar "survival" timelines and plot elements from a reasonable viewer.[6]

25.     Defendants' Motion, in failing to consider the similarly pleaded
selection and arrangement of all the substantially similar elements between *Eden*
and *Yellowjackets*, should thus be denied.

**C.     Defendants' self-serving description of the works omits similarities.**

26.     Defendants deceptively describe the works, taking care to more fully
describe the plot of Yellowjackets and leave out the similar elements in Eden.

27.     Defendants first describe "Eden [as] is a somber, straightforward
survival thriller" (Motion, 3:2), and "Yellowjackets [as] is a survival drama about a
New Jersey high-school girls' soccer team that survives a plane crash in the remote
Canadian wilderness. But it is also a darkly comedic psychological thriller and
gory mystery-horror." Motion, 4:15-17. Though Defendants' note both works are
survival thrillers, they willfully ignore Plaintiff's pleadings about Eden's
"moments of dark humor and witty dialogue," Compl., 8:18-19, that each
"Champion soccer team's flight crashes in remote area," id., 10:1, and that, "[t]he
works blend mystery, suspense, and psychological drama." Compl., 9:3.

---

[6] *See, e.g., Jarvis v. K2 Inc.*, 486 F.3d 526, 532 (9th Cir. 2007) (ads derivative of original images "delivered … in
one form" and then "subsequently used … in a quite different (though still *recognizable*) form" in the ads); *ITC
Textile Ltd. v. Wal-Mart Stores Inc.*, No. CV122650, 2015 WL 12712311, at *5 (C.D. Cal. Dec. 16, 2015)
("[M]odifications are not sufficient to avoid infringement in a direct copying case [because] the fact that the final
result of defendant's work differs from plaintiff's work is not exonerating.").

28.    Defendants do point out a key difference between the works: "Throughout each episode, the wilderness survival plotline is intercut with the present-day" surviving characters reflecting on their ordeal. Motion, 5:4-5, 17:27-18:2. That said, the entire "survival" timeline is copied from Eden, just with the inversions noted by Plaintiff. The "survival" timeline of Yellowjackets clearly incorporates the same selection and arrangements of elements as Eden, which is still a violation of copyright law. See, e.g., *Hall v. Swift*, No. CV 17-6882, 2021 WL 6104160, at *4 (C.D. Cal. Dec. 9, 2021) (denying motion for summary judgment absent "contrary evidence on the issue of originality in a protectable selection and arrangement").

**1.    *Eden*'s plot is substantially similar to that of *Yellowjackets*.**

29.    Defendants describe the aftermath of the crash in *Yellowjackets* as, "[m]uch of the team survives, including team captain Jackie, her best friend Shauna (secretly pregnant with Jackie's boyfriend's baby), headstrong Taissa, angsty Natalie, overeager equipment manager Misty, and Assistant Coach Ben, the only surviving adult. Their head coach dies, but his two teenage sons Travis and Javi survive." Motion, 4:24-28. This is substantially similar to *Eden*, where the head coach dies, his two daughters survive the crash, along with 13 other people, including a subset of players and the trainer.[7] This demonstrates the direct gender inversion of the surviving characters in each work.

30.    It is true that the escape attempt in *Eden* led to a rescue while the escape attempts in *Yellowjackets* end in failure. Motion, 5:18-20, 17:6-18. Yet the *Yellowjackets* scene is still like that in *Eden* where two players depart on the life raft. The only difference—that the *Yellowjackets* player dies while the two *Eden* players find help—is explained by *Yellowjackets* being a television series with two

---

[7] See, e.g., Compl., ¶ 25 ("Slim (a talented soccer player and the captain of the team), Markese (a skilled player who is often overshadowed by others), Arnie (a troubled but talented soccer player who acts impulsively), Andy (a player confronted with the trials of leadership, survival, and moral dilemmas), [] Connie (the trainer, a nurse-like character), [and] Andreas (a mysterious, complex, and troubled character who struggles with demons").

1    timelines that must extend the rescue as long as the show airs. In other words, it is

2    clear that the *Yellowjackets* group will be saved—it is just unclear how.

3        31.    Defendants argue that "[h]unger drives the girls to madness: for

4    example, pregnant Shauna talks to Jackie's corpse as if she is still alive" and

5    "[e]ventually, the girls succumb to hunger and eat Jackie's corpse," which "Coach

6    Ben watches with horror and flees. That night, the cabin catches fire, leaving the

7    survivors huddled in the cold with no shelter to brave the remainder of the winter."

