NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
JOEL RICHERT (State Bar No. 327116)
  joelrichert@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
LIONS GATE ENTERTAINMENT, INC.,
SHOWTIME NETWORKS INC., BEER
CHRISTMAS, LTD., ASHLEY LYLE,
and BART NICKERSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDEN FILM PRODUCTION LLC, a Delaware corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>LOCKJAW LLC, a California corporation; ASHLEY LYLE, an individual; BART NICKERSON, an individual; BEER CHRISTMAS, LTD., a California corporation; SHOWTIME NETWORKS INC., a California corporate; LIONS GATE ENTERTAINMENT, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No. 2:24-cv-09851-DDP-SK<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:     March 24, 2025<br>Time:     10:00 a.m.<br>Crtrm:   9C |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     COURTS ROUTINELY ASSESS SIMILARITY AT THIS STAGE ........... 2

III.    PLAINTIFF'S MISCHARACTERIZATIONS OF THE WORKS
        CANNOT SAVE ITS INFRINGEMENT CLAIM ........................................ 4

        A.      Plot ......................................................................................................... 5

        B.      Characters ........................................................................................... 10

        C.      Dialogue ............................................................................................... 11

        D.      Setting and Pace ................................................................................ 11

        E.      Mood and Theme ............................................................................... 12

IV.     PLAINTIFF'S SELECTION-AND-ARRANGEMENT
        THEORY FAILS ......................................................................................... 13

V.      PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE
        DENIED BECAUSE AMENDMENT WOULD BE FUTILE .................... 17

VI.     CONCLUSION ........................................................................................... 18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdullah v. Walt Disney Co.*,
   714 F. App'x 758 (9th Cir. 2018) .......................................................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................... 3, 4, 13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................3

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985) ................................................ 5, 6, 16

*Bernal v. Paradigm Talent & Lit. Agency*,
   788 F. Supp. 2d 1043 (C.D. Cal. 2010) ...................................... 17

*Cabell v. Zorro Prods. Inc.*,
   2017 WL 2335597 (N.D. Cal. May 30, 2017)................................4

*Carlini v. Paramount Pictures*,
   2021 WL 911684 (C.D. Cal. Feb. 2, 2021) ...................................3

*Carroll Shelby Licensing, Inc. v. Halicki*,
   643 F. Supp. 3d 1048 (C.D. Cal. 2022) ......................................5

*Christianson v. West Publ'g Co.*,
   149 F.2d 202 (9th Cir. 1945) ..................................................... 3, 17

*Collier v. McKay*,
   --- F. Supp. 3d ----, 2025 WL 101646 (C.D. Cal. Jan. 7, 2025) .............. 6, 14, 17

*Esplanade Prods. v. Walt Disney Co.*,
   768 F. App'x 732 (9th Cir. 2019) ............................................... 2, 17

*Fillmore v. Blumhouse Prods.*,
   771 F. App'x 756 (9th Cir. 2019) ....................................................2

*French West, Inc. v. Macy's Inc.*,
   2013 WL 12133844 (C.D. Cal. Jan. 29, 2013) .................................4

*Gable v. NBC*,
   727 F. Supp. 2d 815 (C.D. Cal. 2010) ........................................................ 14, 15

*Gadh v. Spiegel*,
   2014 WL 1778950 (C.D. Cal. April 2, 2014) .................................................. 17

*Gilbert-Daniels v. Lions Gate Entertainment*,
   2024 WL 5116299 (9th Cir. Dec. 16, 2024) ................................................ 14, 16

*Heusey v. Emmerich*,
   692 F. App'x 928 (9th Cir. 2017) ............................................................. 2, 17

*ITC Textile Ltd. v. Wal-Mart Stores*,
   2015 WL 12712311 (C.D. Cal. Dec. 16, 2015) ................................................ 12

*Jarvis v. K2*,
   486 F.3d 526 (9th Cir. 2007) .................................................................. 12

*Kouf v. Walt Disney Pictures & Television*,
   16 F.3d 1042 (9th Cir. 1994) .................................................................. 14

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008) .................................................................. 17

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ............................................................. 5, 7

*Malibu Textiles v. Label Lane Int'l*,
   922 F.3d 946 (9th Cir. 2019) ................................................................. 15

*Masterson v. Walt Disney Co.*,
   821 F. App'x 779 (9th Cir. Aug. 3, 2020) ................................................ 2, 3, 17

*Metcalf v. Bochco*,
   294 F.3d 1069 (9th Cir. 2002) ............................................................ 13, 14, 16

*Moonbug Entertainment v. BabyBus (Fujian) Network Tech.*,
   2024 WL 2193323 (N.D. Cal. May 15, 2024) .............................................. 15, 16

*Olson v. Nat'l Broad. Co.*,
   855 F.2d 1446 (9th Cir. 1988) ................................................................. 11

*Pretty in Plastic v. Bunn*,
   793 F. App'x 593 (9th Cir. 2020) ............................................................ 17

iii

*Rentmeester v. Nike*,
   883 F.3d 1111 (9th Cir. 2018) ........................................................................ 3, 4

*Rice v. Fox Broadcasting*,
   330 F.3d 1170 (9th Cir. 2003) ........................................................................ 13

*Ricketts v. CBS*,
   39 F. Supp. 3d 1199 (C.D. Cal. 2020) ............................................................ 14

