Anya Fuchs, Esq.
Anya Fuchs, PC
440 E. Huntington Drive, Suite 300
Arcadia, CA 91006
Telephone: 510-685-9717
Facsimile: 510-743-7147
anya@anyafuchslaw.com

Charles M. Stam (*pro hac vice* filed)
Thompson Stam PLLC
717 Texas Avenue, Suite 1200
Houston, Texas 77002
Telephone: (844) 846-7826
Facsimile: (713) 379-8076
charles@thompsonstam.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| EDEN FILM PRODUCTION LLC, a Delaware corporation,<br><br>                                    Plaintiff,<br><br>vs.<br><br>LOCKJAW LLC, a California corporation; ASHLEY LYLE, an individual; BART NICKERSON, an individual; BEER CHRISTMAS, LTD., a California corporation; SHOWTIME NETWORKS INC., a California corporation; LIONS GATE ENTERTAINMENT, INC., a Delaware corporation; and DOES 1 – 10, inclusive,<br><br>                                    Defendants. | Case Number: 2:24-cv-09851-DDP-SK<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES**<br><br>Date:        July 14, 2025<br>Time:        10:00 a.m.<br>Crtrm:      9C |

# <u>TABLE OF CONTENTS</u>

I.   Introduction...................................................................................1

II.   Legal Standard .............................................................................3

III.   Arguments and Authority ............................................................5

    A.   Plaintiff's claim was reasonable, and Defendants knew as much before they filed the Motion.................................................5

    B.   The Order overlooks Plaintiff's claims. ...........................7

    C.   Plaintiff had a proper motive and any punishment is unwarranted. ..10

    D.   Defendants' fees are unreasonable....................................11

       1.   Many portions of Defendants' Motion are copied from a prior brief submitted by their counsel.................................13

       2.   Defendants spent an exorbitant amount of time preparing their Motion to Dismiss: 99.7 hours, which they claim are worth $49,642 in attorneys' fees ........................................14

       3.   For the Reply in support of their Motion to Dismiss, Defendants spent 60.3 hours, equating to an amount they claim are worth $34,491 in attorneys' fees. .......................................15

       4.   Defendants' counsel spent nearly a whole work week—33.9 hours—which equates to $21,923 in attorneys' fees, preparing for the hearing on their Motion to Dismiss.............................16

       5.   Defendants' counsel spent 39.7 hours, equating to $21,949 in attorneys' fees, to prepare the Motion for Attorneys' Fees.....16

IV.   Conclusion & Prayer....................................................................17

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**

*Brod v. Gen. Publ'g Grp., Inc.*,

   32 F. App'x 231 (9th Cir. 2002)....................................................................... 5

*Carlini v. Paramount Pictures Corp.*,

   No. 2:19-CV-08306, 2021 WL 8822464, at *1 (C.D. Cal. July 2, 2021)............. 5

*Chalmers v. City of Los Angeles*,

   796 F.2d 1205 (9th Cir. 1986)..................................................................... 13, 14

*Dytch v. Maxaco, LLC*,

   No. 17-CV-00438, 2019 WL 1934879, at *5 (N.D. Cal. May 1, 2019)............. 12

*Ets-Hokin v. Skyy Spirits, Inc.*,

   323 F.3d 763 (9th Cir. 2003)............................................................................. 4

*Fantasy, Inc. v. Fogerty*,

   94 F.3d 553 (9th Cir. 1996)............................................................................... 4

*Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*,

   499 U.S. 340 (1991) .......................................................................................... 8

*Fogerty v. Fantasy, Inc.*,

   510 U.S. 517 (1994) .......................................................................................... 3

*Fox v. Vice*,

   563 U.S. 826 (2011) .......................................................................................... 3

*Gable v. Nat'l Broad. Co.*,

   438 F. App'x 587 (9th Cir. 2011)....................................................................... 8

*Gregorini v. Apple Inc.*,

   Case No. 20-406-JFW(JCx) (C.D. Cal. Jan. 28, 2022)..................................... 13

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,

   547 F.3d 1213 (9th Cir. 2008)........................................................................... 5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re Bluetooth Headset Prod. Liab. Litig.*,

   654 F.3d 935 (9th Cir. 2011) ..................................................................... 3

*Johnson v. Storix, Inc.*,

   716 F. App'x 628 (9th Cir. 2017) ........................................................... 3, 4

*King v. IM Glob.*,

   No. CV1509646, 2017 WL 2620695, at *3 (C.D. Cal. Jan. 25, 2017) ............... 5

*Kirtsaeng v. John Wiley & Sons, Inc.*,

   —— U.S. ——, 136 S.Ct. 1979 (2016) ................................................... 3, 4

