Anya Fuchs, Esq.
Anya Fuchs, PC
440 E. Huntington Drive, Suite 300
Arcadia, CA 91006
Telephone: 510-685-9717
Facsimile: 510-743-7147
anya@anyafuchslaw.com

Charles M. Stam (*pro hac vice* filed)
Thompson Stam PLLC
717 Texas Avenue, Suite 1200
Houston, Texas 77002
Telephone: (844) 846-7826
Facsimile: (713) 379-8076
charles@thompsonstam.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| EDEN FILM PRODUCTION LLC, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LOCKJAW LLC, a California corporation; ASHLEY LYLE, an individual; BART NICKERSON, an individual; BEER CHRISTMAS, LTD., a California corporation; SHOWTIME NETWORKS INC., a California corporation; LIONS GATE ENTERTAINMENT, INC., a Delaware corporation; and DOES 1 – 10, inclusive,<br><br>Defendants. | Case Number: 2:24-cv-09851-DDP-SK<br><br>**DECLARATION OF ANYA FUCHS IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES**<br><br>Date:  July 14, 2025<br>Time:  10:00 a.m.<br>Crtrm:  9C |

I, Anya Fuchs, declare as follows:

1.      I am an attorney admitted to practice before all courts of the State of California and before this Court. I am a partner in the law firm of Anya Fuchs, PC and am one of the attorneys representing Plaintiff, Eden Film Production LLC, in this matter. The facts stated below are based on my own personal knowledge.

2.      Attached hereto as Exhibit 1 is a true and correct copy of Plaintiff's April 23, 2025 email to Defendants with chart of similarities attached.

3.      Attached hereto as Exhibit 2 is a true and correct copy of side-by-side comparisons of Defendants' counsel's instant brief compared to a prior brief filed by Defendants' counsel.

4.      Attached hereto as Exhibit 3 is a true and correct copy of side-by-side comparisons of Defendants' counsel's Motion to Dismiss briefs filed in the instant action compared to a prior Motion to Dismiss filed by Defendants' counsel.

5.      Attached as Exhibit 4 is a true and correct copy of Defendants' counsel's billing records in a chart format.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct, and that this Declaration was executed on the 16th day of June, in Emeryville, CA.


                                            /s/ Anya Fuchs
                                            Anya Fuchs, Esq.

# Exhibit 1

**Wednesday, June 11, 2025 at 5:24:58 PM Central Daylight Time**

| | |
|---|---|
| **Subject:** | Conferral follow up: post-hearing brief |
| **Date:** | Wednesday, April 23, 2025 at 3:52:40 PM Central Daylight Time |
| **From:** | Charles Stam <charles@thompsonstam.com> |
| **To:** | Freeman, Cydney <CydneyFreeman@dwt.com> |
| **CC:** | Firm <firm@thompsonstam.com> |
| **Attachments:** | image001.png, Plaintiff's Post-Hearing Brief opp M2D.pdf |

Dear Cydney,

Please see attached.  Do you have any time to talk tonight or tomorrow on a potential follow up question?

Best regards,
Charles

--

Charles Maurice Stam
Partner

# T H O M P S O N | S T A M PLLC

**PRIVILEGED AND CONFIDENTIAL.** Unless otherwise indicated, this email does not, and should not be construed to, create an attorney-client relationship.  The information contained in this e-mail message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader or recipient of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, do not read it. Please delete it from your system without copying it, and immediately notify the sender by reply email so that our address record can be corrected. Thank you.

Anya Fuchs, Esq.
5874 Doyle Street
Emeryville, CA 94608
Telephone:  510-685-9717
Facsimile:  510-743-7147
anya@anyafuchslaw.com

Charles M. Stam (*pro hac vice filed*)
Thompson Stam PLLC
717 Texas Avenue, Suite 1200
Houston, Texas 77002
Telephone: (844) 846-7826
Facsimile: (713) 379-8076
charles@thompsonstam.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| EDEN FILM PRODUCTION LLC, a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>LOCKJAW LLC, a California corporation; ASHLEY LYLE, an individual; BART NICKERSON, an individual; BEER CHRISTMAS, LTD., a California corporation; SHOWTIME NETWORKS INC., a California corporation; LIONS GATE ENTERTAINMENT, INC., a Delaware corporation; and DOES 1 – 10, inclusive,<br><br>    Defendants. | Case Number: 2:24-cv-09851-DDP-SK<br><br>**PLAINTIFF'S POST-HEARING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:       April 21, 2025<br>Time:      10:00 a.m.<br>Crtrm:     9C |

Plaintiff Eden Film Production LLC submits the following post-hearing brief in support of the arguments made during the hearing, held by this Court, on April 21, 2025.

## I.    RESPONSE TO COURT'S QUESTION

1.    During the hearing, the Court asked Plaintiff's counsel what Plaintiff owns under its copyright. Plaintiff's counsel desires here to provide the court a more fulsome answer than was given at the hearing.

2.    Plaintiff owns a selection of original elements within the categories of (a) themes, (b) plot, (c) setting, (d) characters, (e) mood, (f) pace, (g) sequence of events, and (h) scene/dialogue similarities—as well as the particular arrangement of the elements—that form the feature film *Eden*. As argued previously, these same elements are incorporated completely into the "survival" timeline of Defendants' television show, *Yellowjackets*.

3.    It is well-established that "[c]ourts do not require copyright claims to be pled with such particularity; rather, courts find a complaint sufficiently pled if it alleges representative acts of infringement rather than a comprehensive listing." *Paramount Pictures Corp. Axanar Prods., Inc.*, No. CV 15-09938 RGK (EX), 2016 WL 2967959, at *3 (C.D. Cal. May 9, 2016) (citation omitted) (holding plaintiff had sufficiently alleged potential infringement by pointing out an allegedly original element that was copied). Here, Plaintiff pleaded representative acts of infringement, including the copying of "a subset of soccer players, a trainer/nurse, and the head

coach's [2] kids surviv[ing] the plane crash and [that] are forced to brave a harsh, isolated area" [Compl., at ¶ 33. c.], where the older of the coach's two surviving kids becomes a love interest and the younger kid integrates into the group. Compl., at ¶¶ 25-26.

4.      "But, at this stage of the litigation, it is difficult to know whether such elements are indeed unprotectible material." *Alfred v. Walt Disney Co.*, 821 F. App'x 727, 729 (9th Cir. 2020) (denying motion to dismiss where the "[allegedly infringing] film and the [plaintiff's] screenplay both begin with a prologue that takes place ten years prior to the main story; introduce the main characters during a battle, at gunpoint; involve treasure stories that take place on islands and in jewel-filled caves; include past stories of betrayal by a former first mate; contain fearful moments driven by skeleton crews; focus on the redemption of a young, rogue pirate; and share some similarities in dialogue and tone.").

5.      Thus, Plaintiff believes it important to clarify its position and provides a chart below, displaying side-by-side the protectible elements of *Eden* on the left—in the order they appear—and the substantially similar (or inverted) elements from *Yellowjackets* on the right. Though, there may be "striking differences between the two works, as well—[] *the selection and arrangement* of the similarities between them is more than de minimis." *Id.*, 821 F. at 729 (italics added).

| *EDEN* | *YELLOWJACKETS* |
|---|---|
| **Opening scene:** An unknown man runs through a jungle, pursued by unknown | **Opening scene:** An unknown woman runs through a snowy forest |

| | |
|---|---|
| forces, and leaps off a cliff. The atmosphere is established with panting and eerie sounds. This action transitions between an active soccer match, and the Coach's speech during halftime about tapping into their animal side. | with haunting noises, pursued by unknown forces, and falls into a pit. The atmosphere is established with panting and eerie sounds. The scene snaps to the present to reflect on the tragedy of the plane crash and some of the girls' survival. This action transitions to a soccer match. [Season 1, Episode 1]. |
| **Soccer match** The U.S. U-23 National Soccer Team is playing a game, and wins as Slim, the team captain, makes the final shot. | **Soccer match** The high school girls' soccer team is playing a game, and wins as Jackie, the team captain, makes the final shot. [Season 1, Episode 1]. |
| **Character development on plane flight**: The players interact with each other, revealing personal quirks and relationships, such as between the coach's older daughter Elena and Slim, as well as sibling dynamics between Andreas and Georgie, as well as Elena and Eva. Connie gives Slim pills for the flight. | **Character development before and during plane flight**: The players interact with each other, revealing personal quirks and relationships Jackie and Shauna share intimate moments, revealing their relationships and personal struggles. Shauna's secret affair with Jeff is shown. On the plane, Jackie gives Shauna pills for the flight. [Season 1, Episode 1]. |
| **Plane crash**: The team boards a charter jet, which crashes into the ocean, leading to chaos and panic.<br><br>Survivors, incl "a subset of soccer players, a trainer[], and the head coach's [2] kids survive the plane crash and [that] are forced to brave a harsh, isolated area" [Compl., at ¶ 33. c.], where the older of the coach's two surviving kids becomes a love interest and the younger kid integrates into the group—which all struggle to escape the wreckage and save each other. | **Plane crash**: The team boards a charter jet, which crashes into the woods, leading to chaos and panic. [Season 1, Episode 1].<br><br>Survivors, incl "a subset of soccer players, a []nurse, and the head coach's [2] kids survive the plane crash and [that] are forced to brave a harsh, isolated area" [Compl., at ¶ 33. c.], where the older of the coach's two surviving kids becomes a love interest and the younger kid integrates into the group—which all struggle to escape the wreckage and |

Page **4** of **9**

| | help each other. [Season 1, Episode 2]. |
|---|---|
| **Survival on the beach**: Day 1. The 15 survivors regroup on the beach, tending to injuries and dealing with the trauma of the crash. Andreas looks to Slim, the captain, to take charge, but he cannot. Instead, Andreas takes charge and begins rationing resources and making tough decisions. Connie, the trainer, is reticent about helping but then feels obligated to do so as people are injured, such as Sevy with a broken leg. The coach's children deal with their parents' death. | **Survival in the woods**: The 19 survivors regroup near the crash in the woods, tending to injuries and dealing with the trauma of the crash. The camera pans to Jackie and shows she is too shaken to take charge, leaving Misty to take charge, as she has a tougher attitude. She begins by cutting off Ben's injured leg. This leaves the group with a handicapped member. The group finds the coach dead, and his two kids deal with the death of their father. [Season 1, Episode 2]. |
| **Creating large alert sign:** Andreas creates a "HELP" sign made out of logs for any aerial viewers. | **Creating large alert sign:** Shauna writes a message, "SOS GONE TO LAKE," on the side of the plane. [Season 1, Episode 3]. |
| **Burial of the dead**: Survivors bury their fallen teammates, grappling with the emotional toll of their situation. | **Burial of the dead:** The girls in Yellowjackets bury the deceased after the plane crash. [Season 1, Episode 3] |
| **Conflict over resources**: Andreas debates rationing food and water and dealing with injured teammates. | **Conflict over resources** : The survivors debate rationing food and water and dealing with injured teammates. [Season 1, Episode 3] |
| **Shark encounter**: Day 2. A player panics after spotting a shark, leading to a fight among the group over lost food supplies. | **Bear encounter**: The group encounters a bear, which Lottie kills, solidifying her role as a spiritual leader. [Season 1, Episode 10]. |
| **Collecting resources:** Survivors attempt to salvage supplies from the submerged tail of the plane, risking their lives in the process. | **Collecting resources**: Survivors salvage supplies from the plane and a cabin, risking their lives in the process to find resources. [Season 1, Episode 3]. |
| **Conflict over resources**: Day 4: Slim wakes up after being sick on Day 2. He | **Conflict over resources:** The team is splitting water and snacks as they |

| | |
|---|---|
| and Andreas discuss the dwindling supplies. They debate whether to cut off food and water for injured teammates, leading to moral dilemmas and group tensions. Then the main group discusses the same issue of rationing and votes for it—with Slim making the deciding vote to deny resources to the injured. Others contemplate hoarding resources. | have to ration resources. The girls agree that they need to ration but Javi takes more to help feed his brother. [Season 1, Episode 3]. |
| **Failure to reach outside world:** Slim tries his phone but it runs out of battery. | **Failure to reach outside world:** Misty finds the black box from the plane and destroys it. [Season 1, Episode 2]. |
| **Romantic Tension:** Slim and Elena share a moment on the beach with Elena holding her mother's necklace [gift from coach]. | **Romantic Tension:** Natalie and Travis begin to flirt and romantic tension builds. [Season 1, Episode 3]. |
| **Trainer helps injured:** Connie helps Stephan as he struggles. | **"Nurse" helps injured:** Misty helps Ben as he struggles. [Season 1, Episode 2]. |
| **Exploration of surroundings:** Day 6: After discovering a second island, Andreas leads a group to explore it, discovering potential resources and dangers. | **Exploration of surroundings:** The girls go on a mission to find water and end up finding a cabin. [Season 1, Episode 3]. |
| **Romantic Tension:** Eva and Felix get romantically involved in a cave. On the second island, Andreas and Elena flirt. | **Romantic Tension:** Van and Taissa are romantic while swimming at night in the dark. [Season 1, Episode 6]. |
| **Cliff death:** Slim finds Connie on a cliff, and they discuss not being found or wanting to be found, and then Connie mentions poisonous berries and it only being a matter of time. Connie commits suicide by jumping off the cliff. | **Cliff death:** Misty and Crystal go into the woods to empty the communal waste backet and appear to bond, until Misty tells Crystal that she destroyed the black box. Crystal then falls off the cliff and dies. [Season 2, Episode 5]. |
| **Discovery of previous inhabitants:** Doug and Georgie are exploring when | **Discovery of previous inhabitants:** The girls find an abandoned cabin |

| | |
|---|---|
| Doug falls into barbed wire surrounding an old military outpost. | [Season 1, Episode 3] and a plane [Season 1, Episode 4]. |
| **Character loses legs:** Georgie frees Doug from the barbed wire, but steps on a landmine and loses his legs. The survivors nearby call for Connie. Andreas cradles his brother in a heartbreaking moment. | **Character loses leg:** Assistant coach Ben is injured in the crash and must have a leg amputated. [Season 1, Episode 2]. |
| **Conflict over resources**: The survivors sit around a fire and ask for a revote on rationing. Andreas denies the revote. | **Conflict over resources**: The girls talk about Nat's hunting failures and the lack of food. Travis and Ben discuss not making another baby to drain resources. [Season 1, Episode 6]. |
| **Death of main character:** Andreas kill his injured brother Georgie to put him out of his misery. Eva sees it. They bury him the next morning. | **Death of main character:** Jackie dies from exposure after being ostracized by the group. Shauna mourns her loss, and the group struggles with guilt. [Season 1, Episode 10]. |
| [DELETED SCENE FROM COMMERCIALLY RELEASED VERSION[1]]<br><br>**Drug induced celebration:** Arnie found "magic" mushrooms on the second island and the group takes them and hallucinates. | **Drug induced celebration:** Using "magic" mushrooms Misty drugs the rest of the group and they hallucinate. [Season 1, Episode 9]. |
| **Romantic tension:** Andreas kicks a soccer ball into the jungle, goes to retrieve it, and cries while holding it. Elena comes to comfort him. Then they start making out. | **Romantic tension:** Natalie and Travis are hunting in the woods when they go to a plane and begin to make out. [Season 1, Episode 6]. |
| **Seeking help:** Two survivors, Doug and McKenna, take the raft and paddle away from the island. | **Seeking help**: Two survivors, Taissa and Van discuss leaving to find a town. [Season 1, Episode 6]. |

---

[1]    Defendants' access to the Eden original script will be a subject of discovery in this case.

| | |
|---|---|
| **Splitting up:** Day 9: That evening, the team is around the firepit and Andreas says he is going to the second island. Half the survivors join him, dividing the group. | **Splitting up:** At night, Taissa tells the team she is going out to look for help. She enlists multiple players to go with her, dividing the group. [Season 1, Episode 7]. |
| **Chaos ensues:** The team members begin to turn on each other and kill each other off. | **Chaos ensues:** The team members begin to get cult-like and start to pick a member at a time to kill and eat. [Season 2, Episode 8]. |
| **Rescue:** Andreas watches the helicopters leave. | **Rescue:** There is a present-day timeline so we know the girls are ultimately rescued. |

## II.    CONCLUSION

6.    In conclusion, Plaintiff owns the selection and arrangement of elements comprising the scenes shown above on the left, which, as shown above, are incorporated—generally in the same order—into *Yellowjackets*. The works contain similar characters (with some gender inversions, *i.e.*, coach's children and players), the same themes and moods, the same general plot, both occur in remote areas, and contain similar scenes throughout. In sum, Yellowjackets exhibits a high likelihood of being directly copied from Eden, and additional discovery is warranted to prove such.

## III.    PRAYER

WHEREFORE, Plaintiff request the honorable Court deny Defendants' Motion and grant Plaintiff any other deserved relief.

1

2    Dated: April 23, 2025,                    Jointly submitted,

3                                               _/s/_____

4                                               Anya Fuchs, Esq.
                                                5874 Doyle Street
5                                               Emeryville, CA 94608

6                                               Charles M. Stam (*pro hac vice filed*)
                                                Thompson Stam PLLC
7                                               717 Texas Avenue, Suite 1200
                                                Houston, Texas 77002
                                                Telephone: (844) 846-7826
8                                               Facsimile: (713) 379-8076
                                                charles@thompsonstam.com

9                                               COUNSEL FOR PLAINTIFF
                                                * signifies *pro hac vice forthcoming*

10

11

12

13

14

15

16

17

18

19

20

21

# Exhibit 2





6/15/25

NICOLAS A. JAMPOL (State Bar No. 244867)
nicolasjampol@dwt.com
DIANA PALACIOS (State Bar No. 290923)
dianapalacios@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
cydneyfreeman@dwt.com
CAMILA PEDRAZA (State Bar No. 329984)
camilapedraza@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants BLINDING EDGE PICTURES, INC.; UNCLE GEORGE PRODUCTIONS, LLC; APPLE INC.; ESCAPE ARTISTS, INC. (erroneously sued as ESCAPE ARTISTS LLC); DOLPHIN BLACK PRODUCTIONS; M. NIGHT SHYAMALAN; TONY BASGALLOP; ASHWIN RAJAN; JASON BLUMENTHAL; TODD BLACK; STEVE TISCH

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANCESCA GREGORINI, Plaintiff, vs. APPLE INC., a California corporation; M. NIGHT SHYAMALAN, an individual, BLINDING EDGE PICTURES, INC., a Pennsylvania corporation; UNCLE GEORGE PRODUCTIONS, a Pennsylvania corporate; ESCAPE ARTISTS LLC, a California limited liability company; DOLPHIN BLACK PRODUCTIONS, a California corporation; TONY BASGALLOP, an individual; ASHWIN RAJAN, an individual; JASON BLUMENTHAL, an individual; TODD BLACK, an individual; STEVE TISCH, an individual; and DOES 1-10, inclusive, Defendants. | Case No. 2:20-cv-00406-JFW-JC<br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES**<br>**[17 U.S.C. § 505]**<br>Date: July 27, 2020<br>Time: 1:30 p.m.<br>Dept.: 7A |

1

NICOLAS A. JAMPOL (State Bar No. 244867)
nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
cydneyfreeman@dwt.com
JOEL RICHERT (State Bar No. 327116)
joelrichert@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants LIONS GATE ENTERTAINMENT, INC., SHOWTIME NETWORKS INC., BEER CHRISTMAS, LTD., ASHLEY LYLE, and BART NICKERSON

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDEN FILM PRODUCTION LLC, a Delaware corporation, Plaintiff, vs. LOCKJAW LLC, a California corporation; ASHLEY LYLE, an individual; BART NICKERSON, an individual; BEER CHRISTMAS, LTD., a California corporation; SHOWTIME NETWORKS INC., a California corporate; LIONS GATE ENTERTAINMENT, INC., a Delaware corporation; and DOES 1-10, inclusive, Defendants. | Case No. 2:24-cv-09851-DDP-SK<br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES**<br>Date: June 9, 2025<br>Time: 10:00 a.m.<br>Crtrm: 9C |

2

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 27, 2020, at 1:30 p.m. or as soon as may be heard in Courtroom 7A of the United States District Court for the Central District of California, First Street Courthouse, 350 West First Street, Los Angeles, California 90012, defendants Blinding Edge Pictures, Inc., Uncle George Productions, LLC, Apple Inc., Escape Artists, Inc. (erroneously sued as Escape Artists LLC), Dolphin Black Productions, M. Night Shyamalan, Tony Basgallop, Ashwin Rajan, Jason Blumenthal, Todd Black, and Steve Tisch (collectively, "Defendants") will and hereby do move this Court for an order awarding them $162,467.30 in attorneys' fees in connection with their successful motion to dismiss the copyright claims asserted by plaintiff Francesca Gregorini ("Plaintiff").

This motion is made pursuant to 17 U.S.C. § 505, which provides that the Court may award reasonable attorneys' fees to a prevailing copyright defendant. All of the factors courts consider in evaluating copyright fee awards support Defendants' request: (a) Defendants prevailed completely on the copyright claims; (b) Plaintiff's copyright claims were objectively unreasonable; (c) certain of Plaintiff's litigation decisions were not made for legitimate purposes under copyright law; and (d) a fee award would further the Copyright Act's goals and deter meritless litigation. Moreover, the amount of Defendants' fee request is reasonable, both in terms of defense counsel's rates and the hours expended.

This motion is based on the notice of motion, the memorandum of points and authorities, the request for judicial notice, the declaration of Cydney Swofford Freeman with exhibit, and all other matters of which this Court may take judicial notice, the pleadings, files and records in this action, and on any argument heard by this Court.

1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DEFENDANTS' MOTION FOR ATTORNEYS FEES
4818-2697-8496v.1 0113237-000003



**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 9, 2025, at 10:00 a.m. or as soon as may be heard in Courtroom 9C of United States District Court for the Central District of California, United States Courthouse, 350 West First Street, Los Angeles, California 90012, defendants Lions Gate Entertainment, Inc. ("Lions Gate"), Showtime Networks Inc. ("Showtime"), Beer Christmas, Ltd., Ashley Lyle, and Bart Nickerson (collectively, "Defendants") will and hereby do move this Court for an order awarding them $129,305.00 in attorneys' fees in connection with their successful motion to dismiss the copyright claims asserted by plaintiff Eden Film Production LLC ("Plaintiff"), plus any additional fees or costs incurred in preparing any reply papers and for preparing for and appearing at the hearing on this motion.

This motion is made pursuant to 17 U.S.C. § 505, which provides that the Court may award reasonable attorneys' fees to a prevailing copyright defendant. All of the factors courts consider in evaluating copyright fee awards support Defendants' request: (a) Defendants prevailed completely on the copyright claims; (b) Plaintiff's copyright claim was objectively unreasonable; (c) certain of Plaintiff's litigation decisions were not made for legitimate purposes under copyright law; and (d) a fee award would further the Copyright Act's goals to deter meritless litigation. Moreover, the amount of Defendants' fee request is reasonable, both in terms of defense counsel's rates and the hours expended.

This motion is based on the notice of motion, the memorandum of points and authorities, the declarations of Joel Richert and Cydney Swofford Freeman with Exhibit 1, and all other matters of which this Court may take judicial notice, the pleadings, files and records in this action, and on any argument heard by this Court.

This motion is made following communications of counsel pursuant to L.R. 7-3 on May 2 through May 7, 2025. Freeman Decl. ¶ 2.

