NICOLAS A. JAMPOL (State Bar No. 244867)
  nicolasjampol@dwt.com
CYDNEY SWOFFORD FREEMAN (State Bar No. 315766)
  cydneyfreeman@dwt.com
JOEL RICHERT (State Bar No. 327116)
  joelrichert@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
LIONS GATE ENTERTAINMENT, INC.,
SHOWTIME NETWORKS INC., BEER
CHRISTMAS, LTD., ASHLEY LYLE,
and BART NICKERSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDEN FILM PRODUCTION LLC, a Delaware corporation,<br><br>               Plaintiff,<br><br>    vs.<br><br>LOCKJAW LLC, a California corporation; ASHLEY LYLE, an individual; BART NICKERSON, an individual; BEER CHRISTMAS, LTD., a California corporation; SHOWTIME NETWORKS INC., a California corporate; LIONS GATE ENTERTAINMENT, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>              Defendants. | Case No. 2:24-cv-09851-DOC-SK<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**<br><br>Date:     July 21, 2025<br>Time:    8:30 a.m.<br>Crtrm:  10A |

# I.    INTRODUCTION

Defendants achieved complete success in this lawsuit on the merits by successfully moving to dismiss the Complaint with prejudice. In dismissing the case, the Court carefully analyzed the works at issue and found that they were not similar as a matter of law. Plaintiff doesn't deny this, because it can't. Instead, Plaintiff uses its Opposition to Defendants' fee motion to relitigate its claim. Plaintiff contends that the Court erred in dismissing the case, that Defendants should have been less thorough in their preparation, and that they should have spent less time in defeating Plaintiff's claims. But this is not a motion for reconsideration, and Plaintiff's attempts to relitigate the merits are improper and irrelevant. Moreover, Plaintiff raised claims across three television seasons by mischaracterizing the works and relying on unprotectable facts and other elements. Defendants spent the time necessary to achieve the ultimate result.

Defendants notified Plaintiff from the start that the alleged similarities were almost entirely unprotectable and that they would seek their fees if they prevailed. But Plaintiff pushed on. Plaintiff then appeared for a dispositive hearing and could not meaningfully answer the Court's most basic questions about what Plaintiff purported to own (thus leading to Plaintiff preparing an unsolicited supplemental briefing attempting arguments it failed to make at the hearing and, even if they had been made, would not have mattered). The Court dismissed the case in a well-reasoned order comparing the works, finding that every element it considered under the Ninth Circuit's extrinsic test weighed against a finding of substantial similarity.

As promised to Plaintiff at the outset, Defendants now seek their fees—not to punish Plaintiff, but to compensate Defendants for fees incurred defending against this unreasonable action and to deter others from adopting this same approach. This is consistent with the Copyright Act, which allows for fees to prevailing defendants for these precise reasons. Defendants respectfully request that the Court award their requested fees in full.

DEFENDANTS' REPLY ISO MOTION FOR ATTORNEYS' FEES

## II.    THE COURT SHOULD AWARD DEFENDANTS THEIR FEES

As Plaintiff acknowledges, the Court may consider several non-exclusive factors in determining whether to award attorneys' fees, including, but not limited to "the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence." Mot. at 4 (quoting *Maljack Prods. v. GoodTimes Home Video*, 81 F.3d 881, 889 (9th Cir. 1996)); *see also* Opp. ¶ 5. Contrary to Plaintiff's assertions, these factors favor granting the Motion.

### A.    Defendants Achieved Complete Success

Plaintiff does not dispute that Defendants "achieved 'success' in this litigation." Opp. ¶ 5 (conceding this first factor weighs in favor of fees). Indeed, Plaintiff has "conceded the outcome without appealing." Opp. ¶ 31. Plaintiff nevertheless devotes a significant portion of its Opposition to arguing that Defendants should not have won. It claims Judge Pregerson misapplied the law with "tunnel vision" and "fallac[ious]" reasoning. *See, e.g.*, Opp. ¶¶ 21-29. But this is not a motion for reconsideration, and Plaintiff's attempt to relitigate its claims with a new judge is misguided and irrelevant.

