**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:24-cv-09851-DOC-SK | Date: July 16, 2025 |

Title: Eden Film Production LLC v. Lockjaw LLC et al.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

| PROCEEDINGS (IN CHAMBERS): | ORDER GRANTING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES [42] |
|---|---|

Before the Court is Defendants Lions Gate Entertainment, Inc., Showtime Networks, Inc., Beer Christmas, Ltd., Ashley Lyle, and Bart Nickerson's ("Defendants") Motion for Attorneys' Fees ("Motion" or "Mot.") (Dkt. 30). The Court finds this matter suitable for resolution without oral argument. Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. Having reviewed the papers and considered the parties' arguments, the Court **GRANTS IN PART** Defendants' Motion.

**I.    Background**

This case arises from Plaintiff Eden Film Production LLC's ("Plaintiff") claim that Defendants infringed the motion picture copyright of Plaintiff's feature film "Eden" ("the Movie"). *See generally* Complaint ("Compl.") (Dkt. 1). Plaintiff claimed that Defendants created and released a substantially similar work to the Movie in the form of the television show "Yellowjackets," which premiered on November 14, 2021, over six years after Plaintiff's copyright for the Movie was registered. Compl. at 1. Plaintiff claimed it first became aware of Yellowjackets in February 2024, and subsequently came to believe that it borrowed heavily from the Movie to the point where the works were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:24-cv-09851-DOC-SK                                               Date: July 16, 2025

Page 2

"substantially similar." Compl. ¶ 16. The Complaint describes the Movie as a "survival thriller about a U.S. men's soccer team that crashes on a deserted island after a World Cup match." *Id.* ¶ 22. It describes Yellowjackets as a "survival thriller about a U.S. women's soccer team that crashes in the deserted Canadian wilderness island before a high school national championship match." *Id.* The Complaint goes on to describe the ways Plaintiff believes the works are substantially similar, alleging similarities in the themes, plots, settings, characters, moods, paces, sequences of events, scenes, and dialogues. *Id.* ¶ 21-35. Based on these alleged similarities, Plaintiff brought a single cause of action against Defendants: copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.

Plaintiff filed its Complaint on November 14, 2024. Defendants filed a Motion to Dismiss (Dkt. 27) on January 24, 2025. On April 25, 2025, the Court granted the Motion to Dismiss and dismissed Plaintiff's entire Complaint with prejudice. Order Granting Defendants' Motion to Dismiss ("Order") (Dkt. 39). The Court carefully analyzed the Movie and Yellowjackets, providing an in-depth comparison of both works' plots, moods, themes, characters, and settings. *See generally* Order. The Court failed to find substantial similarities in any of these components. *Id.*

Defendants then filed the instant Motion for Attorneys' Fees ("Motion" or "Mot") (Dkt. 42) on May 9, 2025. The case was transferred from Judge Dean D. Pregerson to Judge David O. Carter on May 29, 2025 (Dkt. 45). Plaintiff opposed the Motion ("Opp'n") (Dkt. 50) on June 16, 2025. Defendants filed their Reply to Plaintiff's Opposition ("Reply") on June 30, 2025.

II.     **Legal Standard**

For copyright infringement claims, section 505 of the Copyright Act allows a Court to "award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. In determining if fees are appropriate, the Court must consider a "nonexclusive list of factors," such as (1) frivolousness of the infringement claims; (2) motivation for bringing the infringement suit; (3) objective unreasonableness (both in the factual and in the legal components of the case) of the infringement suit; and (4) the need in particular circumstances to advance considerations of compensation and deterrence. *See Glacier Firms (USA), Inc. v. Turchin*, 896 F. 3d 1033, 1037 (9th Cir. 2018) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)); *see also Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016). The Ninth Circuit has articulated an additional set of

Case 2:24-cv-09851-DOC-SK  Document 54  Filed 07/16/25  Page 3 of 13  Page ID #:442

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:24-cv-09851-DOC-SK                                                          Date: July 16, 2025

Page 3

factors that the Court may consider but need not be met: the degree of success obtained in the litigation of the infringement suit, the purposes of the Copyright Act, and "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious [litigant]." *Glacier Firms*, 896 F. 3d at 1037 (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F. 3d 657, 675 (9th Cir. 2017)). The Court accords "substantial weight" to the reasonableness factor and the rationality of the losing party's litigating position in their initial infringement case. *Id.* (citing *Shame On You Prods., Inc. v. Banks*, 893 F. 3d 661, 666 (9th Cir. 2018)).