8    Motion, 7:6-16. This moment, when Coach Ben escapes the group and goes on to

9    live in a cave, though not identical, is similar to the experience of the trainer

10   Connie in *Eden*. Similarly in *Eden*, Connie escapes the group by committing

11   suicide after the "psychological toll of isolation, desperation, and breakdown of

12   societal norms sets in." Compl., ¶33.

13       32.    Defendants' argument—that, "[a]lthough after Felix's death, the

14   remaining survivors split into two opposing factions, Plaintiff's attempt to

15   characterize this tribal fracturing among the survivors as 'cult-like behavior' is

16   nothing more than *scenes a faire* (see Section III.C.1.a) and, moreover, does not

17   accurately identify a similarity between the works" (Motion, 17:22-26)—wrongly

18   discounts the fact that in *Eden*, Andreas leads a group of people who are driven to

19   embrace a "survival of the fittest" attitude, killing other survivors, just like in

20   *Yellowjackets*, where Lottie leads a group to hunt and kill Javi.

21       33.    Further, Defendants argue, "[i]n *Eden*, none of the survivors engage in

22   cannibalism; in fact, cannibalism never occurs and is never mentioned or

23   suggested." Motion, 16:1-2. This is untrue, in that *Eden* clearly alludes to

24   cannibalism at multiple points, though it does not actually occur in the film. *Eden*

25   alludes to cannibalism in the scenes involving Andreas, who becomes more

26   animalistic throughout the film, such as in the following scenes:

27       --A CONFLAGRATION OF OVERLAPPING VOICES. An

28       argument at a tipping point with THE INJURED noticeably absent...

1    ANDREAS
2    -I'm saying its the only way to
3    make what we have last a little
4    longer-
5    CONNIE
6    I know exactly what you're saying
7    and I'm saying it's ridiculous-
8    FELIX
9    It's barbaric.
10    PATTON
11    These aren't just random people,
12    we're talking about killing our
13    friends.
14    *See Eden*, 00:27:20-00:27:58.
15    WIDE ON the open beach. From opposite ends of the frame - SLIM
16    and ANDREAS walk towards each other. Not another soul in sight.
17    They arrive, face to face. ON ANDREAS, gaunt, sunken eyes.
18    A long silence, until-
19    SLIM
20    How long since you've eaten?
21    ANDREAS
22    ...What day is it?
23    (beat)
24    You ever get to where all the days
25    just start bleeding together? What
26    you did today feels like it
27    happened yesterday, and what
28

1    happened yesterday... you can't

2    remember.

3    SLIM

4    Yeah.

5    You could come back. There's food.

6    ANDREAS

7    Come back?

8    For the slightest beat, ANDREAS looks as if he's considering.

9    ANDREAS

10    I know what you're saying and I

11    know what it means... but it's not

12    going to happen. Not like you

13    think.

14    ANDREAS looks off. Distant.

15    *See Eden*, 01:12:36-01:13:32. These scenes show that Andreas is becoming more

16    and more animalistic as *Eden* progresses, leading to violent encounters with other

17    survivors that culminates with him running into the jungle when the rest of the

18    team is saved. This is similar to *Yellowjackets*' Coach Ben running off into the

19    wild.

20    34.    Defendants also argue that Plaintiff's claim that each work includes

21    suicide is incorrect. *See* Motion, 16:15-20. Defendants' description is again a

22    mischaracterization. Like *Eden*, *Yellowjackets* also contains a character who falls

23    off a cliff: Crystal/Kristen. In Season 2, Episode 5 ("Two Truths and a Lie"), she

24    falls off a cliff, just like Connie in Eden. Further, *Yellowjackets* has not completed

25    its story, and Ben, who is an analogous character to Connie, does not appear in the

26    current timeline, leading viewers to assume that, like Connie, he dies in the

27    wilderness.

28

14    Plaintiff's Response in Opposition to
Defendants' Motion to Dismiss

35.     Defendants next attempt to differentiate the "[c]haracters
discover[ing] a cache of goods," from "wreckage of previous expeditions," despite
those being linked in both films. Motion, 16:21-17:5. These elements cover the
same strikingly similar incidents, such that in both works, the characters discover
evidence that people were inhabiting the desolate environments before them by
finding materials that were unusable, but shelter that was usable.  And again, both
works still share escape attempts but, because *Yellowjackets* is ongoing, we do not
know how they will be saved—though we know they will based on the "current"
timeline.