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) .......................................................................... 13

*Schkeiban v. Cameron*,
   566 F. App'x 616 (9th Cir. 2014) ....................................................................2

*Shame on You Prods., Inc v. Banks*,
   690 F. App'x 519 (9th Cir. 2017) ....................................................................2

*Silas v. Home Box Office*,
   201 F. Supp. 3d 1158 (C.D. Cal 2016) ............................................................ 11

*Silas v. Home Box Office*,
   713 F. App'x 626 (9th Cir. 2018) ................................................................ 2, 11

*Skidmore v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) ............................................................... 4, 14, 16

*Smith v. AMC Networks*,
   2019 WL 402360 (N.D. Cal. Jan. 31, 2019) ....................................................4

*Swirsky v. Carey*,
   376 F.3d 841 (9th Cir. 2004) ...........................................................................4

*Thomas v. Walt Disney Co.*,
   337 F. App'x 694 (9th Cir. 2009), *cert. denied* 560 U.S. 905 (2010) .................2

*Tiscareno v. Netflix*,
   2014 WL 12558125 (C.D. Cal. Mar. 6, 2014) ................................................ 10

*White v. Twentieth Century Fox*,
   572 F. App'x 475 (9th Cir. 2014) ....................................................................2

*Wild v. NBC Universal*,
   513 F. App'x 640 (9th Cir. 2013) ............................................................... 2, 17

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**Statutes**

17 U.S.C. § 102(b) ................................................................. 1, 6

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................................................2

## I.    INTRODUCTION

Plaintiff concedes that numerous films, television series, and literary works share a majority, if not all, of the abstract thematic concepts and tropes that Plaintiff alleges appear in both *Eden* and *Yellowjackets*. *See* Opp. ¶¶ 20-21 n.4, n.5. This is because the overlap between *Eden* and *Yellowjackets* represents nothing more than unprotectable *scenes a faire* common to the survival genre. Nevertheless, in an attempt to push its claim past the pleading stage, Plaintiff tries to convince the Court that the high-level "general plot" of a "highly skilled soccer team … having to survive after a plane crash in a desolate area while traveling to or from a top-level tournament" is not only protectable, but also expressed the same way in *Eden* and *Yellowjackets*. But ideas and premises are not protectable. 17 U.S.C. §102(b). And even a cursory review of the works reveals that the works' *protectable* expression is not similar—let alone *substantially* similar.

*First*, Plaintiff's suggestion that this Court may not decide substantial similarity on a motion to dismiss is contrary to extensive Ninth Circuit and Central District precedent. There is overwhelming authority affirming the principle that in copyright cases involving literary works (including film and television), where the works are properly before the court and capable of examination, the court can and should dismiss an infringement claim for lack of substantial similarity as a matter of law. Section II.

*Second*, Plaintiff's Opposition relies on blatant mischaracterizations of the works in an attempt to create the appearance of similarity where there is none. Rather than grapple with the detailed analysis set forth in Defendants' Motion, Plaintiff simply ignores most of the works' extensive dissimilarities in plot, theme, dialogue, mood, setting, pace, characters and sequence of events. Section III.

*Third*, acknowledging that the alleged similarities between *Eden* and *Yellowjackets* might consist of unprotectable elements, Plaintiff argues that its selection and arrangement of these elements is protectable (a theory not raised in its

1

Complaint). But Plaintiff's purported "selection" of elements is nothing more than a list of random similarities scattered across two seasons of the series, largely unprotectable *scenes a faire* and tropes; and the alleged "arrangement" of these elements is neither novel to *Eden* nor similar between the works. Section IV.

*Finally*, the Court should reject Plaintiff's request for leave to amend. Plaintiff has not demonstrated that amendment would be anything but futile; from simply viewing them, the Court may determine that *Eden* and *Yellowjackets* are not substantially similar. Such a determination could not be overcome by anything Plaintiff might assert in an amended complaint. Section V.

Plaintiff cannot meet its burden to state a claim, and the Court should dismiss this straightforward and meritless case with prejudice.

## II. COURTS ROUTINELY ASSESS SIMILARITY AT THIS STAGE

In copyright-infringement cases, courts can—and frequently do—evaluate substantial similarity on a motion to dismiss, and the Ninth Circuit regularly affirms dismissals for lack of substantial similarity under Rule 12(b)(6) in cases like this one. *See* Mot. at 9; *see also Masterson v. Walt Disney Co.*, 821 F. App'x 779, 780-81 n.1 (9th Cir. Aug. 3, 2020) (affirming 12(b)(6) dismissal for lack of substantial similarity between film and book) (collecting affirmed cases).[1]

---

[1] *See also Fillmore v. Blumhouse Prods.*, 771 F. App'x 756, 756–57 (9th Cir. 2019) (manuscript and film); *Esplanade Prods. v. Walt Disney Co.*, 768 F. App'x 732, 733 (9th Cir. 2019) (film treatment and movie); *Abdullah v. Walt Disney Co.*, 714 F. App'x 758, 759 (9th Cir. 2018) (book and movie); *Silas v. Home Box Office*, 713 F. App'x 626, 627 (9th Cir. 2018) (television series and screenplay); *Shame on You Prods., Inc v. Banks*, 690 F. App'x 519, 520 (9th Cir. 2017) (screenplay and film); *Heusey v. Emmerich*, 692 F. App'x 928, 929 (9th Cir. 2017) (screenplay and film); *Schkeiban v. Cameron*, 566 F. App'x 616, 617 (9th Cir. 2014) (novel/screenplay and film); *White v. Twentieth Century Fox*, 572 F. App'x 475, 476–77 (9th Cir. 2014) (screenplay and films/television shows); *Wild v. NBC Universal*, 513 F. App'x 640, 641 (9th Cir. 2013) (graphic novel and television show); *Thomas v. Walt Disney Co.*, 337 F. App'x 694, 695 (9th Cir. 2009), *cert. denied* 560 U.S. 905 (2010) (story and movie).