*Leon v. Pac. Tel. & Tel. Co.*,

   91 F.2d 484 (9th Cir. 1937) ...................................................................... 10

*Lieb v. Topstone Indus., Inc.*,

   788 F.2d 151 (3d Cir. 1986) ........................................................................ 3

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,

   922 F.3d 946 (9th Cir. 2019) ................................................................. 8, 11

*Metcalf v. Bochco*,

   294 F.3d 1069 (9th Cir.2002) ................................................................. 8, 9

*Michael Grecco Prods. Inc v. ImageSelect B.V.*,

   No. LA CV22-07398, 2024 WL 5424110, at *4 (C.D. Cal. Dec. 4, 2024) ......... 4

*Pasillas v. McDonald's Corp.*,

   927 F.2d 440 (9th Cir. 1991) ...................................................................... 4

Satava v. Lowry,

   323 F.3d 805 (9th Cir. 2003) ...................................................................... 8

*Scott v. Meyer*,

   No. CV 09-6076, 2010 WL 2569286, at *3 (C.D. Cal. June 21, 2010) ............. 10

*Segal v. Rogue Pictures*,

   No. CV105650, 2012 WL 13005531, at *2 (C.D. Cal. July 19, 2012) ............ 4, 5

*Shame On You Prods., Inc. v. Banks*,

   893 F.3d 661 (9th Cir. 2018) ............................................................... 3, 12

*Sound & Color, LLC v. Smith*,

    No. 23-2680, 2025 WL 1232639, at *1 (9th Cir. Apr. 29, 2025) ........................ 7

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,

    52 F.4th 1054 (9th Cir. 2022) ................................................................... 3

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,

    No. CV081085JVSAJWX, 2009 WL 10655841, at *2 (C.D. Cal. Sept. 29, 2009)

    ................................................................................................... 13

*Urb. Textile, Inc. v. Specialty Retailers, Inc.*,

    No. 215CV03456ODWFFM, 2017 WL 5983761, at *2 (C.D. Cal. June 15, 2017)

    ................................................................................................... 13

Plaintiff's Response in Opposition to
Defendants' Motion for Attorneys' Fees

Plaintiff Eden Film Production LLC responds to Defendants' (Lions Gate Entertainment, Inc., Showtime Networks Inc., Beer Christmas, Ltd., Ashley Lyle, and Bart Nickerson) Motion for Attorneys' Fees [ECF No. 42] ("Motion"), and, in support, shows the Court the following:

## I.    INTRODUCTION

1.    The Court dismissed Plaintiff's claims in an Order that overlooked Plaintiff's selection and arrangement argument or analysis of the multiple similarities between the works. [ECF. No 39] ("Order"). After the Court denied Plaintiff the chance to amend its complaint (for the first time), Defendants pounced, moving for fees based on two of fourteen shared plot points that the Court analyzed differently than Plaintiff. Defendants' Motion ignores Plaintiff's (unfiled) supplemental briefing they were provided[1] in myopically focuses on those two plot points, cannibalism and suicide, to repeat the Court's claim that "many of the alleged similarities were false on the face of the works" [Motion, 1:10-12]— though only two of fourteen were analyzed in the Order. Defendants thus distort the Court's disagreement with Plaintiff's interpretation to spuriously support a finding of improper motivation or frivolous filings warranting fees.

2.    While claiming they are furthering the cause of "deterring meritless litigation," Defendants strong armed Plaintiff from the start of this litigation, even threatening to move for fees during the first conferral between their counsel. At bottom, Defendants' Motion is about intimidation, not deterrence.

3.    If Plaintiff had been allowed to, it could have pleaded its case with finer details—as shown by the supplement it sent to Defendants after the hearing on its Motion to Dismiss. [Ex. 1 (April 23, 2025 email with supplement attached)]. That said, and though the Court did not have the supplement, its Order ignored

---

[1] Plaintiff prepared a post-hearing supplement to present the Court after the hearing on April 21, 2025, and sent it to Defendants' counsel before the Order [ECF No. 42] was issued, but was not able to file it, in accordance with the Local Rules, before the Order [ECF No. 39] was issued. Exhibit 1 (Email to Defendants' counsel with chart of similarities attached).

Plaintiff's selection and arrangement argument [ECF No. 33, 7:7-10:12],[2] and with it twelve of fourteen similarities noted by Plaintiff [*id*., 3:6-4:10], failing to explain how those similarities do not amount to an infringing selection and arrangement of elements.[3]

4.      Instead, the Order's tunnel vision gave short shrift to the vast majority of Plaintiff's pleaded similarities in only focusing on the differences noted by Defendants (which, as Plaintiff observed, would be present in comparing a multi-season television show to a movie). [*Id*., 1:26-2:6]. This is despite Plaintiff's main argument being that Yellowjackets infringes Eden under a selection and arrangement theory because the entirety of Eden was subsumed into Yellowjackets. [*Id*.; *see also* Ex. 1, 3:20-8:7].

5.      Armed with this ammunition Defendants disingenuously leverage the Order to argue they meet the factors for awarding fees: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness, both in the factual and legal arguments in the case; and (5) the need in particular circumstances to advance considerations of compensation and deterrence. Motion, 4:4-7. Plaintiff does not dispute that Defendants achieved "success" in the litigation,[4] Defendants manipulate factors (2)-(5) by ascribing false motivations to

---

[2] "A combination of unprotectable elements is eligible for copyright protection 'if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'" Malibu Textiles, Inc. v. Label Lane Int'l, Inc., 922 F.3d 946, 952 (9th Cir. 2019) (quoting Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003)). See also WMTI Productions, Inc. v. Healey, No. CV2002726, 2023 WL 5506712, at *3 (C.D. Cal. July 13, 2023) ("Plaintiffs need not have incanted any magic words, like 'selection' or 'arrangement'; these allegations suffice.").