1

DEFENDANTS' MOTION FOR ATTORNEYS' FEES



1    This motion is made following the conference of counsel pursuant to L.R. 7-3
2    which took place on June 16, 2020.  *See* Dkt. 43.
3
4    DATED: June 23, 2020          DAVIS WRIGHT TREMAINE LLP
5                                  NICOLAS A. JAMPOL
                                   DIANA PALACIOS
6                                  CYDNEY SWOFFORD FREEMAN
                                   CAMILA PEDRAZA
7
                                   By:    /s/ Nicolas A. Jampol
8                                            Nicolas A. Jampol
9                                  Attorneys for Defendants
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                                          2
DEFENDANTS' MOTION FOR ATTORNEYS FEES
4818-2697-8496v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

5



1    DATED: May 9, 2025           DAVIS WRIGHT TREMAINE LLP
2                                 NICOLAS A. JAMPOL
                                  CYDNEY SWOFFORD FREEMAN
3                                 JOEL RICHERT
4                                 By:    /s/ Cydney Swofford Freeman
                                          Cydney Swofford Freeman
5
                                  Attorneys for Defendants
6                                 LIONS GATE ENTERTAINMENT,
                                  INC., SHOWTIME NETWORKS INC.,
7                                 BEER CHRISTMAS, LTD., ASHLEY
                                  LYLE, and BART NICKERSON
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                                          2
DEFENDANTS' MOTION FOR ATTORNEYS' FEES

6

3



**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................. 1

II.  PROCEDURAL BACKGROUND ........................................ 2

III. DEFENDANTS ARE ENTITLED TO RECOVER THEIR FEES UNDER THE COPYRIGHT ACT ........................................ 3

   A.  Defendants Achieved Complete Success in This Litigation ........... 4

   B.  Plaintiff's Claims Were Objectively Unreasonable ................ 5

   C.  Certain of Plaintiff's Litigation Decisions Lacked a Proper Motive ........................................................................ 6

   D.  A Fee Award is Appropriate to Advance the Copyright Act's Goals of Compensation and Deterring Meritless Litigation ........... 7

IV.  DEFENDANTS' REQUESTED FEES ARE REASONABLE ... 8

   A.  Defendants' Counsel's Billing Rates Are Reasonable............. 8

   B.  The Hours Expended By Defendants' Counsel Are Reasonable. ...... 10

V.   CONCLUSION ................................................................. 12

i

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

7



**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ............... 2

III. DEFENDANTS ARE ENTITLED TO RECOVER THEIR FEES UNDER THE COPYRIGHT ACT ........................................ 3

   A.  Defendants Achieved Complete Success in This Litigation ........... 4

   B.  Plaintiff's Claim Was Objectively Unreasonable ................ 4

   C.  Plaintiff Lacked a Proper Motive for Certain Litigation Decisions ........................................................................ 6

   D.  A Fee Award Is Appropriate to Advance the Copyright Act's Goals of Compensation and Deterring Meritless Litigation ........... 7

IV.  DEFENDANTS' REQUESTED FEES ARE REASONABLE ... 9

   A.  Defendants' Counsel's Billing Rates Are Reasonable............. 10

   B.  The Hours Expended by Defendants' Counsel Are Reasonable. ...... 12

V.   CONCLUSION ................................................................. 14

i

8

4

---

**Left document:**

## TABLE OF AUTHORITIES

Page

**Cases**

*Baker v. Urban Outfitters,*
  431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006) ............................................7

*Bridgeport Music v. WB Music,*
  520 F.3d 588 (6th Cir. 2008) ............................................6

*City of Inglewood v. Teixeira,*
  2015 WL 6146269 (C.D. Cal. Oct. 8, 2015)........................9, 10, 12

*DuckHole v. NBCUniversal Media,*
  2013 WL 5797204 (C.D. Cal. Oct. 25, 2013)........................4, 5

*Elser v. I.A.M. Nat'l Pension Fund,*
  579 F. Supp. 1375 (C.D. Cal. 1984) ............................................9

*Fantasy v. Fogerty,*
  94 F.3d 553 (9th Cir. 1996) ............................................5, 6

*Fogerty v. Fantasy,*
  510 U.S. 517 (1994)............................................4, 7

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983)............................................11

*Inhale v. Starbuzz Tobacco,*
  755 F.3d 1038 (9th Cir. 2014) ............................................4

*Intel Corp. v. Terabyte Int'l,*
  6 F.3d 614 (9th Cir. 1993) ............................................8

*Kirtsaeng v. John Wiley & Sons,*
  136 S. Ct. 1979 (2016)............................................4, 5

*Kouf v. Walt Disney Pictures & Television,*
  16 F.3d 1042 (9th Cir. 1994) ............................................5, 8

*Lawrence v. Sony Pictures Entm't,*
  2011 WL 13217267 (C.D. Cal. Oct. 5, 2011)............................7, 9

DEFENDANTS' MOTION FOR ATTORNEYS' FEES
4818-2697-8496v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

9

---

**Right document:**

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baker v. Urban Outfitters,*
  431 F. Supp. 2d 351 (S.D.N.Y. 2006) ............................................8

*Blum v. Stenson,*
  465 U.S. 886............................................10

*Bridgeport Music v. WB Music,*
  520 F.3d 588 (6th Cir. 2008) ............................................6

*Carson v. Billings Police Dep't,*
  470 F.3d 889 (9th Cir. 2006) ............................................10

*City of Inglewood v. Teixeira,*
  2015 WL 6146269 (C.D. Cal. Oct. 8, 2015) ............................10, 14

*DuckHole v. NBCUniversal Media,*
  2013 WL 5797204 (C.D. Cal. Oct. 25, 2013)........................4, 5, 7

*Elser v. I.A.M. Nat'l Pension Fund,*
  579 F. Supp. 1375 (C.D. Cal. 1984) ............................................10

*Fantasy v. Fogerty,*
  1995 WL 261504 (N.D. Cal. May 2, 1995)............................12

*Fantasy v. Fogerty,*
  94 F.3d 553 (9th Cir. 1996) ............................................5, 6

*Fogerty v. Fantasy,*
  510 U.S. 517 (1994)............................................3, 7

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983)............................................13

*Inhale v. Starbuzz Tobacco,*
  755 F.3d 1038 (9th Cir. 2014) ............................................3

*Intel Corp. v. Terabyte Int'l,*
  6 F.3d 614 (9th Cir. 1993) ............................................9

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

10

---

*Love v. Mail on Sunday*,
  2007 WL 2709975 (C.D. Cal. Sept. 7, 2007) .......................................... 10

*Maljack Prods. v. GoodTimes Home Video*,
  81 F.3d 881 (9th Cir. 1996) .......................................... 4

*Moore v. Jas. H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) .......................................... 9

*PCLM Grp. v. Drexler*,
  22 Cal. 4th 1084 (2000) .......................................... 11

*Serrano v. Unruh*,
  32 Cal. 3d 621 (1982) .......................................... 10

*Shame on You Prods. v. Banks*,
  2016 WL 5929245 (C.D. Cal. Aug. 15, 2016) .......................................... 5, 7, 12

*Sorenson v. Mink*,
  239 F.3d 1140 (9th Cir. 2001) .......................................... 8

*Uckardesler v. Azteca Int'l Corp.*,
  2010 WL 11520019 (C.D. Cal. July 6, 2010) .......................................... 7

*Wild v. NBC Universal*,
  2011 WL 12877031 (C.D. Cal. July 18, 2011) .......................................... 12

*Williams v. Crichton*,
  891 F. Supp. 120 (S.D.N.Y. 1994) .......................................... 5

**Statutes**

17 U.S.C. § 505 .......................................... 3, 5, 8

**Rules**

Rule 12(b)(6) .......................................... 12

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DEFENDANTS' MOTION FOR ATTORNEYS' FEES
4818-2697-8496v.1 0113237-000003

---

*Kirtsaeng v. John Wiley & Sons*,
  579 U.S. 197 (2016) .......................................... 4, 5

*Lawrence v. Sony Pictures Ent.*,
  2011 WL 13217267 (C.D. Cal. Oct. 5, 2011) .......................................... 8, 11

*Maljack Prods. v. GoodTimes Home Video*,
  81 F.3d 881 (9th Cir. 1996) .......................................... 4

*Mallery v. NBC Universal*,
  2008 WL 719218 (S.D.N.Y. Mar. 18, 2008) .......................................... 5

*Marcus v. ABC Signature Studios*,
  2017 WL 5592470 (C.D. Cal. Nov. 20, 2017) .......................................... 5, 6, 12, 14

*McGillvary v. Netflix*,
  2024 WL 4812536 (C.D. Cal. Oct. 9, 2024) .......................................... 10, 12

*Mireskandari v. Daily Mail & Gen. Tr. PLC*,
  2014 WL 12586434 (C.D. Cal. Nov. 7, 2014) .......................................... 10

*Moore v. Jas. H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) .......................................... 10

*Nat'l Ass'n of Concerned Veterans v. Sec. of Def.*,
  675 F.2d 1319 (D.C. Cir. 1982) .......................................... 10

*Nat'l Bus. Dev. Servs. v. Am. Credit Educ. & Consulting*,
  299 F. App'x 509 (6th Cir. 2008) .......................................... 8

*Pasadena Tournament of Roses Ass'n v. City of Pasadena*,
  2022 WL 2189523 (C.D. Cal. Mar. 17, 2022) .......................................... 12

*Pazarlama v. SayGames*,
  2023 WL 3260528 (N.D. Cal. May 4, 2023) .......................................... 14

*PCLM Grp. v. Drexler*,
  22 Cal. 4th 1084 (2000) .......................................... 13

*Perfect 10 v. Giganews*,
  2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) .......................................... 5

*Randolph v. Dimension Films*,
  634 F. Supp. 2d 779 (S.D. Tex. 2009) .......................................... 5



*Rentmeester v. Nike,*
883 F.3d 1111 (9th Cir. 2018) ............................................................... 4

*Scott v. Meyer,*
2010 WL 2569286 (C.D. Cal. June 21, 2010) ........................................ 7

*Serrano v. Unruh,*
32 Cal. 3d 621 (1982) ........................................................................... 12

*Shame on You Prods. v. Banks,*
2016 WL 5929245 (C.D. Cal. Aug. 15, 2016) ............................. *passim*

*SOFA Ent. v Dodger Prods.,*
709 F.3d 1273 (9th Cir. 2013) ............................................................... 5

*Sorenson v. Mink,*
239 F.3d 1140 (9th Cir. 2001) ............................................................. 10

*Title Tracy Anderson Mind & Body v. Roup,*
2023 WL 6890744 (C.D. Cal. Sept. 11, 2023) ..................................... 12

*Tresóna Multimedia v. Burbank High Sch. Vocal Music Ass'n,*
953 F.3d 638 (9th Cir. 2020) ............................................................ 8, 9

*Uckardesler v. Azteca Int'l,*
2010 WL 11520019 (C.D. Cal. July 6, 2010) ........................................ 8

*Wild v. NBC Universal,*
2011 WL 12877031 (C.D. Cal. July 18, 2011) .................................... 14

**Statutes**

17 U.S.C. § 505 ......................................................................... 3, 4, 5, 9

13    14

7



### MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

By this lawsuit, plaintiff Francesca Gregorini sought to claim ownership over concepts that she expressly acknowledged were unprotectable and to prevent others from creating works that shared even the most commonplace elements with her film *The Truth About Emanuel* ("*Emanuel*"). In pursuit of this goal, Plaintiff cherry-picked random similarities between *Emanuel* and Defendants' television series *Servant*, including generic elements that have been featured in countless other works. Plaintiff also sued several individual defendants who did not have any creative involvement with *Servant*, and instead of amending her complaint following the parties' extensive meet and confer, she waited until Defendants' actually filed a motion to dismiss, and then made slight amendments to her complaint and asserted two new claims based solely "on information and belief" against purported versions of *Servant* scripts. First Amended Complaint ("FAC") ¶¶ 93-104.

Plaintiff's lawsuit failed in its entirety on the merits. As this Court explained when dismissing Plaintiff's claims with prejudice, *Emanuel* and *Servant* "tell completely different stories," and the alleged similarities "pale in comparison to the differences" between the works. *See* Dkt. 39 ("Order") at 6, 14. Defendants now seek to recover a portion of the attorneys' fees they incurred in connection with Plaintiff's claims. In this case, all of the factors relevant to whether a prevailing copyright defendant should recover fees support an award to Defendants:

**First**, Defendants achieved a complete victory; they prevailed fully on their motion to dismiss Plaintiff's claims with prejudice. *See* Section III.A.

**Second**, Plaintiff's claims were objectively unreasonable. A simple review of the works at issue makes clear that they are not substantially, or even remotely, similar in their protected elements. *See* Order at 6. *See* Section III.B.

1
DEFENDANTS' MOTION FOR ATTORNEYS' FEES
4818-2697-8496v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff filed this copyright infringement lawsuit against numerous companies and individuals based on its mistaken belief that it owned the idea of a plane crash and ensuing survival. The alleged similarities between Plaintiff's film *Eden* and Defendants' television series *Yellowjackets* consisted of tropes and *scenes-a-faire* flowing from survival stories and real life. They also consisted of cherry-picked elements, which Plaintiff "amalgamate[d] … from moments scattered across numerous episodes in an attempt to manufacture similarities." Dkt. 39 at 7 (order dismissing Complaint with prejudice). And many of the alleged similarities were false on the face of the works, like the allegations that both works involve cannibalism and suicide.

Before moving to dismiss, Defendants explained these shortcomings to Plaintiff and warned that they would seek their reasonable fees if forced to litigate Plaintiff's claim. Richert Decl. ¶ 2. Now that the Complaint has been dismissed with prejudice, Defendants respectfully ask the Court to award their reasonable attorneys' fees. All of the factors courts routinely consider when determining whether a prevailing copyright litigant should recover fees support an award in this case:

*First*, Defendants achieved a complete victory; they prevailed fully on their motion to dismiss Plaintiff's claim with prejudice. *See* Section III.A.

*Second*, Plaintiff's claim was objectively unreasonable. As this Court recognized, a simple review of the works makes clear that they are not substantially, or even remotely, similar in their protected elements. *See* Section III.B.

*Third*, certain of Plaintiff's litigation decisions demonstrate improper motivation. Plaintiff grossly mischaracterized the two works in an attempt to manufacture similarities obviously not present. Plaintiff was put on notice of these fatal flaws but only doubled down on its mischaracterizations. Rather than engage

## Left document

1  **Third,** certain of Plaintiff's litigation decisions demonstrate improper

2  motivations, including asserting claims against several individuals who did not have

3  any hand in *Servant*'s creative process and adding baseless claims relating to

4  various versions of *Servant* scripts which were based solely on "information and

5  belief." *See* Section III.C.

6  **Fourth,** a fee award is appropriate here because it would serve to deter other

7  potential plaintiffs (and Plaintiff herself) from pursuing claims that pull "a random

8  assortment" (Order at 13) of insignificant elements from the works in an attempt to

9  prevent others from creating works that arguably share a premise or from using

10  commonplace, unprotectable elements.  Asserting such claims stifles creativity and

11  potentially censors new works by creators who do not have the ability or desire to

12  defend against unreasonable claims. *See* Section III.D.

13  **Finally,** the amount of Defendants' requested fees is reasonable in light of

14  Defendants' counsel's background and experience, the market rates for similarly

15  experienced attorneys, and the circumstances and outcome of this case.   Moreover,

16  Defendants seek only a portion of the fees expended in litigating this matter. *See*

17  Section IV.  Accordingly, Defendants respectfully ask this Court to award them the

18  fees requested.

19              **II.    PROCEDURAL BACKGROUND**

20  Plaintiff filed her original complaint on January 15, 2020.  Her complaint

21  included claims for direct, contributory, and vicarious copyright infringement,

22  alleging that three of the ten episodes of *Servant* are "strikingly similar" to

23  *Emanuel.*  Dkt. 1.  Plaintiff filed the lawsuit against the companies that produced

24  and distributed *Servant*, and individuals M. Night Shyamalan (executive producer)

25  and Tony Basgallop (writer), along with four non-writing individual producers

26  (Jason Blumenthal, Todd Black, Steve Tisch, and Ashwin Rajan).

27          In this Court's required pre-filing conference of counsel, conducted on

28  February 11, 2020, Defendants' counsel explained in detail that there was almost no

DEFENDANTS' MOTION FOR ATTORNEYS' FEES    2
4818-2697-8496v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

17

1  with Defendants' detailed analysis, Plaintiff ignored the claim's clear pitfalls.

2  Instead, it simply, and wrongly, asserted that inquiries into substantial similarity are

3  inappropriate at the motion to dismiss stage, and should instead be reserved for

4  summary judgement. *See* Dkt. 33 ¶ 45; *see also* Dkt. 39 at 4.  *See* Section III.C.

5  *Fourth,* a fee award would deter other potential plaintiffs from attempting to

6  claim ownership over unprotectable elements common to a popular genre.  These

7  unreasonable claims stifle creativity and censor new works by authors who do not

8  have the ability or desire to defend against them.  This is particularly important for

9  unprotectable ideas and concepts—like a plane crash and survival—which have

10  been explored in numerous works and may be explored in numerous more without

11  obtaining anyone's permission. *See* Section III.D.

12  *Finally,* the amount of Defendants' requested fees is reasonable given

13  defense counsel's background and experience, the market rates for similarly

14  experienced attorneys, and the circumstances of this case. *See* Section IV.

15          Defendants accordingly ask this Court to award them their fees requested in

16  the amount of $129,305.00, as well as any additional fees incurred in connection

17  with this motion in an amount to be provided with Defendants' reply.

18          **II.    FACTUAL AND PROCEDURAL BACKGROUND**

19  Plaintiff filed its Complaint on November 14, 2024, in which it pleaded a

20  single claim of direct copyright infringement, alleging that Defendants' television

21  series *Yellowjackets* infringed the copyright to Plaintiff's film *Eden.*  Dkt. 1.

22  Defense counsel met and conferred with Plaintiff's counsel to explain in detail that

23  there was almost no overlap of protectable expression between the two works, let

24  alone substantial similarity, and then moved to dismiss the Complaint on

25  January 24, 2025.  *See* Richert Decl. ¶ 2; *see also* Dkt. 27.

26  Plaintiff's opposition failed to meaningfully grapple with any of the cases

27  Defendants cited. *See* Dkt. 33 at 3.  Instead, Plaintiff incorrectly argued that the

28  Court should not conduct an infringement analysis at the pleading stage. *See* Dkt.

18

9

## Left document

1  similarity of protectable expression between the works, let alone substantial
2  similarity. *See* Dkt. 18. Plaintiff did not mention any intent to amend her complaint
3  at that time. Freeman Decl. ¶ 2. Accordingly, Defendants moved to dismiss
4  Plaintiff's complaint on February 18, 2020. Dkt. 20. Rather than oppose
5  Defendants' motion, Plaintiff filed a notice of non-opposition on March 2, 2020
6  (Dkt. 24) and, on March 10, 2020, filed the FAC (Dkt. 25).
7  The FAC asserted the same direct, contributory, and vicarious infringement
8  claims as the original complaint, and added two new copyright infringement claims
9  against certain defendants regarding alleged "early" and "later" draft scripts for
10 *Servant*'s first three episodes. *See* FAC ¶¶ 93-104. Both the new claims were made
11 solely "on information and belief." *Id.* ¶ 95 n.15 & 101 n.16. Defendants moved to
12 dismiss Plaintiff's FAC on March 24, 2020. Dkt. 30.
13 On May 28, 2020, the Court granted Defendants' motion to dismiss
14 Plaintiff's FAC with prejudice. The Court "agree[d] with Defendants that many of
15 the alleged similarities in the First Amended Complaint are mischaracterizations of
16 one or both of the works at issue, stock scenes, or scenes a faire," Order at 13, and
17 found that each element considered under the Ninth Circuit's extrinsic test for
18 substantial similarity demonstrated a lack of protectable similarity between
19 *Emanuel* and *Servant*. Accordingly, the Court ruled that "the works at issue are not
20 substantially similar as a matter of law." Order at 14. Because Plaintiff's direct
21 infringement claim regarding *Servant* failed, so too did her claims as to the
22 purported *Servant* scripts and for contributory and vicarious infringement. *Id.* The
23 Court ordered dismissal of Plaintiff's FAC in full, with prejudice. *Id.*
24  **III.    DEFENDANTS ARE ENTITLED TO RECOVER THEIR FEES**
25 **UNDER THE COPYRIGHT ACT**
26  The Copyright Act grants courts broad discretion to award "full costs,"
27 including a "reasonable attorney's fee," to prevailing parties in copyright
28 infringement actions. 17 U.S.C. § 505. Notably, Section 505 requires treating

DEFENDANTS' MOTION FOR ATTORNEYS' FEES
4818-2697-8496v.1 0113237-000003                                    3                    DAVIS WRIGHT TREMAINE LLP
                                                                                         865 S. FIGUEROA ST., SUITE 2400
                                                                                         LOS ANGELES, CALIFORNIA 90017-2566
                                                                                         (213)  633-6800
                                                                                         Fax: (213) 633-6899

19

## Right document

1  33 ¶ 45. Nor did Plaintiff address much of Defendants' fifteen-page analysis
2  refuting the similarities alleged in the Complaint. As to the few points Plaintiff did
3  address, its arguments mischaracterized the works. Ultimately, on April 25, 2025,
4  the Court granted Defendants' motion to dismiss. Dkt. 39.
5  In dismissing the case with prejudice, the Court called out that "Plaintiff
6  mischaracterize[d] certain events in both works" in an apparent attempt to
7  manufacture similarities between the works' plots. *Id.* at 11. The Court rejected
8  Plaintiff's false allegation that *Eden* "alludes to cannibalism," as well as the
9  proffered mischaracterizations that Coach Ben's "revulsion" at the girls' barbaric
10 cannibalism in *Yellowjackets* is similar to the trainer's early suicide in *Eden*, among
11 others. *Id.* at 11-12. Beyond these and other mischaracterizations, the Court found
12 "most of the remaining similarities" were nothing more than "common *scenes-a-*
13 *faire*." *Id.* at 11-14.
14 In fact, the Court found that *every* category it considered under the Ninth
15 Circuit's extrinsic test for substantial similarity weighed in Defendants' favor. *Id.*
16 at 11-18. Accordingly, the Court not only ruled that "Plaintiff … failed to
17 adequately allege that the works at issue here are substantially similar," but went
18 further to find that "the deficiencies in Plaintiff's copyright claim … stem from the
19 fundamental characteristics of the works themselves." *Id.* at 18. "Any amendment
20 would, therefore, be futile." *Id.*
21  **III.    DEFENDANTS ARE ENTITLED TO RECOVER THEIR FEES**
22 **UNDER THE COPYRIGHT ACT**
23  Plaintiff should reimburse Defendants for their reasonable attorneys' fees
24 incurred in defending against this meritless action. The Copyright Act grants courts
25 broad discretion to award "full costs," including a "reasonable attorney's fee," to
26 prevailing parties in copyright infringement actions. 17 U.S.C. § 505. Notably,
27 Section 505 requires treating prevailing defendants and prevailing plaintiffs alike.
28 *Fogerty v. Fantasy*, 510 U.S. 517, 534 & n.19 (1994) ("*Fogerty I*"). *See also Inhale*



prevailing defendants and prevailing plaintiffs alike. *Fogerty v. Fantasy*, 510 U.S. 517, 534 & n.19 (1994) ("*Fogerty I*"). *See also Inhale v. Starbuzz Tobacco*, 755 F.3d 1038, 1043 (9th Cir. 2014) ("A successful defense furthers the purposes of the Copyright Act just as much as a successful infringement suit does.").

In assessing whether to award a prevailing defendant's attorneys' fees, courts generally consider several non-exclusive factors, including "the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence." *Maljack Prods. v. GoodTimes Home Video*, 81 F.3d 881, 889 (9th Cir. 1996). The U.S. Supreme Court recently reaffirmed these factors and held that courts must give substantial weight to the "objective reasonableness of the losing party's position." *Kirtsaeng v. John Wiley & Sons*, 136 S. Ct. 1979, 1983 (2016).

As discussed below, these factors support awarding Defendants their attorneys' fees for time spent defending against Plaintiff's meritless claims.

**A.    Defendants Achieved Complete Success in This Litigation**

In assessing whether to award fees, courts weigh "the party's degree of success in a lawsuit." *DuckHole v. NBCUniversal Media*, 2013 WL 5797204, at *2 (C.D. Cal. Oct. 25, 2013). "This factor weighs more in favor of a party who prevailed on the merits, rather than on a technical defense." *Id.*

Here, Defendants succeeded in defeating Plaintiff's FAC in its entirety. Moreover, Defendants prevailed on the merits and not on a technical defense. This Court held that "the works at issue are not substantially similar as a matter of law," and accordingly dismissed with prejudice all of Plaintiff's claims. *Order at 14.* There can be no dispute that Defendants were entirely successful in their motion to dismiss Plaintiff's FAC. This factor thus weighs strongly in favor of awarding Defendants their fees.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

21



*v. Starbuzz Tobacco*, 755 F.3d 1038, 1043 (9th Cir. 2014) ("A successful defense furthers the purposes of the Copyright Act just as much as a successful infringement suit does.").

In assessing whether to award a prevailing defendant's attorneys' fees, courts generally consider several non-exclusive factors, including "the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence." *Maljack Prods. v. GoodTimes Home Video*, 81 F.3d 881, 889 (9th Cir. 1996). The U.S. Supreme Court reaffirmed these factors and held that courts must give substantial weight to the "objective reasonableness of the losing party's position." *Kirtsaeng v. John Wiley & Sons*, 579 U.S. 197, 199 (2016). All these factors support awarding Defendants their attorneys' fees in this case.

**A.    Defendants Achieved Complete Success in This Litigation**

In assessing whether to award fees, courts weigh "the party's degree of success in a lawsuit." *DuckHole v. NBCUniversal Media*, 2013 WL 5797204, at *2 (C.D. Cal. Oct. 25, 2013) (awarding defendants' attorneys' fees after dismissing case for lack of substantial similarity). "This factor weighs more in favor of a party who prevailed on the merits, rather than on a technical defense." *Id.* Here, Defendants defeated Plaintiff's Complaint in its entirety and on the merits. And the works' lack of substantial similarity was so fundamental that this Court dismissed Plaintiff's initial Complaint with prejudice. Dkt. 39 at 18 (citing *Rentmeester v. Nike*, 883 F.3d 1111, 1125 (9th Cir. 2018)). It is undeniable that Defendants were entirely successful in their motion to dismiss Plaintiff's Complaint, and this factor weighs heavily in favor of awarding Defendants' fees.

**B.    Plaintiff's Claim Was Objectively Unreasonable**

In assessing fee awards under Section 505, courts also consider whether a plaintiff's claims were "objectively unreasonable." *Shame on You Prods. v. Banks*, 2016 WL 5929245, at *6 (C.D. Cal. Aug. 15, 2016), *aff'd*, 893 F.3d 661 (9th Cir.

22

---

**Left document:**

**B.    Plaintiff's Claims Were Objectively Unreasonable**

In assessing fee awards under Section 505, courts also look to whether a plaintiff's claims were "objectively unreasonable." *Shame on You Prods. v. Banks*, 2016 WL 5929245, at *6 (C.D. Cal. Aug. 15, 2016), *aff'd*, 893 F.3d 661 (9th Cir. 2018). This factor must be given "substantial weight," *Kirtsaeng*, 136 S. Ct. at 1983. And while courts also assess whether the claims were "frivolous," such a finding is "no longer required" to award fees under Section 505. *Fantasy v. Fogerty*, 94 F.3d 553, 560 (9th Cir. 1996) ("*Fogerty II*"). Notably, courts *routinely* hold that claims that are objectively unreasonable and award fees where they find no substantial similarity as a matter of law. *See, e.g., DuckHole*, 2013 WL 5797204, at *2 (awarding fees where court dismissed copyright claim for lack of substantial similarity); *Williams v. Crichton*, 891 F. Supp. 120, 122 (S.D.N.Y. 1994) (awarding fees after finding the plaintiff's copyright claims were based on "highly selective, scattered" similarities which all flowed from an unprotectable subject).