In any event, the Order speaks for itself. The Court devoted 11 pages to analyzing the works in detail. It held that the vast majority of alleged similarities were *scenes a faire* or blatant mischaracterizations, and that comparing the works' actual plots, moods, themes, characters, settings, and paces showed that they are not substantially similar as a matter of law. *See* Dkt. 39 at 11-18. After reviewing the works, the Court found that *every* category it considered under the Ninth Circuit's extrinsic test for substantial similarity weighed in Defendants' favor. *See* Mot. at 3. Defendants' complete success on the merits cuts heavily in favor of a fee award. *See, e.g.*, *DuckHole v. NBCUniversal Media*, 2013 WL 5797204, at *2 (C.D. Cal. Oct. 25, 2013) (holding "[t]his factor weighs more heavily in favor of a party who prevailed on the merits, rather than on a technical defense"). *See also* Mot. at 4.

DEFENDANTS' REPLY ISO MOTION FOR ATTORNEYS' FEES

## B.    Plaintiff's Claim Was Objectively Unreasonable

The parties agree that in assessing fees under Section 505, the Court must give "substantial weight" to whether a copyright claim was objectively unreasonable. *See* Opp. ¶ 9. Plaintiff contends that its copyright claim was reasonable because Plaintiff raised a selection-and-arrangement theory that Defendants supposedly ignored and to which the Court gave "short shrift." *See id.* ¶¶ 1, 3, 16, 18-19. But Defendants did not ignore Plaintiff's selection-and-arrangement argument. Rather, as explained in Defendants' briefing, Plaintiff's argument is contrary to decades of copyright jurisprudence rejecting similar reasoning in the context of film and television works where the alleged selection and arrangement merely consists of "unprotectable elements" and "superficial points of comparison … gleaned haphazardly from three seasons of [a] television series." *See* Dkt. 34 at 13-17 (citing *Gable v. NBC*, 438 F. App'x 587, 588-89 (9th Cir. 2011)); *see also* Mot. at 4-5.

During oral argument, the Court specifically questioned Plaintiff regarding its selection-and-arrangement theory, seeking to understand what Plaintiff claimed to own beyond unprotectable elements. Supplemental Declaration of Cydney Swofford Freeman ("Supp. Freeman Decl."), Ex. 3 (4/21/24 Hr'g Tr.) at 20:3-20. Plaintiff was unable to answer. *Id.* This is what led to Plaintiff preparing an improper post-hearing supplemental briefing, which ultimately it did not file because the Court issued its ruling. *See* Opp., Ex. 1 ("Supplement"). Plaintiff's focus on the Supplement in the Opposition only puts into stark relief the fact that Defendants were prepared to answer questions and articulate their arguments at the hearing, and Plaintiff was not. That preparation took time. Moreover, the Court did, in fact, consider Plaintiff's attempt to proceed with a selection-and-arrangement theory. Citing *Gable*, Judge Pregerson ultimately concluded that Plaintiff merely "amalgamate[d] elements from moments across numerous episodes in an attempt to manufacture similarities." Dkt. 39 at 7 (citing 438 F. App'x at 589); *see also* Opp. ¶

23. In other words, the Court addressed Plaintiff's theory and rejected it based on its review of the actual works.

Next, Plaintiff argues that if it "had been allowed to, it could have pleaded its case with finer details." Opp. ¶ 3. Nonsense. Plaintiff waited nine months from when it first learned of *Yellowjackets* before filing the Complaint, during which time Plaintiff was able to decide how to most effectively draft it. *See* Dkt. 1 ¶ 14. Plaintiff was then free to amend its Complaint after the required conference of counsel—during which Defendants' counsel explained the pitfalls in Plaintiff's theory of the case—or even after Defendants filed their motion to dismiss. *See* Richert Decl. ¶ 2. It chose not to. Instead, Plaintiff pressed forward with its mistaken belief that it could claim ownership of unprotectable elements, such as the idea of a plane crashing in a desolate place, and the survivors' conflict, tactics, and rescue. *See, e.g.*, Dkt. 1 ¶¶ 32-33; *see also* Mot. at 4-6.

Regardless, and more importantly, Plaintiff's deficient pleading was not the issue. After reviewing the works, the Court held that "the deficiencies in Plaintiff's copyright claim … stem[med] from the fundamental characteristics of the works themselves" rather than from "an artifact of any pleading deficiency," and dismissed the Complaint with prejudice. Dkt. 39 at 18. Any amendment would have been futile.