Federal courts determine what constitutes a "reasonable attorneys' fee" by calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This calculation provides an objective basis to make an initial estimate and is called the "lodestar" method. *Id.*; *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). Courts determine a reasonable hourly rate by "looking to the prevailing market rate in the community for comparable services." *Shame On You Prods., Inc. v. Banks*, No. CV 14-03512-MMM, 2016 WL 5929245, at *12 (C.D. Cal. Aug. 15, 2016), aff'd 893 F. 3d 661 (9th Cir. 2018). The party requesting fees has the burden of showing that the requested fees are in line with "prevailing rates for lawyers of reasonably comparable skill and reputation in the community." *Id.* (citing *Jordan v, Multnomah Cnty.*, 815 F. 2d 1258, 1263 (9th Cir. 1987)). The community the court looks to is the district in which the court sits. *Shame On You Prods, Inc.*, 2016 WL 5929245 at *12 (citing *Schwartz v. Sec't of Health and Hum. Serv.*, 73 F. 3d 895, 906 (9th Cir. 1995)).

Further, courts have discretion to adjust this amount upwards or downwards by considering various factors, including (1) the time and labor required; (2) the novelty and difficulty of the question presented; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (quoting *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)); *see also Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) (finding that although the lodestar approach is the centerpiece and main means to

Case 2:24-cv-09851-DOC-SK Document 54 Filed 07/16/25 Page 4 of 13 Page ID #:443

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:24-cv-09851-DOC-SK                    Date: July 16, 2025

Page 4

calculate attorney's fee awards, the *Johnson* factors are relevant in adjusting the lodestar amount).

A district court "has a great deal of discretion in determining the reasonableness of the fee." *In re Smith,* 586 F.3d 1169, 1173 (9th Cir. 2009) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)). Where "a voluminous fee application is filed in exercising its billing judgment the district court is not required to set forth an hour-by-hour analysis of the fee request." *Gates*, 987 F.2d at 1399. In those instances, "the district court has the authority to make across-the-board percentage cuts. . . in the number of hours claimed. . . as a practical means of trimming the fat from a fee application." *In re Smith*, 586 F.3d at 1174 (quoting *Gates*, 987 F.2d at 1399). However, cutting a large percentage of the fee request "has been criticized when employed in cases where the fee applications at issue involved substantial amounts of money and where district courts failed adequately to articulate their reasons for selecting specific percentage deductions." *Gates*, 987 F.2d at 1399. "[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "Though a small reduction of fees necessitates only 'cursory explanation,' anything more disparate requires 'a more specific articulation of the court's reasoning.'" *In re Smith*, 586 F.3d at 1174 (quoting *Moreno*, 534 F.3d at 1111).

### III.     Discussion

####    A.     Award of Attorneys' Fees

It is undisputed that Defendants are the prevailing parties in this case. The Court granted their Motion to Dismiss and dismissed all of Plaintiff's claims with prejudice which "achieved a material alteration in the legal relationship of the parties that is judicially sanctioned." *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1030 (9th Cir. 2009).