36.     Defendants' argument—that, "[a]lthough after Felix's death, the
remaining survivors split into two opposing factions, Plaintiff's attempt to
characterize this tribal fracturing among the survivors as 'cult-like behavior' is
nothing more than *scenes a faire* (see Section III.C.1.a) and, moreover, does not
accurately identify a similarity between the works" (Motion, 17:22-26)—unduly
discounts the fact that in *Eden*, Andreas leads a group of people who are driven to
embrace a "survival of the fittest" attitude, just like in *Yellowjackets*, where Lottie
leads a group to hunt Javi and eat him to survive in the desolate wilderness.

37.     Accordingly, the proffered scenes from *Yellowjackets* are substantially
similar to scenes in *Eden*, another reason that the Motion should be denied.

**2.     The characters in both works are similar.**

38.     Defendants' arguments are based on the characters in *Eden* essentially
being less defined than those in *Yellowjackets*. Though *Eden* is a film that does not
have enough time to devote to character development compared to a multiple
season show like *Yellowjackets*, the fact that the characters are still substantially
similar is not negated by the infringing work's increased depth.

39.     Defendants attempt to distinguish the trainer and nurse-type
characters: "[a]s the girls scramble to pull their teammates from the wreckage and
salvage, Misty, a relentlessly teased misfit, draws on her self-taught knowledge of

1  first aid to triage the wounded" (Motion, 4:28-5:2), "[a]nd putting aside the fact

2  that a 'trainer' and a 'nurse' are vastly different character archetypes, in *Eden*,

3  Connie, the adult male team trainer, expressly disclaims his ability to care for the

4  injured. Ex. 1 at -:11:50." Motion. 16:4-9. In fact, both works contain such a nurse-

5  like figure who—whether he wants to or not—aids the wounded of the wreckage,

6  with *Eden* containing a trainer, Connie. Though Connie does state, "[he's] just a

7  trainer, he needs a hospital, he needs real doctors" (*see Eden*, 00:11:50-0012:00),

8  the trainer still proceeds to care for the injured, including Kennefick, Sevy, Slim,

9  Rosaro, and Stefan. Further, as the only adult, Connie is a misfit. Plaintiff's

10 characterization of the trainer as a nurse-type character is not misplaced because

11 that is the same role that Misty plays in *Yellowjackets*, as she has first aid training,

12 not just skills, and tends to the wounded like Connie.[8]

**3.  The mood, theme, and character are similar.**

13

14 40.    Defendants attempt to differentiate the moods and themes of

15 *Yellowjackets* from *Eden* focuses on how *Yellowjackets*'s storyline adds

16 complexity because it is based in the present. Motion, 19:5-8. This cannot change

17 the fact that the survival-based storyline of *Yellowjackets* is substantially similar to

18 *Eden*. *Eden* is a film and simply does not have nearly as much time to devote to

19 character development as a multiple season show like *Yellowjackets*. Defendants'

20 arguments are based on the characters in *Eden* essentially being somewhat less

21 defined than the characters of *Yellowjackets*. This does not negate the fact that the

22 mood, themes, and characters are still substantially similar.

**4.  The setting and pace of the works are substantially similar.**

23

24 41.    Again, Defendants focus on the fact that *Yellowjackets* incorporates

25 two timelines into its story while ignoring that the survival timeline shares the

26

27

28

---

[8] Defendants also argue there is no "assistant coach"-type character in Eden who survives. Motion, 16:4-7. Though
the character in *Eden* is not an assistant coach, Connie, as the adult survivor, still provides advice to the surviving
players, just like the assistant coach Ben in *Yellowjackets*. Both Ben and Connie also appear to not survive in their
respective works, with Connie committing suicide by falling off a cliff in *Eden*, and Ben not appearing in the present
timeline of *Yellowjackets*.

setting and pace of *Eden*. *See* Motion, 25:11-13. The survival timeline in *Yellowjackets* takes place in a desolate area, just like *Eden*, after a plane carrying a successful soccer team crashes there. The survival timeline in *Yellowjackets* also shares the pacing of *Eden*, "balance[ing] slower, character-driven moments with more intense, plot-driven sequences," which—despite Defendants claims that such scenes are generic—reveals both works rely on the same setting and pace.