Courts in the Central District routinely review literary works like films at the motion-to-dismiss stage to determine whether plaintiffs plausibly have pleaded, or can plead, substantial similarity. For example, in *Carlini v. Paramount Pictures*, the district court analyzed the film and screenplay at issue and determined that the plaintiff could not plead substantial similarity as a matter of law, dismissing the case with prejudice. 2021 WL 911684 (C.D. Cal. Feb. 2, 2021). The Ninth Circuit affirmed. 2022 WL 614044 (9th Cir. Mar. 2, 2022).

Rather than grapple with *any* of the cases cited by Defendants, Plaintiff instead asserts that the extrinsic test "*requires* analytical dissection of a work and expert testimony." Opp. ¶¶ 12, 45 (emphasis added). This is not true. As the Ninth Circuit explained in *Masterson*, "It is not that expert testimony is never required or that substantial similarity can always be determined as a matter of law on a motion to dismiss. Rather, the court is required to determine whether the complaint states a plausible claim." 821 F. App'x at 781 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "Plausibility" requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of" misconduct. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Where the works "are properly before" the court "and thus 'capable of examination and comparison,'" the court should therefore draw on its judicial experience and common sense and dismiss the claim "as a matter of law" where, as here, "[n]othing disclosed during discovery could alter the fact that the allegedly infringing works are … not substantially similar." *Rentmeester v. Nike*, 883 F.3d 1111, 1123 (9th Cir. 2018) (citing *Christianson v. West Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945)); *see also Masterson*, 821 F. App'x at 781 ("[T]here will also be times where the court's 'judicial experience and common sense' shows that the claims are not

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

plausible and that a comparison of the two works creates no more than a 'mere possibility of misconduct.'") (quoting *Iqbal*, 556 U.S. at 679).[2]

Plaintiff's support for the contention that expert testimony is required is one out-of-district case, *Smith v. AMC Networks*, 2019 WL 402360 (N.D. Cal. Jan. 31, 2019). In *Smith*, the Court denied defendants' motion to dismiss, but it based its decision on infringement cases dealing with a musical composition (*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004)), intricate fabric textile designs (*French West, Inc. v. Macy's Inc.*, 2013 WL 12133844 (C.D. Cal. Jan. 29, 2013)), and a case where "neither party … attached copies of the works at issue for the court to consider" (*see Cabell v. Zorro Prods. Inc.*, 2017 WL 2335597, at *8 (N.D. Cal. May 30, 2017)). *Smith* cannot overcome ample Central District and Ninth Circuit precedent for how to handle literary substantial similarity cases at the motion-to-dismiss stage, especially where, as here, both works are properly before the Court. Plaintiff's attempt to upend longstanding precedent that courts may dismiss literary copyright-infringement cases for lack of substantial similarity should be rejected.

## III.    PLAINTIFF'S MISCHARACTERIZATIONS OF THE WORKS CANNOT SAVE ITS INFRINGEMENT CLAIM

In response to Defendants' fifteen-page analysis walking through the extrinsic test and refuting Plaintiff's alleged similarities (*see* Mot. at 11-25), Plaintiff accuses Defendants of "ignor[ing] a large number of overt similarities" but fails to point to any. *See* Opp. ¶ 8. Plaintiff does nothing to rebut that the purported similarities between the works consist solely of *scenes a faire* common to the

---

[2] Contrary to Plaintiff's assertions (*see* Opp. ¶ 46), the Ninth Circuit's holding in *Rentmeester* that dismissal is appropriate at the pleading stage remains controlling authority. *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020), abrogated the "inverse ratio rule" in the Ninth Circuit, which formerly stated that "the stronger the evidence of access, the less compelling the similarities between the two works need be in order to give rise to an inference of copying." *Id.* at 1066. It has no bearing on *Rentmeester*'s applicability here.

survival genre or naturally flowing from a plane crash survival story (which are not protectable) and Plaintiff's own conclusory assertions and gross mischaracterizations (which receive no weight when the works themselves are available to the Court). *Carroll Shelby Licensing, Inc. v. Halicki*, 643 F. Supp. 3d 1048, 1054 (C.D. Cal. 2022) ("the works themselves supersede and control contrary descriptions of them") (citation omitted). A review of the claimed "similarities" reveals the works fall far short of substantial similarity.

**A.    Plot**

According to Plaintiff, the alleged overarching similarity between *Eden* and *Yellowjackets* is that both works involve "a highly skilled soccer team" forced "to survive after a plane crash in a desolate area while traveling to or from a top-level tournament." Opp. ¶ 21. This is nothing more than a "general plot idea[]," which as the Ninth Circuit has held, "[is] not protected by copyright law." *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985); *see also Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (finding no substantial similarity because "[a]ny similarities in plot exist[ed] only at [a] general level for which plaintiff cannot claim copyright protection").