[3] Plaintiff cited to Zindel for the proposition, "[d]ismissal is warranted only if, 'as a matter of law[,] the similarities between the two works are only in uncopyrightable material or are de minimis.'" Response, 6:3-6 (citing Zindel as Tr. for David Zindel Tr. v. Fox Searchlight Pictures, Inc., 815 F. App'x 158, 159 (9th Cir. 2020) (quoting Patry on Copyright § 9:86.50 (2020)).

[4] "The Supreme Court has articulated a list of [four] factors for courts to consider in determining whether to award fees: 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" Unicolors, Inc. v. H&M Hennes & Mauritz, L.P., 52 F.4th 1054, 1089 (9th Cir. 2022) (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n. 19 (1994)).

Plaintiff that lead to improper conclusions, all while failing to address the vast
majority of identified similarities, to falsely claim this is a case for fees.

6.     On such bases, as elaborated upon below, Plaintiff requests that the
Court deny Defendants' Motion.

## II.     LEGAL STANDARD

7.     "The Supreme Court has articulated a list of factors for courts to
consider in determining whether to award fees: 'frivolousness, motivation,
objective unreasonableness (both in the factual and in the legal components of the
case) and the need in particular circumstances to advance considerations of
compensation and deterrence.'" *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
52 F.4th 1054, 1089 (9th Cir. 2022) (citing *Fogerty v. Fantasy, Inc*., 510 U.S. 517,
534 n.19 (1994)). "[D]istrict courts should continue to consider the same factors,
but accord substantial weight to the [reasonableness] factor." *Shame On You
Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018).

8.     "Even though a district court has discretion to choose how it
calculates fees, we have said many times that it abuses that discretion when it uses
a mechanical or formulaic approach that results in an unreasonable reward."
*Johnson v. Storix, Inc*., 716 F. App'x 628, 632 (9th Cir. 2017) (citing *In re
Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011) (citations
and quotations omitted); *Fox v. Vice*, 563 U.S. 826, 839 (2011) ("The essential
goal in shifting fees ... is to do rough justice, not to achieve auditing perfection.")).

9.     Whether a Plaintiff's claims are neither unreasonable nor frivolous are
key factors in determining fee awards. See *Kirtsaeng v. John Wiley & Sons, Inc*., –
—U.S. ——, 136 S.Ct. 1979, 1988 (2016) (holding that courts must give
substantial weight to the objective reasonableness of losing party's position when
awarding fees); *see also Lieb v. Topstone Indus., Inc*., 788 F.2d 151, 156 (3d Cir.
1986) ("The relative financial strength of the parties is a valid consideration" in
determining "what amount is reasonable"). "While [the 9th Circuit] do[es] not pass

judgment on what [an] award should be, § 505 demands that it be reasonable." *Johnson*, 716 F. App'x at 632. "And if some court confuses the issue of liability with that of reasonableness, its fee award should be reversed for abuse of discretion." *Kirtsaeng*, 579 U.S. at 208.

10.    "Determinations about substantial similarity are rarely obvious. The present case is no exception." *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 444 (9th Cir. 1991). "While the burden of defending frivolous and objectively unreasonable litigation may be deleterious to the objectives of the Copyright Act, it is not the purpose of the Copyright Act to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful." *Michael Grecco Prods. Inc v. ImageSelect B.V.*, No. LA CV22-07398, 2024 WL 5424110, at *4 (C.D. Cal. Dec. 4, 2024) (internal citation omitted).

11.    "Although the Court rejected Plaintiff's arguments because some of the similarities were based on generic elements, and some were based on inaccurate characterizations of the works, this does not establish that Plaintiff's claim had no arguable basis in the law." *Segal v. Rogue Pictures*, No. CV105650, 2012 WL 13005531, at *2 (C.D. Cal. July 19, 2012). "Indeed, dismissal of Plaintiff's claim required a relatively lengthy and detailed analysis." *Id*. "Additionally, Plaintiff raised a nonfrivolous argument as to the applicable standard for substantial similarity, which the Court rejected." *Id*. "Had the Court concluded in Plaintiff's favor on that legal issue, its ruling might have been different." *Id*. "This lack of clarity as to the legal standard further undermines the claim that Plaintiff's claim was obviously frivolous or objectively unreasonable." *Id*.

12.    Furthermore, the Court may consider "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) (citing *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 559–60 (9th Cir. 1996)). *See*

1  *also King v. IM Glob.*, No. CV1509646, 2017 WL 2620695, at *3 (C.D. Cal. Jan.

2  25, 2017) (quoting *Brod v. Gen. Publ'g Grp., Inc.*, 32 F. App'x 231, 236 (9th Cir.

3  2002)) ("When looking at [the deterrence] factor in the context of a successful

4  defendant, courts must be careful not to 'discourage 'starving artists' from

5  defending copyrights in original works due to the threat of attorney's fees.'").