Here, Plaintiff's copyright claims were objectively unreasonable and frivolous. Simply reviewing the two works makes clear that *Servant* did not copy protectable elements of *Emanuel*. As this Court explained, *Emanuel* and *Servant* "tell completely different stories," and their alleged similarities "pale in comparison to [their] differences." Order at 6, 14. Plaintiff offered the Court a list of scattered similarities, many of which the Court found to be "mischaracterization of one or both the works at issue," in an attempt to twist two highly dissimilar works into similarity. *See* Order at 13. But the Court rejected Plaintiff's arguments, noting that it was "'unimpressed' with these types of 'random similarities scattered throughout the works.'" Order at 13 (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)). Notably, this Court found a lack of similarity in *every* category that it assessed, including plot, sequence of events, theme, characters, setting, mood, pace, and dialogue. *See* Order at 6-14.

---

**Right document:**

2018). "[A] claim is objectively unreasonable where the party advancing it 'should have known from the outset that its chances of success in this case were slim to none.'" *Perfect 10 v. Giganews*, 2015 WL 1746484, at *11 (C.D. Cal. Mar. 24, 2015) (quoting *SOFA Ent. v Dodger Prods.*, 709 F.3d 1273, 1280 (9th Cir. 2013)). This factor must be given "substantial weight." *Kirtsaeng*, 579 U.S. at 199. And while courts also may assess whether the claims were "frivolous," such a finding "is no longer required" to award fees under Section 505. *Fantasy v. Fogerty*, 94 F.3d 553, 560 (9th Cir. 1996) ("*Fogerty II*").

Courts often hold that claims are objectively unreasonable and award fees where they find no substantial similarity as a matter of law. For example, in *Marcus v. ABC Signature Studios*, 2017 WL 5592470 (C.D. Cal. Nov. 20, 2017), the Central District dismissed a copyright action over a screenplay and a television series and awarded attorneys' fees. *Id.* at *3-5. Like here, the court emphasized that "copyright law does not protect 'stock scenes, general plot ideas, and *scenes-a-faire*.'" *Id.* at *3. And "[a]fter reviewing the two works," the court concluded that the complaint "alleges nary a similarity that is protectable under copyright law." *Id. Id.* "[T]he lack of substantial similarity was obvious," and thus plaintiff's suit "was objectively unreasonable. *Id.* (citing *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 794 (S.D. Tex. 2009) (finding objective unreasonableness where "the lack of similarity between the unsuccessful plaintiff's work and the allegedly infringing work are obvious")). *See also Shame on You Prods.*, 2016 WL 5929245, at *8 (awarding fees "due to the lack of any meaningful or legally cognizable similarity" between the works); *DuckHole*, 2013 WL 5797204, at *2 (awarding fees after court dismissed copyright claim for lack of substantial similarity); *Mallery v. NBC Universal*, 2008 WL 719218, at *1 (S.D.N.Y. Mar. 18, 2008) (holding copyright infringement claim objectively unreasonable where "nearly every instance of alleged similarity between [defendant's work] and the plaintiffs' work relates to

---



1  Plaintiff's copyright claims were objectively unreasonable, both legally and
2  factually. This is particularly true for the FAC's two claims of copyright
3  infringement for alleged drafts of scripts for *Servant*, which were alleged
4  completely on "information and belief," and for which Plaintiff did not allege any
5  similarities separate and apart from the alleged similarities between *Emanuel* and
6  the completed *Servant* series. FAC ¶ 95 n.15 & 101 n.16. This factor thus weighs
7  strongly in favor of granting Defendants' fee request.

8  **C.   Certain of Plaintiff's Litigation Decisions Lacked a Proper Motive**
9      Courts may also consider a plaintiff's "motivation" in pursuing a lawsuit.
10  *Fogerty II*, 94 F.3d at 558. Improper motivation can be inferred from evidence that
11  a party engaged in "overly aggressive litigation tactics," or pursued the lawsuit
12  regardless of the merits of the claims. *See Bridgeport Music v. WB Music*, 520 F.3d
13  588, 593 (6th Cir. 2008) (approving fee award against plaintiff based in part on
14  plaintiff's aggressive tactics and pursuit of futile claims).

15      While "a plaintiff's culpability is no longer required" for a prevailing
16  defendant to recover fees, *Fogerty II*, 94 F.3d at 558, Plaintiff's litigation tactics are
17  evidence of improper motivation. Specifically, in a detailed, in-person meet
18  and confer regarding Defendants' motion to dismiss the initial complaint, Plaintiff
19  made Defendants go through the exercise of filing the motion just to then decide to
20  slightly amend her complaint and add new claims on "information and belief." *See*
21  Dkt. 29 (Joint Statement); Dkt. 20 (Motion to Dismiss Complaint); Dkt. 24 (Notice
22  of Non-Opposition); Dkt. 25 (First Amended Complaint). Her new claims related
23  to purported "early" and "later" versions of scripts for *Servant*'s first three episodes,
24  but included no allegations specific to the scripts. *See* FAC ¶¶ 93-104. In addition,
25  Plaintiff asserted her claims against several individual producers who had no
26  creative involvement in *Servant*. This factor thus also justifies a fee award.
27
28

6

DEFENDANTS' MOTION FOR ATTORNEYS' FEES
4818-2697-8496v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899



1  unprotectable ideas rather than protectable expression"), *aff'd*, 331 F. App'x 821
2  (2d Cir. 2009).

3      Like in *Marcus*, Plaintiff's copyright claim was objectively and obviously
4  unreasonable. Simply reviewing the two works readily reveals that *Yellowjackets*
5  did not copy protectable elements of *Eden*. And "[t]here can be no serious dispute"
6  that the vast majority of any elements they do share are based on common tropes
7  and real-life facts that Plaintiff cannot own. Dkt. 39 at 13-14. The Court found a
8  single alleged similarity to be "sufficiently original to be protectable," but even so,
9  "insufficient to sustain an infringement claim." *Id.* The Court notably found a lack
10  of similarity in every category that it assessed, including plot, mood and theme,
11  characters, and setting and pace. Dkt. 39 at 11-18. Indeed, "the deficiencies in
12  Plaintiff's copyright claim ... stem[med] from the fundamental characteristics of the
13  works themselves," such that the Court dismissed the Complaint with prejudice. *Id.*
14  at 18. Plaintiff's copyright claim was thus unreasonable, both legally and factually,
15  and the factor weighs heavily in favor of granting Defendants' fee request.

16  **C.   Plaintiff Lacked a Proper Motive for Certain Litigation Decisions**
17      Courts may also consider a plaintiff's "motivation" in pursuing a lawsuit.
18  *Fogerty II*, 94 F.3d at 558. Improper motivation can be inferred from evidence that
19  a party engaged in "overly aggressive litigation tactics" or pursued the lawsuit
20  regardless of the merits of the claims. *See Bridgeport Music v. WB Music*, 520 F.3d
21  588, 593 (6th Cir. 2008) (approving fee award against plaintiff based in part on
22  plaintiff's aggressive tactics and pursuit of futile claims). "[A] plaintiff's
23  culpability is no longer required" for a prevailing defendant to recover fees, *Fogerty*
24  *II*, 94 F.3d at 558, but even so, Plaintiff's litigation tactics in this case support a
25  finding of improper motivation.

26      Most fundamentally, Plaintiff claimed to own unprotectable ideas, *scenes-a-*
27  *faire*, and tropes common to the survival genre, alongside real-life facts from a
28  sports team's notorious plane crash in the Andes. And it tried to wield those



**D.    A Fee Award is Appropriate to Advance the Copyright Act's Goals of Compensation and Deterring Meritless Litigation**

Finally, awarding fees to a prevailing copyright defendant is proper where it serves "to advance considerations of compensation and deterrence." *Fogerty I*, 510 U.S. at 534 n.19 (internal quotation marks omitted). "Compensation and deterrence would support an award of attorneys' fees … in order to 'deter this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost-benefit analysis that tells such plaintiffs that they can score big if they win and there will be no adverse consequences if they lose.'" *Lawrence v. Sony Pictures Entm't*, 2011 WL 13217267, at *2 (C.D. Cal. Oct. 5, 2011) (quoting *Baker v. Urban Outfitters*, 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006)), *aff'd*, 534 F. App'x 651 (9th Cir. 2013).

In *Shame on You Prods.*, for example, the court awarded defendants $315,669.75 in attorneys' fees after holding that the works were not substantially similar and finding that a fee award would "reward artists and others who defend against meritless claims, and will encourage artists to continue producing original works without fear of having to defend against baseless claims." 2016 WL 5929245, at *11. *See also Uckardesler v. Azteca Int'l Corp.*, 2010 WL 11520019, *1 (C.D. Cal. July 6, 2010) (Walter, J.) (awarding successful copyright defendants their attorneys' fees because "an award of attorney's fees in this case will help to deter others, such as Plaintiffs, from bringing frivolous or objectively unreasonable lawsuits in which they claim they are entitled to copyright protection for elements that the evidence – and, in this case, Plaintiff's own admissions – demonstrates are unprotectable").

These principles are particularly important in a case like this, where Plaintiff attempted to punish others for creating a work that shared an unprotectable premise with her work, despite the extensive differences between them. This stifles creativity and creates a chilling effect, as the various entities that are needed to

7

DEFENDANTS' MOTION FOR ATTORNEYS' FEES
4818-2697-8496v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

27

---

unprotectable elements to score a windfall from a multi-season hit television series. *See Shame on You Prods.*, 2016 WL 5929245, at *9 (a finding of bad faith may be based on conduct that "suggests an intent to force Defendants to expend significant resources on litigation in order to coerce a settlement"). Defendants' counsel explained the case's pitfalls to Plaintiff's counsel prior to their motion to dismiss (*see* Richert Decl. ¶ 2), but Plaintiff declined to forgo the action or even provide any meaningful response to the arguments. *See Scott v. Meyer*, 2010 WL 2569286, at *3 (C.D. Cal. June 21, 2010) (awarding fees where "Defendants were forced to defend against Plaintiff's claims even after pointing out the fatal flaws from which her lawsuit suffered").[1]

Plaintiff's decision to pursue this case regardless of the substantive merit is improper by itself. But Plaintiff also mischaracterized and even invented alleged similarities, including that "[c]annibalism arises in both stories as a last resort to survive," which Plaintiff then doubled down on in its briefing. *See* Dkt. 1 ¶ 33(m); Dkt. 39 at 11-12. *See also* Dkt. 39 at 11-13 (cataloging and rejecting Plaintiff's mischaracterizations about the works). Plaintiff's conduct, especially its obvious mischaracterizations, further justifies granting Defendants' fee request.

**D.    A Fee Award Is Appropriate to Advance the Copyright Act's Goals of Compensation and Deterring Meritless Litigation**

Finally, awarding fees to a prevailing copyright defendant is proper where it serves "to advance considerations of compensation and deterrence." *Fogerty I*, 510 U.S. at 534 n.19. "Compensation and deterrence would support an award of attorneys' fees … in order to 'deter this plaintiff, and other similarly situated

_____

[1] Defendants warned Plaintiff they would seek their attorneys' fees if forced to litigate the action. Richert Decl. ¶ 2. *See DuckTube*, 2013 WL 5797204 at * 4 ("While motive may not be clear, it is apparent that Plaintiff should have understood the potential consequences of pursuing a meritless claim for copyright infringement.").

7

28





1  plaintiffs, from bringing unreasonable claims based on a cost-benefit analysis that

2  tells such plaintiffs that they can score big if they win and there will be no adverse

3  consequences if they lose.'"  *Lawrence v. Sony Pictures Ent.*, 2011 WL 13217267,

4  at *2 (C.D. Cal. Oct. 5, 2011) (quoting *Baker v. Urban Outfitters*, 431 F. Supp. 2d

5  351, 359 (S.D.N.Y. 2006)), *aff'd*, 534 F. App'x 651 (9th Cir. 2013).

6        In *Shame on You Prods.*, for example, the court awarded defendants

7  $315,669.75 in attorneys' fees after granting the defendants' motion for judgment

8  on the pleadings.  The court held that the works were not substantially similar and

9  found that a fee award would "reward artists and others who defend against

10  meritless claims, and will encourage artists to continue producing original works

11  without fear of having to defend against baseless claims."  2016 WL 5929245, at

12  *11.  And in *Tresóna Multimedia v. Burbank High Sch. Vocal Music Ass'n*, the

13  Ninth Circuit *reversed* the district court's denial of attorneys' fees to the successful

14  defendants in a copyright action.  The *Tresóna* court held that "[a]warding

15  Defendants their attorneys' fees [e]nsures that they are properly compensated for

16  defending against overreaching claims of copyright infringement."  953 F.3d 638,

17  654 (9th Cir. 2020).  *See also Uckardesler v. Azteca Int'l*, 2010 WL 11520019, *1

18  (C.D. Cal. July 6, 2010) (awarding successful copyright defendants their attorneys'

19  fees because "an award of attorney's fees in this case will help to deter others, such

20  as Plaintiffs, from bringing frivolous or objectively unreasonable lawsuits in which

21  they claim they are entitled to copyright protection for elements that the evidence

22  … demonstrates are unprotectable").

23        Deterrence is important in a case like this, where Plaintiff sued the creators of

24  a critically acclaimed television series that shared only a high-level unprotectable

25  premise and commonplace tropes with Plaintiff's lesser-known film, despite the

26  extensive differences between the two works.  *See* Dkt. 33 ¶¶ 20-21 n.4, n.5; *cf.*

27  *Nat'l Bus. Dev. Servs. v. Am. Credit Educ. & Consulting*, 299 F. App'x 509, 512

28  (6th Cir. 2008) (acknowledging that "[c]opyright infringement … lends itself

8

29          30



**Left document:**

produce and distribute a work exercise more caution about new projects that share unprotectable elements or themes with prior works. This results in more roadblocks for new creators and jeopardizes the creation of works with new perspectives on unprotectable concepts or new uses of common elements.

Plaintiff pursued unreasonable copyright claims resting on unprotectable concepts even though her FAC expressly admitted that the works' purportedly shared premise was unprotectable. FAC ¶ 72 n.11; Order at 6. She also relied on a list of "random similarities" that were riddled with mischaracterized, generic, and otherwise unprotectable elements in an attempt to create the appearance of infringement where there is none. Order at 13 (quoting Kouf, 16 F.3d at 1045). A fee award is appropriate to deter Plaintiff and other prospective claimants from pursuing such baseless claims, which impose an unwarranted and unjustifiable cost on authors, publishers, and other creators, and thereby deprive copyright owners of the full value of their creations.

In sum, all of the relevant factors to determining whether Defendants are entitled to recover fees under 17 U.S.C. § 505 weigh in favor of a fee award here.

**IV.    DEFENDANTS' REQUESTED FEES ARE REASONABLE**

In determining a reasonable fee award under Section 505, the Court "must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." Intel Corp. v. Terabyte Int'l, 6 F.3d 614, 622 (9th Cir. 1993). "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." Id. Applying these criteria, Defendants' requested fees are entirely reasonable.

**A.    Defendants' Counsel's Billing Rates Are Reasonable**

A reasonable hourly rate is one that is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Sorenson v. Mink, 239 F.3d 1140, 1145 (9th Cir. 2001)

8

DEFENDANTS' MOTION FOR ATTORNEYS' FEES
4818-2697-8496v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Right document:**

readily to abusive litigation, since the high cost of trying such a case can force a defendant who might otherwise be successful in trial to settle in order to avoid the time and expenditure of a resource intensive case"). Plaintiffs that demand expensive, burdensome discovery but fail to even engage with defendants' meticulous extrinsic comparison should be deterred. See Dkt. 33 ¶¶ 12, 45-47.

Deterrence here is not just about money. Actions like this stifle creativity and create a chilling effect, as entities that produce and distribute a work exercise more caution about new projects sharing unprotectable elements or themes with prior works. This means more roadblocks for creators—whether budding or well established—and fewer works with new perspectives on unprotectable elements. A fee award is appropriate to deter Plaintiff and other prospective claimants from pursuing baseless claims, which impose unwarranted and unjustifiable costs on authors, publishers, and other creators. See Tresóna, 953 F.3d at 654 ("An award of attorneys' fees here assures that 'an overzealous monopolist [cannot] use his copyright to stamp out the very creativity that the [Copyright] Act seeks to ignite.'") (alteration in original) (citation omitted).

In sum, all of the factors relevant to a fees request under 17 U.S.C. § 505 weigh in favor of an award.

**IV.    DEFENDANTS' REQUESTED FEES ARE REASONABLE**

In determining a reasonable fee award under Section 505, the Court "must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." Intel Corp. v. Terabyte Int'l, 6 F.3d 614, 622 (9th Cir. 1993). "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." Id. Applying these criteria, Defendants' requested fees are entirely reasonable.



1  (internal quotes omitted). The "best evidence" of an attorney's reasonable hourly

2  rate is the "rate customarily charged" by that attorney. *Elser v. I.A.M. Nat'l*

3  *Pension Fund*, 579 F. Supp. 1375, 1379 (C.D. Cal. 1984) (internal quotes omitted).

4  Indeed, "[u]nless counsel is working outside his or her normal area of practice, the

5  billing-rate multiplier is, for practical reasons, usually counsel's normal billing

6  rate." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982). Based

7  on their skill, experience, and reputation, the hourly rates charged for Defendants'

8  attorneys are highly reasonable:

9  • **Nicolas Jampol** is a media & entertainment partner in the Los Angeles

10  office of Davis Wright Tremaine LLP ("DWT"), which is a nationally recognized

11  firm for intellectual property litigation. *See City of Inglewood v. Teixeira*, 2015 WL

12  6146269, at *5 (C.D. Cal. Oct. 8, 2015) ("Davis Wright Tremaine LLP ('DWT') is

13  a nationally recognized firm in the areas of First Amendment and intellectual

14  property litigation."). *Lawrence*, 2011 WL 13217267, at *4 (recognizing DWT "is

15  reputable and active in litigating copyright cases in this district"). Mr. Jampol

16  graduated *cum laude* from the University of Michigan Law School in 2006, and

17  litigates primarily content-related claims, with a particular emphasis on copyright

18  claims. Freeman Decl. ¶ 4. In 2018, *Variety* recognized Mr. Jampol as one of

19  "Hollywood's New Leaders." *Id.* DWT charged a discounted rate of $541 per hour

20  for Mr. Jampol's time on this case. *Id.* ¶ 3.

21  • **Cydney Swofford Freeman** is a media & entertainment associate in

22  the Los Angeles office of DWT. She graduated from New York University School

23  of Law in 2015 and routinely litigates and counsels clients on copyright, trademark,

24  First Amendment, and other media matters. *Id.* ¶ 5. DWT charged a discounted

25  rate of $362 per hour for Ms. Freeman's time on this case. *Id.* ¶ 3.

26  • **Camila Pedraza** is a media & entertainment associate in the Los

27  Angeles office of DWT. She graduated *cum laude* from the University of Miami

28  School of Law in 2019, and has since worked on a variety of entertainment and

9

**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA, ST., SUITE. 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DEFENDANTS' MOTION FOR ATTORNEYS' FEES
4818-2697-8496v.1 0113237-000003



1  A.  **Defendants' Counsel's Billing Rates Are Reasonable**

2  A reasonable hourly rate is one that is "in line with those prevailing in the

3  community for similar services by lawyers of reasonably comparable skill,

4  experience and reputation." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001)

5  (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11). The "best evidence" of an

6  attorney's reasonable hourly rate is the "rate customarily charged" by that attorney.

7  *Elser v. I.A.M. Nat'l Pension Fund*, 579 F. Supp. 1375, 1379 (C.D. Cal. 1984)

8  (quoting *Nat'l Ass'n of Concerned Veterans v. Sec. of Def.*, 675 F.2d 1319, 1325

9  (D.C. Cir. 1982)). Indeed, defense counsel's requested rates are presumed

10  reasonable because they are the rates actually paid in this case. *See Carson v.*

11  *Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) ("That a lawyer charges a

12  particular hourly rate, and gets it, is evidence bearing on what the market rate is,

13  because the lawyer and his clients are part of the market."). Thus, "[u]nless counsel

14  is working outside his or her normal area of practice, the billing-rate multiplier is,

15  for practical reasons, usually counsel's normal billing rate." *Moore v. Jas. H.*

16  *Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982). Based on their skill,

17  experience, and reputation, the discounted hourly rates charged for Defendants'

18  attorneys are highly reasonable:

19  • **Nicolas Jampol** is a Media & Entertainment partner in the Los

20  Angeles office of Davis Wright Tremaine LLP ("DWT"), which is a nationally

21  recognized firm for intellectual property litigation. *See McGillvary v. Netflix*, 2024

22  WL 4812536, at *3 (C.D. Cal. Oct. 9, 2024) ("DWT is also a nationally recognized

23  firm in the areas of media and First Amendment litigation."); *City of Inglewood v.*

24  *Teixeira*, 2015 WL 6146269, at *5 (C.D. Cal. Oct. 8, 2015) ("Davis Wright

25  Tremaine LLP ('DWT') is a nationally recognized firm in the areas of First

26  Amendment and intellectual property litigation."); *Mireskandari v. Daily Mail &*

27  *Gen. Tr. PLC*, 2014 WL 12586434, at *12 (C.D. Cal. Nov. 7, 2014) ("DWT's Los

28  Angeles office has become increasingly well-known for its work in media and

10

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

6/15/25



intellectual property matters. *Id.* ¶ 6. DWT charged a discounted rate of $281 per hour for Ms. Pedraza's time on this case. *Id.* ¶ 3.

Given the skills and reputations of Defendants' lawyers, as well as the substantial pre-negotiated discount, their rates in this matter are entirely reasonable.

The reasonableness of DWT's rates is further evidenced by the fact that other courts have found its rates to be reasonable in other copyright lawsuits in Southern California. For example, in *Teixeira*, the court found the following rates reasonable for DWT attorneys for the year 2015 in a copyright action: $645 for a partner, $395 for a mid-level associate; and $335 for a junior associate. 2015 WL 6146269, at *1, 7. And in *Love v. Mail on Sunday*, 2007 WL 2709075, at *8 (C.D. Cal. Sept. 7, 2007), *aff'd sub nom. Love v. Associated Newspapers*, 611 F.3d 601 (9th Cir. 2010), which was decided a decade ago, the court found that the following rates were "consistent with the rates typically charged by other highly-regarded southern California law firms for similar work by attorneys of comparable experience": $690, $590, and $570 for partners of varying levels of experience; $485 for a senior counsel; $460 for a senior associate; and $305 for a junior associate.

Based on the above authorities, DWT's rates for this matter are reasonable.

**B.    The Hours Expended By Defendants' Counsel Are Reasonable.**

A fee award "should ordinarily include compensation for all hours reasonably spent, including those relating solely to the fee." *Serrano v. Unruh*, 32 Cal. 3d 621, 624 (1982). Defendants' request is reasonable for several reasons.

**First**, despite the fact that Plaintiff chose to sue eleven different individuals and entities in this action, Defendants chose to consolidate their defense by engaging one law firm to represent them all. This choice drastically reduced the overall amount of fees Defendants incurred in defending against Plaintiff's claims, and supports that the fees they did incur were reasonable.

**Second**, Defendants are not seeking reimbursement for all their time spent defeating Plaintiff's claims. They do not seek reimbursement for the time incurred

10

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

35

entertainment law; the firm is nationally recognized for its … intellectual property litigation practice."); *Lawrence*, 2011 WL 13217267, at *4 (recognizing DWT "is reputable and active in litigating copyright cases in this district"). Mr. Jampol graduated *cum laude* from the University of Michigan Law School in 2006 and litigates primarily content-related claims, with a particular emphasis on copyright claims. Freeman Decl. ¶ 5. This year, *The Hollywood Reporter* named Mr. Jampol to its Power Lawyers list, and *Variety* recognized him in its Legal Impact list. *Id.* DWT charged significantly discounted rates of $650 per hour for 2025 and $600 per hour for 2024 for Mr. Jampol's time on this case. *Id.* ¶ 3.

•    **Cydney Swofford Freeman** is a Media & Entertainment partner in the Los Angeles office of DWT. She graduated from New York University School of Law in 2015 and routinely litigates and counsels clients on copyright, trademark, First Amendment, and other media matters. *Id.* ¶ 6. In 2023, Ms. Freeman was named a "Rising Star" by Law360 for Media & Entertainment Law; she was selected as a Lawyers on the Fast Track (Under 40) Honoree in ALM's 2025 California Legal Awards; and she was named "One to Watch" by Best Lawyers in Entertainment & Sports and Intellectual Property Law for 2024-2025. *Id.* DWT charged significantly discounted rates of $650 per hour for 2025 and $535 per hour for 2024 for Ms. Freeman's time on this case.¹ *Id.* ¶ 3.

•    **Joel Richert** is a Media & Entertainment senior associate in the Los Angeles office of DWT. He graduated from the University of Michigan Law School in 2018. *Id.* ¶ 7. Since joining DWT in 2020, Mr. Richert has focused on media litigation and has worked alongside Mr. Jampol and Ms. Freeman on a variety of litigation and counseling matters involving copyright, trademark, and other intellectual property. *Id.* DWT charged significantly discounted rates of $490

¹ Ms. Freeman was elevated from counsel to partner in 2025.

11

36

18



1  by other DWT attorneys and paralegals who have assisted with the matter, nor for

2  the significant time spent on this matter by in-house counsel at Apple,

3  notwithstanding that those fees are recoverable.  Freeman Decl. ¶ 10; *see PCLM*

4  *Grp. v. Drexler*, 22 Cal. 4th 1084, 1094 (2000) (affirming fee award for work

5  performed by in-house counsel, finding "no basis for discriminating" between in-

6  house counsel and outside attorneys on a particular matter).  And they do not seek

7  an award for the tens of thousands of dollars in attorneys' fees Defendants incurred

8  in responding to Plaintiff's 17 sets of written discovery (including 112 different

9  requests for production).  Freeman Decl. ¶ 10.  Defendant also are not seeking

10  attorneys' fees in connection with this motion.

11      **Third**, Defendants' motion was entirely successful, and resulted in an early

12  dismissal of Plaintiff's FAC with prejudice.  The U.S. Supreme Court has explained

13  that where a prevailing party "has obtained excellent results, [their] attorney should

14  recover a fully compensatory fee.  Normally, this will encompass all hours

15  reasonably expended on the litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 435

16  (1983).  This is particularly significant because Plaintiff was not merely seeking

17  damages, but also wide-ranging injunctive relief and attorneys' fees.  Dkt. 25 at 48.