Despite the Court's conclusion that the two works are not similar as a matter of a law, Plaintiff cites *Pasillas v. MacDonald's Corp.*, 927 F.2d 440, 444 (9th Cir. 1991), to suggest that because "[d]eterminations about substantial similarity are rarely obvious," awarding Defendants fees would be inappropriate. *See* Opp. ¶ 10. *Pasillas*, however, relied on the now-outdated standard that fees only may be awarded to a prevailing defendant where "the action is frivolous or brought in bad faith." 927 F.2d at 444 ("Since we cannot say that Pasillas's arguments are wholly meritless, we reject McDonald's request for sanctions."). As the Ninth Circuit explained in *Fantasy v. Fogerty*, 94 F.3d 553 (9th Cir. 1996), while courts also may

assess whether the claims were "frivolous," such a finding "is no longer required"
to award fees under Section 505. *Id.* at 558.

Even so, here, Plaintiff did not engage in even the most basic due diligence
about what is or is not protected under copyright law, and then was unprepared to
answer the Court's questions. *See* Opp. ¶ 16; *see also* Supp. Freeman Decl., Ex. 3
at 10:9–13:11. Plaintiff's reliance on *Carlini v. Paramount Pictures*, 2021 WL
8822464, at *1 (C.D. Cal. July 2, 2021), for the proposition that a court may not
award fees where "it appears the sole motivation at play was to protect an interest
[the plaintiff] genuinely believed … that he possessed," is likewise unavailing. *See*
Opp. ¶ 13. In *Carlini*, the court declined to award fees because the court "[did] not
find that [the plaintiff's] claims were objectively unreasonable, much less
frivolous." *Carlini*, 2021 WL 8822464, at *1. But a party's *subjective* belief in its
claims is not the standard; the analysis focuses on whether the claims were
*objectively* reasonable. *See, e.g., Shame on You v. Banks*, 2016 WL 5929245, at *6
(C.D. Cal. Aug. 15, 2016), *aff'd*, 893 F.3d 661 (9th Cir. 2018).[1] Plaintiff's claims
were not, and this factor likewise weighs heavily in favor of awarding fees.

## C.    Certain of Plaintiff's Litigation Decisions Lacked a Proper Motive

The Ninth Circuit unequivocally has held that "a plaintiff's culpability is no
longer required" for a prevailing defendant to recover fees. *Fantasy*, 94 F.3d at
558. Nevertheless, contrary to Plaintiff's assertions that its "motivation for justice
was legitimate and incontrovertible" (Opp. ¶ 31), Plaintiff's litigation tactics
evidence an improper motive.

*First*, Plaintiff continues to double down on invented alleged similarities first
raised in its Complaint. *See* Mot. at 7. Indeed, rather than finally abandon its false
assertion that "[c]annibalism arises in both stories as a last resort to survive,"

_____

[1] Even so, here, Plaintiff should have known its claims were unreasonable.
Indeed, it manufactured blatantly false similarities in an attempt to plead a claim.
*See infra* Section II.C.

DEFENDANTS' REPLY ISO MOTION FOR ATTORNEYS' FEES

Plaintiff *still* tries to convince the Court that this is a legitimate point of similarity between the works. *See* Opp. ¶ 32. It is not. After viewing Plaintiff's film, the Court soundly rejected this allegation as an obvious mischaracterization. *See* Dkt. 39 at 11-12 ("[T]he entire Movie takes place over the course of only two weeks, and Slim's faction is able to successfully gather food without ever considering, let along resorting to, cannibalism.").[2] Plaintiff's blatant mischaracterizations of the works— all of which the Court disabused after reviewing them—are further evidence that Plaintiff lacked a proper motive in bringing this action (and in making these false allegations once brought).

Plaintiff attempts to paint itself the victim by levying accusations that Defendants engaged in "extortionary tactics" and "strong armed Plaintiff from the start of this litigation, [by] threatening to move for fees during the first conferral between their counsel." Opp. ¶¶ 2, 30. In reality, defense counsel conducted its required Local Rule 7-3 meet and confer prior to filing Defendants' motion to dismiss not to threaten or "strong arm[]," but to advise Plaintiff that the Complaint was without merit. Defendants' counsel explained upfront that Plaintiff's claim was based entirely on unprotectable elements and obvious mischaracterizations, which is exactly what the Court ultimately held. *See* Dkt. 39 at 11-18; Richert Decl. ¶ 2.