#####         i.     Reasonableness and Frivolousness

When deciding whether to award attorney's fees in copyright cases, courts often analyze the frivolousness and reasonableness factors concurrently. *See Glacier Films*, 896 F. 3d at 1042; *see also Strike 3 Holdings, LLC v. Doe*, No. 23-2782, 2024 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:24-cv-09851-DOC-SK  Date: July 16, 2025

Page 5

4601590, at *1 (9th Cir. Oct. 29, 2024). A claim is considered objectively unreasonable when the litigating party "should have known from the outset that its chances of success in this case were slim to none." *Seltzer v. Green Day, Inc.*, 725 F. 3d 1170 (9th Cir. 2013) (quoting *SOFA Ent. v. Dodger Prods.*, 709 F. 3d 1273, 1280 (9th Cir. 2013)). The reasonableness of the losing party's argument in their infringement complaint is not to be confused with the actual outcome of the case decided by the court: a plaintiff's argument can be reasonable and at the same time dismissed by the court. *See Kirtsaeng*, 579 U.S. at 207 ("And if some court confuses the issue of liability with that of reasonableness, its fee award should be reversed for abuse of discretion.").

As the Court explained in its Order, when analyzing whether two works are "substantially similar" to each other, courts "must take care to inquire only whether the protectible elements, standing alone, are substantially similar," and "filter out and disregard the non-protectible elements." Order at 6 (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)). The Court determined after performing this analysis that while there were general similarities between the works, such as the fact that both works depict soccer teams, there were no substantial similarities between the two works across their plots, moods, themes, characters, and settings. *See generally* Order.

The Court found that Plaintiff mischaracterized many of the alleged plot similarities it pointed out in its Complaint. For example, Plaintiff argued that the Movie "alludes to cannibalism" and therefore was similar to Yellowjackets which contains actual acts of cannibalism. The conversations from the Movie that Plaintiff highlights, however, were not about cannibalism and did not allude to it at all. *See* Order at 11-12 ("[T]he entire Movie takes place over the course of only two weeks, and Slim's faction is able to successfully gather food without ever considering, let alone resorting to, cannibalism"). The Court also found that, contrary to Plaintiff's allegations, "Yellowjackets [does not] include suicide." *Id.* at 12. While a Yellowjackets character, like the Movie trainer Plaintiff describes, does die from falling from a cliff, "her death is accidental, and occurs largely because of Misty's threatening acts rather than of the decedent's own volition." *Id.*

Plaintiff further argued that some of the fundamental elements of both works, such as the attempts by survivors in both works to escape isolation and contact rescuers, and the division of survivor groups into rival factions, were substantial similarities that can be protected. *See* Order at 13. The Court noted, however, that "[t]here can be no serious dispute that escape attempts by… stranded survivors are prevalent throughout fiction and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-09851-DOC-SK                                      Date: July 16, 2025

Page 6

history, from Odysseus, Robinson Crusoe, and Gilligan to Shackleton and the Uruguayan rugby team. Instances of competition, tribalism, and factionalism… are nearly as commonplace, from 'The Tempest' to 'Survivor' to… 'Lord of the Flies.'" *Id.* at 13-14. These similarities are all universal themes, clearly prevalent across a plethora of acclaimed works. Thus, these plot lines are common scenes-a-faire, and not protectible.

Further, the Court found that while there was an overlap in the moods of the works, this "flow[ed] naturally from unprotectible basic plot premises in the context of survival stories and is therefore also not protectible." *Id.* at 15. The same is true of the works' themes, as while both explore "the darkness and potential for violence within all people" these themes originate from the fundamental plots of the works that are common scenes-a-faire. *Id.*

Plaintiff also alleged that several characters in the Movie had similar attributes to the Yellowjackets' characters. The Court found these descriptions to be "either general, inaccurate, or both." *Id.* at 16. It was very clear, for example, that while Jackie and Slim have some general similarities, like being "talented soccer players" and "team captains," these are not protectable characteristics. *Id.* "Virtually every soccer team has a team captain, and presumably selects one of the more talented players to be captain." *Id.* There was also a myriad of differences between the characters, such as their race, gender, age, personality, and their respective roles in the works. *Id*. There were further inaccuracies in Plaintiff's depiction of the coaches in the works. Plaintiff described the coaches as both "providing guidance and support to the survivors." *Id.* However, the Yellowjackets assistant coach, Ben, is terribly injured and does not support the surviving girls' behavior, while the Movie head coach Defoe "does not even survive the initial plane crash," and so could not possibly be providing "support to the survivors." *Id.* The Court found even more mischaracterizations, such as Plaintiff alleging a "nurse like" similarity between Misty and the trainer from the Movie because both at some point administer first aid, without acknowledging the vast differences in the characters, such as Misty being a "sociopathic white teenage girl" and Defoe being an "empathetic adult Asian man." *Id.* The Court therefore determined that "[t]he characters…are fundamentally different." *Id.* at 17.