### 5. The similarities in dialogue between the works can be expanded upon repleading.

42. The caselaw shows that both scenes and dialogue, and not just scenes, are to be compared. And though Plaintiff did not plead specific portions of the dialogue of the works that are copied, Plaintiff did plead a list of similarly expressed dialogue areas, as well as scenes that are similar. Plaintiff pleaded:

A non-exhaustive list of some of the specific scene or dialogue similarities between each work, without limitation, include:

a. Champion soccer team's flight crashes in remote area;

b. Many players die in the plane crash;

c. An assistant coach [actually a trainer in Eden], a subset of soccer players, a trainer/nurse, and the head coach's kids survive the plane crash and are forced to brave a harsh, isolated area;

d. The survivors form factions, leading to internal conflict and power struggles;

e. The psychological toll of isolation, desperation, and breakdown of societal norms sets in;

f. Cult-like behavior arises with the emergence of a charismatic, demagogic leader who influences the group's behavior in derogation of established social norms;

g.    Characters discover wreckage of previous expeditions in the isolated location;

h.    Characters discover a cache of [unusable] goods;

i.    Teammates sneak off and conspire in Machiavellian ways;

j.    An ill-advised escape attempt fails;

k.    Moral decay sets in as the characters struggle to survive and are pushed to make moral compromises and morally dubious decisions;

l.    A character commits suicide;

m.    Cannibalism arises in both stories as a last resort to survive; and

n.    The surviving characters are rescued by an outside force [presumably in Yellowjackets as there is a present-day storyline].

Compl., 9:27-10:22.

43.    Further, Plaintiff pleaded that the works shared similar dialogue that:

a.    Expresses desperation and fear (as characters grapple with the harsh realities of their situation, they often voice their fears and anxieties);

b.    Reveals internal conflict (characters often engage in internal monologues or dialogue with themselves, exploring their moral dilemmas and psychological struggles);

c.    Challenges authority and societal norms (as social order breaks down, characters question traditional values and norms, leading to confrontations and power struggles);

d.    Justifies extreme measures (characters may justify their actions, even if they are morally questionable, by appealing to the need to survive); and

e.    Contemplates the meaning of life and death (characters ponder the fragility of life and the inevitability of death, resulting in philosophical discussions);

Compl., 11:3-11:16. Such similarities must not be discounted merely because Defendants studiously ignored them.

**D.    Defendants cite caselaw inapplicable to the facts.**

44.    "As 'general plot ideas are not protected by copyright law,' the extrinsic test compares 'the actual concrete elements that make up the total sequence of events and the relationships between the major characters.' *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985)." Motion, 12:13-16. *Berkic* draws distinctions between *scenes a faire* and concrete elements of the plot. It characterizes "[b]oth [works as] deal[ing] with criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants," before discussing that the presentation of the plot differs entirely. *Id*. at 761 F.2d 1293–94. That case is inapposite to the facts at hand. *See also Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1074 (9th Cir. 2020) ("[A] copyright plaintiff may argue infringement ... based on original selection and arrangement of unprotected elements.").

45.    "[Moreover,] Ninth Circuit law is clear that '[t]he extrinsic test requires analytical dissection of a work and expert testimony.'" *Smith*, 2019 WL 402360, at *6 (quoting *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). "Other courts have denied motions to dismiss in copyright cases due to an insufficient record." *Id*.[9] Here, the presentation of plots between *Eden* and the survival timeline of *Yellowjackets* are substantially similar. The only differences between

---

[9] *See Cabell v. Zorro Prods., Inc*., 2017 WL2335597, at *8 (N.D. Cal. May 30, 2017) (denying motion to dismiss copyright allegations involving a musical script and audio performances because the "case lacks the kind of comprehensive factual record and undisputed facts that would allow the court to apply the 'extrinsic test' at this stage"); *French West, Inc. v. Macy's Inc*, 2013 WL 12133844, at *2 (C.D. Cal. Jan. 29, 2013) (denying motion to dismiss copyright allegations absent "threshold understanding" of nature of design "and whether it incorporates any common themes of selection, coordination, and arrangement that are" unprotectable).

1  the survival aspects of the works are the genders of the characters and the setting—

2  which are merely inverted from male to female and hot to cold.