Contrary to Plaintiff's assertion (*see* Opp. ¶ 44), *Berkic* is directly on point. There, after reviewing the works at issue, the Ninth Circuit acknowledged that "[a]t a very high level of generality," there was "a certain gruesome similarity" between defendants' novel and motion picture, on the one hand, and plaintiff's screen treatment, on the other. 761 F.2d at 1293. Both sets of works "deal[t] with criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants," and featured a "general story" about "a young professional who courageously investigates, and finally exposes, the criminal organization." *Id.* Nevertheless, the court held that "a comparison of the plot, theme, dialogue, mood, setting, pace, and sequence" revealed that the works were dissimilar in key aspects. *Id.* (citing *Litchfield*, 736

F.2d at 1356).  Any remaining similarities between the works were *scenes a faire*; regardless of whether those were "[t]aken separately or together," such common elements did not allow a reasonable inference that the works at issue were substantially similar.  *Id.* at 1293-1294.

And in *Collier v. McKay*—decided only in January—Judge Garnett dismissed similar copyright allegations because the plaintiff could not plead substantial similarity.  --- F. Supp. 3d ----, 2025 WL 101646 (C.D. Cal. Jan. 7, 2025).  The Court noted that both works' plots featured "low-level scientists [who] discover large comets predicted to collide with the Earth; appear on talk shows to inform the public of their findings, with initial public apathy; and the works culminate in 'mayhem' as the comets become[] visible from Earth." *Id.* at \*6.  But the Court held that those similarities were mere "*scenes a faire* that flow from the concept of an impending comet strike on the Earth."  *Id.* (citing *Berkic*, 761 F.2d at 1293).  Here, like in *Berkic* and *Collier*, Plaintiff's alleged similarities are *scenes a faire* common to the survival genre and cannot sustain a copyright-infringement claim.  *See* Mot. at 12-15.

Likewise, even if the Court were to countenance the assertion that the stated premise of *Yellowjackets* is "original" to Plaintiff (Opp. ¶ 21)—despite the numerous films and television series cited in the Motion which explore this similar idea, including the film and television series recounting the *true story* of Uruguayan Air Force Flight 571—a premise itself is unprotectable, no matter how original.  17 U.S.C. § 102(b).  Beyond the fact that both works center on a soccer team marooned by a plane crash, the protectable elements of the plots in *Eden* and *Yellowjackets* are fundamentally different.  *See* Mot. 3-8, 15-18.  Further, even the expression of this premise is different between the works: *Eden* centers on the U.S. Men's National Soccer Team when their plane crashes while returning home from the World Cup, while *Yellowjackets* follows a New Jersey high school girls' soccer team whose plane crashes on the way to a tournament.  *See* Mot. at 3-4.

Apart from this unprotectable premise, the similarities alleged by Plaintiff are primarily tropes and *scenes a faire* to the survival genre. *See* Mot. at 12-18. Plaintiff's Complaint and Opposition thus reflect exactly the type of pseudo-analysis that courts warn against when assessing substantial similarity—*i.e.*, a list of "random similarities scattered throughout the works," which are "inherently subjective and unreliable." *See Litchfield*, 736 F.2d at 1356. For the few remaining alleged similarities, a review of the works at issue readily reveals that Plaintiff ignores important dissimilarities and mischaracterizes the rest:

- Plaintiff concedes that the alleged "escape attempt" in the two works is different: "the escape attempt in *Eden* led to [] rescue while the escape attempts in *Yellowjackets* end in failure." Opp. ¶ 30. Plaintiff discounts this glaring dissimilarity because "it is clear that the *Yellowjackets* group will be saved—it is just unclear how." *Id.* This argument only undermines Plaintiff's claim of similarity. *First*, it concedes that the way in which the respective survivors in *Eden* and *Yellowjackets* attempt to escape the wilderness is entirely different.[3] *Second*, Plaintiff ignores that escape attempts and eventual rescue are *scenes a faire* to the survival genre; indeed, *every* film and television series cited in the Motion concludes with the survivors being rescued. Mot. at 13-14.

- Plaintiff makes the incredible assertion that Connie taking his own life as a result of "the psychological toll of isolation, desperation, and breakdown of societal norms" in *Eden*, "though not identical, is similar" to Coach Ben in

---

[3] The escape attempt in *Eden* involves two of the players stealing a raft and physically fighting off their teammates while paddling away to escape, before ultimately securing help. The escape attempt in *Yellowjackets* involves innocent, deeply religious Laura Lee learning to fly the two-propeller plane they found, and flying it to find help, with the team cheering and supporting her at the runway. However, the plane mysteriously combusts mid-air, resulting in a tragic failed escape and her death. Although the idea of an escape is present in both works, the expression of this idea could not be more different.