6       13.    Unsurprisingly, courts have often determined that "the sole motivation

7  at play was to protect an interest Plaintiff genuinely believed—and still believes—

8  that he possessed." *Carlini v. Paramount Pictures Corp.*, No. 2:19-CV-08306,

9  2021 WL 8822464, at *1 (C.D. Cal. July 2, 2021) (citing *Halicki Films, LLC v.*

10 *Sanderson Sales & Mktg.*, 547 F.3d 1213, 1230–31 (9th Cir. 2008)). See also *id.*

11 (citing *Segal*, 2012 WL 13005531, at *3 ("Given that the Court finds that Plaintiff

12 did not act in bad faith in bringing or pursuing this litigation, neither compensation

13 nor deterrence weigh in favor of awarding fees.").

14                   **III.   ARGUMENTS AND AUTHORITY**

15      14.    Defendants' Motion ignores the similarities Plaintiff presented to

16 them in its supplement, [Ex. 1], and ascribe improper motives to Plaintiff's good-

17 faith, reasonable claims. Plaintiff would not have created the supplement and sent

18 it to Defendants before filing, as required under the local rules, if they did not

19 believe its claims were reasonable and driven by a right to protect its copyright

20 Nonetheless, Defendants cherry-pick the two subjective disagreements the Court

21 had with Plaintiff's Complaint—which Plaintiff clarified in its Response [ECF No.

22 33, 12:21-15:19]—to request an exorbitant amount of fees.

23      15.    Plaintiff elaborates on these arguments below and requests that the

24 Court deny Defendants' Motion.

25 **A.    Plaintiff's claim was reasonable, and Defendants knew as much before**

26 **they filed the Motion.**

27      16.    Defendants' argument—that Plaintiff's "copyright claim was

28 objectively and obviously unreasonable" [Motion, 6:3-4]—is baseless and amounts

to conclusory statements that ignore Plaintiff's selection-and-arrangement argument as well as similarities noted in its supplement. See Ex. 1, 3-8. Plaintiff's supplement responds to the question the Court asked during the hearing: what does Plaintiff own under its copyright. Plaintiff provided Defendants with caselaw to argue that its "selection-and-arrangement" should survive a motion to dismiss:

> "But, at this stage of the litigation, it is difficult to know whether such elements are indeed unprotectible material." *Alfred v. Walt Disney Co.*, 821 F. App'x 727, 729 (9th Cir. 2020) (denying motion to dismiss where the "[allegedly infringing] film and the [plaintiff's] screenplay both begin with a prologue that takes place ten years prior to the main story; introduce the main characters during a battle, at gunpoint; involve treasure stories that take place on islands and in jewel-filled caves; include past stories of betrayal by a former first mate; contain fearful moments driven by skeleton crews; focus on the redemption of a young, rogue pirate; and share some similarities in dialogue and tone.").

17.    Plaintiff also provided the following table, showing that all elements of Eden were incorporated into Yellowjackets—with most shared elements appearing in the first three episodes of Yellowjackets. Ex. 1, 3:20-8:7.

18.    With blinders on, Defendants willfully ignore the supplement and submit that "reviewing the two works readily reveals that Yellowjackets did not copy protectable elements of Eden," noting the "Court found a single alleged similarity to be 'sufficiently original to be protectable,'" which was "insufficient to sustain an infringement claim." Motion, 6:7-9. That Plaintiff sent a supplement in abiding by Local Rules before filing reveals Plaintiff has not pursued litigation in bad faith or vexatiously such that Defendants' interest in deterrence rings hollow.

19.    The Order adopted Defendants' view, giving short shrift to Plaintiff's arguments that "Defendants disingenuously minimize their summary of Eden and dismiss it as a straightforward thriller, ignoring Eden's pleaded 'moments of dark humor and witty dialogue,' ECF No. 1 ("Compl."), 8:18-19, and that the 'survival' timeline of Yellowjackets incorporates the same selection and arrangements of elements as Eden." ECF No. 33 ("Response"), 2:16-20. The Order categorizes all but one of Plaintiff's noted similarities between the works as "scenes-a-fair,"

without considering the selection and arrangement of inverted elements argument
and going out of its way to note differences—instead of seeing the sum of
similarities.

20.    In turn, Defendants selectively excerpt out of context a phrase from
the Order: "[t]here can be no serious dispute." The Order employed the phrase in
reference to "escape attempts by shipwrecked or stranded survivors" being
prevalent in other works [Order, 13:25-26], while Defendants slyly use the phrase
to claim the Court was referring to "the vast majority of any elements [the works]
do share are based on common tropes and real-life facts that Plaintiff cannot own"
as being unprotectable under copyright law. Motion, 6:4-7. Based upon the chart
provided to Defendants before they filed the Motion, Plaintiff's copyright claim
was not unreasonable, both legally and factually, and the factor weighs heavily in
favor of denying Defendants' fee request.