18      **Fourth**, despite being forced to write two separate motions to dismiss,

19  Defendants' attorneys managed this case efficiently and the hours were reasonable

20  in light of the complexity of the issues and the nature of the case.  Defendants'

21  motion to dismiss required defense counsel to demonstrate to the Court that the two

22  works were not substantially similar with respect to plot, characters, themes, and the

23  other elements of the Ninth Circuit's "extrinsic test" for substantial similarity.  This,

24  in turn, required careful review and analysis by Defendants' counsel of both

25  *Emanuel* and *Servant*.  Defendants' counsel also researched and reviewed numerous

26  other works featuring the elements that Plaintiff claimed as her own.  *See* Dkt. 30 &

27  30-1 (Defendants' motion to dismiss the FAC and accompanying request for

28  judicial notice.)

11

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DEFENDANTS' MOTION FOR ATTORNEYS' FEES
4818-2697-8496v.1 0113237-000003

1  per hour for 2025 and $460 per hour for 2024 for Mr. Richert's time on this case.

2  *Id.* ¶ 3.

3      Given the skills and reputations of Defendants' lawyers, their rates in this

4  matter are entirely reasonable.  Courts regularly find similar rates to be reasonable

5  in other copyright and content-based lawsuits in Southern California.  For example,

6  last year, the court in *McGillvary* found the following DWT rates reasonable: $833

7  for a partner; $693 for counsel; and $616 for a senior associate.  2024 WL 4812536,

8  at *3 (C.D. Cal. Oct. 9, 2024).  *See also Title Tracy Anderson Mind & Body v.*

9  *Roup*, 2023 WL 6890744, at *2-3 (C.D. Cal. Sept. 11, 2023) (finding $1,065 for a

10  partner, $1,000 for a counsel, and $760 and $655 for mid-level associates to be

11  reasonable); *Pasadena Tournament of Roses Ass'n v. City of Pasadena*, 2022 WL

12  2189523, at *6-7 (C.D. Cal. Mar. 17, 2022) (finding rates of between $735 and

13  $795 for partners, and $585 and $550 for associates, reasonable).  Based on the

14  above authorities, and as shown by the declaration for Ms. Freeman, DWT's rates

15  for this matter are reasonable.  *See* Freeman Decl. ¶¶ 3-4

16  **B.    The Hours Expended by Defendants' Counsel Are Reasonable**

17      A fee award "should ordinarily include compensation for all hours reasonably

18  spent, including those relating solely to the fee." *Serrano v. Unruh*, 32 Cal. 3d 621,

19  624 (1982).[1]  Defendants' request is reasonable for several reasons.

20      *First*, the five Defendants served in this action chose to consolidate their

21  defense by engaging one law firm to represent them all.  This choice drastically

22  reduced the overall amount of fees Defendants incurred in defending against

23  Plaintiff's claim and supports that the fees they did incur were reasonable.

24

25  _____

26      [1] *See also Marcus*, 2017 WL 5592470, at *6 (prevailing copyright defendants

27  are entitled to fees incurred in preparing motion to recover attorneys' fees); *Fantasy*
   *v. Fogerty*, 1995 WL 261504, at *7 (N.D. Cal. May 2, 1995) ("[T]he court finds

28  Fogerty is entitled to fees incurred in connection with his application for fees during
   remand."), *aff'd*, 94 F.3d 553 (9th Cir. 1996).

12

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

37

38



39



*Second*, Defendants do not seek reimbursement for all their time spent defeating Plaintiff's claim. They do not seek reimbursement for the time incurred by paralegals who have assisted with the matter, nor for the significant time spent on this matter by in-house counsel at Lions Gate or Paramount, notwithstanding that those fees are recoverable. Freeman Decl. ¶¶ 8, 13; *see PCLM Grp. v. Drexler*, 22 Cal. 4th 1084, 1094 (2000) (affirming fee award for work performed by in-house counsel, finding "no basis for discriminating" between in-house counsel and outside attorneys on a particular matter).

*Third*, Defendants' motion was entirely successful and resulted in an early dismissal of Plaintiff's initial Complaint with prejudice. The U.S. Supreme Court has explained that where a prevailing party "has obtained excellent results, [their] attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). This is particularly significant here because Plaintiff sought not only damages but also wide-ranging injunctive relief—including forcing the "recall" of Defendants' television series—as well as its own attorneys' fees. Dkt. 1 ¶¶ 41-42; *see also id.*, Prayer for Relief ¶¶ 3-5.

*Fourth*, Defendants' attorneys managed this case efficiently, and the hours were reasonable given the work needed. Defendants' motion required a methodical dissection of the works at issue to argue that *Eden* and *Yellowjackets* were not substantially similar with respect to plot, characters, themes, or the other extrinsic test elements. This required careful review and analysis by Defendants' counsel of both *Eden* and *Yellowjackets*. And counsel litigated efficiently: the majority of the work was handled by Mr. Richert and Ms. Freeman, rather than senior partner Mr. Jampol, as Mr. Richert took the lead in drafting the motion to dismiss, its reply, and this motion, and Ms. Freeman argued the motion to dismiss. *See* Freeman Decl. ¶¶ 5-7. While the case required in-depth analysis across many hours of television and film, Defendants handled the case efficiently.

13

40



1  **Fifth**, as noted above, the amount requested is within the range of fees

2  awarded to prevailing defendants in other comparable copyright actions.  For

3  example, in *Teixeira*, the court awarded $117,741 in attorneys' fees to the

4  defendants after they – like Defendants here – succeeded in obtaining a dismissal

5  with prejudice of the plaintiff's copyright claim on a Rule 12(b)(6) motion.  2015

6  WL 6146269, at *6-7.  *See also Shame on You*, 2016 WL 5929245, at *19

7  (awarding $315,669.75 in attorneys' fees for defendants' successful motion for

8  judgment on the pleadings); *Wild v. NBC Universal*, 2011 WL 12877031, at *4

9  (C.D. Cal. July 18, 2011) (awarding $113,041.85 in attorneys' fees and costs for

10 defendants' successful motion to dismiss copyright action).

11               V.    CONCLUSION

12     A simple review of *Emanuel* and *Servant* reveals that the works are not

13 substantially similar.  Under the circumstances described above, Defendants are

14 entitled to recover from Plaintiff the fees they reasonably incurred in their

15 successful defense.  Accordingly, the Court should grant this Motion and award

16 Defendants their attorneys' fees in the amount of $162,467.30.

17

18 DATED: June 23, 2020          DAVIS WRIGHT TREMAINE LLP

19                               NICOLAS A. JAMPOL
                                DIANA PALACIOS
20                              CYDNEY SWOFFORD FREEMAN
                                CAMILA PEDRAZA
21
                                By:   /s/ Nicolas A. Jampol
22                                    Nicolas A. Jampol
23                              Attorneys for Defendants

24

25

26

27

28

12
DEFENDANTS' MOTION FOR ATTORNEYS' FEES
4818-2697-8496v.1 0113237-000003

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899



1  **Fifth**, as noted above, the amount requested is well within the range of fees

2  awarded to prevailing defendants in other comparable copyright actions.  For

3  example, ten years ago, the *Teixeira* court awarded $117,741 in attorneys' fees to

4  the defendants after they—like Defendants here—succeeded in obtaining a

5  dismissal with prejudice of the plaintiff's copyright claim on a Rule 12(b)(6)

6  motion.  2015 WL 6146269, at *6-7.  *See also Shame on You*, 2016 WL 5929245, at

7  *19 (awarding $315,669.75 in attorneys' fees for defendants' successful motion for

8  judgment on the pleadings); *Marcus*, 2017 WL 5592470, at *7 (awarding

9  $102,226.36 in attorneys' fees and costs for defendants' successful motion to

10 dismiss copyright action); *Wild v. NBC Universal*, 2011 WL 12877031, at *4 (C.D.

11 Cal. July 18, 2011) (awarding $113,041.85 in attorneys' fees and costs for

12 defendants' successful motion to dismiss copyright action); *Good Job Games Bilism

13 Yazilim ve Pazarlama v. SayGames*, 2023 WL 3260528, at *11 (N.D. Cal. May 4,

14 2023) (awarding $112,239.86 in attorneys' fees and costs for defendant's successful

15 motion to dismiss copyright infringement claim).

16               V.    CONCLUSION

17     As set out in the Court's ruling, even a cursory review of *Eden* and

18 *Yellowjackets* reveals that the works are not substantially similar.  Under these

19 circumstances, Defendants are entitled to recover from Plaintiff the fees they

20 reasonably incurred in their successful defense.  They respectfully ask the Court to

21 grant this motion and award them $129,305.00 in attorneys' fees, plus any

22 additional fees associated with further work on this motion, to be based on evidence

23 included with the reply.

24

25

26

27

28





1   DATED: May 9, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
JOEL RICHERT

By:    /s/ Cydney Swofford Freeman
          Cydney Swofford Freeman

Attorneys for Defendants
LIONS GATE ENTERTAINMENT,
INC., SHOWTIME NETWORKS INC.,
BEER CHRISTMAS, LTD., ASHLEY
LYLE, and BART NICKERSON

15

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

43                                                    44

# Exhibit 3

NICOLAS A. JAMPOL (State Bar No. 244867)
nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
cydneyfreeman@dwt.com
SAMANTHA W. LACHMAN (State Bar No. 331969)
samlachman@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants NATHANIEL PARKER; TINY GIANT PRODUCTIONS, LLC; ASP FILM, LLC; TM FILM FINANCE, LLC; and VERTICAL ENTERTAINMENT, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

AVAN HARDWELL,

Plaintiff,

v.

NATHANIEL PARKER, an individual, TV FILM FINANCE, LLC d/b/a/ TM FILMS, a California limited liability company; TINY GIANT PRODUCTIONS, LLC *d/b/a* TINY GIANT ENTERTAINMENT, a California limited liability company; VERTICAL ENTERTAINMENT, LLC, a California limited liability company, ASP FILM, LLC, a California limited liability company; and DOES 1-10, inclusive,

Defendant.

Case No. 2:21-cv-9100-DMG-PVC

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Date: March 4, 2022
Time: 9:30 a.m.
Crtrm: 8C

1

NICOLAS A. JAMPOL (State Bar No. 244867)
nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
cydneyfreeman@dwt.com
JOEL RICHERT (State Bar No. 327116)
joelrichert@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants LIONS GATE ENTERTAINMENT, INC., SHOWTIME NETWORKS INC., BEER CHRISTMAS, LTD., ASHLEY LYLE, and BART NICKERSON

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDEN FILM PRODUCTION LLC, a Delaware corporation,

Plaintiff,

vs.

LOCKJAW LLC, a California corporation; ASHLEY LYLE, an individual; BART NICKERSON, an individual; BEER CHRISTMAS, LTD., a California corporation; SHOWTIME NETWORKS INC., a California corporate; LIONS GATE ENTERTAINMENT, INC., a Delaware corporation; and DOES 1-10, inclusive,

Defendants.

Case No. 2:24-cv-09851-DDP-SK

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Date: March 3, 2025
Time: 10:00 a.m.
Crtrm: 9C

2



**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 4, 2022, at 9:30 a.m. or as soon as may be heard in Courtroom 8C of the United States District Court for the Central District of California, First Street Courthouse, 350 West First Street, Los Angeles, California 90012, defendants Nathaniel Parker, Tiny Giant Productions, LLC, ASP Film, LLC, TM Film Finance, LLC,[1] and Vertical Entertainment, LLC (collectively, "Defendants") will and hereby do move this Court for an order dismissing the complaint filed by plaintiff Avan Hardwell ("Plaintiff").

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the complaint fails to state a claim. Plaintiff's first cause of action for copyright infringement as to Defendants' film *American Skin* (the "Film") fails because the complaint fails to allege substantial similarity of protected expression between the Film and Plaintiff's purported screenplay titled *First and Constitution*. Because Plaintiff's claim for direct copyright infringement fails, so too does his second cause of action for copyright infringement as to defendant Vertical Entertainment, LLC's distribution of the Film.

This motion is based on this notice of motion, the memorandum of points and authorities, the declaration of Cydney Swofford Freeman, the notice of lodging with exhibit, and all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and on any argument heard by this Court. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 21, 2022.

---

[1] Erroneously named "TV FILM FINANCE, LLC *d/b/a* TM FILMS" in the complaint's caption and "TM Film Finance LLC d/b/a TM Films" in the complaint. *See* Compl. ¶ 3.

DEFENDANTS' MOTION TO DISMISS
4860-0766-6186v.2 0118814-000002

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1



**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 3, 2025, at 10:00 a.m. or as soon as may be heard in Courtroom 9C of the United States District Court for the Central District of California, United States Courthouse, 350 West First Street, Los Angeles, California 90012, defendants Lions Gate Entertainment, Inc. ("Lions Gate"), Showtime Networks Inc. ("Showtime"), Beer Christmas, Ltd. ("Beer Christmas"), Ashley Lyle, and Bart Nickerson (collectively, "Defendants") will and hereby do move this Court for an order dismissing with prejudice the Complaint filed by plaintiff Eden Film Production LLC ("Plaintiff").

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff's Complaint fails to state a claim. Plaintiff's single cause of action for copyright infringement as to Defendants' television series *Yellowjackets* fails because there is no substantial similarity of protected expression between the series and Plaintiff's film *Eden*. Any similarity between the two consist of *scenes a faire* and elements common to survival thrillers.

This motion is based on this notice of motion, the memorandum of points and authorities, the declaration of Cydney Swofford Freeman ("Freeman Decl."), the notice of lodging with exhibits, and all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and on any argument heard by this Court. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 16, 2025.

DATED: January 24, 2025

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
JOEL RICHERT

By:    /s/ Nicolas A. Jampol
　　　　Nicolas A. Jampol

Attorneys for Defendants

DEFENDANTS' MOTION TO DISMISS

3

4

2



1  DATED: January 28, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
SAMANTHA W. LACHMAN

By:    /s/ Nicolas A. Jampol
        Nicolas A. Jampol

Attorneys for Defendants

DEFENDANTS' MOTION TO DISMISS
4860-0766-6186v.2 0118814-000002

2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

5

6

3

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................. 1

II.   FACTUAL BACKGROUND ......................................... 2

    A.   First and Constitution ......................................... 2

    B.   American Skin ...................................................... 2

    C.   This Lawsuit ......................................................... 4

III.  PLAINTIFF FAILS TO PLEAD A PLAUSIBLE COPYRIGHT CLAIM.............................................. 4

    A.   The Court Must Disregard Unprotectable Elements ................ 6

    B.   The Complaint Does Not Sufficiently Allege Substantial Similarity of Protected Expression........................... 8

        1.   Plot and Sequence of Events ...................... 10

        2.   Theme ........................................................... 13

        3.   Characters .................................................... 14

        4.   Setting .......................................................... 17

        5.   Dialogue ....................................................... 18

        6.   Mood and Pace ............................................. 19

IV.   PLAINTIFF'S SECOND CAUSE OF ACTION LIKEWISE FAILS ........ 20

V.    CONCLUSION ................................................................ 20

7

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................. 1

II.   FACTUAL BACKGROUND ......................................... 2

    A.   Eden ....................................................................... 3

    B.   Yellowjackets ....................................................... 4

        1.   Season 1 ....................................................... 4

        2.   Season 2 ....................................................... 7

    C.   The Complaint ...................................................... 8

III.  PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS....... 8

    A.   The Court May Dismiss Plaintiff's Claim as a Matter of Law Without Discovery Based on Lack of Substantial Similarity Between The Works. .............................. 8

    B.   Copyright Infringement Requires Substantial Similarity of Protectable Expression and Cannot Be Premised on Facts, Ideas, or Stock Elements. .................. 9

    C.   The Works Are Dissimilar. ................................. 11

        1.   The Plot and Sequence of Events Are Not Similar........ 12

            a.   The Alleged Similarities Are Unprotectable. ............... 12

            b.   The Plots Are Not Similar. ...................... 15

        2.   The Theme and Mood in the Works Are Not Similar. ........ 18

        3.   The Characters in the Works Are Not Similar.................... 19

            a.   Jackie and Slim ........................................ 19

            b.   Shauna and Markese ............................... 20

            c.   Natalie and Arnie .................................... 20

            d.   Taissa/Lottie and Andreas ...................... 21

            e.   Assistant Coach Ben and Coach DaFoe ...................... 22

            f.   Misty and Connie...................................... 22

            g.   Travis/Javi and Elena/Eva ...................... 23

        4.   The Setting and Pace of the Works Are Not Similar. ....... 23

        5.   The Dialogue of the Works Is Not Similar. ................... 24

8

4





IV.   CONCLUSION................................................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

DEFENDANTS' MOTION TO DISMISS

9

10

**TABLE OF AUTHORITIES**

Page

**Cases**

Abdin v. CBS Broad.,
  971 F.3d 57 (2d Cir. 2020)....................................................7

Apple v. Microsoft,
  35 F.3d 1435 (9th Cir. 1994) ...............................................6

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)............................................................4

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)........................................................4, 5

Benay v. Warner Brothers Entertainment,
  607 F.3d 620 (9th Cir. 2010)......................................6, 11, 17

Bernal v. Paradigm Talent & Literary Agency,
  788 F. Supp. 2d 1043 (C.D. Cal. 2010) ...............................9

Cavalier v. Random House, Inc.,
  297 F.3d 815 (9th Cir. 2002) ...............................................6

Corbello v. Valli,
  974 F.3d 965 (9th Cir. 2020) ..........................................7, 10

Esplanade Prods. v. Walt Disney Co.,
  2017 WL 5635024 (C.D. Cal. July 11, 2017)...........5, 9, 10, 20

Evans v. NBCUniversal Media,
  2021 WL 4513624 (C.D. Cal. July 23, 2021).........................9

Feist Publ'ns v. Rural Tel. Serv.,
  499 U.S. 340 (1991)............................................................7

Fillmore v. Blumhouse Prods.,
  2017 WL 4708018 (C.D. Cal. July 7, 2017)..........................8

Fox Broad. Co. v. Dish Network,
  747 F.3d 1060 (9th Cir. 2014) ...........................................20

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 011814-000002

ii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

11

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

Apple Computer, Inc. v. Microsoft Corp.,
  35 F.3d 1435 (9th Cir. 1994) .........................................2, 10

Astor-White v. Strong,
  817 F. Appx. 502 (9th Cir. 2020)........................................9

Benay v. Warner Bros. Ent.,
  607 F.3d 620 (9th Cir. 2010) ....................................8, 10, 23

Berkic v. Crichton,
  761 F.2d 1289 (9th Cir. 1985) .......................................12, 15

Campbell v. Walt Disney Co.,
  718 F. Supp. 2d 1108 (N.D. Cal. 2010) ...............................11

Carlini v. Paramount Pictures Corp.,
  2022 WL 614044 (9th Cir. Mar. 2, 2022)..............................9

Cavalier v. Random House,
  297 F.3d 815 (9th Cir. 2002) ..........................................9, 10

Christianson v. West Publ'g Co.,
  149 F.2d 202 (9th Cir. 1945) ...........................................2, 8

Collier v. McKay,
  2025 WL 101646 (C.D. Cal. Jan. 7, 2025)............................9

DC Comics v. Towle,
  802 F.3d 1012 (9th Cir. 2015) ...........................................19

DuckHole v. NBC Universal Media,
  2013 WL 5797279 (C.D. Cal. Sept. 6, 2013) ....................9, 11

DuMond v. Reilly,
  2021 WL 4772986 (C.D. Cal. Jan. 8, 2021) .........................12

Fillmore v. Blumhouse Prods.,
  2017 WL 4708018 (C.D. Cal. July 7, 2017).......................9, 11

1   *Gallagher v. Lions Gate Entm't,*
2       2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) .......................................... 18
3   *Gilbert v. New Line Productions,*
4       2010 WL 5790628 (C.D. Cal. Aug. 13, 2010) ........................................... 8
5   *Knievel v. ESPN,*
        393 F.3d 1068 (9th Cir. 2005) ........................................................ 3
6   *Kouf v. Walt Disney Pictures & Television,*
7       16 F.3d 1042 (9th Cir. 1994) ....................................................... 9, 20
8   *Litchfield v. Spielberg,*
9       736 F.2d 1352 (9th Cir. 1984) ...................................................... 9
10  *Masterson v. Walt Disney Co.,*
11      2019 WL 1581400 (C.D. Cal. Jan. 29, 2019) ........................................ 9
12  *Miller v. Universal City Studios, Inc.,*
13      650 F.2d 1365 (2d Cir. 1981) ....................................................... 7
14  *Nobile v. Watts,*
15      747 F. App'x 879 (2d Cir. 2018) ................................................... 7, 11
16  *Olson v. Nat'l Broad. Co.,*
17      855 F.2d 1446 (9th Cir. 1988) ...................................................... 18
18  *Segal v. Rogue Pictures,*
19      544 F. App'x 769 (9th Cir. 2013) ................................................... 6
20  *Shame on You Prods. v. Banks,*
21      120 F. Supp. 3d 1123 (C.D. Cal. 2015) ............................................. 6
22  *Sheldon Abend Revocable Tr. v. Spielberg,*
        748 F. Supp. 2d 200 (S.D.N.Y. 2010) ............................................. 7, 11
23  *Silas v. Home Box Office,*
24      201 F. Supp. 3d 1158 (C.D. Cal. 2016) ......................................... 13, 18
25  *Tanksley v. Daniels,*
26      902 F.3d 165 (3d Cir. 2018) ....................................................... 15
27  *Three Boys Music Corp. v. Bolton,*
28      212 F.3d 477 (9th Cir. 2000) ....................................................... 5

iii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

13

1   *Funky Films v. Time Warner Ent. Co.,*
2       462 F.3d 1072 (9th Cir. 2006) ............................................... 2, 12, 15
3   *Gallagher v. Lions Gate Ent.,*
4       2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) ................................... 24
5   *Gold Glove Prods., LLC v. Handfield,*
        648 F. App'x 679 (9th Cir. 2016) ................................................. 11
6   *Heusey v. Emmerich,*
7       2015 WL 12765115 (C.D. Cal. Apr. 9, 2015) .............................. 9, 10, 14
8   *Hoff v. Walt Disney Pictures,*
9       2019 WL 6329368 (C.D. Cal. Aug. 19, 2019) ................................... 3
10  *Idema v. Dreamworks, Inc.,*
11      162 F. Supp. 2d 1129 (C.D. Cal. 2001) ........................................... 11
12  *Kouf v. Walt Disney Pictures & Television,*
13      16 F.3d 1042 (9th Cir. 1994) .................................................... 11
14  *Litchfield v. Spielberg,*
15      736 F.2d 1352 (9th Cir. 1984) ................................................... 12
16  *Marcus v. ABC Signature Studios,*
17      279 F. Supp. 3d 1056 (C.D. Cal. 2017) ......................................... 9
18  *Masterson v. Walt Disney Co.,*
19      821 F. App'x 779 (9th Cir. 2020) ................................................ 9
20  *Olson v. Nat'l Broad. Co.,*
21      855 F.2d 1446 (9th Cir. 1988) ................................................... 24
22  *Rentmeester v. Nike,*
        883 F.3d 1111 (9th Cir. 2018) ................................................... 8
23  *Ricketts v. CBS Corps.,*
24      439 F. Supp. 3d 1199 (C.D. Cal. 2020) ......................................... 10
25  *Shame on You Prods. v. Banks,*
26      120 F. Supp. 3d 1123 (C.D. Cal. 2015) ..................................... passim
27  *Silas v. Home Box Office,*
28      201 F. Supp. 3d 1158 (C.D. Cal. 2016) ..................................... passim

iv

DEFENDANTS' MOTION TO DISMISS

14

---

**Left page:**

*Washington v. ViacomCBS,*
　2020 WL 5823568 (C.D. Cal. Aug. 20, 2020).................................................. 8

*Whitehead v. Paramount Pictures,*
　53 F. Supp. 2d 38 (D.D.C. 1999)............................................. 14, 15, 16

*Wild v. NBC Universal,*
　788 F. Supp. 2d 1083 (C.D. Cal. 2011) .......................................... 5

*Zella v. EW Scripps Co.,*
　529 F. Supp. 2d 1124 (2007) ...................................................... 6

**Rules**

Federal Rules of Civil Procedure
　Rule 12(b)(6)........................................................................ 4

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

---

**Right page:**

*Three Boys Music Corp. v. Bolton,*
　212 F.3d 477 (9th Cir. 2000)..................................................... 8

*Tiscareno v. Netflix,* (C.D. Cal. Mar. 6, 2014)
　2017 WL 12558125 ................................................................ 19

*United States v. Ritchie,*
　342 F.3d 903 (9th Cir. 2003)..................................................... 3

*Zella v. E.W. Scripps Co.,*
　529 F. Supp. 2d 1124 (C.D. Cal. 2007)...................................... 9, 12

**Statutes**

17 U.S.C. § 505 ..................................................................... 25

**Rules**

Federal Rule of Evidence 201 .................................................... 9

Federal Rule of Civil Procedure 12(b)(6) ...................................... 2

**Other Authorities**

Carlos Benales, *70 Days Battling Starvation and Freezing in the Andes: A Chronicle of Man's Unwillingness to Die,* N.Y. TIMES (Jan. 1, 1973)................1

Amy Tikkanen, *Uruguayan Air Force flight 571,* ENCYCLOPEDIA BRITANNICA, https://www.britannica.com/event/Uruguayan-Air-Force-flight-571 (last visited Jan. 23, 2025) ...................................... 14

Janet Maslin, *Tasteful Cannibalism As Upbeat Viewing,* N.Y. TIMES (Jan. 15, 1993) ............................................................................1

*Stay Alive,* HISTORY (Oct. 12, 2021, updated Feb. 7, 2024), https://www.history.com/news/miracle-andes-disaster-survival...................... 14

**Left document:**

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Defendants Nathaniel Parker, Tiny Giant Productions, LLC, ASP Film, LLC, TM Film Finance, LLC, and Vertical Entertainment, LLC ("Defendants") wrote, produced, and distributed the film *American Skin* (the "Film"), which Plaintiff Avan Hardwell claims infringes his purported screenplay titled *First and Constitution* (the "Screenplay") because both works supposedly share a premise pulled straight from the headlines along with other alleged similarities that flow from that premise or are otherwise generic elements in film and television.