And during the conference of counsel, as would later happen at the hearing, Plaintiff's counsel was unable to respond with any law or facts to support its position. Counsel's warning that Defendants would seek fees if forced to litigate Plaintiff's claim was not extortion; it merely put Plaintiff on notice of the potential fee exposure should it press forward with such a meritless action. Plaintiff made

---

[2] The Court also rejected Plaintiff's assertions that both *Yellowjackets* and *Eden* "include a suicide," that "the assistant coach's revulsion [to the barbaric act of cannibalism] in *Yellowjackets*, which culminates with him burning down the cabin and fleeing to a cave," is similar "to the trainer's suicide in the Movie," and that "the discovery of evidence of prior inhabitants in both works" is "strikingly similar." *Id.* at 12-13.

DEFENDANTS' REPLY ISO MOTION FOR ATTORNEYS' FEES

the decision to pursue its claim anyway and thus forced Defendants to expend significant time and resources defending against it.  It must now face the consequences of that decision.  Mot. at 7.[3]

*Second*, Plaintiff claims that the fact it sent its Supplement to Defendants instead of immediately filing it is evidence that "Plaintiff has not pursued litigation in bad faith or vexatiously."  Opp. ¶ 18.  But Plaintiff's Supplement—which was hastily prepared following the hearing on the motion to dismiss because Plaintiff could not articulate the merit of its selection-and-arrangement theory in its papers or before the Court (*see* Opp. ¶ 16; *see also* Supp. Freeman Decl., Ex. 3 at 20:3-20)— was nothing more than an attempt at an inappropriate sur-reply for which Plaintiff had not received leave from the Court to file.  *See* L.R. 7-10.

Moreover, the Supplement did not present new authorities or evidence that were unavailable at the time an opposition was filed.  *See Coronis Health RCM v. NextGen Labs.*, 2023 WL 6783328, at *1 (C.D. Cal. June 27, 2023) (denying request to file sur-reply where party did not present "new arguments").  And the older authorities Plaintiff cited and all the plot elements outlined in the chart were available to it at the time it filed the Complaint and during briefing on the motion to dismiss.  *See* Supplement ¶¶ 3-5.  *See also St. John v. Toyota Motor Corp.*, 2013 WL 5775072, at *1-2 (C.D. Cal. Oct. 10, 2013) (striking declaration as violative of

---

[3] Plaintiff contends that *Scott v. Meyer*, 2010 WL 2569286 (C.D. Cal. June 21, 2010) is "inapt" (*see* Opp. at 15) because "the 'dispute' surrounding [the] alleged infringement was publicized" shortly before the scheduled release of a major motion picture based on the defendants' novel.  *See Scott*, 2010 WL 2569286, at *3.  But there, the court held that the timing and public nature of the dispute, together with "the objective unreasonableness of claims," made "the connotations of frivolity … difficult to escape."  *Id.*  Plaintiff's timing took a similar trajectory.  *Yellowjackets* Season 2 concluded in May 2023.  Plaintiff alleges it learned of the show in February 2024.  *See* Dkt. 1 ¶ 13.  And yet Plaintiff waited to file suit until just a couple months before *Yellowjackets*' highly anticipated Season 3 premiere.  Juxtaposed against the backdrop of the objective unreasonableness of its claims, the timing and public nature of this lawsuit likewise suggest improper motive.

DEFENDANTS' REPLY ISO MOTION FOR ATTORNEYS' FEES

L.R. 7-10 where the "additional authority" attached was not new and had been
available at the time the opposition was filed).  In fact, Plaintiff already raised many
of the alleged "protectible elements" included in the Supplement in its Opposition, a
number of which were specifically addressed by the Court, including: "plane crash"
(*compare* Supplement at 4 *with* Dkt. 33 ¶¶ 7(c), 19), "cliff death" (Supplement at 6;
Dkt. 33 ¶ 34), "discovery of previous inhabitants" (Supplement at 7; Dkt. 33 ¶¶ 2,
35), "seeking help" (Supplement at 7; Dkt. 33 ¶ 30), and "rescue" (Supplement at 8;
Dkt. 33 ¶¶ 2, 30).  Plaintiff simply has not provided any "valid reason" either in the
Supplement or its Opposition as to why a post-hearing brief would have been
appropriate to re-hash arguments previously asserted in its papers, or to justify why
it is touting its Supplement to the Court now.  *See Vyas v. Vyas*, 2016 WL
11742567, at *1 (C.D. Cal. May 18, 2016) ("[a] district court may only grant leave
to file a sur-reply '"where a valid reason for such additional briefing exists"'")
(citation omitted).