Plaintiff also alleged that the settings were substantially similar, because each took place "in a deserted and desolate place beyond the reach of human civilization." Compl. ¶ 23. The Court however, pointed out both that "the boreal Canadian wilderness [does not]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:24-cv-09851-DOC-SK                                                        Date: July 16, 2025

Page 7

bear any resemblance to an uninhabitable tropical island," and also that the "desolate area" setting is a common part of survival stories, and not a protectable idea. Order at 17.

Lastly, Plaintiff posited that the works have "similar paces." Compl. ¶ 30. The Court found, however, that Plaintiff ignored that "Yellowjackets takes place in two distinct timelines separated by at least twenty years" and includes flashbacks and flash-forwards. Order at 17. The Movie, on the other hand, took place almost entirely chronologically, and only over the course of a couple of weeks. *Id.* at 17-18. Plaintiff argued that both works "balance[d] slower, character-driven moments with more intense, plot-driven sequences." *Id.* at 18. However, the Court held that this is a generic element of not only survival works, but "nearly every work of fiction," and thus clearly not protectible. *Id.*

Once the Court uncovered these mischaracterizations and inaccuracies, it became clear that "this was not a close and difficult case." *Gilbert-Daniels v. Lions Gate Ent. Corp.*, No. 2:23-cv-02147-SVW-AGR (C.D. Cal. July 9, 2024) (citing *Glacier*, 896 F.3d at 1043 (quoting *Seltzer*, 725 F. 3d at 1181)). As was said in *Gilbert-Daniels*, had Plaintiff in this case more rigorously compared the two works as the Court did in the Order, it would have come to the same conclusion that there was no substantial similarity. *Id.* Plaintiff in its Opposition to the instant Motion mostly argues against the Court's Order, which would have been better suited to a motion to reconsider. Plaintiff also overlooks the Court's reasoning in its Opposition, as the issues raised were thoroughly addressed in the Court's Order. Plaintiff further relies on an unfiled supplemental briefing in its Opposition which was not before the Court when it decided the Motion to Dismiss. For the above-mentioned reasons, Plaintiff's decision to litigate this case was in fact unreasonable, and the Court therefore finds this factor favors an award of fees.

### ii.     Motivation of Infringement Litigation

Defendants argue that Plaintiff's decision to bring the suit in the first place, along with its mischaracterizations of some of the evidence, reveal an improper motivation on behalf of Plaintiff. Mot. at 7. Plaintiff responds that its "motivation for justice was legitimate and incontrovertible," and that because it conceded the outcome of the infringement case without filing an appeal, it clearly was not motivated to be litigious at Defendants' expense. Opp'n at 10-11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:24-cv-09851-DOC-SK                                        Date: July 16, 2025

Page 8

In assessing the motivation, courts look to the losing party's behavior to see if there is an untoward reason for the infringement lawsuit. *See Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 WL 174684 at *9-*11 (C.D. Cal. Mar. 24, 2015), aff'd 847 F. 3d 657 (9th Cir. 2017). This often leads courts to assess the litigation methods and tactics of the losing party. *Id.*

The Court does not find improper motivation on behalf of Plaintiff. There is not any evidence presented suggesting that Plaintiff was pursuing overly aggressive litigation tactics in litigating the infringement claim. Defendants point to Plaintiff's mischaracterizations of some of the alleged similarities between the Movie and Yellowjackets, as well as Plaintiff's general claims of owning what are clearly unprotectible ideas. Motion at 6-7. However, that conduct goes more to the factor of reasonableness rather than the motivation of Plaintiff. The Court thus finds this factor does not favor an award of fees.