3  **E.    This case should proceed to the discovery phase.**

4           46.    Defendants cite *Rentmeester v. Nike* for the proposition that discovery

5  is not required in this case. 883 F.3d 1111, 1123 (9th Cir. 2018), *overruled by*

6  *Skidmore*, 952 F.3d 1051. Despite Defendants' claims that *Rentmeester* was

7  overruled on other grounds, the ruling was based on the "inverse ratio rule," which

8  was in fact overruled. *Skidmore*, 952 F.3d at 1066 ("Because the inverse ratio rule,

9  which is not part of the copyright statute, defies logic, and creates uncertainty for

10  the courts and the parties, we take this opportunity to abrogate the rule in the Ninth

11  Circuit and overrule our prior cases to the contrary."). *Rentmeester*, a copyright

12  case concerning two photos on summary judgment, is less applicable here, a case

13  concerning most elements of a feature film being subsumed into a multi-season

14  television series.

15           47.    Despite Defendants announcing there is a single "unprotectable

16  concept" that Plaintiff alleges as its "primary alleged 'similarity,'" Defendants fail

17  to identify what that concept could be. Motion, 12:5-7 ("Plaintiff's primary alleged

18  'similarity' between the two works is an unprotectable concept, and apart from

19  *scenes a faire* common to the survival genre, how this concept is expressed varies

20  drastically in each work."). Such an argument again completely discounts

21  Plaintiff's Complaint, which describes how *Yellowjackets* copied most elements of

22  *Eden* and merely inverted the genders of the characters, the desolate landscape, and

23  altered their ages at least in its "survival" timeline. ¶¶ 21-35. All the other plot

24  elements are congruous between the works, with the elements in *Yellowjackets*

25  merely spread across multiple seasons and episodes rather than a single film.

26  **F.    In any event, Plaintiff should be granted leave to amend.**

27           48.    "A dismissal without leave to amend is improper unless it is beyond

28  doubt that the complaint 'could not be saved by any amendment.'" *In re Fresh &*

*Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1149 (D. Idaho 2011) (quoting *Harris v. Amgen, Inc*., 573 F.3d 728, 737 (9th Cir. 2009).[10]

49.    As a result, if Defendants' Motion is granted, Plaintiff should be afforded the opportunity to replead.

## IV.    CONCLUSION & PRAYER

WHEREFORE, Plaintiff requests the honorable Court deny Defendants' Motion and grant Plaintiff any other deserved relief.

Dated: February 24, 2025                Respectfully submitted,


_____/s/ *Anya Fuchs*_____
Anya Fuchs, Esq.
anya@anyafuchslaw.com

Charles M. Stam (*pro hac vice* filed)
charles@thompsonstam.com

**Counsel for Plaintiff**

---

[10] "The Ninth Circuit has noted on several occasions ... that the Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a) by freely granting leave to amend when justice so requires." *Marcus v. ABC Signature Studios, Inc*., 279 F. Supp. 3d 1056, 1073 (C.D. Cal. 2017) (collecting cases) (citations omitted). "Courts may dismiss a claim 'only if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief.'" *Media.net Advert. FZ-LLC v. NetSeer, Inc*., 156 F. Supp. 3d 1052, 1059 (N.D. Cal. 2016) (quoting *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011)). "Courts should grant the plaintiff leave to amend 'if it appears at all possible that the plaintiff can correct the defect.'" *Id*. (quoting *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)). *See, e.g., Milkcrate Athletics, Inc. v. Adidas Am., Inc*., 619 F. Supp. 3d 1009, 1021–22 (C.D. Cal. 2022) ("hesitant" court granted leave to amend second amended complaint "in the interest of caution" despite noting "skeptic[ism]" that plaintiff would "be able to allege copyright or trade dress infringement in an amended complaint").

# CERTIFICATE OF SERVICE

I certify that I am over the age of 18 years and not a party to the within action; that my business address is 440 E. Huntington Drive, Suite 300, Arcadia, CA 91006; and that on this date I served a true copy of the document(s) entitled:

- **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Service was effectuated by forwarding the above-noted document in the following manner:

[XX] VIA CM/ECF. I electronically served the above document(s) via CM/ECF on all parties opting for e-service and is available for viewing and downloading from the Court's CM/ECF system.

I certify that I am a member of the bar of this court.

Executed on February 24, 2025, at Emeryville, CA.

/s/ *Anya Fuchs*
Anya Fuchs

*Eden Film Production LLC. v. Lockjaw LLC, et al.*
USDC CACD Case No.: 2:24-cv-09851-DDP-SK