*Yellowjackets* fleeing the cabin after witnessing the girls "dismember and cook Javi's body." Opp. ¶ 31; Mot. at 7. Defendants are hard-pressed to find any similarity here, particularly because whether Coach Ben survives the wilderness has yet to be revealed (in any event, he is alive at the end of Season 2's wilderness timeline). Plaintiff then proffers the conflicting assertion that Coach Ben fleeing the cabin also is similar to Andreas's descent into animalistic violence, and his ultimate decision to evade rescue by "running into the jungle" at the end of *Eden*. Opp. ¶ 33. But Coach Ben's motivation in fleeing the cabin is the opposite of Andreas's decision to run into the jungle: it is a rejection of the girls' barbaric act of cannibalism, not an embrace of animalistic violence. *See* Ex. 3, Ep. 209 at 0:19:40. After these differences are stripped away, Plaintiff's argument merits no weight; running into the wilderness during a suspenseful scene in a survival story is not a protectable plot element.

- Plaintiff finally admits that cannibalism "does not actually occur" in *Eden*, but nevertheless doubles down on its specious allegation that "[c]annibalism arises in both stories" by asserting that "*Eden* clearly alludes to cannibalism at multiple points." Opp. ¶ 33; Compl. ¶ 33(m). But the excerpted dialogue in the Opposition has nothing to do with cannibalism. In the conversation between Andreas, Connie, Felix, and Patton (Opp. at 12-13), Andreas is pushing the survivors to withhold rations from teammates too badly injured to survive so that the rest will have enough food and water until they are rescued—he is not suggesting that the group resort to cannibalism. *See* Mot. at 3. And in the conversation between Andreas and Slim (Opp. at 13-14), Andreas is rejecting Slim's attempt to bring him back into the fold, foreshadowing the film's climax in which Andreas returns to the main island to take the last of the rations from Slim by force. *See* Mot. at 4. Andreas is not suggesting that he is going to kill and eat Slim.

- Plaintiff's attempt to draw a parallel between Connie throwing himself off a cliff in *Eden* (Ex. 1 at 0:42:09) and Misty in *Yellowjackets* inadvertently

killing a teammate by accidentally backing her off a cliff after Misty reveals that she destroyed the plane's emergency locator beacon (Ex. 3, Ep. 205 at 31:08) is a stretch. These plot points are not remotely similar. In any event, the device of a character falling or being forced off of a drop during a survival story is too abstract for protectability, as with the other plot points which Plaintiff seeks to monopolize.[4]

- Although in both *Eden* and *Yellowjackets* the characters discover "a cache of goods" and "wreckage of previous expeditions," even a cursory review of the works undermines any purported similarity between these two plot points. *See* Opp. ¶ 35. In *Eden*, two team members literally stumble into a barbed-wire-covered military dugout with a lone skeleton dressed in Japanese army fatigues. Mot. at 17; Ex. 1 at 0:42:59. As one team member attempts to free himself from the barbed wire, the other steps on a landmine that blows off both his legs. *Id.* at 0:43:37. The military dugout does not feature again in the rest of the film and is not used for shelter. *See* Opp. ¶ 35. In *Yellowjackets* the girls find an abandoned cabin and an old but functional two-propeller plane. Mot. at 5, 17. The cabin becomes a refuge for the survivors and a central location for the first two seasons, and the plane later combusts during a failed escape attempt. *Id.* The alleged similarities presented by Plaintiff are nothing more than blatant mischaracterizations.

- Finally, contrary to Plaintiff's mischaracterization, and unlike the survivors in *Eden*, the girls in *Yellowjackets* do not break into rival factions where one group "[is] driven to embrace a 'survival of the fittest' attitude." Opp. ¶ 36. Rather, for the first two seasons, the girls live and work together, and ultimately, the decision to sacrifice Javi is done for the collective good so that the rest may survive. *See* Mot. at 7. In *Eden*, by contrast, Andreas's motivation in leading his faction to take back the rations from Slim by force is to ensure his own survival to the

---

[4] For example, in *The Edge* (1997), one of the main protagonists backs another character up to the edge of a hidden pitfall; the character then falls into the pit and sustains fatal injuries.

1    detriment of his teammates. *See id.* at 4. These plot points are different in every

2    protectable respect.

3    **B.    Characters**

4         Plaintiff fails to provide any specific analysis of alleged similarities between

5    the characters in *Eden* and *Yellowjackets* (*see* Opp. ¶¶ 38-39), and ignores the

6    overwhelming dissimilarities highlighted in the Motion. Mot. at 19-23. Instead,

7    Plaintiff makes the conclusory assertion that despite the fact that *Eden* provides

8    almost no character development, the characters are "still substantially similar"

9    because the characters in *Yellowjackets* "merely inverted the gender of the

10   characters" in *Eden* and "altered their ages." Opp. ¶¶ 38, 47. But even accepting

11   that description as true (which it is not, *see* Mot. at 19-23) "significant age gap[s]"

12   and "different maturity levels" are precisely the types of differences between

13   characters that undermine a finding of substantial similarity as a matter of law.

14   *See, e.g.*, *Tiscareno v. Netflix*, 2014 WL 12558125, at *9 (C.D. Cal. Mar. 6, 2014)

15   (holding "40-something, divorced, brooding" protagonist was not similar to

16   "somewhat immature, 20-something with a cavalier … attitude").