**B.    The Order overlooks Plaintiff's claims.**

21.    First, the Order cites to caselaw referring to a factual compilation and
not an infringing work of art to argue "non-protectible arguments" can be
disregarded [Order, 5:25-6:18], as it overlooked Plaintiff's selection and
arrangement argument. Though the Ninth Circuit does not have a "well-defined
standard for assessing when similarity in selection and arrangement becomes
substantial," it "suggested generally that the 'selection and arrangement of
elements must be similar enough that the ordinary observer, unless he set out to
detect the disparities, would be disposed to overlook them.'" *Sound & Color, LLC
v. Smith*, No. 23-2680, 2025 WL 1232639, at *1 (9th Cir. Apr. 29, 2025).

22.    Yet the Order does not discuss the selection and arrangement
argument and instead cites to Feist, a case referring to compilations of facts and not
a selection and arrangement of cinematic elements, to claim "copyright protection
may extend only to those components of a work that are original to the author."
Order, 5:25-6:1 *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 358

(1991). That caselaw is only a partial statement of law because there are also courts holding, "combination of unprotectable elements is eligible for copyright protection 'if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'" *Malibu Textiles, Inc. v. Label Lane Int'l, Inc*., 922 F.3d 946, 952 (9th Cir. 2019) (quoting Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003)).

23.    The Order then claims Plaintiff is merely amalgamating similarities that occur in similar genres, citing to Gable v. Nat'l Broad. Co.:

> While the movie runs approximately 90 minutes, the two seasons of Yellowjackets presently before the court span roughly nineteen hours, spread over an equal number of episodes. This fundamental difference cuts both ways, allowing Defendants to emphasize differences from the Movie that play out over time, while also creating the potential for Plaintiff to amalgamate elements from moments scattered across numerous episodes in an attempt to manufacture similarities. See *Gable v. Nat'l Broad. Co*., 438 F. App'x 587, 589 (9th Cir. 2011) (unpublished disposition) (minimizing "superficial points of comparison" between screenplay and television series, "gleaned haphazardly from three seasons of" the latter.)

Order, 7:4-15.

24.    *Gable* notes only two allegedly shared ideas, "karma and redemption." 438 F. App'x 587, 588 (9th Cir. 2011). *Gable* also compares its facts to those in *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir.2002) ("Likewise, there is no infringement stemming from the copying of a 'selection and arrangement' of otherwise unprotectable elements, as in *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002), because Karma! and Earl do not involve the 'same totality of similarities and the same degree of access.'" *Gable v. Nat'l Broad. Co.*, 438 F. App'x 587, 588–89 (9th Cir. 2011). Yet in *Metcalf*, the Ninth Circuit only found eight shared similarities to determine that there was infringement based on a selection and arrangement theory. *See Metcalf v. Bochco*, 294 F.3d 1069, 1073–74 (9th Cir. 2002). Yet Plaintiff presented fourteen shared similar plot points, as well as similarities among the other seven elements considered in an extrinsic analysis. *See* ECF No. 1 and ECF No. 33. Under

*Metcalf*, and especially in consideration of Plaintiff's supplement, Plaintiff should have been afforded an opportunity to replead its claims.

25.    The Order then failed to assess Plaintiff's seven pleaded moods and five pleaded themes [ECF No. 1, 6:13-25 and 8:16-24], merely noting that Plaintiff's Response did not restate them before highlighting the fact that Eden does not contain the themes of "nature of female friendships at various stages of life and the particular challenges of mid-adulthood, especially in relation to past trauma." Order, 15:20-24. In this way, the Order reflects a fallacy borne from focusing on the differences between the two works rather than comparing the similarities.

26.    When discussing the characters, the Order continues to turn a deaf ear to Plaintiff's arguments that the plot cannot be exactly the same for a feature length film and a serialized television show. For example, the Order focuses on Plaintiff's pleaded comparison of the character Ben in Yellowjackets to Coach Defoe in Eden [Order, 16: 12-17], rather than acknowledge the clarification in Plaintiff's Response that Ben's role is subsumed by Connie and allowing repleading. [ECF No. 33, 16 n. 8]. Generally, the Order passes over the arguments in Plaintiff's Response [*id.*] when they add clarity, yet excludes Plaintiff's pleadings when they offer similarities.

27.    The Order finishes its analysis by highlighting one of Plaintiff's main points while ignoring its implication. Plaintiff argued that Yellowjackets inverted not merely "an inversion of genders" [Order, 13:14], but a series of elements from Eden.  Response, 10:1-9 ("Defendants invert specific plot elements to claim substantial differences that appear to be calculated to avoid infringement without departing from the elements of the copyrighted work. Yellowjackets merely changes the gender of most characters (the team and the coach's children), the type of desolate area the team crashes in (hot versus cold), and the age of the players (from professional to high school). Mere inversions of genders and settings with

slight age reductions are not substantial differences but surface level changes that do not obscure substantially similar 'survival' timelines and plot elements from a reasonable viewer ."). *See Leon v. Pac. Tel. & Tel. Co.*, 91 F.2d 484, 487 (9th Cir. 1937) ("The inversion [of a work's material], without license, is not permitted merely because the holder of the copyright has not so used it.").