Rather than attaching the Screenplay to the complaint, or even describing the Screenplay's plot, sequence of events, and other elements in detail, Plaintiff instead decided to strategically withhold his Screenplay and asks this Court to allow his claims to proceed based on vague, seemingly incomplete, and sometimes contradictory characterizations of the Screenplay.  While Plaintiff is not required to attach the allegedly infringed work to the complaint, he *is* required to plead allegations sufficient to state a valid claim of copyright infringement.  His allegations, however, reflect unprotectable similarities between the Screenplay and the Film that fall far short of showing that the works' protected expression is substantially similar.  Importantly, these alleged similarities presumably represent the elements from the Screenplay that are the most like the Film, characterized (or possibly mischaracterized) in the most beneficial way to Plaintiff, and without any discussion of dissimilarities or distinctions between the works.  Copyright law does not protect ideas, facts, common or generic elements, or concepts flowing naturally from other unprotectable elements.  The alleged similarities described in the complaint fall within these unprotectable categories and even without looking at the Screenplay itself—which Plaintiff should proffer so the Court can assess the works themselves, as courts in this Circuit routinely do—

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

1

17

**Right document:**

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Plaintiff insists that Defendants' television series *Yellowjackets* infringes its copyright on the film *Eden*.  But its own allegations reveal that the two works have little in common beyond an unprotectable premise and a list of misleading, incidental similarities.  The idea of a sports team having to survive after a plane crash is neither original nor unique to *Eden*.  In October 1972, a plane carrying a Uruguayan men's rugby team crashed in the Peruvian Andes.  Many passengers died, and the remaining passengers notoriously resorted to cannibalism to survive.  Desperate and with winter setting in, two rugby players hiked three days to find help.  Fourteen more survivors were rescued after two and a half months stranded in the snow-blasted mountains.[1]

In 2015, Plaintiff released *Eden*, about the U.S. Men's National Soccer Team crash landing in the Pacific near a remote desert island.  They survive for two weeks on their own, with limited food and fresh water.  The film is a straightforward survival thriller drawing on facts, themes, and concepts explored in countless earlier works ranging from *Lord of the Flies* (1954) to *Robinson Crusoe* (1719) to Homer's *Odyssey*—and, notably, the 1993 survival thriller *Alive*, which recounts the Uruguayan men's rugby team's months-long ordeal in the Andes.[2]

The Copyright Act does not protect ideas or elements that naturally flow from such ideas as those presented here (so-called *scenes a faire*).  The Ninth Circuit thus has long recognized that "similarities derived from the use of common ideas cannot

---

[1] *See, e.g.*, Carlos Benales, *70 Days Battling Starvation and Freezing in the Andes: A Chronicle of Man's Unwillingness to Die*, N.Y. TIMES (Jan. 1, 1973), https://www.nytimes.com/1973/01/01/archives/70-days-battling-starvation-and-freezing-in-the-andes-a-chronicle.html.
[2] Janet Maslin, *Tasteful Cannibalism As Upbeat Viewing*, N.Y. TIMES (Jan. 15, 1993), https://www.nytimes.com/1993/01/15/movies/reviews-film-tasteful-cannibalism-as-upbeat-viewing.html.

18

1 Plaintiff's claims fail to state a claim as a matter of law.  Defendants respectfully

2 request that the Court dismiss Plaintiff's complaint in its entirety.

3           **II.    FACTUAL BACKGROUND**

4 **A.    First and Constitution**

5       Plaintiff Avan Hardwell alleges that he wrote the *First and Constitution*

6 screenplay in or about 2016.  Compl. ¶ 11.  Plaintiff alleges that in the Screenplay, a

7 Houston police officer kills an African American teenager named Orion after

8 wrongly fearing that Orion is reaching for a gun.  *Id.* ¶¶ 12, 17.  The police officer

9 who shot Orion does not face charges.  *Id.* ¶ 13.  Orion's father, Makai Speakes, is a

10 formerly incarcerated gang member who now works as a limo driver.  *Id.* p. 7.  He

11 takes the uncharged officer hostage at City Hall and "air[s]" the hostage

12 negotiations on social media.  *Id.* ¶ 13.[1]  (The complaint is unclear on whether any

13 other people are taken hostage, and if so, how many or who.)  During the lengthy

14 negotiations, Makai agrees to free the officer if he admits to profiling and wrongly

15 killing Orion.  *Id.* ¶ 14 & p. 7.  After the officer admits guilt and is released, police

16 breach the building and kill Makai.  *Id.*  Plaintiff did not attach the Screenplay to the

17 complaint, nor did he provide the Screenplay to Defendants' counsel.

18 **B.    American Skin**

19       Defendants wrote, directed, produced, and distributed the film *American*

20 *Skin*.  Compl. ¶¶ 2-6.  The Film is presented largely as the final project of a group of

21 film students' graduate documentary thesis.  As revealed by officer bodycam

22 footage, a former marine turned high school janitor, Lincoln, and his 14-year-old

23 son, Kajani, are stopped by police while driving through an affluent neighborhood

24 in Los Angeles, allegedly for speeding.  *See* Declaration of Cydney Swofford

25

26     ————————

27     [1] Plaintiff alleges that his screenplay includes a "show trial," Compl. ¶ 13, but

28 his more detailed description indicates that the show trial is actually a "lengthy hostage negotiation."  *See* Compl. p. 7.  It is unclear which of these characterizations is accurate.

DEFENDANTS' MOTION TO DISMISS COMPLAINT         2

4860-0766-6186v.2 0118814-000002

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

19

1 be protected; otherwise, the first to come up with an idea will corner the market."

2 *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994).

3 Nevertheless, Plaintiff brings this copyright lawsuit concerning the television series

4 *Yellowjackets*, which is about a high school girls' soccer team stranded in the

5 Canadian Rockies for 19 months after their plane mysteriously crashes.  But

6 Plaintiff's Complaint rests on perceived shared abstract ideas—*not* expression.  Any

7 similarities between the two works are no more than tropes and *scenes a faire*

8 common to countless survival thrillers.  Once unprotectable elements are filtered

9 out, as they must be under well-established Ninth Circuit law, the actual protected

10 expression in the works is dispositively different.

11       Since the only similarities between the two works are abstract ideas and stock

12 elements that flow naturally from those ideas, Plaintiff cannot demonstrate the

13 requisite "substantial similarity" of original protected expression between the *Eden*

14 film and the *Yellowjackets* television series.  Importantly, this Court need only look

15 at the works at issue to dispose of Plaintiff's infringement claim on a motion to

16 dismiss—no other evidence is required.  *Christianson v. West Publ'g Co.*, 149 F.2d

17 202, 203 (9th Cir. 1945).  Because the total lack of similarity in protected

18 expression may be readily determined as a matter of law, Defendants respectfully

19 request that this Court dismiss the Complaint in its entirety with prejudice and

20 award Defendants their reasonable costs and attorneys' fees.

21           **II.    FACTUAL BACKGROUND**

22       Because "[a] determination of substantial similarity requires a detailed

23 examination of the works themselves," *Funky Films v. Time Warner Ent. Co.*, 462

24 F.3d 1072, 1075 (9th Cir. 2006) (citation omitted), summaries of *Eden* and

25 *Yellowjackets* follow.[1]

26

27     ————————

28     [1] "When deciding a motion to dismiss under Rule 12(b)(6), the Court may consider documents 'incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's

Freeman Exhibit 1 ("Ex. 1") at 1:03.[2] Kajani, who studied constitutional rights at his private school (where his father is the janitor), insists on filming the interaction despite his father's pleas for him to put down his phone. *Id.* at 2:05. Police escalate the situation and an officer named Randall ultimately shoots and kills unarmed Kajani. *Id.* at 2:35.

A year later, around the time a grand jury is about to decide whether to indict Officer Randall, a student documentary team approaches Lincoln with an idea to document the decision. *Id.* at 2:55. Lincoln reluctantly allows the film crew access to his family, and the documentarians capture the family's dismay as the grand jury fails to indict Officer Randall. *Id.* at 20:00. The film crew follows the subsequent uprising throughout the city, and police ask Kajani's mother to film a statement asking protestors to abandon the violence. *Id.* at 24:20.

Shortly after, Lincoln asks the documentary crew to give him a ride. Unbeknownst to the students, they are forced to assist Lincoln in kidnapping the police captain. *Id.* at 26:30. Lincoln and a crew of several other military veterans take the police captain to the police precinct and lock down the premises, taking everyone inside hostage. *Id.* at 29:00. Seeking justice where the system failed, Lincoln stages a trial charging Officer Randall with Kajani's murder, setting himself as the prosecutor, one of the police officers held hostage as Officer Randall's defense counsel, and civilians, inmates, and administrative officers as the jury. *Id.* at 39:50. Lincoln forces the student documentarians to film and ultimately participate in the trial. *Id.* at 35:35.

After extended discussions between the civilians, inmates, officers, and veterans about racism, the police's role in a community, patriotism, classism, and

---

[2] The Film is incorporated by reference throughout the complaint. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Concurrent with filing this motion, Defendants are lodging a DVD copy of the Film with the Court and serving a copy on Plaintiff's counsel. *See* Freeman Decl. ¶ 2; Notice of Lodging.

3

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 011814-000002

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

---

### A.  *Eden*

*Eden* is a somber, straightforward survival thriller. After the U.S. Men's National Soccer Team wins the World Cup, their flight crashes into the Pacific Ocean. Dkt. 1 ¶ 22; Ex. 1. By morning, the team learns 22 out of 37 people died in the crash, including Coach DaFoe and his wife, on their anniversary. Fifteen survived: team captain Slim, assistant captain Andreas, and 10 players; team trainer Connie; and Coach DaFoe's two adult daughters, Elena and Eva. *Id.* at 0:11:23.

The film follows the survivors over two weeks stranded on a tropical island without enough food or water. Andreas soon steps up as the de facto leader and forces the survivors to withhold rations from teammates too badly injured to survive. *Id.* at 0:27:21. When the fresh water is nearly gone, Eva suggests cutting the remaining life raft to create condensation traps. *Id.* at 0:48:09. Hoping to find help, two team members steal the raft and paddle out to sea, fighting off the other teammates who try to stop them. *Id.* at 0:51:43. Eva has sexual relations with star player Felix, and Elena has sexual relations with Andreas. *Id.* at 0:36:42; 0:51:03.

The death toll continues to grow. One player succumbs to his injuries. Connie flings himself from a cliff in despair. *Id.* at 0:42:09. Andreas's younger brother Georgie steps on a landmine, which takes both his legs; Andreas later strangles him out of mercy. *Id.* at 0:43:05; 0:46:38. When the survivors discover bench warmer Kennefick has been stealing extra rations, Andreas takes out a knife

---

claim.'" *Hoff v. Walt Disney Pictures*, 2019 WL 6329368, at *1 (C.D. Cal. Aug. 19, 2019) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). *See, e.g.*, *Silas v. Home Box Office*, 201 F. Supp. 3d 1158, 1168-69 (C.D. Cal. 2016) (granting motion to dismiss after examining episodes of television series that were referenced in, but not attached to, the complaint), *aff'd*, 713 F. App'x 626 (9th Cir. 2018). Here, the Complaint refers to and relies on the contents of both *Eden* and *Yellowjackets*. *See, e.g.*, Compl. ¶ 16. Accordingly, the Defendants concurrently submit for the Court's review a copy of *Eden* and of the first and second seasons of *Yellowjackets*. *See* Freeman Decl., Exs. 1-3.

3

DEFENDANTS' MOTION TO DISMISS

---

21        22

education, the jury ultimately finds Officer Randall guilty of murder after he admits Lincoln was not speeding and that he racially profiled Lincoln. *See id.* at 48:10, 51:35, 52:43, 54:30, 57:10, 1:11:53, 1:14:34. Lincoln raises his gun to Officer Randall's head to carry out a sentence of death, but not before allowing Officer Randall to call his wife and son, to whom he apologizes and admits that he made a mistake. *Id.* at 1:15:20. Lincoln pulls the trigger, but has emptied the gun—revealing he had no intention of killing Officer Randall, and instead only wanted recognition that his son's death was unjust. *Id.* at 1:17:20.

Lincoln and the veterans ultimately release the hostages, and Officer Randall asks Lincoln to leave the building by his side, "not as an enemy." *Id.* at 1:21:31. Despite Officer Randall yelling that Lincoln is unarmed as they exit the building, a sniper shoots Lincoln in the head, and police step over his lifeless body without even a pause as they sweep the building. *Id.* at 1:22:39. The student documentary concludes with (fictional) media clips explaining away the takeover by claiming that Lincoln was mentally unstable and connected to Islamic extremists, and quickly pivoting to an upbeat discussion of sports. *Id.* at 1:23:25.

**C.    This Lawsuit**

On November 19, 2021, Plaintiff filed his complaint for copyright infringement. Compl. ¶¶ 28-38. Defendants now move to dismiss the complaint in its entirety.

**III.    PLAINTIFF FAILS TO PLEAD A PLAUSIBLE COPYRIGHT CLAIM**

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," and is met only when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must contain sufficient concrete facts to

4

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

---

to exact punishment, but Slim and Felix intervene; in the skirmish, Felix is stabbed and dies in the surf. *Id.* at 0:054:55-0:59:59.

After Felix's death, the nine remaining survivors split into two factions. Eva, Kennefick, and badly injured teammate Sevy stay with Slim. Everyone else follows Andreas to regroup on a nearby island but find no food or water. *Id.* at 1:01:25. Later, Andreas and his followers return to the main island to take the last of the rations from Slim by force, but two from his tribe are killed and Elena and another member defect. *Id.* at 1:20:49. At the film's climax, Andreas—now alone—wrestles Slim on the beach. *Id.* at 1:29:15. Suddenly, a rescue helicopter arrives, having earlier found the two teammates on the life raft. *Id.* at 1:31:05. Andreas flees into the jungle, and his remaining teammates tell the rescuers no one else survived. *Id.* at 1:32:09. The film ends with Andreas watching from the island as the helicopter takes his teammates back to civilization. *Id.* at 1:32:48.

**B.    *Yellowjackets***

*Yellowjackets* is a survival drama about a New Jersey high-school girls' soccer team that survives a plane crash in the remote Canadian wilderness. But it is also a darkly comedic psychological thriller and gory mystery-horror.

*Yellowjackets*, whose third season is scheduled to premiere in February 2025, switches between two parallel storylines throughout each episode: one set in the 1990s and the other in present day.

**1.    Season 1**

In 1996, the Yellowjackets, an elite girls' soccer team, are on their way to a tournament when their plane crashes in a remote Canadian forest. Ex. 2, Ep. 102 at 1:22. Much of the team survives, including team captain Jackie, her best friend Shauna (secretly pregnant with Jackie's boyfriend's baby), headstrong Taissa, angsty Natalie, overeager equipment manager Misty, and Assistant Coach Ben, the only surviving adult. Their head coach dies, but his two teenage sons Travis and Javi survive. As the girls scramble to pull their teammates from the wreckage and

1  elevate a plaintiff's right to relief from merely "speculative" to "plausible."

2  *Twombly*, 550 U.S. at 555, 570.

3      To avoid dismissal on his cause of action alleging that the Film infringes his

4  purported copyright in the Screenplay, Plaintiff must show that the works at issue

5  are substantially similar in their protected expression. *Three Boys Music Corp. v.*

6  *Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).[3]  Courts can and often do assess

7  substantial similarity at the pleadings stage by directly comparing both works at

8  issue, rather than the plaintiff's characterization of those works. *See, e.g.*, *Wild v.*

9  *NBC Universal*, 788 F. Supp. 2d 1083, 1097 (C.D. Cal. 2011) (comparing works at

10  issue and granting motion to dismiss copyright claim for lack of substantial

11  similarity), aff'd, 513 F. App'x 640 (9th Cir. 2013).  Because Plaintiff did not attach

12  the Screenplay to his complaint and has not provided a copy of the Screenplay to

13  Defendants' counsel or to the Court at this time, Defendants and the Court are

14  unable to directly compare the Screenplay itself to the Film.

15      Instead, Plaintiff's complaint must stand on its own to provide sufficiently

16  specific allegations that the works are substantially similar in protected expression.

17  "[I]t is the plaintiff's obligation to allege sufficient facts, if proved true, to permit a

18  jury to rule in the plaintiff's favor." *Esplanade Prods. v. Walt Disney Co.*, 2017

19  WL 5635024, at *1 (C.D. Cal. July 11, 2017) (dismissing plaintiff's copyright

20  claims because plaintiff neither attached its allegedly infringed works to the

21  complaint nor "describe[d] them in sufficient detail to permit" an analysis of

22  substantial similarity. Here, even Plaintiff's carefully crafted characterizations fall

23  short of alleging actionable substantial similarity between the works at issue.

24

25

26

27  _____

[3] Plaintiffs in copyright actions must also establish that the defendants had

28  access to the allegedly infringing work. *Three Boys Music Corp.*, 212 F.3d at 481.
   Solely for purposes of this motion, Defendants do not challenge access.

5
DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

25

---

1  salvage supplies, Misty, a relentlessly teased misfit, draws on her self-taught

2  knowledge of first aid to triage the wounded. *Id.*, Ep. 102 at 07:38.  Reveling in the

3  respect from her teammates for her survival skills, Misty destroys the plane's

4  emergency locator beacon. *Id.*, Ep. 102 at 50:35; 54:27.

5      As hope for an immediate rescue fades, the survivors trek deeper into the

6  forest where they find an abandoned cabin and an old but functional two-propeller

7  plane. *Id.*, Ep. 103 at 34:47.  The cabin becomes a refuge for the survivors for the

8  next two seasons, and contains a rifle and plenty of ammunition. Natalie and Travis

9  are tasked with hunting game for the survivors, and later begin dating. *Id.*, Ep. 104

10  at 21:57; *id.*, Ep. 105 at 33:05.

11      As the series progresses, supernatural forces appear to emerge. Lottie, who

12  runs out of schizophrenia medication, appears to become possessed during a séance

13  and begins to receive ominous visions that come true. *Id.*, Ep. 105 at 41:39.  For

14  example, when Taissa leads an expedition to find a way out of the wilderness,

15  Lottie warns her that they will encounter a "river of blood" and gives Van, Taissa's

16  girlfriend, a talisman to protect her. *Id.*, Ep. 107 at 11:09.  Taissa and her group

17  later are forced to turn back after Van is mauled by a pack of wolves but survives.

18  *Id.*, Ep. 107 at 55:35.  And when another team member tells the group she's decided

19  to fly the plane found in the forest to seek rescue, the plane mysteriously catches

20  fire and explodes mere seconds after ascent. *Id.*, Ep. 108 at 54:30.

21      Season 1 ends with the girls holding a homecoming dance during which

22  everyone except Jackie unknowingly ingests magic mushrooms. *Id.*, Ep. 109 at

23  24:47.  Jackie and Travis sneak away to have sex, and in a frenzy, the hallucinating

24  girls seek revenge on Travis for cheating on Natalie. *Id.*, Ep. 109 at 41:42.  Lottie

25  orders Shauna to slit Travis's throat as an offering to the wilderness.  But Natalie

26  intervenes at the last moment. *Id.*, Ep. 109 at 48:19.  The next day a bear submits

27  itself to the group, which Lottie easily kills for everyone to eat.  Everyone gives

28  thanks to the wilderness for the meal but Jackie reprimands the girls for their violent

26



1  lethal phenobarbital injection. *Id.*, Ep. 209 at 50:35.  As Lottie is carted away by

2  EMTs, she tells the remaining survivors that the wilderness is pleased with their

3  sacrifice and will reward them. *Id.*, Ep. 209 at 55:25.

4  **C.    The Complaint**

5       Plaintiff brings this action for copyright infringement alleging that *Eden* and

6  *Yellowjackets* are substantially similar. Dkt. 1.  But the few similarities between the

7  works are no more than abstract ideas, unprotectable tropes, and *scenes a faire*

8  common to the survival genre.  Because a review of the works themselves reveals

9  that there is almost no similarity of protectable expression, let alone substantial

10  similarity, Defendants move to dismiss Plaintiff's Complaint with prejudice.

11  **III.   PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS**

12       Dismissal is warranted "as a matter of law" where "[n]othing disclosed

13  during discovery could alter the fact that the allegedly infringing works are … not

14  substantially similar."  *Rentmeester v. Nike*, 883 F.3d 1111, 1123 (9th Cir. 2018),

15  *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir.

16  2020); *see also Three Boys Music Corp.* v. *Bolton*, 212 F.3d 477, 481 (9th Cir.

17  2000).[4]  *Eden* and *Yellowjackets* are not substantially similar as a matter of law.

18  **A.    The Court May Dismiss Plaintiff's Claim as a Matter of Law Without**

19        **Discovery Based on Lack of Substantial Similarity Between The Works.**

20       A court may compare the works at issue and dismiss the claim as a matter of

21  law if they are not substantially similar.  *See Benay v. Warner Bros. Ent.*, 607 F.3d

22  620, 624 (9th Cir. 2010).  As the Ninth Circuit has long recognized, "[w]hen the

23  copyrighted work and the alleged infringement are both before the court, capable of

24  examination and comparison, non-infringement can be determined on a motion to

25

26  _____

27  [4] Plaintiffs in copyright actions must also establish that the defendants had access to the allegedly infringing work.  *Three Boys Music Corp.*, 212 F.3d at 481.

28  Though Defendants dispute that any of them ever had access to *Eden*, solely for purposes of this motion, Defendants do not challenge access.

8

27        28

Case 2:21-cv-09100-DMG-PVC    Document 13    Filed 01/28/22    Page 13 of 27    Page ID #:85

**A.    The Court Must Disregard Unprotectable Elements**

To assess substantial similarity on a motion to dismiss, the Ninth Circuit uses the "extrinsic test," which focuses on the works' objective "articulable similarities." *Zella v. EW Scripps Co.*, 529 F. Supp. 2d 1124, 1133 (2007). "[N]o amount of proof of access will suffice to show copying" if the works are not substantially similar in their protected expression. *Segal v. Rogue Pictures*, 544 F. App'x 769, 770 (9th Cir. 2013). In assessing similarity, "a court must filter out and disregard the non-protectable elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). Indeed, courts "may place *no* reliance upon any similarity in expression resulting from unprotectable elements." *Apple v. Microsoft*, 35 F.3d 1435, 1446 (9th Cir. 1994) (emphasis in original). This is because "[s]imilarities derived from the use of common ideas cannot be protected; otherwise, the first to come up with an idea will corner the market." *Id.* at 1443.

Accordingly, courts filter out so-called *scenes a faire*, or elements that flow naturally from a basic premise. *Cavalier*, 297 F.3d at 823. For example, in *Benay v. Warner Brothers Entertainment*, the plaintiffs pointed to a litany of purported similarities between their work and the movie *The Last Samurai*:

> Both have identical titles; both share the historically unfounded premise of an American war veteran going to Japan to help the Imperial Army by training it in the methods of modern Western warfare for its fight against a samurai uprising; both have protagonists who are authors of non-fiction studies on war and who have flashbacks to battles in America; both include meetings with the Emperor and numerous battle scenes; both are reverential toward Japanese culture; [] both feature the leader of the samurai rebellion as am important foil to the protagonist[; and] in both works the American protagonist is spiritually transformed by his experience in Japan.

607 F.3d 620, 625 (9th Cir. 2010). In rejecting the plaintiffs' claims, the Ninth Circuit disregarded those similarities as flowing from the works' shared "basic plot premise" of "an American war veteran [who] travels to Japan in the 1870s to train the Imperial Army in modern Western warfare." *Id.*; *see also Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1151 (C.D. Cal. 2015), *aff'd*, 690 F. App'x 519

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

6

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

29

---

Case 2:24-cv-09851-DDP-SK    Document 27    Filed 01/24/25    Page 16 of 32    Page ID #:89

dismiss." *Christianson*, 149 F.2d at 203. Over the past decade, the Ninth Circuit repeatedly has declined to subject defendants to burdensome discovery and affirmed dismissals of cases alleging infringement on substantial similarity grounds. *See, e.g.*, *Masterson v. Walt Disney Co.*, 821 F. App'x 779, 780, 780 n.1 (9th Cir. 2020) (listing ten affirmances); *see also Carlini v. Paramount Pictures Corp.*, 2022 WL 614044, at *1-2 (9th Cir. Mar. 2, 2022), *cert. denied*, 143 S. Ct. 103 (Mem); *Astor-White v. Strong*, 817 F. Appx. 502, 503-04 (9th Cir. 2020). *Accord Collier v. McKay*, 2025 WL 101646, at *4-7 (C.D. Cal. Jan. 7, 2025) (granting motion to dismiss with prejudice on substantial similarity grounds).