Plaintiff's attempt to get its Supplement in front of the Court at this eleventh
hour simply is further evidence of its bad faith and vexatious litigation tactics.[4]
This factor also favors Defendants.

**D.     Awarding Fees Advances the Copyright Act's Goal of Deterrence**

Awarding Defendants' reasonable attorneys' fees is appropriate to deter
Plaintiff and other prospective claimants from pursuing unreasonable or frivolous
copyright claims resting on mischaracterizations and superficial or unprotectable
similarities.  Mot. at 7-9.  Plaintiff barely engages with the case law cited in the
Motion except to suggest—without elaboration—that before awarding fees, the
Court should consider "the chilling effect" of whether granting fees "may be too
great or impose an inequitable burden on an impecunious plaintiff."  Opp. ¶ 12

---

[4] In anticipation of Plaintiff's *ex parte* application for leave to file the
Supplement, Defendants spent significant time and effort preparing an opposition—
time for which Defendants are not seeking reimbursement.

DEFENDANTS' REPLY ISO MOTION FOR ATTORNEYS' FEES

(quoting *Ets-Hokin v. Sky Spirits*, 323 F.3d 763, 766 (9th Cit. 2003)).  But Plaintiff has not offered any evidence regarding an inability to pay Defendants' attorneys' fees, and certainly has not offered anything that would lead the Court to conclude that it is a "impecunious plaintiff."

Plaintiff's attempt to twist this factor to argue that "courts must be careful not to discourage starving artists from defending copyrights in original works due to the threat of attorney's fees," (*see* Opp. ¶ 12 (quoting *King v. IM Global*, 2017 WL 2620695, at *3 (C.D. Cal. Jan. 25, 2017) (internal quotation marks omitted)), is contradicted by the Supreme Court's ruling in *Kirtsaeng v. John Wiley & Sons* that "a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be 'encouraged to litigate [meritorious copyright defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.'"  136 S. Ct. 1979, 1985 (2016) (quoting *Fogerty v. Fantasy*, 510 U.S. 517, 527 (1994)).  At any rate, Plaintiff is not a "starving artist"; it is a sophisticated production company that attempted to punish Defendants for creating a series that shares only an abstract premise with its film.  It cherry-picked superficial similarities between the works—mischaracterizing the vast majority—in an attempt to manufacture infringement and drag Defendants into expensive, burdensome litigation.  *See* Dkt. 39 at 7; *see also* Mot. at 7-9.  Defendants should not have to bear this cost.

Plaintiff cites *Michael Grecco Prods. v. ImageSelect B.V.*, 2024 WL 5424110, at *4 (C.D. Cal. Dec. 4, 2024), for the general proposition that "it is not the purpose of the Copyright Act to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful." Opp. ¶ 10.  There, the court declined to award fees where defendants "prevailed on jurisdictional grounds, which is a technical defense," finding that "there is no basis to find that this defense serves the purposes of the Copyright Act." *Michael Grecco*, 2024 WL 5424110, at *3-4.  And in the case that the court in *Michael*

*Grecco* quotes, *Minden Pictures v. John Wiley & Sons, Inc.*, the court granted summary judgment finding that the plaintiff lacked standing under the Copyright Act to assert claims of copyright infringement—also a technical defense.  2014 WL 1724478, at *6, 8 (N.D. Apr. 29, 2014).  In both *Michael Grecco* and *Minden Pictures*, no substantive ruling regarding the underlying question of infringement was made, and each lawsuit was dismissed without prejudice.  In contrast, as discussed above, Defendants prevailed on the merits, and Plaintiff's claim was dismissed *with* prejudice.  Neither case is applicable here.  And in light of Defendants' complete success on the merits, the objective unreasonableness of Plaintiff's claim, and Plaintiff's litigation tactics, deterrence justifies a fee award.

### III.    THE AMOUNT REQUESTED IS REASONABLE

Defendants' counsel managed this case efficiently, leading to an early dismissal of Plaintiff's Complaint in its entirety with prejudice.  When a party "has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  *See also Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (instructing that courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case").