### iii. Compensation and Deterrence

The Ninth Circuit has articulated that the primary purpose of deterrence in copyright infringement cases is served by "awarding fees against a party who had litigated an objectively unreasonable claim, or who had brought a claim in bad faith." *Shame On You Prods.*, 893 F. 3d at 668. Further, an award of fees to the prevailing party "insures that they are properly compensated for defending against overreaching claims of copyright infringement…". *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F. 3d 638, 654 (9th Cir. 2020). Because Plaintiffs litigated an objectively unreasonable claim, the purpose of general deterrence is served by awarding attorneys' fees here. *See Shame On You Prods.*, 893 F. 3d at 668. Thus, this factor favors an award of fees.

While the Court may consider whether a party is an "impecunious litigant," Plaintiff here does not argue that having to pay Defendants' fees would cause an undue financial burden or that it otherwise cannot afford to pay fees. *Glacier Firms*, 896 F. 3d at 1037.

### iv. Degree of Success in Infringement Suit

There is no dispute in this case that Defendants are the prevailing party. Further, the Court ultimately rejected all of Plaintiff's allegations and denied Plaintiff the ability

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:24-cv-09851-DOC-SK	Date: July 16, 2025

Page 9

to amend the complaint, instead dismissing all claims with prejudice on the first motion to dismiss. Order at 18. This complete success in the infringement suit favors an award of attorneys' fees. *See Glacier Films*, 896 F. 3d at 1038.

### v. Purposes of the Copyright Act

The fundamental goal of the Copyright Act is to "encourage the production of original literary, artistic, and musical expression for the good of the public. *Id.* at 1041 (quoting *Fogerty*, 510 U.S. at 524). If attorney's fees are not awarded in cases such as this, there will be less of an incentive to create shows such as Yellowjackets, which will lead to fewer artistic expressions and a decrease in the public good. *See Gilbert-Daniels*, No. 2:23-cv-02147-SVW-AGR at *5. This factor weighs in favor of awarding fees to Defendants.

Having weighed all of the Supreme Court factors, as well as the additional factors articulated by the Ninth Circuit, the Court finds under the totality of circumstances that an award of attorneys' fees is appropriate and promotes the goals of the Copyright Act.

### B. Reasonableness of Requested Fees

Having determined that attorneys' fees are warranted in this case, the Court must next assess whether the amount of fees requested is reasonable. Counsel bears the burden of establishing that the number of hours expended is reasonable by submitting detailed time records justifying the hours claimed to have been expended. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). The party requesting fees first must prove the hourly rate and number of hours that go into the lodestar calculation are reasonable themselves. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The amount may be reduced if the hours are duplicative, excessive, or otherwise unnecessary. *Id.*; *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Defendants seek $147,447.00 in attorneys' fees. Mot. at 14; Reply at 12. The fees are based on 269 hours worked by Defendants' counsel, which includes three attorneys. Declaration of Cydney Swofford Freeman in Support of Defendants' Motion for Attorneys' Fees ("Freeman Decl.") (Dkt. 42-2) at 4; Supplemental Declaration of Cydney Swofford Freeman in Support of Defendants' Motion for Attorneys' Fees ("Supp.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:24-cv-09851-DOC-SK                                              Date: July 16, 2025

Page 10

Freeman Decl.") (Dkt. 52-1) at 1. Defendants do not seek recovery for paralegal or in-house counsel's work. Mot. at 13.

### i. Reasonableness of Requested Hourly Rates

When determining the reasonableness of an attorney's hourly rate, the Court must look to the "prevailing market rates in the relevant community." *Shame On You Prods.*, 2016 WL 5929245 at *14 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "The burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those in the prevailing community." *Id.* (quoting *Blum*, 465 U.S. at 895). The Court will also look to other factors, such as the rates counsel actually charged in the case, to help determine whether the rates sought are reasonable. *Perfect 10, Inc.*, 2015 WL 1746484 at *18 (citing *Maldonado v. Lehman*, 811 F. 2d 1341, 1342 (9th Cir. 1987), aff'd 847 F. 3d 657 (9th Cir. 2017)).