17        In the Opposition, the only two characters that Plaintiff bothers to address are

18   Connie, the adult male physical trainer in *Eden*, and Misty, the teenage female

19   equipment manager in *Yellowjackets*. Opp. ¶ 39. But even here, Plaintiff concedes

20   that the "perspectives and moods" of these characters are vastly different: whereas

21   Connie equivocates when asked to "aid[] the wounded of the wreckage" but does so

22   "whether he wants to or not" (*id.*), Misty gleefully embraces her role as first

23   responder, and revels in the new-found respect from her teammates so much so that

24   she sabotages the team's only chance at immediate rescue. *See* Mot. at 5; *see also*

25   *Tiscareno*, 2014 WL 12558125, at *9. Plaintiff's tacked-on assertion that Connie,

26   like Misty, is a misfit because he is "the only adult," make no sense—all of the

27   characters in *Eden* are adults. *See* Opp. ¶ 39. And Misty is not a misfit because she

28   is a different age than the rest of her teammates (which she is not); she is a misfit

because she is socially awkward (and perhaps slightly deranged). Connie and Misty are not similar, nor are any of the other characters that Plaintiff fails to address.

## C.    Dialogue

Plaintiff fails to provide the Court with any specific analysis showing substantial similarity of dialogue. Opp. ¶¶ 42-43. Plaintiff instead merely parrots its allegations of purported thematic similarities in dialogue from the Complaint; Plaintiff does not—and cannot—point to even one single instance of shared dialogue between the works. *Id.*; *see also* Compl. ¶ 35. Nor is Plaintiff's suggestion that through amendment it could show "extended similarity of dialogue" availing where it made no attempt to do so in the Complaint or its Opposition. *See Silas v. Home Box Office*, 201 F. Supp. 3d 1158, 1180-81 (C.D. Cal 2016) (quoting *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988)).

## D.    Setting and Pace

Plaintiff's only argument as to setting is that both works take place "in a desolate area." Opp. ¶ 41. Such an abstract description is not only an unprotectable idea, but also *scenes a faire* to the survival genre. *See* Mot. at 12-13. *Cf. Silas*, F. Supp. 3d at 1176 ("[t]he mere fact that the two shows are set in the same city does not give rise to a finding of substantial similarity of copyrightable expression"). And in any event, the two works' expression of the idea of a "desolate area" is diametrically different: *Eden* takes place on a hot, tropical desert island somewhere in the Pacific Ocean, while *Yellowjackets* takes place in a remote Canadian forest (among other locations), partly in winter. Mot. at 3-8, 24. Plaintiff's repeated assertion that the "only difference[]" in these settings is the "mere inversion[] … from hot to cold," is a gross mischaracterization that underscores the vast differences not only in setting but also the hardships the

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

survivors are forced to contend with in the two works.  Opp. ¶ 3; *see id.* ¶ 24.[5]
Simply put, the settings are not similar in *Eden* and *Yellowjackets*.

And as to pace, even if the Court focuses only on the survival timeline in *Yellowjackets*, that story alone takes place over nineteen months.  Mot. at 6.
In contrast, the survivors in *Eden* are rescued after a mere fourteen days.
*See generally* Ex. 1.  Plaintiff's only other argument is that both works "balance[] slower, character-driven moments with more intense, plot-driven sequences."
Opp. at 33.  As explained in the Motion, this allegation is a generic observation, true of countless dramatic films and television series with an ensemble cast.
*See* Mot. at 24.  Such a generic storytelling device is not protectable and cannot support a finding of substantial similarity as a matter of law.

**E.    Mood and Theme**

Again, Plaintiff fails to provide the Court with any specific analysis showing substantial similarity the works' moods or themes.  Opp. ¶ 40.  Plaintiff acknowledges the present-day timeline in *Yellowjackets* "adds complexity" to the themes in the series but nevertheless asserts—without any explanation—that the moods and themes in the "survival-based storyline in *Yellowjackets* [are] substantially similar to *Eden*."  *Id.*  Plaintiff's conclusory statement cannot support a

_____

[5] Plaintiff's reliance on *Jarvis v. K2*, 486 F.3d 526 (9th Cir. 2007), and *ITC Textile Ltd. v. Wal-Mart Stores*, 2015 WL 12712311 (C.D. Cal. Dec. 16, 2015), to support its argument that the Court should overlook the clear dissimilarities in setting because "the type of desolate area the team crashes in" is merely inverted from hot to cold is unavailing.  *Jarvis* dealt with the alleged creation of infringing derivative collage works using the plaintiff's actual photographs.  *Jarvis*, 486 F.3d at 528, 532.  The Complaint does not allege that Defendants actually used excerpts of Plaintiff's film in their series.  Likewise, the court in *ITC Textile Ltd.*, which was a case involving direct copying of certain textile designs, held that despite alleged slight modifications in the infringing design, defendants engaged in "unauthorized reproduction and unauthorized creation of a derivative work."  2015 WL 12712311, at *5.  Neither case is applicable here.

finding of substantial similarity. *See Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

*Eden* is a somber thriller, whereas *Yellowjackets* is a darkly comedic horror-mystery. Plaintiff has made no attempt to rebut the fact that key themes in *Yellowjackets*—namely, teenagers coming of age, the strength and fragility of adolescent female friendships, and the lingering impact of childhood trauma throughout one's life—are entirely absent from *Eden*, which instead focuses solely on the well-trodden trope of how ideals of cooperation and trust are quickly subsumed by animal instincts when humans are forced to survive under dire conditions. *See* Mot. at 18-19. The works' moods and themes are not similar.