28.    The Order fails to credit this argument. See Order, 17:23-27 ("Plaintiff glosses over the fact that Yellowjackets takes place in two distinct timelines separated by at least twenty years," and that the "'survival timeline,' … unfolds over the course of nearly two years"). Such statements brush aside Plaintiff's pleadings and Response's numerous mentions the elements of Eden were copied into Yellowjackets's "survival" timeline, and that much more content can be fit into a multi-season tv show.

29.    All in all, that the Court refused to even allow a single amendment and passed over Plaintiff's meritorious selection and arrangement argument does not make Plaintiff's claims improper.

**C.    Plaintiff had a proper motive and any punishment is unwarranted.**

30.    Defendants argue fees are warranted because Plaintiff had an improper motivation for pursuing this lawsuit. This argument can be summarized as: Defendants' pursuit of fees garners support from the fact that Plaintiff did not concede to dismiss its claims upon Defendants' extortionary tactics that Plaintiff should have accepted Defendants' self-serving explanations for why Plaintiff should dismiss its case. Motion, 7 n. 1 . In support of their contentions, Defendants cite to an unpublished decision. *See Scott v. Meyer*, No. CV 09-6076, 2010 WL 2569286, at *3 (C.D. Cal. June 21, 2010). *Scott* is inapt because it involved the plaintiff publicizing the case—which Plaintiff did not do here, with Plaintiff's counsel having received several media inquiries and rebuffing all of them.

31.    Plaintiff's motivation for justice was legitimate and incontrovertible. That is reflected in Plaintiff's drafting a supplement, which it conferred with

opposing counsel over, but delayed in filing to fully comply with Local Rules.
Moreover, that Plaintiff, in weighing a belief in the merit of its claim against the
significant costs of an appeal, conceded the outcome without appealing is hardly
evidence of frivolousness or litigiousness that should be declared through assessing
fees.[5]

32.     In its Response, Plaintiff presented two scenes from Eden where the
stranded characters morosely discuss the absence of food. [ECF No. 33, 12:21-
14:19 ]. Though not resulting in cannibalism, these scenes in Eden contain sinister
and foreboding undertones that are available for interpretation—including that the
characters may eventually have to resort to eating dead characters. Plaintiff
intended to leave the scene in Eden open-ended as to the characters' intentions.

33.     Defendants further seize on the Court's claim that the twelve other
similarities Plaintiff noted are "scenes-a-faire" to claim they were brought in bad
faith. Again, this ignores Plaintiff's selection-and-arrangement argument, which is
supported by caselaw  providing copyright protection to the selection and
arrangement of a set of potentially "unprotectable" elements. *See Malibu Textiles,
Inc. v. Label Lane Int'l, Inc*., 922 F.3d 946, 952 (9th Cir. 2019). Plaintiff
demonstrated to Defendants how Eden's elements were incorporated into
Yellowjackets' survival timeline. See Ex. 1. Again, that these arguments were
given short shrift by the Court and Defendants does not make Plaintiff's motives
improper or invalid, and Defendants' Motion should be denied.

**D.      Defendants' fees are unreasonable.**

34.     Notwithstanding the foregoing, Defendants' decision to file their
senseless and improvident Motion has forced Plaintiff to analyze nearly $130,000
of their counsel's time entries, which reflects that it took their counsel 233.6
billable hours to draft a motion to dismiss [ECF. No 42.3, 1-8], reply in support of

---

[5] Defendants argument that this case had "almost no similarity of protectable expression, let
alone substantial similarity," is inconsistent with spending over $100,000 of attorney time on
their Motion to Dismiss, Reply, and attending the hearing. ECF No. 42.3, 1-16.

1    it [*Id.*, 9-13],  and move for fees. [*Id.*, 13-16]. Not only is Defendants' fee request

2    inappropriate based on Plaintiff's supplement, it is cavalier insofar it maintains that

3    a meritless case warrants expending such exorbitant litigation costs. Simply put,

4    absent unusual circumstances like the improper use of—for example—vexatious or

5    scorched earth tactics, how can defense counsel's gargantuan legal fees be

6    reconciled with what they dismiss as a groundless lawsuit?

7        35.    Defendants offer five points in attempting to frame their exorbitant fee

8    request as reasonable: (1) Defendants conserved costs by consolidating with one

9    counsel; (2) Defendants do not seek recovery for paralegal or in-house counsel's

10   time expended on this matter; (3) Defendants achieved success in light of

11   Plaintiff's injunctive request; (4) Defendants managed this claim efficiently; and

12   (5) Defendants' requested fees are within ranges previously awarded. These

13   averments are meritless.