In considering a motion to dismiss, courts properly "consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201." *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007). Specifically, courts may consider historical facts "not subject to reasonable dispute," *Marcus v. ABC Signature Studios*, 279 F. Supp. 3d 1056, 1062-1063 (C.D. Cal. 2017), and "generic elements of creative works." *Zella*, 529 F. Supp. 2d at 1129.[1]

**B.    Copyright Infringement Requires Substantial Similarity of Protectable Expression and Cannot Be Premised on Facts, Ideas, or Stock Elements.**

To assess substantial similarity on a motion to dismiss, the Ninth Circuit uses the "extrinsic test," which "focuses on 'articulable similarities'" between the works. *Zella*, 529 F. Supp. 2d at 1133. In comparing the works, "a court must filter out and disregard the non-protectable elements," *Cavalier v. Random House*, 297 F.3d 815,

---

[1] *See, e.g.*, *Heusey v. Emmerich*, 2015 WL 12765115, at *4 (C.D. Cal. Apr. 9, 2015) (taking judicial notice of "historical facts," including "historical characters, … historical events, theories commonly-held by historians, and the political atmosphere of the Elizabethan era"). *See also DuckHole v. NBC Universal Media*, 2013 WL 5797279, at *4 (C.D. Cal. Sept. 6, 2013) (taking judicial notice of generic elements of veterinary-themed sitcoms that "can be verified simply by watching television for any length of time"); *Fillmore v. Blumhouse Prods.*, 2017 WL 4708018, at *3 (C.D. Cal. July 7, 2017) (taking judicial notice of common tropes and narrative devices in horror, fantasy, and science-fiction)

DEFENDANTS' MOTION TO DISMISS

9

30

**Left column (Case 2:21-cv-09100-DMG-PVC   Document 13   Filed 01/28/22   Page 14 of 27   Page ID #:86)**

1  (9th Cir. 2017) (dismissing copyright claim after disregarding similarities flowing
2  from the works' shared premise, such as "[g]etting drunk, spending a 'one-nighter'
3  with someone you just met, waking up disoriented the next morning at the
4  individual's house or apartment, and putting on the clothes worn the night before").

5  And in *Nobile v. Watts*, 747 F. App'x 879, 881 (2d Cir. 2018), the Second
6  Circuit affirmed dismissal for lack of substantial similarity by holding that "the
7  premise of 'a childless couple providentially finding a motherless baby in a boat
8  washed up on an island and deciding to keep the baby' is an unprotectible 'idea.'"
9  The court added that other similarities, including "finding and illicitly concealing
10  the dead adult accompanying the baby," "deliberating about the moral dimensions
11  of their choice," "and "feeling anxiety that their deception will be revealed or
12  punished," were unprotectable *scenes a faire* that flowed naturally from the
13  unprotectable idea. *Id.*; *see also Sheldon Abend Revocable Tr. v. Spielberg*, 748 F.
14  Supp. 2d 200, 208 (S.D.N.Y. 2010) (no substantial similarity between short story
15  *Rear Window* and movie *Disturbia* where "both works [told] the story of a male
16  protagonist, confined to his home, who spies on neighbors to stave off boredom …
17  discovers that one of his neighbors is a murderer … is himself discovered by the
18  suspected murderer, is attacked by the murderer, and is ultimately vindicated").

19  In addition, "all facts—scientific, historical, biographical, and news of the
20  day … 'may not be copyrighted and are part of the public domain available to every
21  person.'" *Feist Publ'ns v. Rural Tel. Serv.*, 499 U.S. 340, 348 (1991) (citing *Miller
22  v. Universal City Studios, Inc.*, 650 F.2d 1365, 1369 (2d Cir. 1981)). Accordingly,
23  courts set aside fact-based elements in analyzing substantial similarity. *See, e.g.*,
24  *Corbello v. Valli*, 974 F.3d 965, 976 (9th Cir. 2020) (filtering out "unprotectable
25  historical facts" in rejecting author of autobiography's claims against musical
26  *Jersey Boys*), *cert den.*, 141 S. Ct. 2856 (2021); *Abdin v. CBS Broad.*, 971 F.3d 57,
27  67 (2d Cir. 2020) (setting aside allegations of similar tardigrade characters that
28  shared factual characteristics with actual tardigrade microorganisms, including the

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

Davis Wright Tremaine LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

7

31

**Right column (Case 2:24-cv-09851-DDP-SK   Document 27   Filed 01/24/25   Page 17 of 32   Page ID #:90)**

1  822 (9th Cir. 2002), and "may place *no reliance upon any similarity in expression*
2  resulting from [those] unprotectable elements." *Apple*, 35 F.3d at 1446 (internal
3  quotation marks omitted).

4  Courts thus must filter out *scenes a faire*, or elements that flow naturally from
5  a basic premise. *Cavalier*, 297 F.3d at 823. For example, in *Ricketts v. CBS
6  Corps.*, 439 F. Supp. 3d 1199 (C.D. Cal. 2020), the court held that despite the fact
7  that both works "involve[d] a talented African-American football player … who
8  eventually plays football for a school in a 'more privileged' area[,] … [such] 'a
9  well-trodden 'rag to riches' story arc … is not protectable.'" *Id.* at 1212 (citation
10  omitted). Further, the court found that plot points such as "the protagonist faces
11  racism from the white football player," or "scenes where the protagonist goes back
12  and forth between the 'hood' and the 'privileged' area," were likewise
13  unprotectable because these "flow necessarily or naturally from [the] basic plot
14  premise." *Id.* (quoting *Benay v. Warner Bros.*, 607 F.3d at 625).

15  Similarly, in *Benay*, the Ninth Circuit disregarded similarities that flowed
16  from the "basic plot premise" of "an American war veteran [who] travels to Japan
17  in the 1870s to train the Imperial Army in modern Western warfare" as *scenes a
18  faire*. *Id.* at 625. Such unprotectable elements included "meetings with the
19  Emperor and numerous battle scenes," and the fact "in both works the American
20  protagonist is spiritually transformed by his experience in Japan." *Id. See also
21  Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1151 (C.D. Cal. 2015), *aff'd*,
22  690 F. App'x 519 (9th Cir. 2017) (dismissing copyright claim after disregarding
23  similarities flowing from the works' shared premise, such as "[g]etting drunk,
24  spending a 'one-nighter' with someone you just met, waking up disoriented the next
25  morning at the individual's house or apartment, and putting on the clothes worn the
26  night before").

27  Under the extrinsic test, courts also filter out historical facts before analyzing
28  substantial similarity. For example, in *Heusey*, a screenwriter brought a copyright

DEFENDANTS' MOTION TO DISMISS

10

32

capability to survive in outer space without protection, "eight short legs that run in pairs along a rounded body," and "an O-shaped mouth in the center of the 'face'" as factual and unprotectable, affirming dismissal on substantial similarity grounds). Courts also routinely filter out generic or common elements before analyzing for substantial similarity. *See, e.g., Washington v. ViacomCBS*, 2020 WL 5823568, at *2, 4 (C.D. Cal. Aug. 20, 2020) ("[I]nvestigations into the disappearance of a young woman or teenage girl," "that paparazzi would surround and photograph a celebrity," and "that friends or family might take advantage of a famous protagonist" were unprotectable as "common tropes"); *Fillmore v. Blumhouse Prods.*, 2017 WL 4708018, at *3 (C.D. Cal. July 7, 2017) ("[d]ream sequences" and "[b]ringing the dead back to life" are unprotectable concepts).

The district court's decision in *Gilbert v. New Line Productions*, 2010 WL 5790628 (C.D. Cal. Aug. 13, 2010), *aff'd*, 490 F. App'x 34 (9th Cir. 2012), further illustrates these principles. The court recognized that both works at issue—a screenplay and the box office hit *Monster In Law*—featured mothers that would:

> incessantly call their sons, fake illnesses to draw their sons away, bring back their sons' ex-girlfriends, and hire a private investigator to search into [the current girlfriend's] past. They also do their sons' laundry and live in the same building as their sons. Both [girlfriends] seek advice from friends and therapists as they struggle with the mothers in law. There are also some shared generic themes of family, relationships, and love, as well as a similar narrative pace.

*Id.* at *9. The court found that most of the works' alleged similarities "flow[ed] from the screenplays' shared generic plot of mothers who scheme to derail their sons' pending marriage to women who the mothers disapprove of," and accordingly, had to be filtered out. *Id.*

**B.     The Complaint Does Not Sufficiently Allege Substantial Similarity of Protected Expression**

Once unprotectable elements are filtered out, courts must then compare the objective, "specific expressive elements" of the works at issue: "the plot, themes,

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

8

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

claim alleging that the 2011 film *Anonymous* infringed his screenplay, which similarly dealt with Shakespeare. 2015 WL 12765115, at *1-2. In determining that the two works were not substantially similar, the court "filter[ed] out" numerous historical facts as unprotectable elements from its analysis, including the theory that "the Earl of Oxford [] was the true author of Shakespeare's plays"; that "there was a letter … that revealed a conspiracy for the throne [of Queen Elizabeth I]"; and that "Shakespeare's son, Hamnet, died at age eleven." *Id.* at *4 n.1, *7.

Courts likewise filter out generic or common elements to films, television series, and specific genres. *See, e.g., DuckHole*, 2013 WL 5797279, at *4, *8-9 (finding themes such as "sexual tension" and "constant insults" between characters were "common to sitcoms with [an] ensemble cast" and thus unprotectable); *Fillmore*, 2017 WL 4708018, at *3 (finding that "[d]ream sequences" and "[b]ringing the dead back to life" are unprotectable); *Shame on You Prods.*, 120 F. Supp. 3d at 1159 (holding "outdoor chase on wheels" was too generic of a concept to be protectable).

**C.     The Works Are Dissimilar**

After unprotectable elements are filtered out, courts compare the objective "expressive elements" in the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events of the two works. *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994); *see also Gold Glove Prods., LLC v. Handfield*, 648 F. App'x 679, 680-81 (9th Cir. 2016) (extrinsic test not met where "setting, mood, and pace of [the works] are obviously different, as is the dialogue"). To assess similarity, the law requires a review of the actual works, not a plaintiff's characterization of them. *See Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1113 (N.D. Cal. 2010) (rejecting allegations of similarity that were "contradicted by the two stories themselves"). Courts afford little weight to a plaintiff's list of "random similarities scattered throughout the works," *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1180 (C.D. Cal. 2001), since such "lists of similarities are

## Left document

1  dialogue, mood, setting, pace, characters, and sequence of events." *Kouf v. Walt*
2  *Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).  Though Plaintiff
3  has not provided the Screenplay itself, his complaint must sufficiently plead
4  substantial similarity of the works' specific protectable elements. *Esplanade*, 2017
5  WL 5635024, at *1, is instructive: rather than attach the work at issue, the plaintiff
6  instead "describe[d] the alleged similarities at such a high level of generality that it
7  [was] impossible for the Court to evaluate whether the alleged copying was
8  sufficiently specific to be protectable or merely a series of unprotectable *scenes a*
9  *faire*."  The court accordingly held that "[t]he allegations thus fail[ed] to state a
10 claim," and dismissed the complaint. *Id.* at *1, 10. *See also Masterson v. Walt*
11 *Disney Co.*, 2019 WL 1581400, at *7 (C.D. Cal. Jan. 29, 2019) (plaintiff failed to
12 allege substantial similarity where plaintiff neither attached the work at issue nor
13 alleged in the complaint "the plot, themes, dialogue, mood, setting pace, characters,
14 and sequence of events" of her work "in sufficient detail to ascertain whether it is
15 substantially similar" to defendants' work); *Evans v. NBCUniversal Media*, 2021
16 WL 4513624, at *5 (C.D. Cal. July 23, 2021) (dismissing complaint for "fail[ing] to
17 plead sufficient facts regarding substantial similarity between the works").
18     Here, rather than include the Screenplay itself or even detailed allegations
19 about its contents, Plaintiff's complaint instead includes only a list of purported
20 scattered similarities between the Screenplay and the Film. *See* Compl. pp. 7-12.[4]
21 Like in *Esplanade*, even fully crediting Plaintiff's list of alleged similarities reveals
22

---

[4] Courts analyzing substantial similarity by comparing the actual works at
23 issue repeatedly find that lists, like Plaintiff's, of "random similarities scattered
24 throughout the works" are insufficient to satisfy the extrinsic test because they are
25 "inherently subjective and unreliable." *See Litchfield v. Spielberg*, 736 F.2d 1352,
26 1356 (9th Cir. 1984).  Indeed, courts have readily disposed of copyright claims even
27 where the list of alleged similarities is extensive. *See, e.g., Bernal v. Paradigm*
   *Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1061, 1063 (C.D. Cal. 2010) (133-
28 page chart with side-by-side comparisons of the works); *Arica Inst. v. Palmer*, 970
   F.2d 1067, 1073 (2d Cir. 1992) (70-page appendix of similarities).

9

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899
DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

## Right document

1  inherently subjective and unreliable." *Litchfield v. Spielberg*, 736 F.2d 1352, 1356
2  (9th Cir. 1984). *See also Zella*, 529 F. Supp. 2d at 1138 (explaining "randomly
3  selected similarities of generic elements" are insufficient to demonstrate substantial
4  similarity).
5     Plaintiff's primary alleged "similarity" between the two works is an
6  unprotectable concept, and apart from *scenes a faire* common to the survival genre,
7  how this concept is expressed varies drastically in each work. *Eden* and
8  *Yellowjackets* are not substantially similar.
9     i.   **The Plot and Sequence of Events Are Not Similar.**
10    For the purposes of the extrinsic test, "plot is defined as the 'sequence of
11 events by which the author expresses his theme or idea' that is sufficiently concrete
12 to warrant a finding of substantial similarity if it is common in both works." *Zella*,
13 529 F. Supp. 2d at 1135 (citation omitted).  As "general plot ideas are not protected
14 by copyright law," the extrinsic test compares "the actual concrete elements that
15 make up the total sequence of events and the relationships between the major
16 characters." *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985).  The Ninth
17 Circuit frequently rejects substantial similarity claims where works' plotlines have
18 similarities but are "develop[ed] quite differently." *See Funky Films*, 462 F.3d at
19 1077–1078; *see also DuMond v. Reilly*, 2021 WL 4772986 at *14-15 (C.D. Cal.
20 Jan. 8, 2021) (listing cases).
21    a.   **The Alleged Similarities Are Unprotectable.**
22    Nearly all of the purported similarities between the plots and sequences of
23 events of the two works are either unprotectable concepts or *scenes a faire*.
24    *First*, the idea of portraying the struggle to survive after a plane crash in a
25 remote and desolate place is not in itself protectable.  Numerous films and
26 television series have explored this same premise.  The television series *Lost* (2004-
27 2011) follows the survivors of a plane crash on a mysterious tropical island.  As
28 does the more recent series *The Wilds* (2020-2022), which like *Yellowjackets*

12

unprotectable elements that cannot possibly constitute substantial similarity.  2017 WL 5635024, at *1.

### 1. Plot and Sequence of Events

The alleged similarities between the works' plots are entirely *scenes a faire* or otherwise unprotectable and generic elements in film and television, many of which are based in reality.

*First*, Plaintiff alleges that in both the Screenplay and the Film, an African American male teenager is unjustly killed by a police officer, who ultimately faces no charges for the shooting.  *See* Compl. p. 7.  There is no question that the concept of a police officer shooting and killing an unarmed man, particularly an African American man, is based in reality, as is the officer facing no criminal repercussion for the killing.  *See, e.g.*, David D. Kirkpatrick et al., *Why Many Police Traffic Stops Turn Deadly*, N.Y. Times (Oct. 31, 2021), https://www.nytimes.com/2021/10/31/us/police-traffic-stops-killings.html (finding that in more than 400 killings of unarmed drivers, charges were brought against only 32 officers, with only five convicted).[5]  This factual premise is unprotectable. *See Corbello*, 974 F.3d at 976.[6]

*Second*, it follows naturally that a man who watched an officer walk away from killing the man's son without facing charges would "feel[] powerless" and set out "on a quest of justice." Compl. p. 7.  The idea of vigilante justice is generic,

---

[5] The premise is explored in other expressive works as well.  *See, e.g.*, *The Hate U Give* (2018), Wikipedia, https://w.wiki/4kKh (police officers profile African American teenagers, one of whom attends prep school, during traffic stop and kills unarmed male teenager, thinking he is reaching for a gun; community protests en masse after grand jury does not charge officer).

[6] That both the Film's and the Screenplay's father and son characters are "stopped by two (2) police officers," Compl. p. 11, also is rooted in fact, as it is commonly known that officers often patrol in pairs.  Moreover, countless creative works depict police officers illustrate the unprotectable idea of officers patrolling with partners.  *See, e.g.*, *Rush Hour* (1998) https://www.imdb.com/title/tt0120812/; *21 Jump Street* (2021) https://www.imdb.com/title/tt1232829/.

10

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

---

involves a group of teenage girls.  Additionally, films such as *The Mountain Between Us* (2017); *The Grey* (2011); *Flight of the Phoenix* (1965) and its 2004 remake of the same name; *Cast Away* (2000); *The Edge* (1997); *Alive* (1993); and *A Cry in the Wild* (1990), based on the novel *Hatchet* (1987) by Gary Paulsen, all explore this concept.  Many alleged similarities in the Complaint naturally flow from this unprotectable premise.

For example, the survivors in *Alive*, *The Mountain Between Us*, *The Grey*, *Cast Away*, *The Edge*, and *Flight of the Phoenix* all must contend with "harsh weather," which forces them "to make difficult choices and further pushes them to their limits." Compl. ¶¶ 32(c), 33(c).  In *Alive*, *The Mountain Between Us*, *The Edge*, and *Flight of the Phoenix*, soon after the crash, "hope of rescue diminishes" among the survivors, "leading to feelings of despair." Compl. ¶ 32(d).  And confronted with "harsh conditions and the struggle for survival," the survivors in *Alive* and *Lost* are pushed to their limits, "causing them to make dubious moral choices," including resorting to cannibalism in *Alive*, and murder and suicide in *Lost*. *See* Compl. ¶¶ 32(c) and (f), 33(k), (l), and (m).

Many of these works also naturally include characters with medical backgrounds.  *See* Compl. ¶¶ 25-26, 33(c).  In *Alive*, several of the rugby players who survive the crash are medical students who provide care for the survivors throughout the ordeal.  Similarly, in both *Lost* and *The Mountain Between Us*, one of the protagonists is a doctor who attends to the other survivors' injuries following the crash.  Likewise, the premise of individuals of the opposite sex becoming "love interests" for one another after being stranded together after a plane crash is *scenes a faire* to the survival thriller.  Compl. ¶¶ 25-26.  For example, in *Lost* and *The Mountain Between Us*, protagonists of the opposite sex begin romances despite (or because of) the dire circumstances they find themselves in.

Finally, all these works conclude with the survivors being "rescued by an outside force." Compl. ¶¶ 32(h), 33(n).  And in many, including *Alive*, *Lost*, *The*

13

DEFENDANTS' MOTION TO DISMISS

---

found across countless works—for example, the 2009 film *Law Abiding Citizen*, in which "[a] frustrated man decides to take justice into his own hands after a plea bargain sets one of his family's killers free," and the 2009 film *Harry Brown*, in which "[a]n elderly ex-serviceman and widower looks to avenge his best friend's murder by doling out his own form of justice"—not to mention most superhero movies, from *Batman* to *Spider-Man* to *Watchmen*.[7]

*Third,* the works' allegedly shared premise, that a grieving father takes justice into his own hands by publicly taking hostage the officer who killed his son (Compl. p. 7), is an unprotectable "basic plot premise" flowing naturally from the also unprotectable idea of a police officer escaping criminal charges for killing an unarmed man. *See Benay,* 607 F.3d at 625 ("basic plot premise" of "an American war veteran [who] travels to Japan in the 1870s to train the Imperial Army in modern Western warfare" was unprotectable); *Nobile,* 747 F. App'x at 881 ("[T]he premise of 'a childless couple providentially finding a motherless baby in a boat washed up on an island and deciding to keep the baby' is an unprotectible 'idea.'"); *Abend,* 748 F. Supp. 2d at 208 ("broad plot idea, or premise" of "male protagonist, confined to his home, who spies on neighbors to stave off boredom and, in so doing, discovers that one of his neighbors is a murderer" and is then "himself discovered by the suspected murderer, is attacked by the murderer, and is ultimately vindicated" was "not a protectible element").[8]

---

[7] *See Law Abiding Citizen* (2009), https://www.imdb.com/title/tt1197624/; *Harry Brown* (2009), https://www.imdb.com/title/tt1289406/; *Batman Begins* (2005), https://www.imdb.com/title/tt0372784/; *Spider-Man* (2002), https://www.imdb.com/title/tt0145487/; *Watchmen* (2009), https://www.imdb.com/title/tt0409459/.

[8] Plaintiff's complaint is unclear on whether the Screenplay includes an actual "show trial," or if the conflict begins and ends with the hostage standoff and negotiation. *Compare* Compl. ¶ 13 ("Makai takes City Hall hostage in order to put the officer in a show trial aired on social media.") *with id.* p. 7 (characterizing the conflict as a "lengthy hostage negotiation"). Regardless, the concept of an aggrieved party taking a person hostage and even conducting an unsanctioned

11

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

39

*Wilds, The Mountain Between Us,* and *Cast Away,* the film or series explores how "the trauma of their ordeal continues to haunt" the survivors. *Id.* ¶ 32(h).

*Second,* even the specific premise of a sports team becoming stranded in the wilderness following a plane crash is not only an unprotectable concept, but something that actually happened.[*] Indeed, *Alive* recounts the true story of the Uruguayan rugby team whose plane crashed in the Peruvian Andes. Like in *Eden* and *Yellowjackets,* the survivors of Uruguayan Air Force Flight 571 were forced to "fight for their lives against the harsh elements, starvation through dwindling resources, and the psychological toll of isolation in the form of growing darkness within themselves." Compl. ¶¶ 22, 32(a)-(b), 33(a)-(b) and (e).

*Third,* "the psychological toll of isolation, desperation, and the breakdown of societal norms," are all unprotectable concepts, and ones common to the survival genre. *See* Compl. ¶¶ 22, 33(e). *Lord of the Flies* (1963, 1990) is the paradigmatic example of a survival story in which a group of survivors form rival "factions," resulting in "violent confrontations" and "[m]oral decay." Compl. ¶¶ 32(e)-(g), 33(k). Numerous alleged similarities likewise flow from this unprotectable concept. Such unprotectable *scenes a faire* include, for example, that survivors would devolve into tribalism in the aftermath of a traumatic event, or that rival tribes would be led by "charismatic, demagogic leader[s]" who, in the struggle for

---

[*] *See* Amy Tikkanen, *Uruguayan Air Force flight 571,* ENCYCLOPEDIA BRITANNICA, https://www.britannica.com/event/Uruguayan-Air-Force-flight-571 (last visited Jan. 23, 2025); Kieran Mulvaney, *Miracle of the Andes: How Survivors of the Flight Disaster Struggled to Stay Alive,* HISTORY (Oct. 12, 2021, updated Feb. 7, 2024), https://www.history.com/news/miracle-andes-disaster-survival. *See also* n.1, *supra.* The Court may take judicial notice of this historical fact. *See, e.g.,* *Heusey,* 2015 WL 12765115, at *4, *4 n.1 (taking judicial notice of historical facts present in the alleged works at issue, including "the occupations and lifetimes of historical characters, family trees, historical events, theories commonly-held by historians, and the political atmosphere of the Elizabethan era," which primarily were taken from a treatise and encyclopedia).

Plaintiff's other alleged similarities likewise flow from these unprotectable premises. That a father taking his son's killer hostage would point a gun to the killer's head flows naturally from the premise of taking a person hostage. Compl. p. 11. It follows naturally that the officer's public confession that he profiled the young man he killed would satisfy the father's need for justice—not revenge—such that the father would choose not to kill the officer. *Id.* at 7. If revenge were the father's goal, there would be no need to make the hostage negotiation (in the Screenplay) or trial (in the Film) a public affair; instead, the father would simply exact his revenge. And that a man who has taken hostages, including at least one police officer, would be killed by law enforcement is both rooted in fact and flows naturally from the unprotectable premise. Finally, it flows naturally that the main character seeking justice would also seek to share the truth with the world, although even Plaintiff's allegations reveal that this element is explored differently in the two works. In the Screenplay, the main character "us[es] social media and news coverage to spread his message" in some unspecified manner, whereas in the Film, the main character forces a student documentary crew to record the show trial. *See* Compl. p. 7; Freeman Decl. Ex. 1 at 28:20.

The few plot elements identified in Plaintiff's complaint are all unprotectable and must be filtered out in deciding whether the Plaintiff plausibly alleges the Film and the Screenplay are substantially similar. Beyond those unprotectable

_____

"trial" for the alleged transgression is far from novel. For example, in the 2012 Batman film *The Dark Knight Rises*, the villain's loyal followers take hostages—including the police commissioner—and, in a "court" sentencing hearing with "no lawyer, no due process," their leader hands down sentences. *See The Dark Knight Rises* (2012), https://www.imdb.com/title/tt1345836/plotsummary; *see also* https://www.youtube.com/watch?v=i-dJPoSlPfU. And in a 2011 episode of *General Hospital*, a character takes four people hostage and asserts "charges" against each of them; she threatens to shoot them if they do not cooperate in the "trial." *See General Hospital* (2011), https://www.imdb.com/title/tt1970768/?ref_=kw_li_tt; https://www.youtube.com/watch?v=beG0JwixUtQ.

12

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

41

survival or power, push their tribes to behave in ways that are "in derogation of established societal norms." Compl. ¶¶ 32(e)-(f), 33(t). This device has been used to heighten the stakes of survival stories since at least *Lord of the Flies*, where rivals Ralph and Jack vie for the obedience of their marooned schoolmates.[2] Such works also would naturally involve characters who at times "blur[] the line between good and evil." Compl. ¶ 22. When such elements appear within the survival genre, those elements are not surprising or original, much less protectable.

**b.     The Plots Are Not Similar.**

After removing the unprotectable elements, the works, which tell entirely different stories, lack any similarity in their "actual concrete" plot elements. *Berkic*, 761 F.2d at 1293; *Funky Films*, 462 F.3d at 1077-1078. *Eden* follows the U.S. Men's National Soccer Team after their plane catches fire and crashes near a remote, desert island in the Pacific Ocean. Compl. ¶ 22; *see also* Section II.A. In contrast, *Yellowjackets* follows a New Jersey high-school girls' soccer team whose plane mysteriously crashes in the Canadian wilderness. Compl. ¶ 22.; *see also* Section II.B. Beyond the tropes and *scenes a faire* described above, none of which are protectable, many of the remaining alleged similarities in the Complaint are blatant mischaracterizations of one or both of the works.