Plaintiff does not dispute that Defendants' attorneys' hourly rates in this matter are reasonable, but rather takes issue with the amount of time counsel devoted to defending against the Complaint.  *See, e.g.*, Opp. ¶ 34.  But Defendants' counsels' time incurred in defeating Plaintiff's meritless claim is largely a result of Plaintiff's own litigation decisions.  For example, Plaintiff made no attempt to limit the works at issue or focus its allegations.  Rather, Plaintiff sued Defendants over three seasons of a television series totaling more than 29 hours, and the Complaint's sweeping allegations failed to specify any particular episode or even season that it claimed was purportedly infringing.  Plaintiff's obfuscated pleadings required

Defendants' counsel not only to watch the entire television series, but also to carefully analyze each episode, as well as Plaintiff's film, to cogently explain why the claimed similarities were mischaracterized or otherwise unprotectable. And while Plaintiff attacks the amount of time counsel spent reviewing the works in preparation for the hearing, (Opp. ¶¶ 53-56), at the hearing Plaintiff raised plot points in Season 3 which Defendants were required to address. *See* Supp. Freeman Decl., Ex. 3 at 15:5–17:7. And when the Court directly asked the parties about the series as a whole, Defendants were prepared to answer the Court's questions and Plaintiff was not.

Next, Plaintiff points out that Defendants relied on similar briefing in prior substantial similarity cases in drafting their motion to dismiss and this Motion. *See* Opp. ¶¶ 39-40. It is ironic that Plaintiff attacks Defendants for spending too much time in preparing their motions, but then criticizes Defendants for efficiently relying on previously drafted language to set forth the proper legal standards and explanatory citations to the governing cases. And if anything, the comparisons Plaintiff attaches (*see* Fuchs Decl., Exs. 2-3) only underscore the significant substantive differences in the legal and factual arguments between the briefs.

Plaintiff further mischaracterizes certain time entries. For example, Plaintiff devotes a paragraph to the impropriety of block billing (*see* Opp. ¶ 37) but fails to cite to a single challenged entry, because Defendants' counsel did not block bill. Plaintiff also takes issue with the fact that counsel "spen[t] almost an hour reviewing the local rules" (*see* Opp. ¶ 46), when in fact that time entry details that counsel reviewed not only the local rules and Judge Pregerson's standing order, but also the Court's "prior copyright decisions in connection with motion to dismiss claims." *See* Freeman Decl., Ex. 1 (12/9/24 entry). That is basic diligence in preparing for litigation. Plaintiff also takes issue with certain redactions in Defendants' billing records, *id.* ¶ 43, but Defendants redacted their invoices largely to remove entries for which Defendants *do not* seek reimbursement. *See* Freeman

DEFENDANTS' REPLY ISO MOTION FOR ATTORNEYS' FEES

Decl. ¶ 10.  And the few remaining redactions conceal information protected by the attorney-client privilege.  *Id.*

In short, it's not that Defendants spent too much time defending against Plaintiff's baseless claim, it's that Plaintiff spent too little.  Plaintiff's conclusory allegations of inefficiency and redundancy simply hold no weight, and should be disregarded.  Defense counsel spent the necessary amount of time to mount a meritorious and wholly successful defense, and Defendants should be compensated as a result.  *See Hensley*, 461 U.S. at 435; *Moreno*, 534 F.3d at 1112.

## IV.   CONCLUSION

Defendants respectfully request that this Court order Plaintiff to pay Defendants $129,305.00 in attorneys' fees for their successful motion to dismiss Plaintiff's claims and for this Motion, plus $18,142.00 in fees incurred in preparing this Reply, for a total of $147,447.00.  *See* Supp. Freeman Decl. ¶¶ 4-5

DATED: June 30, 2025

DAVIS WRIGHT TREMAINE LLP
NICOLAS A. JAMPOL
CYDNEY SWOFFORD FREEMAN
JOEL RICHERT

By:   /s/ Cydney Swofford Freeman
        Cydney Swofford Freeman

Attorneys for Defendants
LIONS GATE ENTERTAINMENT, INC., SHOWTIME NETWORKS INC., BEER CHRISTMAS, LTD., ASHLEY LYLE, and BART NICKERSON