Defendants seek fees for the three attorneys from the Los Angeles office of Davis Wright Tremaine LLP ("DWT") who worked on this litigation: partner Nicolas A. Jampol ("Jampol"), partner Cydney Swofford Freeman ("Freeman"), and associate Joel Richert ("Richert"). Mot. at 10-11. Plaintiff does not dispute the hourly rates requested.

Defendants argue that Jampol's time should be compensated at rates of $650 per hour for work done in 2025 and $600 per hour for work done in 2024. *Id.* The Court agrees that these are reasonable rates for an attorney with Jampol's qualifications. Defendants contend that Jampol has been practicing law for almost twenty years, and litigates primarily content-related claims, with a particular emphasis on copyright claims. Mot. at 11. Jampol's hourly rate is lower than rates other courts have deemed reasonable for a partner in this district. *See Perfect 10, Inc.*, 2015 WL 1746484 at *29 (finding $705 per hour to be a reasonable rate in a copyright infringement action for a partner with seventeen years' experience).

Defendants further argue that Freeman's time spent on this case should be compensated at rates of $650 per hour for 2025 and $535 per hour for 2024. Mot. at 11. The Court agrees these are reasonable rates for an attorney with Freeman's qualifications. Defendants assert that Freeman has been practicing law for almost a decade, and "routinely litigates and counsels clients on copyright, trademark, First Amendment, and other media matters." *Id.* Freeman's declaration states she graduated from the New York

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:24-cv-09851-DOC-SK                                                      Date: July 16, 2025

Page 11

University School of Law in 2015 and has been recognized by several reputable legal magazines and other publications." Freeman Decl. ¶ 6. Freeman's Declaration also states that she handled the day-to-day management of the case, including the arguing of the Motion to Dismiss. *Id.* Therefore, based on its review of the record, the Court finds that Freeman's hourly rates are reasonable. *See Perfect 10, Inc.*, 2015 WL 1746484 at *30 (finding $670 per hour to be a reasonable rate in a copyright infringement action for an associate with ten years' experience).

Defendants lastly argue that Richert's time spent on this case should be compensated at rates of $490 per hour for 2025 and $460 per hour for 2024. Mot. at 11-12. The Court agrees these are reasonable rates for an attorney with Richert's qualifications. Defendants assert that Richert has been practicing law for seven years, and since 2020 has worked on "a variety of litigation and counseling matters involving copyright, trademark, and other intellectual property." *Id.* at 11. Therefore, based on its review of the record, the Court finds that Richert's hourly rates are reasonable. *See Perfect 10, Inc.*, 2015 WL 1746484 at *30 (finding $375-$560 per hour to be a reasonable rate in a copyright infringement action for an associate with five years' experience).

### ii. Redactions in Billing

Plaintiff challenges certain redactions in Defendants' billing records, calling them "unreasonable" and that they "provid[e] no context for authenticity of the billing." Opp'n at 14. Defendants contend that these redactions are necessary to "conceal information protected by the attorney-client privilege." *See generally* Reply.

A party seeking attorneys' fees can redact portions of the relevant time entries when it is "necessary to protect attorney client privilege," provided that the unredacted portions "still afford the Court sufficient detail to determine the reasonableness of the hours requested." *Shame On You Prods.*, 2016 WL 5929245 at *16 (quoting *Perfect 10, Inc.*, 2015 WL 1746484 at *25). The redactions must never "impair the ability of the court to judge whether the work was an appropriate basis for fees." *Democratic Party of Wash. State v. Reed*, 388 F. 2d 1281, 1285 (9th Cir. 2004). However, the time entries need not state specific subjects discussed between attorney and client, nor must the precise topic of research be stated in the billing records when it would threaten an aspect of attorney client privilege, provided that there is enough other information given for the Court to "form a judgement on whether [the party's] fees were legitimate." *Shame On*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:24-cv-09851-DOC-SK                              Date: July 16, 2025

Page 12

*You Prods.*, 2016 WL 5929245 at *16 (citing *Moofly Prod., LLC v. Favila*, No. 13-05866, 2015 WL 6681164, at *4 (C.D. Cal. Nov. 2, 2015); *see also Reed*, 388 F. 3d at 1285 ("As for the redactions, they are of this sort: 'Counsel call to discuss [REDACTED]' and 'Research Supreme Court case law involving [REDACTED].' If the Democratic Party were not furnishing enough information for a court to form a judgment on whether its fees were legitimate, then a court might be obligated to deny them. But these redactions do not impair the ability of the court to judge whether the work was an appropriate basis for fees")).