## IV.    PLAINTIFF'S SELECTION-AND-ARRANGEMENT THEORY FAILS

Plaintiff attempts to salvage its claims by alleging for the first time in its Opposition that the works share a protectable selection and arrangement of otherwise unprotectable elements. They do not. The Ninth Circuit has long held that "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). This standard is demanding, and the Ninth Circuit has not found infringement under this "selection and arrangement" theory in any case involving a film, television series, book, play, or other literary work in more than twenty years. *See, e.g., Rice v. Fox Broadcasting*, 330 F.3d 1170, 1178-79 (9th Cir. 2003) (rejecting plaintiff's argument where works did not involve the "same pattern of generic similarities").[6] On the contrary, courts

---

[6] Moreover, the lone Ninth Circuit case finding a trier of fact could infer infringement of a protectable selection and arrangement between two literary works relied on the now-defunct inverse-ratio rule, through which courts previously required a lower showing of substantial similarity if a plaintiff showed a high level of access. *Metcalf v. Bochco*, 294 F.3d 1069, 1075 (9th Cir. 2002) ("The Metcalfs' case is strengthened considerably by Bochco's concession of access to their

routinely reject plaintiffs' attempts to plead copyright infringement by selection-and-arrangement where the works themselves treat the allegedly selected elements in different ways, as is the case here. *See, e.g.*, *Collier*, 2025 WL 101646, at *4, 7-8 (conducting "holistic analysis" and rejecting selection-and-arrangement theory where plaintiff failed to identify "concrete similarities" between the works); *Ricketts v. CBS*, 39 F. Supp. 3d 1199, 1221 (C.D. Cal. 2020) (rejecting plaintiff's selection-and-arrangement argument where the works "[told] decidedly different stories;" holding that "most of the similarities between the two works flow[ed] from the basic plot" or were "overstate[d]") (granting judgment on the pleadings).

Here, Plaintiff's Complaint does not plead a selection-and-arrangement theory. And the Opposition does nothing to advance a viable argument that the alleged "random similarities scattered throughout" *Eden* and *Yellowjackets* are so pervasive, important, and sequential as to constitute a protectable selection and arrangement, or anything more than the anticipated sequence of events flowing from a plane crash survival story. *See Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).

*Gable v. NBC* is instructive. 438 F. App'x 587, 588-89 (9th Cir. 2011). In *Gable*, the Ninth Circuit affirmed summary judgment in favor of defendants and their television series *My Name is Earl*. Both courts rejected the plaintiff's selection-and-arrangement argument. The district court found no substantial similarity even where both works revolved around "low-life," lying, disgraced

---

works."). The Ninth Circuit abrogated the inverse-ratio rule in 2020, and accordingly, *Metcalf* is bad law. *See Skidmore*, 952 F.3d at 1066. Further, even if *Metcalf* were applicable, a selection-and-arrangement theory requires "[t]he similarities between the relevant works [to be] *striking*." *Metcalf*, 294 F.3d at 1073 (emphasis added); *see also Gilbert-Daniels v. Lions Gate Entertainment*, 2024 WL 5116299, at *2 (9th Cir. Dec. 16, 2024) (rejecting selection-and-arrangement theory). Substantial similarity is not enough; a plaintiff must show striking similarity between the works at issue. Here, Plaintiff cannot show even substantial similarity (*see* Section III, Mot. at 9-25), and did not even plead striking similarity.

characters who win the lottery, believe in karma, and "turn to making amends for their past deeds." *See Gable v. NBC*, 727 F. Supp. 2d 815, 839 (C.D. Cal. 2010). Judge Wilson held that plaintiff's list of similarities was a collection of *scenes a faire*; "[t]he concept of a bad person spending time in prison, and then trying to clean up their act by making restitution and getting a job are unprotectable *scenes-a-faire* in a story about redemption" and "the visual effect of a piece of paper magically floating back to someone … is commonly used in works that involve themes of serendipity and fate." *Id.* at 841-842.  The Ninth Circuit agreed, holding that "superficial points of comparison" between plaintiff's screenplay and defendants' television series were "gleaned haphazardly from three seasons of the … series," and did not support any infringement of "a 'selection and arrangement' of otherwise unprotectable elements."  438 F. App'x at 588-589; *see also* 727 F. Supp. 2d at 840-841 (rejecting plaintiff's attempt to fashion plot mischaracterizations and *scenes a faire* into selection-and-arrangement theory). Here too, Plaintiff's list of alleged similarities consists of "superficial points of comparison" and mischaracterizations that do not support Plaintiff's selection and arrangement theory.  *See* Mot. at 12-25.

Again, rather than address Defendants' cases, Plaintiff looks to inapposite decisions with unanalogous facts.  Plaintiff primarily relies on *Malibu Textiles v. Label Lane Int'l*, 922 F.3d 946 (9th Cir. 2019), which dealt with "strikingly similar[]" floral lace textile designs—not literary works of any kind—where the parties' fabrics "contain[ed] nearly identical floral, leaf, boteh, and dot elements, and those elements [were] arranged in virtually the same way."  *Id.* at 953-54. Plaintiff also cites *Moonbug Entertainment v. BabyBus (Fujian) Network Tech.*, in which the court affirmed a jury award of character-design infringement in a children's animated series where plaintiff presented "substantial evidence … of 121 elements that [the original and infringing characters] expressed similarly," and was able to show that those specific design elements were arranged in the precise

same way in both characters.  2024 WL 2193323, *9-10 (N.D. Cal. May 15, 2024).
Unlike the plaintiff in *Moonbug*, Plaintiff alleges fourteen highly abstract purported
similarities, many of which not only are unprotectable but are expressed differently
between the works at issue.  Those alleged similarities lack the numerosity and
particularity that the Ninth Circuit has stringently required for plaintiffs to plead a
selection-and-arrangement theory.  *See Gilbert-Daniels*, 2024 WL 5116299, at *2
(affirming dismissal and distinguishing *Metcalf* where there was "no 'striking'
similarity between the two works' sequence and arrangement of unprotectable
elements").