14       36.    First, Defendants are ostensibly aligned and evidently shared the same

15   defenses yet multiple attorneys billed for the same tasks but for separate

16   Defendants. Second, Defendants still ask an exorbitant amount for the work

17   performed on a case they describe as obvious from "a cursory review." Motion,

18   14:17-18. Third, Plaintiff's injunctive request was not considered by the Court

19   such that it would be unreasonable to expend the billed attorney time on it. Fourth,

20   Defendants are claiming almost $130,000 in fees for winning at the motion to

21   dismiss stage-an exorbitant amount. Finally, Defendants cite to a case dismissed

22   after completion of discovery, *Shame On You Productions, Inc. v. Banks*, and a

23   series of unpublished cases, three out of four of which have billing rates lower than

24   Defendants' counsel's rates.

25       37.    "In 2016, the California Bar's Committee on Mandatory Fee

26   Arbitration released Arbitration Advisory 2016-02 which estimates block billing

27   may 'increase time by 10% to 30%.'" *Dytch v. Maxaco, LLC*, No. 17-CV-00438,

28   2019 WL 1934879, at *5 (N.D. Cal. May 1, 2019) (citing Committee on

Mandatory Fee Arbitration of The State Bar of California Arbitration Advisory 2016-02, Analysis of Potential Bill Padding and Other Billing Issues (March 25, 2016)). *See United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, No. CV081085JVSAJWX, 2009 WL 10655841, at *2 (C.D. Cal. Sept. 29, 2009) (denying defendants' motion for fees in part because "block billing itself is symptomatic of excessive billing"). This advisory also warns against multiple lawyers working on the same task, whether the proper attorney is performing the task, whether the hours spent are reasonable, and whether a party is billing for canned briefs. See Advisory 2016-02, 1-14. See also *Urb. Textile, Inc. v. Specialty Retailers, Inc.*, No. 215CV03456ODWFFM, 2017 WL 5983761, at *2 (C.D. Cal. June 15, 2017) (citing *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary")).

38.    Plaintiff identifies several issues below, with multiple lawyers reproducing work, with attorneys spending more hours than are reasonable—implying they may be the wrong lawyer for the task—and with billing for a canned brief.

## 1.    Many portions of Defendants' Motion are copied from a prior brief submitted by their counsel.

39.    Defendants' Motion appears to be lifted in most part from a prior brief Defendants' counsel filed in Gregorini (a side-by side of the briefs is attached as Exhibit 2 with copied section highlighted). *Gregorini v. Apple Inc*., Case No. 20-406-JFW(JCx) (C.D. Cal. Jan. 28, 2022). which were granted at the trial level but reversed by the Ninth Circuit. *Gregorini v. Apple Inc*., No. 20-55664, 2022 WL 522307, at *2 (9th Cir. Feb. 22, 2022). Further, Defendants' counsel appears to have used a form from an earlier case, shown through several repeated sentences, citations, and paragraphs across the briefs, for Defendants' Motion to Dismiss

1    [ECF No. 27]. See Exhibit 3 (a side-by side of the motions to dismiss briefs with

2    copied section highlighted).

3         40.    Beyond the facts unique to each case, Defendants' Motion and

4    Defendants' counsel's prior brief share large sections of text in every section. Such

5    copy-and-pasted briefing supports an argument Defendants' counsel padded hours

6    or spent unnecessary time on drafting and revising the Motion to Dismiss [ECF

7    No. 27] and Motion.

8         **2.    Defendants spent an exorbitant amount of time preparing their
          Motion to Dismiss: 99.7 hours, which they claim are worth**

9         **$49,642 in attorneys' fees**

10        41.    Defendants' timesheets[6] included entries to review the same material

11    more than once, entries that do not correspond to the assignments, and other entries

12    that are padded and otherwise improper.

13        42.    First, Joel Richert spent time reviewing episodes 102-104 of

14    Yellowjackets in three entries, specifically [Ex. 4, at 12/10-13/24], which

15    reproduces efforts and is therefore improper (*see Chalmers*, 796 F.2d at 1210), and

16    such entries should be ignored or discounted.

17        43.    Defendants also included time entries related to research on a redacted

18    topic, which is unreasonable in providing no context for authenticity of the billing.

19    Ex. 4 at 12/11/24 and 1/7/25.[7]

20        44.    Moreover, Defendants billed 28.9 hours drafting the Motion to

21    Dismiss for a fee of $13,710, and 45.4 hours were spent revising it for a fee of

22    $23,727, for a total of $37,437 spent on drafting and revising the motion to dismiss

23    (entries copied below). *See* Ex. 4, pp.1-2. Such entries are also padded, shown by

24    Joel Richert entries on that show he spent 4.7 hours to draft a factual synopsis of

25    the film (over three hours longer than its runtime), 22.5 hours to draft the motion to

26

27    _____

28    [6] Exhibit 4 is a reproduced copy of Defendants' counsel's billing records [ECF No. 42.3] in a
      chart format for easier review and is cited to below.
      [7] Defendants' counsel's block billed or imprecise entries are highlighted in Ex. 4.

dismiss, and 35.9 hours to revise it [Ex. 4, pp.2-3]—for a total of 63.1 hours on a 32-page submission.

45.    Defense counsel, a "Big Law" claiming to have specialized knowledge in this field,[8]  this is an unreasonable amount of time to bill on a case in which they argued that "even a cursory review … reveals that the works are not substantially similar." Motion, 14:17-18. Besides the multifarious revisions noted above, Defendants also include other reproductive entries and work related to watching the movie and show. Ex. 4, at 12/2/24 and 12/7/24, and 12/3/25,12/4/25, and 12/8/24.