- Plaintiff asserts that "[c]annabalism arises in both stories as a last resort to survive." Compl. ¶ 33(m). This is true for *Yellowjackets* (and the survivors of Uruguayan Flight 571), but not for *Eden*. In *Yellowjackets*, the fact that the girls ultimately resort to cannibalism to survive their nineteen-month ordeal in the wilderness is the dark and disturbing secret initially hinted at in Season 1, and then depicted in gruesome detail in Season 2. *See, e.g.*, Ex. 3,Ep. 202 at 56:34; *id.*,

_____

[2] This plot element likewise is widely exploited in the subgenre of seafaring mutiny stories. *See, e.g.*, *The Caine Mutiny* (1952); *Mutiny on the Bounty* (1932); *Treasure Island* (1883); *Benito Cereno* (1855).

Ep. 209 at 27:05.  In *Eden*, none of the survivors engage in cannibalism; in fact, cannibalism never occurs and is never mentioned or suggested.

• Plaintiff alleges that in both works "[a]n assistant coach" and "a trainer/nurse" survive the plane crash.  Compl. ¶ 33(c).  But while Coach Ben, the assistant coach in *Yellowjackets*, survives the plane crash, there is no comparable character in *Eden* because the head coach, and presumably the assistant coach, are not among the survivors.  And putting aside the fact that a "trainer" and a "nurse" are vastly different character archetypes, in *Eden*, Connie, the adult male team trainer, expressly disclaims his ability to care for the injured.  Ex. 1 at 0:11:50.  In contrast, in *Yellowjackets*, neither a team trainer nor a nurse are among the survivors; Misty is a high-school student equipment manager who uses her self-taught first aid skills to triage the wounded immediately following the plane crash.  Ex. 2, Ep. 102 at 07:38.

• Plaintiff alleges that in each work "[a] character commits suicide." Compl. ¶ 33(l).  This is not only inaccurate, but the unprotectable concept of suicide is treated differently between the works.  *See* Section III.C.1.a.  In *Eden*, Connie kills himself while still stranded on the island by jumping off a cliff.  Ex. 1 at 0:42:09.  In *Yellowjackets*, though Natalie and Misty in the present-day storyline initially believe Travis has hanged himself, it is later revealed that his death was not a suicide but an accident.  Ex. 3, Ep. 202 at 33:25.

• Plaintiff's contention that the "[c]haracters discover a cache of goods," mischaracterizes both works.  Compl. ¶ 33(h).  In *Yellowjackets*, although the survivors find a pantry full of canned goods in the abandoned cabin, they immediately realize that all the food has gone bad and is inedible.  Ex. 2, Ep. 102 at 35:45.  In *Eden*, the survivors do not "discover a cache of goods," but rather find out that Kennefick has been secretly hoarding an outsized share of the rations meant for the entire group for himself.  Ex. 1 at 0:54:55.

16

43

44



1      •   Although in both works, the survivors find "wreckage of previous

2 expeditions" (Compl. ¶ 33(g)), in *Eden* two of the team members stumble on a

3 military dugout with a lone skeleton dressed in Japanese army garb, while in

4 *Yellowjackets*, the survivors find an abandoned cabin and an old two-propeller plane

5 once owned by a solitary survivalist. *See* Ex. 1 at 0:42:59; Ex. 2, Ep. 103 at 34:47.

6      •   The Complaint alleges that in both works "[a]n ill-advised escape

7 attempt fails." Compl. ¶ 33(j). Again, this allegation is undermined by the actual

8 works. In *Yellowjackets*, the survivors make two attempts at escape. First, Taissa

9 and a group of the girls agree to undertake an expedition to find a way out of the

10 wilderness, only to be forced to turn back after Van is mauled by a pack of wolves.

11 Ex. 2, Ep. 107 at 55:35. Later in the season, another teammate flies the abandoned

12 plane found in the forest out of the wilderness in search of rescue. But within

13 seconds after takeoff, the plane catches fire and explodes. *Id.*, Ep. 108 at 54:30.

14 Conversely, in *Eden*, the remaining survivors are ultimately rescued only because

15 the two team members who stole the remaining life raft were themselves found

16 while floating out at sea. Ex. 1 at 1:31:53. In *Yellowjackets*, the attempted escapes

17 via foot and plane (made with the other survivors' knowledge) are violently

18 thwarted, while in *Eden*, the covert escape attempt via raft was in fact a success.

19      •   Plaintiff contends that both works depict "[c]ult-like behavior."

20 Compl. ¶ 33(f). In Season 2 of the series, Lottie is revealed to have survived the

21 wilderness and started an actual cult in the present day. Ex. 3, Ep. 201 at 08:02.

22 Nothing similar occurs in *Eden*. Although after Felix's death, the remaining

23 survivors split into two opposing factions, Plaintiff's attempt to characterize this

24 tribal fracturing among the survivors as "cult-like behavior" is nothing more than

25 *scenes a faire* (*see* Section III.C.1.a) and, moreover, does not accurately identify a

26 similarity between the works.

27      •   Unlike *Yellowjackets*, which devotes an entire storyline to exploring

28 how the adult protagonists grapple with "the trauma of their ordeal," and how their

45      46

allegations, the complaint fails to describe how the specific expression of the works' plots are similar. For example, the complaint does not allege how or under what circumstances Makai and Orion are stopped by police in the Screenplay, beyond calling the incident "a late night encounter." Compl. p. 8. In addition, the complaint fails to allege *who* Makai takes hostage or *how* he gains control of the hostages. And to the extent Plaintiff meant to allege both works include a "show trial," there are no allegations explaining how such a "trial" is conducted in the Screenplay (possibly because there is no such "trial"). It is impossible to assess the similarity of the works without basic information about the Screenplay.

**2.    Theme**

"A work's theme is its overarching message," and "there is no protection for stock themes or themes that flow necessarily from a basic premise." *Silas v. Home Box Office*, 201 F. Supp. 3d 1158, 1180 (C.D. Cal. 2016), *aff'd*, 713 F. App'x 626 (9th Cir. 2018).

Plaintiff alleges that the Film and Screenplay share three themes each of which flows naturally from the works' unprotected premise and is itself unprotectable: (1) "Justice"—that the main character "seeks justice for his son" and "uses media to carry out his message to achieve mission/goal;" (2) "society," because both works "explore[] societal issues like police Profiling, Racial Discrimination & Injustice;" and (3) "Social Media," as the works allegedly "explore[] how Social Media is used to bring attention to racial injustice." Compl. p. 9. As described above, these themes are based in reality and flow naturally from the unprotectable premise of an African American father seeking justice after his unarmed son is killed at the hands of police. *See supra* Section III.B.1. Plaintiff's identification of these three issues as "Major Theme(s)" of the work only emphasizes the unprotectability of the works' general premise, and how clearly it is rooted in reality.

13
DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

47

---

time in the wilderness "continues to haunt them," *Eden* simply ends with the survivors being rescued. Compl. ¶ 32(11).

The plots of *Eden* and *Yellowjackets* are not substantially similar.

**2.    The Theme and Mood in the Works Are Not Similar.**

"A work's theme is its overarching message," and "there is no protection for stock themes or themes that flow necessarily from a basic premise." *Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1180 (C.D. Cal. 2016), *aff'd*, 713 F. App'x 626 (9th Cir. 2018). Likewise, "[a] general mood that flows naturally from unprotectable basic plot premises is not entitled to protection." *Id.* (internal quotations omitted) Here, Plaintiff's alleged themes and moods are incredibly abstract and encompass innumerable films and televisions series. *See* Compl. ¶¶ 21, 28. Such themes and moods also naturally flow from the basic premise of a group of survivors stranded following a plane crash. *See* Section III.C.1.a.

In fact, beyond survival, the primary themes in *Eden* and *Yellowjackets* are drastically different. *Eden* is a straight-forward thriller. Its mood is somber and brooding, and its dialogue has little if any levity. The film reflects a single-minded exploration of how easily the ideals of cooperation and trust fracture to give way to animal instincts. Such a portrait of humans' brutish survival instinct is merely a trope of the survival genre. *See* Section III.C.1.a.

*Yellowjackets*, in contrast, deals with a number of diverse themes that are found in not only survival stories but also more varied genres. It is both a darkly comedic coming-of-age and a midlife-crisis drama told through blended genre elements of horror and mystery. In the wilderness, the series explores the strength and fragility of adolescent female friendship. In the present day, *Yellowjackets* explores how the friendships the four protagonists built in the wilderness have evolved. As they approach middle age, Shauna, Taissa, Natalie, and Misty, who begin the series estranged, are forced together again after 25 years to confront the trauma of their 19 months in the wilderness, which each has attempted to bury in

48

24

## Left Document

Moreover, Plaintiff's assertion that both works explore "social media" is inaccurate. While Plaintiff alleges that the Screenplay's main character "us[es]" social media in some unspecified way "to spread his message," Compl. pp. 7-8, the Film's main character does not. Instead, in the Film, the main character takes a student documentary team hostage and forces them to film the character's elaborate show trial for the offending officer. Freeman Decl. Ex. 1 at 28:20. There is no discussion of the show trial airing on social media during or after the hostage negotiation; instead, the footage appears to be incorporated into the student director's graduate thesis. *Id.* at 40:44, 1:24:10. Beyond these unprotectable ideas and mischaracterizations, the complaint alleges nothing concrete about the Screenplay's possible additional themes.

### 3.     Characters

Plaintiff alleges similarities between four characters across the Film and the Screenplay. But again, even Plaintiff's handpicked similarities are no more than unprotectable *scenes a faire* and generic elements.

*First*, Plaintiff alleges that each works' main character, Makai Speakes in the Screenplay and Lincoln Jefferson in the Film, is a "doting father who attempts to maintain a relationship with his son after getting a divorce from his wife" and works hard to send his son to a prep school. Compl. p. 7-8. A father building a relationship with his son after separating from his son's mother is hardly novel.[9] Neither is a family working to provide their child with a better education.[10] "These shared abstract and general character traits do not make the two characters similar for purposes of copyright analysis." *Whitehead v. Paramount Pictures*, 53 F. Supp.

---

[9] *See, e.g.*, *Mrs. Doubtfire* (1993) https://www.imdb.com/title/tt0107614/; *Kramer v. Kramer* (1979) https://www.imdb.com/title/tt0079417/.
[10] *See, e.g.*, *The Hate U Give* (2018) https://www.imdb.com/title/tt5580266/plotsummary?ref_=tt_stry_pl#synopsis; *Lady Bird* (2017) https://www.imdb.com/title/tt4925292/plotsummary?ref_=tt_stry_pl#synopsis.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

14

49

## Right Document

different ways. An adult Natalie aptly sums up the thrust of the series when she says to Taissa and Shauna: "I know that you think I'm crazy. But you know what I see, you guys are just as fucked up as I am. You're just better at lying to yourselves. You're not healthy. You're not stable. You're living on the brink just like me." Ex. 2, Ep. 107 at 39:51. In short, the series explores how these women got to the brink, and whether they can pull themselves back. None of these complex themes are present in *Eden*. The two works are not substantially similar as to this extrinsic element.

### 3.     The Characters in the Works Are Not Similar.

To be deemed protectable in the Ninth Circuit, characters must meet a three-part test, including a requirement that they be "especially distinctive." *DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015), *cert. denied*, 577 U.S. 1184 (2016). "[C]ourts require a very high degree of similarity between characters"; even some shared traits between characters are not enough to prove substantial similarity when the characters "have noticeable differences." *Silas*, 201 F. Supp. 3d at 1177.

Beyond superficial descriptions, Plaintiff makes no real attempt to claim that the adolescent, primarily female characters in *Yellowjackets* bear any resemblance to the adult male characters in *Eden*, because they do not. *See Tiscareno v. Netflix*, 2017 WL 12558125, at *9 (C.D. Cal. Mar. 6, 2014) (finding no substantial similarity between characters where there is "significant age gap, there are different maturity levels ... different outlooks on life" and "different perspectives and moods").

### a.     Jackie and Slim

Plaintiff describes both Jackie and Slim as "a talented soccer player and the captain of the team." Compl. ¶¶ 25-26. Plaintiff's description is superficial to the point of failing to identify any meaningful similarity. Jackie in *Yellowjackets* is the quintessential well-to-do, bubbly, popular girl—she's white, beautiful, and bratty, and dates the prom king. Although prior to the plane crash she was the team

50

2d 38, 48 (D.D.C. 1999) (traits including intelligence, paranoia, athleticism, working for the CIA, dating a white woman, and holding a bachelor's degree in political science were "not copyrightable" and did not support substantial similarity), *aff'd*, 2000 WL 33363291 (D.C. Cir. 2000); *see also Tanksley v. Daniels*, 902 F.3d 165, 175, 177 (3d Cir. 2018) (affirming dismissal of copyright action against defendant's television series *Empire* where both works include African American male record executives diagnosed with incurable diseases). Beyond those generic characteristics, even the complaint acknowledges the important differences between Makai and Lincoln. Makai is a former gang member who served time for his crimes, but has since "turned his life around" and become a limo driver. Compl. pp. 7-8. On the other hand, Lincoln served time in the *military*, not jail, and gave up perhaps better opportunities to instead work as a janitor in his son's school in order to better his son's education. *Id.*; *see also* Freeman Decl. Ex. 1 at 15:23. Makai is a man who has restarted his life after paying the consequences for bad choices in his past; Lincoln has sacrificed his career to ensure his son's future – a future stolen from them both by Officer Randall.

*Second*, Plaintiff alleges that the works' central teenagers, Orion in the Screenplay and Kajani in the Film, are "stargazing kid[s]" with senses of humor, who attend prep schools with white people, and are killed after attempting to stand up for their rights. Compl. p. 8. Again, these are basic unprotectable characteristics that cannot support a finding of substantial similarity. *See Whitehead*, 53 F. Supp. 2d at 48. The complaint fails to allege any specific, protectable similarities between Orion and Kajani.

*Third*, the complaint alleges both works feature "[a]n overzealous white cop who shoots and kills an unarmed black teen after racially profiling him and his father during a late night encounter in a residential neighborhood." Compl. p. 8. As described above, this is ripped from the headlines and unprotectable. *See supra*

15

51

---

captain, in the wilderness, she struggles to contribute, loses much of her authority among her schoolmates, and chafes at the realization that she is no longer top dog.

Unlike Jackie, Slim is a black, adult male. Slim is reserved and reluctant to take on any leadership role, but nevertheless looks after his fellow survivors. Despite the fact that Slim is one of the protagonists in *Eden*, the film reveals nothing about his backstory. And whereas Jackie freezes to death and is ultimately eaten by her teammates, Slim survives and is rescued. Jackie and Slim's "noticeable differences" militate against a finding of substantial similarity. *Silas*, 201 F. Supp. 3d at 1177.

**b.    Shauna and Markese**

Plaintiff alleges that Shauna and Markese are both "skilled player[s] who [are] often overshadowed by others." Compl. ¶¶ 25-26. Beyond this generic and unprotectable trait, there is no similarity between the two characters. Shauna is an intellectual who, prior to the crash, lived in her best friend Jackie's shadow. But Shauna also betrayed Jackie by sleeping with her boyfriend Jeff. Ex. 2, Ep. 101 at 38:59. In the present-day, Shauna is a discontent stay-at-home mom, who, as penance for Jackie's death, gave up her dream of attending Brown University to remain in New Jersey and marry Jeff.

Markese, on the other hand, is merely a pugnacious background character; in fact, he barely has any dialogue and no backstory. In contrast to Shauna, whose complex and contradictory traits are revealed throughout the series, *Eden* provides Markese with virtually no character traits, and he is ultimately killed by a fellow teammate. *See Shame on You Prods.*, 120 F. Supp. 3d at 1164 (only "distinctive characters are protectible").

**c.    Natalie and Arnie**

Nor are Natalie and Arnie similar. Plaintiff describes both as "troubled but talented soccer player[s] who act[] impulsively." Compl. ¶¶ 25-26. Plaintiff's superficial description of the two characters is undermined by the works

20

52

26

Section III.B.1. Next, the complaint alleges that the officers in both works are married, either with a son (the Film) or with a son on the way (the Screenplay). Compl. p. 8. This similarity is at best the same type of "general character trait" that is unprotectable under copyright law. *See Whitehead*, 53 F. Supp. 2d at 48. Finally, the complaint alleges that each officer "admits guilt" in fear of being killed (Compl. p. 8), but this flows naturally from the unprotectable shared premise of an officer finally being held accountable for shooting an unarmed teen. Moreover, the complaint acknowledges this "admission" happens in different ways in the Film and the Screenplay. In the Screenplay, the officer allegedly admits his guilt during a hostage negotiation, only *after* Makai offers to free him. *See* Compl. ¶ 14 & pp. 7-8. In the Film, the officer finally admits his guilt after he is racially profiled Lincoln and Kajani during a fully staged trial, complete with a jury of civilians, inmates, and administrative police officers. Freeman Decl. Ex. 1 at 1:02:25. The admission comes without any promise of freedom.

*Fourth*, the complaint compares more seasoned police officers in each of the works: Lieutenant Ezekiel Meadows in the Screenplay and Captain Eugene Morris in the Film. Compl. p. 8. The complaint alleges that the officers are African American men torn between their role in the Black community and as a member of law enforcement, who attempt to maintain peace and order and encourage the main character to rethink his drastic actions. *Id.* These allegations are generic, based in reality, and flow naturally from the premise of the works. *See supra* Section III.B.1.[11] Beyond these unprotectable characteristics, we know nothing meaningful about Lieutenant Meadows or his role in the Screenplay.

---

[11] Moreover, the internal conflict of an African American police captain is a theme explored in numerous creative works, including, for example, the long-running television series *Brooklyn Nine-Nine*. *See Brooklyn Nine-Nine* (2013-2021) https://www.imdb.com/title/tt2467372/.

16
DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

53

themselves. In 1996, Natalie is an angsty but wounded outsider who comes from a trailer park with an emotionally abusive mother and a physically abusive father. In the present day, Natalie is revealed to have spent her adult years in and out of rehab for drugs and alcohol. *See* Ex. 2, Ep. 101 at 13:26. Eventually, Natalie still traumatized from her time in the wilderness and reeling from Travis's apparent suicide, joins Lottie's cult. *See generally* Ex. 3, Ep. 202-Ep. 209.

Arnie, like Markese, is given no backstory and is nothing more than a supporting character with hardly any dialogue. He is eventually killed by Slim before the rescue helicopters arrive. Natalie and Arnie are not similar. *See Shame on You Prods.*, 120 F. Supp. 3d at 1164 (only "distinctive characters are protectible").

    **d.    Taissa/Lottie and Andreas**

Plaintiff compares both Taissa and Lottie in *Yellowjackets* to Andreas in *Eden*. Compl. ¶¶ 25-26. As an initial matter, Defendants are not aware of any cases in which a court found substantial similarity based on composite traits drawn from multiple characters. Regardless, Plaintiff's comparison is undermined by the characters themselves. Taissa, the team's star player, is ambitious and competitive. For example, in the first episode of *Yellowjackets*, Taissa, concerned that a less-than-stellar freshman player on the team could cost them the championship, slide tackles the player during practice, breaking her leg and exposing bone. Ex. 2, Ep. 101 at 23:39. As an adult, Taissa makes a run for senate. *Id.*, Ep. 101 at 18:58. But her drive for success eventually drives away her wife and son.

Unlike Taissa, Lottie, who in a flashback is shown to have psychic abilities, is at first reserved and unassuming. But during a séance in the cabin, Lottie becomes possessed and repeats a sinister message to the girls. *Id.*, Ep. 105 at 41:39. After a number of her ominous visions come to pass, Lottie becomes the group's spiritual chief, often leading the girls in performing sacrificial offerings. *See, e.g., id.*, Ep. 110 at 57:01. As an adult, she founds her own cult. Ex. 3, Ep. 201 at 08:02.

1  The complaint does not describe the Screenplay's other characters (if any), or
2  whether there are similar to the Film's many other important characters (for
3  example, the student documentarians, Kajani's mother, and Lincoln's military
4  friends who help him conduct the trial in the police precinct). On the whole, the
5  few allegations regarding the works' characters are based overwhelmingly on
6  unprotectable traits and characteristics, and do not support an adequately pleaded
7  claim of substantial similarity.

8  **4.    Setting**

9  To start, the complaint makes clear that the works take place in quite different
10  cities—the Screenplay in Houston, Texas, and the Film in Los Angeles, California.
11  Compl. p. 7.

12  Plaintiff alleges that the works' settings are similar because both works take
13  place "during a very tense time between the black community and the local police,"
14  and have scenes on city streets "on the July 4th weekend" and in City Halls. Compl.
15  pp. 7, 9-10. *First,* each of these settings flows naturally from the premise of a
16  grieving father seeking justice against an uncharged officer who killed his unarmed
17  son. *See, e.g., Benay,* 607 F.3d at 627-628 (finding that given the works' shared
18  unprotectable premise, it was "not surprising" that the works shared settings like "a
19  scene of the protagonist sailing into Japan, scenes in the Imperial Palace, scenes on
20  the Imperial Army's training grounds, and battle scenes in various places in
21  Japan"). That the works take place "during a very tense time" between the African
22  American community and local police is ripped straight from the headlines. *See*
23  *supra* Section III.B.1. And of course there will be scenes on city streets and in
24  some sort of government building. Moreover, that such an unjust shooting
25  happened close to the July 4th holiday, a day on which the United States celebrates
26  its independence, emphasizes the reality that "liberty and justice for all" is not
27  enjoyed by everybody equally. *Second,* the characterization that both works take
28  place in "City Halls" is inaccurate. The Screenplay is set in part in Houston's City

17

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

55

---

1  Andreas, on the other hand, is the assistant team captain. After the crash,
2  Andreas take charge over the survivors as the group's de facto leader. Ex. 1 at
3  0:22:52. Although nothing is revealed about Andreas's backstory, his underlying
4  motivation appears to be survival. He convinces the survivors to withhold rations
5  from the injured, and kills his own wounded brother. *Id.* at 0:46:38. He later
6  becomes increasingly erratic and violent, and eventually leads his faction of the
7  survivors to attack Slim and the others in order to take the remaining rations for
8  themselves. *Id.* at 1:20:49. Andreas's animalistic bent ultimately leads to his
9  demise, when his fellow survivors are rescued and leave him behind on the island.
10  *Id.* at 1:32:48. As with the other main characters, Taissa, Lottie, and Andreas's
11  many "noticeable differences" cut against a finding of substantial similarity. *Silas,*
12  201 F. Supp. 3d at 1177.

13  **e.    Assistant Coach Ben and Coach DaFoe**

14  Apart from the fact that Coach Ben and Coach DaFoe both coach soccer,
15  there is almost no similarity between the two characters. Compl. ¶¶ 25-26. In
16  *Yellowjackets,* Coach Ben, who is a closeted gay man in his early-thirties, is the
17  adult authority figure for the teenage survivors in the wilderness and is still alive at
18  the end of Season 2. In *Eden,* Coach Defoe, who is middle-aged and has a wife and
19  two adult daughters, dies within the first ten minutes of the film. Coach DaFoe
20  does not appear again in the film, and nothing more is learned about him. *See*
21  *Shame on You Prods.,* 120 F. Supp. 3d at 1164 (only "distinctive characters are
22  protectible"). The two characters are not substantially similar.

23  **f.    Misty and Connie**

24  Plaintiff alleges that Misty and Connie are similar because both are "a nurse-
25  like character." Compl. ¶¶ 25-26. But this alleged shared trait on its own is too
26  generic to merit protection. *See Shame on You Prods.,* 120 F. Supp. 3d at 1165.
27  Further, the concept of a character with a medical background is *scenes a faire* for
28  the survival genre, which is likewise unprotectable. *See* Section III.C.1.a.; *see, e.g.,*

22

DEFENDANTS' MOTION TO DISMISS

56

28

1  the Film, the officer screams for the teen to "put the fucking phone away." *Id.* And

2  that the father would later anguish that he "couldn't do anything to save [his] son"

3  (the Screenplay) or "couldn't save him" (the Film) likewise flows naturally from the

4  unprotected premise of a father watching an officer kill his unarmed son. *Id.* at 10.

5  That a father seeking justice for his murdered son would say, "I'm here to get

6  justice" (the Screenplay) or "I just want justice" (the Film), is not protectable.

7  Compl. p. 10. That he would grieve the officer's lack of charges—again, based in

8  reality—by lamenting that the officer is "free to continue his life as usual" (the

9  Screenplay) or able to "go right back to work" (the Film), is similarly unprotectable.

10  *Id.* Neither is the father's proclamation that he wants "[t]he world [to] bear

11  witness" (the Screenplay) or "to make the world see" (the Film) his quest for

12  justice. *Id.* at 11.

13  The *scenes a faire* continue throughout Plaintiff's additional allegations.

14  That an officer forced to reckon with killing an unarmed teen would say he was

15  "panicked" (the Screenplay) or "scared" (the Film), that he only had "seconds to

16  decide" how to react to the situation, and that he wished the teen "had just

17  complied"—itself a trope in both fictional and real stories about law enforcement—

18  is not protectable. Compl. pp. 10-11. And that an officer handling a hostage

19  situation would say to the assailant, "I'm not the enemy," and would instruct others

20  to either "do what [the assailant] says" (in the Screenplay) or to "stand down" (in

21  the Film) is neither novel nor protectable. *Id.*

22  Plaintiff's other selections only provide further support that the works stem

23  from unprotectable themes, including racism and its intersection with law

24  enforcement. *See* Compl. p. 12. These discussions are unprotectable, and

25  moreover, the complaint shows that the specific expression is different.

26  While Plaintiff has cherrypicked a number of dialogue he purports overlaps

27  between the works, his allegations fall short of alleging substantial similarity of

28  dialogue between the works.

19
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899
DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

57

1  *Benay*, 607 F.3d at 627-628. Beyond that, Connie and Misty are nothing alike.