Defendants argue that the redactions in billing were done to "remove entries for which Defendants do not seek to recover fees and to protect privileged information." Freeman Decl. ¶ 3. Plaintiff contends that the redactions are "unreasonable in providing no context for authenticity of the billing." Opp'n at 14. The Court finds that Defendants' redactions were appropriate to protect attorney-client privilege and still provide sufficient information such that they "do not impair the ability of the court to judge whether the work was an appropriate basis for fees." *Reed*, 388 D. 3d at 1286.

### iii.     Fees Incurred in Bringing the Instant Motion

Defendants seek $20,940 in attorneys' fees related to bringing this Motion, and another $18,142 in fees related to their Reply to Plaintiff's Opposition. *See* Ex. 1 at 16-21 (Dkt. 42-3); Reply at 12. These fees are often called "fees on fees." *Shame On You Prods.*, 2016 WL 5929245 at *18 (quoting *Hirsch v. Compton Unified Sch. Dist.*, No. CV 12-01269 RSWL, 2013 WL 1898553, at *1 (C.D. Cal. May 3, 2013)). Neither the Supreme Court nor the Ninth Circuit has said whether fees on fees are available under § 505. Defendants further have not provided any controlling authority pointing to whether fees on fees are available for cases filed under the Copyright Act. Thus, the Court declines to award fees accrued for the instant Motion as well as Defendants' Reply. *See Shame On You Prods.*, 2016 WL 5929245 at *18 ("While other federal statutes—e.g., 42 U.S.C. § 1988 [and] 28 U.S.C. § 2412—have been construed to permit the recovery of fees upon fees, Defendants have not submitted any controlling authority regarding the availability of fees upon fees vis-a-vis the Copyright Act specifically. Accordingly, the court declines to award such fees") (quoting *Identity Arts v. Best Buy Enter. Servs. Inc.*, No. C 05-4656 PJH, 2008 WL 820674, at *8 (N.D. Cal. Mar. 26, 2008)).

Therefore, the Court subtracts $39,082 from the fee award requested by Defendants.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-09851-DOC-SKDate: July 16, 2025

Page 13

### iv.Hours Spent Reviewing the Works

Plaintiff argues that at several stages Defendants improperly padded their hours by redundantly rewatching dozens of hours of Yellowjackets episodes. For example, Defendants billed 16 hours of watching Yellowjackets to prepare for their reply on the motion to dismiss and another 10 hours watching episodes before the hearing on the motion to dismiss. *See* Opp'n at 16.

After reviewing the billing records, the Court does not find that these hours are redundant. It appears that only a few episodes were watched more than once. Moreover, these hours are reasonable given the length of Yellowjackets and the breadth of the allegations made about the series.

Plaintiff further argues that the time spent by Defendants' counsel preparing the motion to dismiss, oral argument on that motion, and reply for that motion was excessive. Opp'n at 13-16. These arguments are not persuasive because they are overbroad, fail to sufficiently specify why the hours actually billed to Defendants were unwarranted, and do not identify caselaw as support. Moreover, the Court finds it relevant that Defendants chose to hire one law firm for a joint defense to save on fees and are not seeking fees for in-house counsel.

## IV.Disposition

For the reasons explained above, the Court **GRANTS IN PART** Defendants' Motion for Attorneys' Fees and **ORDERS** $108,365 in fees to Defendants within 60 days of this Order. The hearing on the Motion on July 21, 2025, is **VACATED**.