    Even if Plaintiff could claim copyright protection in its selection of vaguely
pleaded similarities, Plaintiff has not shown the arrangement of those similarities is
similar between the works, or even original to Plaintiff.  *See Skidmore*, 952 F.3d at
1075 (explaining selection-and-arrangement theory applies only to "substantial
amounts" of shared elements combined in the same "*novel* arrangement").  For
example, Plaintiff alleges that in both works "[c]haracters discover wreckage of
previous expeditions in the isolated location."  Compl. ¶ 33(g).  In *Yellowjackets*,
the girls find an abandoned cabin at the beginning of the series (Ex. 2, Ep. 103 at
34:47), whereas in *Eden*, the teammates discover a military dugout nearly halfway
through the film (Ex. 1 at 0:42:47).  And Plaintiff alleges that "[m]any players die
in the plane crash" then "[t]he surviving characters are rescued by an outside force"
(Compl. ¶¶ 33(b) and (n)), but this arrangement itself is a staple of the genre.
Countless survival works begin with a plane crash in which many of the characters
die, and later, the survivors are rescued.  *See* Mot. at 12-15.  Indeed, it would be
unusual for survivors to be shown being rescued *before* the crash necessitating the
rescue.  This common sequencing of tropes of survival *scenes a faire* does not
demonstrate a protectable selection and arrangement.  *See, e.g.*, *Berkic*, 761 F.2d at
1293-1294 (tropes and *scenes a faire*, regardless of whether "[t]aken separately or

1   together … do not allow a reasonable inference that the works at issue are

2   substantially similar").

## V.    PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED BECAUSE AMENDMENT WOULD BE FUTILE

5          The Court need only review the works at issue to conclude that *Eden* and

6   *Yellowjackets* are not substantially similar as a matter of law.  *See Christianson*, 149

7   F.2d at 203; *Masterson*, 821 F. App'x at 779-780; *Collier*, 2025 WL 101646, at *4-

8   7.  Plaintiff cannot plead around the works' overwhelming differences; the works

9   themselves control.  *Cf. Bernal v. Paradigm Talent & Lit. Agency*, 788 F. Supp. 2d

10  1043, 1064-1066 (C.D. Cal. 2010) (disregarding mischaracterized similarities

11  identified by expert and instead comparing the works themselves).  Because

12  Plaintiff cannot state a claim for infringement, the Court should reject Plaintiff's

13  request for leave to amend because amendment would be futile.  *See Pretty in*

14  *Plastic v. Bunn*, 793 F. App'x 593, 594 (9th Cir. 2020) (finding "district court did

15  not err in concluding that further amendment would be futile" where "'no

16  reasonable juror' could find that 'substantial similarity of ideas and expression'

17  exists between the two works") (citing *Leadsinger, Inc. v. BMG Music Publ'g*, 512

18  F.3d 522, 532-33 (9th Cir. 2008)); *see also Esplanade Prods.*, 768 F. App'x at 734

19  (affirming dismissal without leave to amend where, after comparing the works at

20  issue, "[n]o discovery or expert testimony could show how the works are similar, so

21  the claim is not plausible"); *Heusey*, 692 F. App'x at 929 (after comparing the

22  works at issue, holding "[t]he district court did not abuse its discretion by

23  dismissing [plaintiff's] complaint without leave to amend because amendment

24  would be futile"); *Wild*, 513 F. App'x at 642 (comparing the two works and

25  affirming decision to dismiss plaintiff's claims without leave to amend where

26  proposed amendment "would have no impact on [the court's] analysis" of

27  substantial similarity); *Gadh v. Spiegel*, 2014 WL 1778950, at *2, 6 (C.D. Cal.

28  April 2, 2014) (dismissing infringement claim without leave to amend where

17

motion picture and script were not substantially similar as a matter of law such that "permitting … plaintiff to amend would be an exercise in futility").

## VI.    CONCLUSION

*Eden* and *Yellowjackets* may share certain survival-genre tropes and *scenes a faire*, but they are not substantially similar as a matter of law.  Defendants respectfully request that this Court dismiss Plaintiff's Complaint with prejudice.


DATED: March 10, 2025                   DAVIS WRIGHT TREMAINE LLP
                                        NICOLAS A. JAMPOL
                                        CYDNEY SWOFFORD FREEMAN
                                        JOEL RICHERT

                                        By:   /s/ Nicolas A. Jampol
                                                    Nicolas A. Jampol

                                        Attorneys for Defendants
                                        LIONS GATE ENTERTAINMENT,
                                        INC., SHOWTIME NETWORKS INC.,
                                        BEER CHRISTMAS, LTD., ASHLEY
                                        LYLE, and BART NICKERSON