46.    Further, for a "Big Law" firm that regularly appears in the Central District, spending almost an hour reviewing the local rules for Judge Pregerson is unreasonable. Ex. 4, at 12/9/24.  As is spending 2.8 hours watching a sub-hour episode of Season 2 of Yellowjackets. Ex. 4, at 12/19/24.

47.    Bearing in mind that most of Defendants' Motion is cribbed from their counsel's earlier motion, in the main, Defendants' fee request is unreasonable.

**3.    For the Reply in support of their Motion to Dismiss, Defendants spent 60.3 hours, equating to an amount they claim are worth $34,491 in attorneys' fees.**

48.    While claiming that even a "cursory review" would vindicate their position, Defendants' counsel billed entries related to their Reply to re-review the same material they claim to have already review ed, entries that do not correspond to the assignments, and entries that were padded or otherwise improper.

49.    To start, Defendants' counsel spent 3 hours reviewing Plaintiff's Response for $1,854, showing three attorneys performing the same task. Ex. 4, at 2/24/25, 2/24/25, and 2/25/25.

---

[8] See Defendants' counsel's website, at:
https://www.dwt.com/expertise/practices/litigation/intellectual-property-litigation ("Decades of experience protecting our clients' interests in patent, copyright, trademark, and trade secret litigation has given our team a deep understanding of not just how to win, but how to advance our clients' overall strategic goals.).

50.     Defendants' counsel then spent 16.8 hours drafting the 24-page Reply (including a cover sheet and 5 pages of tables):   Ex. 4, at 2/27/25, 2/28/25, 2/28/25, and 3/3/25. Defendants' counsel then spent 20.5 hours revising the Reply. Ex. 4, at 3/5/25 through 3/10/25.

51.     As if all this was not enough, Defendants' counsel seized on the Reply to spend an additional 16 hours watching episodes of Yellowjackets. Ex. 4, at 3/1/25 through 3/8/25.

52.     These hours are clearly duplicative and padded, so Plaintiff requests they be discounted or denied.

**4.      Defendants' counsel spent nearly a whole work week—33.9 hours—which equates to $21,923 in attorneys' fees, preparing for the hearing on their Motion to Dismiss.**

53.     Defendants also submitted padded times entries related to the hearing on their motion to dismiss that are improper.

54.     To begin, Defendants' counsel spent 23.2 hours preparing for the hearing, expending significant time to review already performed. Ex. 4, at 3/25/25 through 4 Ex. 4, at 3/5/25 through 4/21/25.

55.     Defendants' counsel then spent another 10 hours watching more episodes of Yellowjackets. Ex. 4, at 4/14/25 through 4/18/25.

56.     These hours are clearly duplicative and should be struck as a result.

**5.      Defendants' counsel spent 39.7 hours, equating to $21,949 in attorneys' fees, to prepare the Motion for Attorneys' Fees.**

57.     Given indications that Defendant's counsel's merely copied-and-pasted a motion for fees they had previously filed, the time they entered on this Motion appears to be problematic and suggest of padding.

58.     Defendants' counsel spent 17.3 hours drafting the Motion—which is largely copied-and-pasted from Exhibit 2—something that is not apparent from defense counsel's time entries. Ex. 4, at 4/30/25 through 5/5/25. Defendants'

counsel claims to have spent another 19.6 hours revising this Motion. Ex. 4, at
5/2/25 through 5/8/25.

59.    These redundant hours suggest inefficiency to the point of padding.
And so, Plaintiff requests they be discounted or denied.

### IV.    CONCLUSION & PRAYER

Far from litigating its claim in a taxing, burdensome, or oppressive manner,
Plaintiff has litigated this claim in mild fashion that hardly befits imposing the
harsh punitive fees Defendants seek. Plaintiff thus requests that the honorable
Court deny Defendants' Motion and grant Plaintiff any other deserved relief.

Dated: June 16, 2025                    Respectfully submitted,


                                        _/s/ *Anya Fuchs*_____
                                        Anya Fuchs, Esq.
                                        anya@anyafuchslaw.com

                                        Charles M. Stam (*pro hac vice* filed)
                                        charles@thompsonstam.com

                                        **Counsel for Plaintiff**

1

## <u>CERTIFICATE OF SERVICE</u>

2

      I certify that I am over the age of 18 years and not a party to the within action; that my business address is 440 E. Huntington Drive, Suite 300, Arcadia, CA 91006; and that on this date I served a true copy of the document(s) entitled:

3

4

  -  **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

5

Service was effectuated by forwarding the above-noted document in the following manner:

6

7

[XX]  VIA CM/ECF. I electronically served the above document(s) via CM/ECF on all parties opting for e-service and is available for viewing and downloading from the Court's CM/ECF system.

8

9

10

      I certify that I am a member of the bar of this court.

11

      Executed on June 16, 2025, at Emeryville, CA.

12

                           /s/ *Anya Fuchs*

13

                         Anya Fuchs

14

*Eden Film Production LLC. v. Lockjaw LLC, et al.*
USDC CACD Case No.: 2:24-cv-09851-DDP-SK

15

16

17

18

19

20

21

22

23

24

25

26

27

28