2  Connie is an adult, Asian male physical trainer who kills himself rather than

3  struggle for survival. Misty is a white teenage girl so eager to be stranded in the

4  wilderness with her teammates that she destroys the plane's emergency locator

5  beacon. Their vast differences preclude a finding of substantial similarity. *See*

6  *Silas*, 201 F. Supp. 3d at 1177.

7  **g.    Travis/Javi and Elena/Eva**

8  Beyond the fact that both Travis and Javi, and Elena and Eva are the

9  surviving children of each team's head coach, these characters are not similar.

10  Compl. ¶¶ 25-26. To start, these characters' presence is *scenes a faire* to survival

11  thrillers; many works introduce characters of the opposite gender in order to

12  accommodate romantic side plots. *See* Section III.C.1.a. And it flows naturally that

13  these characters would be the coach's children, to explain how characters of the

14  opposite gender from the team members would be on the flight in the first place.

15  Beyond that, the characters are drastically different. Travis and Javi are

16  adolescent boys. In the wilderness, Travis is an angsty smart aleck who begins an

17  awkward teenage romance with Natalie. As an adult, Travis becomes an addict and

18  accidentally hangs himself in a therapy session gone wrong. Ex. 3, Ep. 202 at

19  33:25. Javi is his quiet, younger brother who remains on the sidelines of the group

20  and later drowns while trying to save Natalie from being hunted. *Id.*, Ep. 208 at

21  48:29. In contrast, Elena and Eva are adult women whom the audience learns

22  almost nothing about, and whose primary purpose in the film is to act as romantic

23  and sexual foils for members of the soccer team. These readily apparent differences

24  undermine Plaintiff's allegations of substantial similarity. *See Silas*, 201 F. Supp.

25  3d at 1177.

26  **4.    The Setting and Pace of the Works Are Not Similar.**

27  Neither the setting nor the pace of the works is substantially similar. *Eden* is

28  a linear story that takes places over 14 days, and apart from its first ten minutes, is

58

Hall (and apparently involves the city's mayor and his security detail) (Compl. p. 12), but the Film takes place partially in the Los Angeles police precinct, *not* City Hall (Freeman Decl. Ex. 1 at 30:21).

Again, the complaint is silent as to any other settings in the Screenplay and how they are similar or different to the Film's other settings, including Lincoln's home, other family members' homes, the high school Kajani attended, and the police captain's house (the pivotal location where Lincoln takes his first hostage and forces the student documentarians to become the unwilling accomplices). *See* Freeman Decl. Ex. 1 at 29:02. As pleaded, Plaintiff's allegations fall short of plausibly alleging substantial similarity between the works' settings.

**5.    Dialogue**

"[F]or a plaintiff to demonstrate substantial similarity of dialogue, it must show 'extended similarity of dialogue.'" *Silas*, 201 F. Supp. 3d at 1181 (quoting *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988)). *See Gallagher v. Lions Gate Entm't*, 2015 WL 12481504, at *10 (C.D. Cal. Sept. 11, 2015) (three instances of similar dialogue could not demonstrate "extended similarity").

The complaint alleges a scattershot of lines Plaintiff purports overlaps between the works. *See* Compl. pp. 10-12. That works sharing an unprotected premise would have similar dialogue at times is unsurprising and unprotectable. Moreover, Plaintiff's cherrypicked allegations of the *most similar lines* between the works show the lines are not actually as similar as Plaintiff suggests. It is only natural that a father trying to protect his son during an encounter with law enforcement would speak gently to the teen (in the Screenplay, "It's fine Rion, stay calm," and in the Film, "It's okay, it's alright"). *Id.* p. 11. Neither can Plaintiff own the notion that an officer seconds away from killing an unarmed teen would draw his gun and use the word "fucking." Compl. p. 11. Moreover, Plaintiff's own dialogue excerpts shows how this scene plays differently in each work: in the Screenplay, the officer orders the teen to "get on the fucking ground," whereas in

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

18

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

set exclusively on a tropical desert island somewhere in the Pacific Ocean. In contrast, *Yellowjackets* unfolds over the course of months and years, constantly shifting between two parallel timelines: one set in the Canadian wilderness in the 1990s, and the other set primarily in contemporary suburban New Jersey. As explained above, Plaintiff's allegations that both the film and the series "take[] place in a deserted and desolate place beyond the reach of human civilization," are merely *scenes a faire* of the survival genre. Compl. ¶ 23. Likewise, Plaintiff's description of the pace of the two works, which purportedly "balance slower, character-driven moments with more intense, plot-driven sequences," identifies nothing more than generic elements common to any dramatic film or television series with an ensemble cast. *Eden* and *Yellowjackets*, which do not share a single setting in common and whose stories are told using vastly different narrative devices, are not substantially similar with regard to setting or pace.

**5.    The Dialogue of the Works Is Not Similar.**

"[F]or a plaintiff to demonstrate substantial similarity in the dialogue, it must show 'extended similarity of dialogue.'" *Silas*, 201 F. Supp. 3d at 1181 (quoting *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988)). *See Gallagher v. Lions Gate Ent.*, 2015 WL 12481504, at *10 (C.D. Cal. Sept. 11, 2015) (three instances of similar dialogue could not demonstrate "extended similarity").

As an initial matter, Plaintiff concedes that "the specific words … differ across the works." Compl. ¶ 25. Nevertheless, Plaintiff contends that "the underlying themes and emotions in the dialogue are strikingly similar." Compl. ¶ 25. Plaintiff's allegations of thematic similarity in the dialogue of the two works are largely duplicative of his allegations regarding plot, sequence of events, theme, and mood. *See* Compl. ¶ 25(a)-(e). But Plaintiff does not allege even a *single instance* of actual dialogue shared between the works. Merely alleging that thematically similar conversations take place in both works is not enough to find the "extended similarity of dialogue" necessary for substantial similarity. *See Silas*,



6.    **Mood and Pace**

Though works at issues' moods and paces often are considered by courts assessing substantial similarity, *see Kouf*, 16 F.3d at 1045, Plaintiff makes no allegations regarding these elements.

**IV.    PLAINTIFF'S SECOND CAUSE OF ACTION LIKEWISE FAILS**

Because Plaintiff fails to adequately allege that the Film infringes the Screenplay, Plaintiff's second cause of action over defendant Vertical Entertainment, LLC's distribution of the Film likewise fails. *See Fox Broad. Co. v. Dish Network*, 747 F.3d 1060, 1068 (9th Cir. 2014) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.").

**V.    CONCLUSION**

As plaintiffs control their complaints, "plaintiffs should allege the facts that best support their case." *Esplanade*, 2017 WL 5635024, at *10. Plaintiff neither attaches the alleged Screenplay to the complaint nor pleads substantially similar protected expression between the Screenplay and Film. Accordingly, Defendants respectfully request that the Court dismiss the complaint in its entirety.

DATED: January 28, 2022            Respectfully submitted,

                                   DAVIS WRIGHT TREMAINE LLP
                                   NICOLAS A. JAMPOL
                                   CYDNEY SWOFFORD FREEMAN
                                   SAMANTHA W. LACHMAN

                                   By:    /s/ Nicolas A. Jampol
                                          Nicolas A. Jampol

                                   Attorneys for Defendants

20

DEFENDANTS' MOTION TO DISMISS COMPLAINT
4860-0766-6186v.2 0118814-000002

DAVIS WRIGHT TREMAINE LLP

61



201 F. Supp. 3d at 1181 (citation omitted). Because the Complaint fails to identify any overlapping dialogue, Plaintiff has not pled that the works are substantially similar as to this extrinsic element.

**IV.    CONCLUSION**

*Eden* and *Yellowjackets* are not substantially similar as a matter of law. After filtering out unprotectable elements, a review of the two works readily demonstrates that the plot, sequence of events, themes, characters, setting, mood, pace, and dialogue are vastly different. Plaintiff's abstract allegations of similarity ubiquitous to numerous films and television series are insufficient to survive dismissal.

For all these reasons, this Court should dismiss Plaintiff's Complaint with prejudice, and award Defendants their costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505, for which Defendants will move by subsequent motion.

DATED: January 24, 2025            DAVIS WRIGHT TREMAINE LLP
                                   NICOLAS A. JAMPOL
                                   CYDNEY SWOFFORD FREEMAN
                                   JOEL RICHERT

                                   By:    /s/ Nicolas A. Jampol
                                          Nicolas A. Jampol

                                   Attorneys for Defendants
                                   LIONS GATE ENTERTAINMENT,
                                   INC., SHOWTIME NETWORKS INC.,
                                   BEER CHRISTMAS, LTD., ASHLEY
                                   LYLE, and BART NICKERSON

25

DEFENDANTS' MOTION TO DISMISS

62

Exhibit 4

| Date | Timekeeper | Hours | Amount | Narrative | Total Hours per Brief/Hearing | Total Cost per Brief/Hearing |
|---|---|---|---|---|---|---|
| 12/2/24 | J. Richert | 2.5 | 1150 | Watch Eden (2015) and take notes on plot and sequence,  themes, setting,  mood,  pace,  dialogue,  and characters | | |
| 12/3/24 | J. Richert | 0.7 | 322 | Review Episode 101 of Yellowjackets | | |
| 12/4/24 | C. Freeman | 0.3 | 160.5 | Initial review of complaint in connection with motion to dismiss | | |
| 12/4/24 | J. Richert | 0.8 | 368 | Review Yellowjackets Season 1 and Season 2 summary | | |
| 12/7/24 | C. Freeman | 1.8 | 963 | Watch plaintiff's film and take notes in support of MTD | | |
| 12/8/24 | C. Freeman | 3 | 1605 | Watch episodes of Yellowjackets and take notes in connection with motion to dismiss complaint | | |
| 12/9/24 | C. Freeman | 0.9 | 481.5 | Review Judge Pregerson's standing order,  rules,  and prior copyright decisions in connection with motion to dismiss claims | | |
| 12/10/24 | J. Richert | 1.6 | 736 | Review Episodes 102-103 of Yellowjackets | | |
| 12/11/24 | J. Richert | 1.6 | 736 | Review Episodes 102,  103,  and 104 of Yellowjackets | | |
| 12/11/24 | J. Richert | 1.6 | 736 | Conduct preliminary research on | | |
| 12/13/24 | J. Richert | 6.5 | 2990 | Review Episodes 104-110 of Yellowjackets | | |
| 12/19/24 | J. Richert | 2.8 | 1288 | Review additional episode of Season 2 of Yellowjackets television series for motion to dismiss | | |
| 12/22/24 | J. Richert | 4.7 | 2162 | Draft factual synopsis of film for motion to dismiss | | |
| 12/22/24 | J. Richert | 2 | 920 | Draft argument section regarding lack of similarity in dialogue for motion to dismiss | | |
| 12/23/24 | J. Richert | 2.7 | 1242 | Draft argument section regarding lack of substantial similarity between setting and pace for motion to dismiss | | |
| 12/24/24 | J. Richert | 3.1 | 1426 | Draft argument section regarding lack of substantial similarity in protagonists of series and film for motion to dismiss | | |
| 12/24/24 | J. Richert | 2.9 | 1334 | Draft argument section regarding lack of similarity in theme and mood for motion to dismiss | | |
| 12/25/24 | J. Richert | 1.6 | 736 | Draft remainder of argument section regarding lack of similarity in background and secondary characters for motion to dismiss | | |
| 12/27/24 | J. Richert | 2.4 | 1104 | Draft argument section regarding lack of similarity in plot for motion to dismiss | | |
| 12/28/24 | J. Richert | 1.3 | 598 | Revise argument sections regarding lack of substantial similarity for motion to dismiss | | |
| 12/28/24 | J. Richert | 3.4 | 1564 | Draft factual synopsis of series for motion to dismiss | | |
| 12/28/24 | J. Richert | 1.3 | 598 | Draft summary of argument regarding lack of substantial similarity for motion to dismiss | | |
| 1/7/25 | C. Freeman | 1 | 650 | Preliminary comments to draft motion to dismiss | | |
| 1/7/25 | J. Richert | 0.6 | 294 | Research | | |
| 1/9/25 | J. Richert | 3.3 | 1617 | Revise legal argument sections explaining how works are dissimilar | | |
| 1/9/25 | J. Richert | 2.2 | 1078 | Revise legal standard section to include | | |
| 1/9/25 | J. Richert | 3 | 1470 | Revise factual background section to reorganize structure, include additional relevant details and remove extraneous information | | |
| 1/13/25 | J. Richert | 2.4 | 1176 | Revise motion to dismiss to streamline legal arguments and factual background | | |
| 1/16/25 | J. Richert | 0.5 | 245 | Attend meet-and-confer with opposing counsel regarding motion to dismiss and correspondence regarding same | | |
| 1/16/25 | J. Richert | 3.5 | 1715 | Revise introduction of motion to dismiss and argument section of brief to streamline | | |
| 1/18/25 | C. Freeman | 1.2 | 780 | Revise motion to dismiss fact section | | |
| 1/18/25 | C. Freeman | 0.4 | 260 | Revise motion to dismiss arguments on filtering unprotectable elements | | |
| 1/18/25 | C. Freeman | 2.1 | 1365 | Revise motion to dismiss argument regarding plot, themes,  characters, moods,  and sequences of events | | |
| 1/18/25 | C. Freeman | 1.7 | 1105 | Draft introduction to motion to dismiss | | |
| 1/19/25 | C. Freeman | 1.6 | 1040 | Further revisions to motion to dismiss | | |
| 1/19/25 | N. Jampol | 1.6 | 1040 | Review and revise motion to dismiss | | |
| 1/19/25 | J. Richert | 2 | 980 | Revise motion to dismiss to include | | |
| 1/19/25 | J. Richert | 4.3 | 2107 | Revise motion to dismiss to include citations to underlying works at issue | | |
| 1/20/25 | J. Richert | 2.8 | 1372 | Revise motion to dismiss to implement edits from N. Jampol | | |
| 1/21/25 | J. Richert | 3.6 | 1764 | Revise motion to dismiss to implement comments from clients | | |
| 1/21/25 | J. Richert | 2 | 980 | Draft lawyer declaration and notice of lodging to file with motion to dismiss | | |
| 1/22/25 | J. Richert | 1.8 | 882 | Revise motion to dismiss to | | |

| Date | Timekeeper | Hours | Amount | Description | | |
|---|---|---|---|---|---|---|
| 1/22/25 | J. Richert | 1.1 | 539 | Draft notice of interested parties and research corporate structure of corporate entity defendants | | |
| 1/23/25 | J. Richert | 0.4 | 196 | Revise lawyer declaration and notice of lodging | | |
| 1/24/25 | C. Freeman | 1.6 | 1040 | Final revisions to motion to dismiss and related filings | | |
| 1/24/25 | J. Richert | 5.3 | 2597 | Implement final edits from clients across all motion papers | | |
| 1/28/25 | C. Freeman | 0.1 | 65 | Communicate with opposing counsel regarding motion to dismiss | | |
| 2/3/25 | C. Freeman | 0.1 | 65 | Communicate with opposing counsel regarding motion to dismiss | 99.7 | 49642 |
| 2/7/25 | C. Freeman | 0.3 | 195 | Review court order and communicate with clients | | |
| 2/24/25 | C. Freeman | 1.3 | 845 | Review plaintiff's opposition to motion to dismiss and prepare response strategy to same and communicate with clients | | |
| 2/24/25 | N. Jampol | 1.1 | 715 | Review opposition to motion to dismiss and prepare comments for reply brief regarding same | | |
| 2/25/25 | J. Richert | 0.6 | 294 | Review opposition to motion to dismiss filed by plaintiff | | |
| 2/27/25 | J. Richert | 2.5 | 1,225.00 | Draft outline for reply and review case law cited in opposition to motion to dismiss | | |
| 2/28/25 | J. Richert | 6.4 | 3,136.00 | Draft legal argument section refuting plaintiff's allegations of similarity between the works for reply in support of motion to dismiss | | |
| 2/28/25 | J. Richert | 4.8 | 2,352.00 | Draft legal argument section regarding ability of the court to assess similarity at pleading stage for reply in support of motion to dismiss and perform additional research for supporting case law | | |
| 3/1/25 | C. Freeman | 3 | 1950 | Watch Episodes 104-106 in order to refute plaintiff's allegations spanning all seasons in reply briefing and oral argument | | |
| 3/2/25 | C. Freeman | 4 | 2,600.00 | Watch Episodes 107-110 in order to refute plaintiff's allegations spanning all seasons in reply briefing and oral argument | | |
| 3/3/25 | J. Richert | 3.1 | 1,519.00 | Reply in support of motion to dismiss | | |
| 3/3/25 | J. Richert | 3 | 1,470.00 | Research case law for          reply in support of motion to dismiss | | |
| 3/4/25 | C. Freeman | 3 | 1,950.00 | Watch Episodes 201-203 in order to refute plaintiff's allegations spanning all seasons in reply briefing and oral argument | | |
| 3/5/25 | C. Freeman | 1.2 | 780 | Revise MTD reply argument that the works are not substantially similar as a matter of law | | |
| 3/5/25 | C. Freeman | 0.7 | 455 | Revise MTD reply argument that dismissal should be with prejudice and review cases in connection with same | | |
| 3/5/25 | C. Freeman | 2.1 | 1,365.00 | Revise MTD reply argument that courts can decide substantial similarity on a motion to dismiss and review recent cases in connection with same | | |
| 3/5/25 | C. Freeman | 1.6 | 1040 | Revise MTD reply argument that the works do not share a protectable selection and arrangement of unprotectable elements and review cases in connection with same | | |
| 3/5/25 | C. Freeman | 0.4 | 260 | Revise introduction to reply in support of motion to dismiss | | |
| 3/5/25 | N. Jampol | 1.3 | 845 | Revise and revise reply in support of motion to dismiss complaint | | |
| 3/5/25 | J. Richert | 2 | 980 | Revise reply in support of motion to dismiss to coordinate additional supporting case law | | |
| 3/5/25 | J. Richert | 0.7 | 343 | Perform additional research for case law | | |
| 3/6/25 | C. Freeman | 4 | 2600 | Watch Episodes 204-207 in order to refute plaintiff's allegations spanning all seasons in reply briefing and oral argument | | |
| 3/6/25 | C. Freeman | 0.8 | 520 | Revise reply in support of motion to dismiss | | |
| 3/6/25 | J. Richert | 2.8 | 1372 | Revise reply brief in support of motion to dismiss per client comments | | |
| 3/7/25 | C. Freeman | 1.3 | 845 | Revise reply in support of motion to dismiss to address client comments | | |
| 3/7/25 | C. Freeman | 0.8 | 520 | Revise reply in support of motion to dismiss | | |
| 3/7/25 | J. Richert | 1.6 | 784 | Revise reply in support of motion to dismiss and communicate with client | | |
| 3/8/25 | C. Freeman | 2 | 1300 | Watch Episodes 208-209 in order to refute plaintiff's allegations spanning all seasons in reply briefing and oral argument | | |
| 3/9/25 | C. Freeman | 0.7 | 455 | Revise reply in support of motion to dismiss | | |
| 3/10/25 | C. Freeman | 0.5 | 325 | Revise reply in support of motion to dismiss | | |
| 3/10/25 | N. Jampol | 0.8 | 520 | Review and final revisions to reply in support of motion to dismiss based on client comments | | |
| 3/10/25 | J. Richert | 1.9 | 931 | Revise reply in support of motion to dismiss per client comments and finalize for filing | 60.3 | 34491 |
| 3/17/25 | J. Richert | 0.2 | 98 | Draft status update for case and communicate with C. Freeman regarding same | | |
| 3/25/25 | C. Freeman | 2.9 | 1885 | Review all briefing in preparation for oral argument on motion to dismiss | | |
| 3/26/25 | J. Richert | 0.5 | 245 | Draft case status update to include revised hearing date on motion to dismiss | | |

| Date | Name | Hours | Amount | Description | | |
|---|---|---|---|---|---|---|
| 3/31/25 | C. Freeman | 1 | 650 | Review to prepare for oral argument on motion to dismiss | | |
| 4/14/25 | C. Freeman | 3 | 1950 | Watch Episodes 301-303 to address plaintiff's allegations spanning all seasons in preparation for oral argument | | |
| 4/15/25 | C. Freeman | 2.3 | 1495 | Prepare for oral argument on motion to dismiss by reviewing all motion papers | | |
| 4/17/25 | C. Freeman | 4 | 2600 | Watch Episodes 304-307 to address plaintiff's allegations spanning all seasons in preparation for oral argument | | |
| 4/18/25 | C. Freeman | 4.8 | 3120 | Prepare for oral argument on motion to dismiss by reviewing cases cited in support of motion | | |
| 4/18/25 | C. Freeman | 3 | 1950 | Watch Episodes 308-310 to address plaintiff's allegations spanning all seasons in preparation for oral argument | | |
| 4/18/25 | N. Jampol | 1.3 | 845 | Prepare potential lines of questioning for hearing on motion to dismiss and participate in moot regarding same | | |
| 4/20/25 | C. Freeman | 4.6 | 2990 | Prepare for oral argument on motion to dismiss by reviewing cases cited by plaintiff and distinguishing facts and holdings | | |
| 4/21/25 | C. Freeman | 3.7 | 2405 | Prepare for oral argument on motion to dismiss by writing and revising open argument and deliver oral argument before Judge Pregerson | | |
| 4/21/25 | N. Jampol | 2.6 | 1690 | Prepare for and attend hearing on motion to dismiss and communicate with clients | 33.9 | 21923 |
| 4/25/25 | C. Freeman | 0.2 | 130 | Communcation with clients regaring | | |
| 4/25/25 | C. Freeman | 0.9 | 585 | Review order granting motion to dismiss and communicate with clients | | |
| 4/25/25 | C. Freeman | 0.6 | 294 | Review court's opinion on motion to dismiss | | |
| 4/28/25 | C. Freeman | 0.3 | 195 | Prepare initial strategy for motion for attorneys' fees | | |
| 4/29/25 | J. Richert | 0.7 | 343 | Research for fee motion | | |
| 4/30/25 | C. Freeman | 0.1 | 65 | Communicate with plaintiff's counsel regarding motion for attorneys' fees | | |
| 4/30/25 | J. Richert | 2.7 | 1323 | Draft introduction and procedural background section for fee motion | | |
| 05/01/25 | Freeman, Cydney | 0.1 | 65 | Communicate with opposing counsel regarding fees motion | | |
| 05/01/25 | Richert, Joel | 4.3 | 2107 | Draft legal argument sections for fee motion | | |
| 05/02/25 | Freeman, Cydney | 0.4 | 260 | Communicate with opposing counsel regarding grounds for fees motion | | |
| 05/02/25 | Freeman, Cydney | 4.1 | 2665 | Initial structural and line-edit revisions to motion for attorneys' fees | | |
| 05/02/25 | Richert, Joel | 0.7 | 343 | Review final billing invoices and communicate with B. Planchon regarding same for fee motion | | |
| 05/02/25 | Richert, Joel | 3 | 1470 | Revise fee motion per comments from C. Freeman | | |
| 05/02/25 | Richert, Joel | 0.6 | 294 | Draft meet and confer email setting out arguments in forthcoming fee motion to opposing counsel | | |
| 05/03/25 | Freeman, Cydney | 1 | 650 | Revise fees motion to reflect additional supporting caselaw | | |
| 05/03/25 | Richert, Joel | 2 | 980 | Perform additional research for ____ revise legal argument section regarding same | | |
| 05/03/25 | Richert, Joel | 1.4 | 686 | Research _____ for fee motion | | |
| 05/04/25 | Jampol, Nicolas | 1.8 | 1170 | Review and revise motion for attorneys' fees and supporting materials in connection with same | | |
| 05/05/25 | Freeman, Cydney | 1.3 | 845 | Review research regarding _____ and incorporate strategy into fees motion | | |
| 5/5/25 | Richert, Joel | 1.5 | 735 | Draft Freeman declaration in support of fee motion | | |
| 5/5/25 | Richert, Joel | 0.7 | 343 | Draft Freeman declaration in support of fee motion | | |
| 5/6/25 | Freeman, Cydney | 1.7 | 1,105.00 | Revise fees motion to incorporate additional arguments and for flow, and communicate with clients | | |
| 5/6/25 | Jampol, Nicolas | 0.6 | 390 | Review and revise motion for attorneys' fees in light of | | |
| 5/6/25 | Richert, Joel | 0.5 | 245 | Revise fee motion and declarations to include additional factual basis in support of fee award | | |
| 5/7/25 | Freeman, Cydney | 0.8 | 520 | Communicate with clients | | |
| 5/7/25 | Richert, Joel | 0.6 | 294 | Revise fee motion to implement client edits | | |
| 5/8/25 | Freeman, Cydney | 2.3 | 1,495.00 | Review and revise all supporting documents for motion for atorrneys' fees | | |
| 5/8/25 | Richert, Joel | 2.5 | 1,225.00 | Revise fee motion and implement citations to declarations and exhibits into brief | | |
| 5/8/25 | Richert, Joel | 1.7 | 833 | Revise declarations in support of fee motion and make corresponding changes in body of brief | | |
| 5/8/25 | Richert, Joel | 0.6 | 294 | Review billing invoices to attach to fee motion and mark for redaction | 39.7 | 21949 |
| Totals | | 233.6 | 128005 | | 233.6 | 128005 |

## CERTIFICATE OF SERVICE

I certify that I am over the age of 18 years and not a party to the within action; that my business address is 440 E. Huntington Drive, Suite 300, Arcadia, CA 91006; and that on this date I served a true copy of the document(s) entitled:

- **DECLARATION OF ANYA FUCHS IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

Service was effectuated by forwarding the above-noted document in the following manner:

[XX] VIA CM/ECF. I electronically served the above document(s) via CM/ECF on all parties opting for e-service and is available for viewing and downloading from the Court's CM/ECF system.

I certify that I am a member of the bar of this court.

Executed on June 16, 2025, at Emeryville, CA.

      /s/ *Anya Fuchs*
      Anya Fuchs

*Eden Film Production LLC, v. Lockjaw LLC, et al.*
USDC CACD Case No.: 2:24-cv-09851-DDP-SK